Olu K. Orange, Esq. (SBN 213653)
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
Phone:  (213) 736-9900
Fax:  (213) 417-8800
orangelawoffices@att.net

Shawna L. Parks, Esq. (SBN 208301)
LAW OFFICE OF SHAWNA L. PARKS
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Phone/Fax: (323) 389-9239
sparks@parks-law-office.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G., a minor, by and through her guardian *ad litem*, Brittany Dorn; A.D.G.; and R.L., minors, by and through their guardian *ad litem*, Derek Spencer; N.B., a minor, by and through his guardian *ad litem*, Araceli Boyce; A.G., a minor, by and through his guardian *ad litem*, Karla Garcia; CHRISTAL LORD; and DYANNA SANABRIA; individually and as class representatives; <br><br>                              *Plaintiffs,* <br>     vs. <br><br> CITY OF LOS ANGELES, VINCENT BERTONI, HIRO KOBAYASHI, 3568 MOTOR LLC, AND DOES 1 THROUGH 10. <br>                                *Defendants.* | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br> 1.   VIOLATION OF CIVIL RIGHTS 42 U.S.C. §12101, *et seq*, Americans with Disabilities Act <br> 2.   VIOLATION OF CIVIL RIGHTS 29 U.S.C. §794, *et seq*, Sec. 504 of the Rehabilitation Act <br> 3.   VIOLATION OF CIVIL RIGHTS 42 U.S.C. §1983, Fourteenth Amendment <br> 4.   VIOLATION OF CIVIL RIGHTS 42 U.S.C.  §1983, Conspiracy <br><br> **DEMAND FOR JURY TRIAL** |

## I.    INTRODUCTION

1. This lawsuit stands between 350 elementary school children and their teachers on one side – and grave risks of cancer, far beyond legal limits – on the other.

2. For the several days prior to filing this action, through several pleas and entreaties to officials, these children and their teachers have fought to no avail to protect their health – and their lives. Meanwhile City of Los Angeles ("City") officials continued to confer, collaborate and conspire with a developer who proposes to engage in a towering demolition, excavation and construction project on the fence-line of the kindergarten playground at Palms Elementary School.

3. Per the City and developer's own documentation, the project will send toxic dust, vapors, PM2.5 and PM10 particles, volatile organic compounds, reactive organic gases, NOx gas, and other poisonous contaminants into the air covering the children's playground and the school. Additionally, many of the children at Palms Elementary School are in the Deaf and Hard of Hearing program and wear sound amplifying listening devices to accommodate their disabilities. The construction noise from the project will cause them pain and prevent them from learning.

4. Nevertheless, through backroom deals, and meetings with politicians where parents were specifically excluded, the City and developer have pushed the project through the approval process – with no Environmental Impact Review, no Health Risk Analysis, and none of the <u>standard</u> protective measures for the 350+ children, or their teachers.

5. Neither the City, nor the developer, served the children, their parents, nor their teachers, with notice of the planned construction, much less information about the impacts of the construction, and the harm <u>currently scheduled</u> to befall them.

6. When the children's parents and teachers first found out about the construction project, and expressed concerns, the developer sought to placate them by offering to *paint their handball wall*; their City councilman's, Paul Koretz', office told them not to *"take it personally."*

- 1 -

7. Every department, administrator and/or official supposedly in place to protect the children and teachers of Palms Elementary School has failed them. The children and teachers now seek justice and protection through this action, in this Court.

## II.    JURISDICTION AND VENUE

8. The children and their teachers ("Plaintiffs") present federal claims for relief under 42 U.S.C. §1983. Accordingly, federal jurisdiction in conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiffs' claims arise out of acts of the City of Los Angeles in concert, agreement and conspiracy with the developer, in the County of Los Angeles, State of California. Accordingly, venue is proper within the Central District of California.

## III.    PARTIES

A.    PLAINTIFFS

9. S.G., A.D.G., R.L., N.B., and A.G., are all minors who currently attend, and at all times material herein, attended as pupils Palms Elementary School, located at 3520 Motor Avenue, in the City of Los Angeles, California. Each of them are private residents in the County of Los Angeles, State of California. Each of them brings suit individually, and as a class representative. Plaintiffs S.G., A.D.G., R.L., and N.B. are qualified individuals with disabilities under the ADA and Section 504.

10. Plaintiff CHRISTAL LORD ("Lord") is a private resident in the County of Los Angeles, State of California. She is currently employed as a teacher at Palms Elementary School, and at all times material herein, she was so employed. She sues individually and as a class representative.

11. DYANNA SANABRIA ("Sanabria") is a private resident in the County of Los Angeles, State of California. She is currently employed as a teacher's assistant at

Palms Elementary School, and at all times material herein, she was so employed. She sues individually and as a class representative. Plaintiff Sanabria is a qualified individual with a disability under the ADA and Section 504.

B.    DEFENDANTS

12. Defendant City of Los Angeles ("City") is a public entity organized and existing under the laws of the State of California. This defendant is sued in its own right for City policies, practices and/or customs which cause plaintiffs' injuries in violation of one or more federal constitutional guarantees, and on plaintiffs' state law claims based on *respondeat superior*, under California Government Code §815.2 and mandatory duties under California Government Code §815.6. The City is a public entity for purposes of Title II of the ADA, and receives federal financial assistance for purposes of Section 504.

13. Defendant Vincent Bertoni ("Bertoni") is, and at all times material herein was, the Director of City Planning for the City of Los Angeles. As such, Bertoni is a supervisor and policy-maker for the City.    Defendant Hiro Kobayashi is, and at all time material herein was, the developer ("Developer") of the "3568 Motor Avenue" project ("the Project"), located in the City of Los Angeles, currently scheduled to be built on the fence-line of Palms Elementary School. By contract, defendant Kobayashi is personally obligated to defend, indemnify and hold harmless the City of Los Angeles as to all legal actions related to the Project.

14. Defendant 3568 Motor LLC ("the LLC") is, upon information and belief, the business entity formed and constituting the Project. At all times material herein, the LLC was registered with the California Secretary of State, having its business address in the County of Los Angeles.

15. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will give notice of this complaint, and of one or more

- 3-

DOES' true names and capacities, when ascertained. Plaintiffs allege, based on information and belief, that defendants DOES 1 through 10 are responsible in some manner for the damages and injuries hereinafter complained of.

16. Upon information and belief, plaintiffs further allege that, at all times relevant herein, Bertoni and/or Supervisory Doe defendants participated in, approved, and/or ratified the unconstitutional and/or illegal acts complained of herein.

17. Plaintiffs are informed and believe that at all times relevant herein, the individual defendants, and each of them, were the agents, servants and employees of each other and/or their respective employers and were acting at all times within the scope of their agency and employment, and with the knowledge and consent of their principals and employers. At all times herein, defendants, and each of them, acted in coordination with, approval of, and in conspiracy with one another.  At all times herein, defendants, and each of them, were acting under the color of law – directly, and/or by conspiracy. All said defendants, and each of them, ratified the aforesaid conduct committed under color of law. All entity defendants are liable for the acts of their public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## IV.    CLAIMS OF CLASS REPRESENTATIVES

18. Plaintiff S.G. is a student with a disability at Palms Elementary School. As an accommodation for her disability-related learning needs, she wears a sound amplifying listening device and participates in the school's Deaf and Hard of Hearing ("DHH") program as part of her Individualized Education Program ("IEP"). In her classroom, as in all of the DHH classrooms, sound is controlled via use of carpets on the classroom floor, fabric on the walls, and a drop ceiling to minimize sound reverberation.

- 4 -

19. Sound control is necessary for the DHH classrooms because acoustic interruptions are amplified and make it impossible for students who are new to sounds to discern which sounds are voices and sources of information which need to be interpreted, as opposed to sounds which should be filtered out as noise. Background noise causes early attention fatigue. Amplification of sharp unexpected sounds is painful because there is no chance to adjust volume, and ongoing repetitive sounds are annoying and cause headaches.

20. Plaintiff A.D.G. is a student with a disability at Palms Elementary School. He wears a sound amplifying listening device but does not participate in the DHH program. For Plaintiff A.D.G., background noise is distracting and causes an inability to focus. Amplification of sharp unexpected sounds can be painful and ongoing repetitive sounds can be annoying and cause headaches.

21. Plaintiff N.B. is a student with a disability at Palms Elementary School. As an accommodation for his disability-related learning needs, his IEP includes services related to Autism Spectrum Disorder. As a result of his disability he is easily and severely distracted by loud noises. Additionally, N.B. has been diagnosed with mastocytosis. Environmental changes caused by dust, fumes and chemicals have the high probability of triggering an anaphylactic allergic reaction which could result in N.B's death.

22. Plaintiff R.L. is a student with a disability at Palms Elementary School. He has an IEP and accommodations for his disability-related learning needs associated with speech and language impairment. Loud noises distract his attention and interfere with his ability to receive, interpret and replicate word formation, as well as linguistic distinctions in intonation, inflection and cadence – which are necessary to mastering effective communication, and effectively accessing and participating in his curriculum.

23. Plaintiff A.G. is a student at Palms Elementary School. Like many elementary school students, he is vibrant, curious, and intellectually agile. He also has

reactions to noise, dust and fumes which are manageable when not in quantities above normal. However, when noise, dust and fumes are in increased quantities, A.G. is distracted and cannot focus on his educational activities.

24. Plaintiff Lord is a teacher at Palms Elementary School. She spends no less than six hours per day, five days per week inside of, and on the grounds surrounding, the buildings comprising Palms Elementary School.

25. Plaintiff Sanabria is a teacher's assistant at Palms Elementary School. She spends several hours per day, on mulitple days per week inside of, and on the grounds surrounding, the buildings comprising Palms Elementary School. She is a cancer survivor, but remains under doctor's instructions to limit exposure to carcinogens, and is highly susceptible to relapse.

26. Palms Elementary is a pre-K through 5 primary school located in a fast-developing section of West L.A., with a population of approximately 350 young children. The vast majority of its student body is composed of minority students. 82.2% of the students are classified by the California Department of Education as socioeconomically disadvantaged. 36% of the students are English learners. The school is also the site of one of LAUSD's four Deaf and Hard of Hearing program dedicated sites, a unique and specialized program designed to address the needs of this population of young students.

27. Palms Elementary School is immediately adjacent the proposed construction project. Moreover, the kindergarten playground is on the fence-line of the Project. The Project will involve multiple years of demolition, excavation and construction. The developer has indicated that the project is currently scheduled to begin on December 18, 2017. The City has not conducted or required an Environmental Impact Review, Health Risk Analysis, or any other protective measures for the 350+ children, or their teachers, who will be at Palms Elementary during the Project.

28. During each school day at Palms Elementary School, the children eat lunch in the outdoor areas with teachers and teaching assistants. The children also run, play, breathe heavily and roll around on the ground in their outdoor play areas.

29. Per the City and developer's own documentation, the project will send toxic dust, vapors, PM2.5 and PM10 particles, volatile organic compounds, reactive organic gases, NOx gas, and other poisonous contaminants into the air covering the children's playground and the school.

30. Plaintiffs are informed and believe that developer applied to the City for approval to engage in the Project at some time in 2016.

31. As part of the approval process for developer's application, City and Bertoni were required to perform a California Environmental Quality Act ("CEQA") analyses to determine, lessen and/or eliminate any adverse environmental impacts developer's Project would have on the community surrounding the Project.

32. At the earliest phases of community and environmental impact screening – the exemption phase, developers are given the green light to move ahead with demolition, excavation and construction projects that the Planning Dept. labels as "exempt" for not crossing predetermined templates of environmental "thresholds of significance."

33. Exemptions granted based upon these predetermined thresholds purportedly mean that a project will have no significant impact on the environment, including the people, surrounding the project. Plaintiff alleges, upon information and belief, that in the case of persons with disabilities, this is simply untrue.

34. The predetermined thresholds used to exempt the projects do not include consideration of persons with disabilities. Instead, the thresholds are set based upon consideration of what is appropriate for persons under "normally acceptable" circumstances.

35. City's Planning Dept.'s use of this process to exempt and approve projects is discriminatory and it is harmful to adults and children with disabilities in Los

- 7-

Angeles. Plaintiffs' allege that City's use of this discriminatory process contributed to some, if not all, of their harm in this case.

36. Plaintiffs are informed and believe that in addition to the discriminatory process used to screen developer's application, developer's application itself was flawed in that developer intentionally omitted and misrepresented information in his applications and filings to the City so as to secure further expedited processing and environmental exemptions from the City for the Project.

37. Plaintiffs are informed and believe that City employees and officials were aware of developer's omissions and misrepresentations, but nevertheless made arrangements and agreements with developer to expedite and approve the Project contrary to law, as well as contrary to City's own procedures.

38. Plaintiffs are informed and believe that on and before September 1, 2017, City and developer were well aware that the children and teachers of Palms Elementary School, as well as the school itself, were immediately adjacent to the Project.

39. Plaintiffs are informed and believe that City and developer met and collaborated to determine, plan and execute measures to sidestep legal and/or administrative requirements and protocol which would have resulted in a notice to, and participation by, plaintiffs and other similarly situated persons in the approval process of the Project.

40. Plaintiffs are informed and believe that City and developer intentionally chose not to send notice of the Project to the Palms children's parents.

41. Plaintiffs are informed and believe that City and developer intentionally chose not to send notice of the Project to the Palms teachers.

42. On September 1, 2017, City and Bertoni issued a "Director's Determination" letter ("Bertoni letter") approving the Project, expediting it, and exempting it from environmental review – even though it does not otherwise qualify to be expedited or exempt from environmental review.

- 8-

43. Page 13 of the Bertoni letter specifically states:

> "Construction activities involving grading and foundation preparation would primarily generate PM2.5 and PM10 emissions. Mobile sources (such as diesel-fueled equipment onsite and traveling to and from the Project Site) would primarily generate NOx emissions. The application of architectural coatings would result primarily in the release of ROG emissions. The amount of emissions generated on a daily basis would vary, depending on the amount and types of construction activities occurring at the same time."

44. Exposure to these and other toxins, and the construction noise from the Project, is scheduled to last at least two years.

45. The Bertoni letter also stated that the period within which to appeal the approval ended on September 18, 2017. However, the Bertoni letter limited the group of persons who could appeal to only owners or tenants of adjacent or abutting property.

46. Plaintiffs and the children's parents are not owners or tenants of property abutting or adjacent the Project. They were not mailed notice of the Project. Plaintiffs and parents became aware of the Bertoni letter only after they became aware of the Project, on or near the Thanksgiving holiday of 2017 – purely by way of rumor and happenstance.

47. Since becoming aware of the Bertoni letter, Palms parents and teachers have made daily calls and sent daily emails to Bertoni's office, LA City Councilman Paul Koretz' office, and various other City offices to ask to have their objections heard as to the project. Without exception, plaintiffs and parents have been told that it is too late to object to the project, and denied opportunities to have their objections heard.

48. On and before November 30, 2017, Koretz' office held a number of so-called community meetings to discuss the project. Koretz' office invited the developer

and purported neighborhood stakeholders, but refused to allow the meetings to be attended by any, or even one, Palms parent. During a phone call with one of the parents, Koretz' office took the express position that any persons who were not in favor of the project were not allowed to attend the meetings. After being confronted with the fact that the meeting were very important because the wellbeing of children was at stake, Koretz' representative responded that the parent should not "take it personally."

49. Koretz' office also expressly banned plaintiff Lord from attending and being heard at the meetings. Plaintiff Lord was banned from the meetings because in an earlier meeting she made statements in opposition to the Project.

50. The City, Bertoni, Koretz' office and developer have made a concerted effort to deny plaintiffs and parents the right and opportunity to know anything about the project, be heard about it, or have the benefit of an environmental study of it.

51. Nevertheless, plaintiffs obtained an expedited review and analysis of the Bertoni letter and Project from Dr. Paul Rosenfeld, a respected environmental scientist. Dr. Rosenfeld's December 5, 2017, review concluded that a proper health analysis was necessary because the Project could result in significant cancer risks to nearby adults and children far exceeding acceptable thresholds.

52. To date, the City has required no analysis from developer, including no environmental impact report or health risk analysis. There are no protections mandated for the children and their teachers at Palms Elementary School.

## V.    CLASS ACTION ALLEGATIONS

A.    COMMON FACTUAL ALLEGATIONS

53. Plaintiffs are informed and believe that all children, teachers and staff at Palms Elementary school work, play, live and breathe in the air in and near the indoor and outdoor spaces of Palms Elementary School on a daily basis, and that they

will all be exposed to increased risks of cancer and other health concerns from the toxins emitted by the Project.

54. Plaintiffs are informed and believe that numerous children at Palms Elementary with IEPs will have their IEPs disrupted, diminished or made completely unworkable by the noise emitted by the Project.

55. Plaintiffs are informed and believe that all children at Palms Elementary, regardless of whether or not they have IEPs, will have their learning environments disrupted and made ineffective by the noise and toxins emitted by the Project.

56. Plaintiffs are informed and believe that none of the plaintiffs and parents at Palms Elementary received notice of the Project prior to its approval, or its approval becoming final.

57. On information and belief, plaintiffs allege the City's approval of land development projects to the detriment of persons who are in harm's way without notice, and intentional and systematic exclusion of persons in harm's way from participation in opportunities to be heard, are/were done pursuant to defendants' City's and Bertoni's policy and practice of failing to conform their actions to the requirements of the law under the First and Fourteenth Amendments to the federal Constitution, and applicable federal law.

58. On information and belief plaintiffs allege that defendants City, Bertoni and DOES 1 through 10 conspired with developer, 3568 Motor LLC, and each other, to commit the acts complained of herein, for political and financial benefit. On information and belief, plaintiffs further allege that plaintiffs were subjected to defendants' conduct entirely, or in part, because plaintiffs are, and/or attend or work at a school which is, classified as socio-economically disadvantaged and/or majority ethnic/racial minority.

59. Plaintiffs bring this action:

- 11-

Class Action Complaint

(i)    on their own behalf, and on behalf of a class of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class is defined as those persons who work as employees, or who are enrolled as students, at Palms Elementary School as of December 18, 2017;

(ii)    on their own behalf, and additionally on behalf of a sub-class of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The sub-class is defined as those persons who are enrolled as students, at Palms Elementary School as of December 18, 2017, and who have disabilities for which accommodations are provided as part of an IEP.

60. On information and belief, plaintiffs allege that defendants will engage in the demolition, excavation and construction attendant to the Project, and continue their aforementioned policy and practice of failing to give notice and denying persons in harm's way opportunities to be heard unless enjoined and restrained by the court. Without injunctive relief applicable to the class and sub-class (hereinafter collectively referred to as "class") as a whole, the class members will suffer irreparable harm for which there is no adequate remedy at law in that their constitutional and statutory rights will be violated.

B.    RULE 23 PREREQUISITES

I.    Numerosity

61. In accordance with FRCP Rule 23(a) the members of the class are so numerous that joinder of all members is impracticable. Plaintiffs understand the number of class members to exceed 350 students, plus their teachers and staff persons at Palms Elementary School. Plaintiffs are informed and believe and thereon allege that the number of persons in the proposed class is in the hundreds.

II.    Common Issues of Fact or Law

62. In accordance with FRCP Rule 23(a), there are questions of fact common to the class. Plaintiffs are informed and believe and thereon allege that the common questions of fact include, but are not limited to the following: (1) Whether the

plaintiffs were entitled to any notice regarding the Project; (2) Whether studies, including an environmental impact report and health risk analysis need to be performed for the Project, (3) Whether the Project poses risks to the health of the plaintiffs; (4) Whether the Project poses risks to the educational interests of the children.

63. In accordance with FRCP Rule 23(a), there are questions of law common to the class. Plaintiffs are informed and believe and thereon allege that the common questions of law include but are not limited to the following: (1) Whether the defendants may lawfully visit grave health risks upon school children, at school,  before providing any notice to them or their parents; (2) Whether the defendants may lawfully visit grave health risks upon school teachers, at work, before providing any notice to them; (3) Whether the defendants may lawfully infringe upon the educational rights of school children before providing any notice to them or their parents; (4) Whether the defendants may lawfully infringe upon the IEP-based accommodations for special needs of school children before providing any notice to them or their parents; (5) Whether the City's policy of denying notice and an opportunity to be heard before infringing upon school children's and/or teachers' health and safety, violates the Fourteenth Amendment; (6) Whether the City's policy of denying notice and an opportunity to be heard before infringing upon school children's educational rights, violates the Fourteenth Amendment; (7) Whether the conduct described above constitutes a policy or custom of the defendants; (8) Whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages except those who opt out of the class: or whether category damages may appropriately be determined for the class members.

//

Class Action Complaint

III.    <u>Typicality</u>

64. In accordance with FRCP, Rule 23(a) the claims of the representative plaintiffs are typical of the class. Plaintiffs were given no notice or opportunity to be heard before approval of a demolition, excavation and construction project which threatens their constitutionally and/or federally protected health, safety, and for the children – educational interests; approval of the project was done in violation of applicable law and by conspiracy; plaintiffs face imminent, immediate and irreparable harm as a result of defendants' conduct. The same is true for every person who attends or works at the school.

65. Thus, plaintiffs have the same interests and have suffered the same type of damages as the class members. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. Each class member faces actual harm as a result of being subjected to defendants' conduct and policies. The harm faced by plaintiffs is similar in type and amount to the harm faced by each class member.

66. In accordance with FRCP Rule 23 (a), the representative plaintiffs will fairly and adequately protect the interests of the class. The interests of the representative plaintiffs are consistent with and not antagonistic to the interests of the class.

IV.    <u>Maintenance and Superiority</u>

67. In accordance with FRCP Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

68. In accordance with FRCP Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

- 14-

69. In accordance with FRCP Rule 23(b)(2), plaintiffs are informed and believe, and thereon allege that the defendants have acted on grounds generally applicable to the class.

70. In accordance with FRCP Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. Plaintiffs are informed and believe, and thereon allege that the interest of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. Plaintiffs are informed and believe, and thereon allege that the amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. Plaintiffs are informed and believe and thereon allege that it is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, i.e., the County of Los Angeles. It will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

71. Plaintiffs do not know the identities of all of the class members. Plaintiffs are informed and believe, and thereon allege that the identities of the class members are ascertainable from school records, in particular computer records used to track employment, enrollment and/or attendance. Plaintiffs are informed and believe, and thereon allege that school records reflect the identities, including addresses and telephone numbers, of the persons who are employed and enrolled at Palms Elementary School.

72. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on

behalf of the class. The class action will be manageable because reliable records systems exist from which to ascertain the members of the class. Liability can be determined on a class-wide basis. Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the class to a jury and extrapolating those damages to the class as a whole. Moreover, plaintiffs are represented by counsel with class action litigation experience, particularly against the City of Los Angeles.

73. In accordance with FRCP Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that Palms Elementary School computer employment, enrollment and/or attendance records contain a last known address for class members. Plaintiffs contemplate that individual notice be given to class members at such last known address by first class mail. Plaintiffs contemplate that the notice inform class members of the following:

    A.   The pendency of the class action, and the issues common to the class;

    B.   The nature of the action;

    C.   Their right to 'opt out' of the action within a given time, in which event they will not he bound by a decision rendered in the class action;

    D.   Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named plaintiffs and their counsel; and

    E.   Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

74. Plaintiffs restate and incorporate by reference each of the foregoing and ensuing paragraphs in each of the following causes of action as if each paragraph was fully set forth therein.

### COUNT ONE - 42 U.S.C. §12131, *et seq.*

### [AMERICANS WITH DISABILITIES ACT]

### (Plaintiffs With Disabilities Against City)

75. Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

76. Title II of the Americans with Disabilities Act ("ADA"), in particular, prohibits discrimination against individuals with disabilities in the provision of services, programs, or activities by public entities. 42 U.S.C. § 12132.

77. At all times relevant to this action, the City is a "public entity" within the meaning of Title II of the ADA and provide a program, service or activity to the general public.

78. At all times relevant to this action, the children with disabilities attending Palms Elementary School are qualified individuals with disabilities. They are being discriminated against and denied the benefits of the City's services by being excluded from consideration in the CEQA exemption screening because of their disability. This exclusion unduly burdens them.

79. Pursuant to Title II public entities are required to provide meaningful access to their programs, services and activities. Among the requirements to provide meaningful access, public entities must modify their policies and procedures when necessary to accommodate disability related needs, also known as "reasonable accommodation." 28 C.F.R. §35.130(b)(7). Public entities cannot provide programs, services or benefits to a person with a disability that are not equal to those provided to others or deny a person with a disability the opportunity to participate in programs, services or activities. 28 C.F.R. §35.130(b)(1). Moreover, a public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §35.130(b)(3)(i).

- 17-

80. The challenged actions and omissions by defendants evince a failure to accommodate plaintiffs. Defendant has done so with deliberate indifference to Plaintiffs' rights under the ADA.

81. As a direct and proximate cause of the aforementioned acts, plaintiffs and class members were damaged in an amount to be proven at trial.

82. As a result of the foregoing, Plaintiffs and members of the proposed class suffered and continue to suffer injury, including, but not limited to, denial of meaningful access to the benefits of Defendant's program.

83. Because Defendant's discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiffs seek injunctive relief and attorneys' fees as a result.

### COUNT TWO - 29 U.S.C. § 794(a)
### [SECTION 504 OF THE REHABILITATION ACT OF 1973]
### (Plaintiffs with Disabilities Against City)

84. Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

85. Section 504 requires that "[n]o otherwise qualified individual with a disability in the United States .. . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

86. At all times relevant to this action, the City was a public entity receiving federal financial assistance.

87. Under Section 504 public entities are required to provide meaningful access to their programs, services and activities, and must provide reasonable accommodations. Specifically, the aids, benefits and services may not deny a

person with a disability "an equal opportunity to achieve the same benefits that others achieve in the program or activity". 28 C.F.R. 42.503(B)(1)(ii).

88. At all times relevant to this action, the children with special needs attending Palms Elementary School are qualified individuals with disabilities. They are being discriminated against and denied the benefits of the City's services by being excluded from consideration in the CEQA exemption screening because of their disability. This exclusion unduly burdens them.

89. Defendants acted in violation of Section 504 through failing to provide a full and meaningful CEQA screening program that did not put plaintiffs' health at risk, including by its failure to provide reasonable accommodations and incorporate factors for persons with disabilities in its screening rubric. Defendants' failure is the cause of the harm plaintiffs have suffered and further harm they face.

90. The challenged actions and omissions by defendants evince a failure to accommodate plaintiffs, and caused plaintiffs harm. Defendant has done so with deliberate indifference to Plaintiffs' rights under Section 504.

91. As a direct and proximate cause of the aforementioned acts, plaintiffs and class members were damaged in an amount to be proven at trial.

92. As a result of the foregoing, Plaintiffs and members of the proposed class suffered and continue to suffer injury, including, but not limited to, denial of meaningful access to the benefits of Defendant's program.

93. Because Defendant's discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiffs seek injunctive relief and attorneys' fees as a result.

## COUNT THREE - 42 U.S.C. §1983
## [FOURTEENTH AMENDMENT]
## (All Plaintiffs Against All Defendants)

- 19-

94. Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

95. This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to them by the Fourteenth Amendment to the United States Constitution.

96. The plaintiffs' rights to a safe and healthy workplace (teachers and staff); safe and healthy access to education (all students); and free appropriate public education (students with disabilities) -- are all well established as federally protected interests.

97. The challenged actions and omissions by defendants invade and infringe upon all of those interests and were taken as part of a plan to intentionally deprive plaintiffs of notice and an opportunity to be heard in protection of those interests.

98. The invasion and infringement of those interests is itself a due process violation. The denial of notice and an opportunity to be heard as to the invasion and infringement of those interests is also a due process violation.

99. Therefore, plaintiffs and class members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

100. As a direct and proximate cause of the aforementioned acts, plaintiffs and class members were damaged in an amount to be proven at trial.

101. As a result of the foregoing, Plaintiffs and members of the proposed class suffered and continue to suffer injury, including, but not limited to, denial of due process.

102. Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiffs seek injunctive relief and attorneys' fees as a result.

## COUNT FOUR - 42 U.S.C. §1983

### [CONSPIRACY]

### (All Plaintiffs Against All Defendants)

103.  Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

104.  This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to them by the Fourteenth Amendment to the United States Constitution.

105.  Defendants and each of them, acted as described herein above, in conspiracy with, and with the agreement, knowledge, permission, ratification, and approval of, each other to violate plaintiffs' civil rights, under the U.S. Constitution as stated herein this entire Complaint.

106.  Therefore, plaintiffs and class members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

107.  As a direct and proximate cause of the aforementioned acts, plaintiffs and class members were damaged in an amount to be proven at trial.

108.  As a result of the foregoing, Plaintiffs and members of the proposed class suffered and continue to suffer injury, including, but not limited to, denial of their civil rights.

109. Because Defendant's discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Plaintiffs seek injunctive relief and attorneys' fees as a result.

//

//

- 21-

## VI.  KNOWING AND WILLFUL ACTION

110. Plaintiffs specifically allege that Defendants' policies, customs and/or practices, as described herein above, were within the control of Defendants and within the feasibility of Defendants to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

111. Plaintiffs specifically allege that Defendants, and each of them, made a calculated, knowing and voluntary choice not to alter, adjust and/or correct their policies, customs and/or practices, as described herein above, so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs. The conduct by Individual Defendants Bertoni and Kobayashi was with malice, fraud and/or oppression, and said defendants are therefore liable for punitive damages.

## VII.  PRAYER

WHEREFORE, plaintiffs, on behalf of themselves and the class members they represent, request damages against each defendant as follows:

1.    General, presumed and special damages according to proof;

2.    Temporary, preliminary and permanent injunctive relief requiring that the Project be subject to a governmentally mandated comprehensive Environmental Impact Report and Health Risk Analysis before action is taken in furtherance of its completion;

3.    Temporary, preliminary and permanent injunctive relief prohibiting defendants from continuing to engage in the unlawful action and practices complained of herein;

4.    As against the individual defendants only, punitive damages according to proof;

5.    In addition to actual damages, statutory damages as may be allowed by law;

- 22-

6.    Attorneys' fees and costs under 42 U.S.C. §1988, 42 U.S.C. §12205, 29 U.S.C. §794(b); and whatever other Statute or law may be applicable;

7.    The costs of this suit and such other relief as is just and proper.


Respectfully submitted,

DATE: December 15, 2017

_____

Olu K. Orange, Esquire
Attorney for the Plaintiffs


### JURY DEMAND

Plaintiffs hereby demand trial by jury in this action.

Respectfully submitted,

DATE: December 15, 2017

_____

Olu K. Orange, Esquire
Attorney for the Plaintiffs

- 23-