Olu K. Orange, Esq. (SBN 213653)
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., No. 2910
Los Angeles, CA 90010
T: (213) 736-9900/F: (213) 417-8800
orangelawoffices@att.net

Shawna L. Parks, Esq. (SBN 208301)
LAW OFFICE OF SHAWNA L. PARKS
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Tel/Fax: (323) 389-9239
sparks@parks-law-office.com

Janeen Steel (SBN 211401)
Patricia A. Van Dyke (SBN 160033)
LEARNING RIGHTS LAW CENTER
205 S. Broadway, Ste 808
Los Angeles, CA 90012
T: (213) 542-1834/F: (213) 489-4033
janeen@learningrights.org
patsy@learningrights.org

Thomas P. Zito (SBN 304629)
Sean Betouliere (SBN 308645)
Michelle Iorio (SBN 298252)
DISABILITY RIGHTS ADVOCATES
2001 Center St., 4th Fl.
Berkeley, CA 94704
T: (510) 665-8644/F: (510) 665-8511
tzito@dralegal.org
sbetouliere@dralegal.org

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| S.G., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES et al., <br><br> Defendants. | **Case No. 2:17-cv-09003-JAK-PJW** <br><br> **DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES** |

---

*S.G. et al v. City of Los Angeles, et al.*, **Case No. 2:17-cv-09003-JAK-PJW**
**Declaration Of Carol Sobel In Support Of Plaintiffs' Motion For Award Of Attorneys' Fees**   1

I, Carol A. Sobel declare as follows:

1. I am an attorney admitted to practice in the State of California and in the United States District Court for the Central District of California. I make this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs based on facts within my personal knowledge or gained from review of the pertinent documents. If I were called to testify as a witness to these facts I could and would do so competently.

**BACKGROUND AND ATTORNEY FEE EXPERTISE**

2. I was admitted to the California Bar in December, 1978, following my graduation from law school in May of 1978. From January 1, 1977 until April 24, 1997, I was employed by the ACLU Foundation of Southern California. For the last seven years prior to my departure from the ACLU, I served as a Senior Staff Counsel. I resigned from the ACLU to begin a private civil rights practice in late April, 1997. I have received numerous awards for my work in the area of First Amendment litigation on behalf of the right to demonstrate and, more recently, on behalf of homeless persons. In 2007, I was awarded California Lawyer of the Year (CLAY) for civil rights. That same year, I was named by the Daily Journal legal newspaper as one of the 100 most influential lawyers in California. I have also been named by the Daily Journal as one of the top 75 women litigators in California multiple times. Most recently, I was included as one of the top 50 women lawyers in Southern California for 2014 by the Super Lawyers publication. I have been named a Super Lawyer in either the First Amendment, Constitutional Law, or Civil Rights category every year since 2004. I have been qualified as an expert in ethics and the practices of public-interest legal groups, including once before the State Bar and once in the Los Angeles Superior Court. A copy of my résumé is attached at **Exhibit 1**. My current market rate is $925 an hour.

---

3. I have presented at CLEs on attorney fees on several occasions, including training for attorneys at the Legal Aid Foundation of Los Angeles and the ACLU Foundation of Southern California. My supporting fee declarations have been cited favorably by numerous courts, including, among others, in *Nadarajah v. Holder,* 569 F.3d 906, 916–917 (9th Cir. 2009); *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 929, 963–964 (C.D.Cal. 2010); *Torrance Unified Sch. Dist. v. Magee*, CV 07-2164 CAS (Rzx) (C.D.Cal. 2008), [2008 U.S.Dist. Lexis 95074, 21]; *Atkins v. Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Rauda v. City of Los Angeles*, cv 08-3128 CAS (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 (C.D. Cal. 2014); and *Carrillo v. Schneider Logistics.,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction. *See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012). In *Jochimsen*, the Court held that I was qualified as an expert on reasonable attorney rates in the Los Angeles legal market. Most recently, in *Hiken v. DOD*, 2016 U.S. App. LEXIS 16359, Case No. 13-17073 (9th Cir. Sept. 16, 2016), the Circuit held that the lower court erred in rejecting evidence of market rates presented in my declaration and reversed a fee award which significantly reduced the hourly rates sought.

4. In addition, I have litigated statutory fee issues at the appellate level in several of my cases. Most notably, I was co-lead counsel and argued before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts. I was also lead counsel in *Jones v. City of Los Angeles*, 555

Fed.Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Ninth Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

5. During my time as Senior Staff Counsel at the ACLU, I was responsible for preparing many of the organization's fee motions. Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this each year, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware they were personally involved in pro bono litigation with the ACLU. Since they worked directly with the ACLU lawyers for whom I sought to establish market billing rates, they could assess the skill and experience of the ACLU lawyers based on personal knowledge.

6. Since entering private practice, I review billing rates at firms the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees to ascertain current market rates. I make it a point to obtain rate information for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms and public interest legal organizations. I regularly review fee motions submitted by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public Counsel, the Disability Rights Legal Center, Disability Rights Advocates ("DRA") and other public interest groups that litigate in Los Angeles to determine what is being sought and awarded as market rates. Although I frequently

file a declaration in support of fee applications filed by these non-profit groups, I am usually not the only declarant.

7. In addition, I estimate that I review dozens of fee motions, fee awards, and supporting declarations in the course of a year. I obtain this information from recent court orders awarding statutory fees or fees as a discovery sanction. I also subscribe to several legal news websites. If I learn of a case where there is a fee motion, I obtain a copy of the motion, supporting declarations and any fee award from public sources, including the Los Angeles Superior Court website or PACER.

8. In all the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. It is my understanding that the same principle is applied by the California Supreme Court. *See Folsom v. Butte County Ass'n of Govt's*, 32 Cal.3d 668 (1982). I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful. *See also, Nadarajah v Holder,* 569 F3d at 910, and *Serrano v. Unruh*, 32 Cal.3d 621, 643 (1982).

9. To analyze reasonable market rates, I apply several principles. First, when available, I look to rates awarded to the same attorneys in previous cases because I understand such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Next, I look to evidence

of billing rates by attorneys engaged in similarly complex business litigation as an approved method of setting market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach, approved in *Blum*, *supra*, recognizes that most civil rights attorneys take cases on a contingency basis and are not paid hourly for their services. Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs*, 557 F3d 1041, 1046 (9th Cir. 2009).

## REASONABLENESS OF REQUESTED RATES

10. I am informed that Plaintiffs are requesting compensation at the following 2019 hourly rates:

| **Attorney** | **Graduation Date and Practice Years As of 2019** | **2019 Rate** |
|---|---|---|
| **ORANGE LAW OFFICES, P.C.** | | |
| Olu Orange | 1998 (21 years) | $815 |
| **LEARNING RIGHTS LAW CENTER** | | |
| Patricia Van Dyke | 1983 (30 years) | $905 |
| **LAW OFFICE OF SHAWNA L. PARKS** | | |
| Shawna Parks | 1999 (20 years) | $795 |
| **DISABILITY RIGHTS ADVOCATES (DRA)** | | |
| Thomas Zito | 2010 (9 years) | $525 |
| Michelle Iorio | 2013 (6 years) | $445 |
| Sean Betouliere | 2015 (4 years) | $415 |
| Paralegal | n/a | $275 |
| Litigation Assistant | n/a | $230 |

11. In my experience, these rates are within the range of reasonable rates for comparably skilled and experienced attorneys in the Los Angeles legal market. As I discuss in more detail below, some of these rates are at the lower end of the civil rights and public interest attorneys rates, and all are well below market rates for attorneys of comparable experience and skill at commercial firms engaged in similarly complex federal litigation, including the rates these firms use in pro bono cases.

12. I am personally familiar with the work of several of the attorneys seeking fees in this case.

13. Ms. Van Dyke is an experienced litigator with a breadth of experience in both civil rights and commercial litigation. I am personally familiar with her work and consider her to be highly skilled and creative. I am also personally familiar with the Learning Rights Law Center—a nationally-recognized public interest law firm specializing in helping low-income children, including those in the child welfare and juvenile justice systems, gain equitable access to the public education system—where Ms. Van Dyke serves as an impact litigation attorney and Director of the Environmental Justice in Education project.

14. An hourly rate of $905 per hour is sought for Ms. Van Dyke. This is well within the range of reasonable rates for attorneys of comparable skill and experience.

15. Olu Orange was among my co-counsel in *MIWON v. City of Los Angeles*, CV 07-7032 AHM, a hybrid class action arising from a police action against a permitted immigration rally in MacArthur Park on May Day 2007. Although that is the only case we worked together on, I have had considerable opportunity to observe Mr. Orange's skill and experience as an attorney. We are both on the board on the National Lawyers Guild Los Angeles Chapter. He

frequently calls me to discuss cases, including this one. In addition, I have participated in moot courts for Ninth Circuit arguments for Mr. Orange. I know that Mr. Orange is the recipient of two separate California Lawyer Attorney of the Year (CLAY) awards—the first in 2015, and the second in and 2017—for his work in two groundbreaking civil rights cases: *Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (2014), and *Rodriguez v. City of Los Angeles* (CV11-01135-DMG-PJW]). I also know that Mr. Orange was selected as one of the Daily Journal's 2016 Top 100 Lawyers in California, and that he has been recognized as a Thomson-Reuters SuperLawyer for the past several years.

16. In my opinion, Olu Orange is exceptionally skilled for an attorney practicing only 22 years. He litigates significant civil rights issues and he prevails. His requested hourly rate of $815 is reasonable.

17. I am also personally familiar with Ms. Parks and her work, and have consulted with her on several occasions. I have known Ms. Parks since she was the Legal Director at the Disability Rights Legal Center, and know that she has extensive experience in class action and other impact litigation representing the needs of individuals with disabilities. Ms. Parks is a 1999 graduate of Berkeley Law School, has twenty-one years of legal experience, and is a two-time recipient of the California Lawyer Attorney of the Year (CLAY) award for her work on precedent-setting cases. She has worked on numerous complex civil matters where her responsibilities included overseeing and conducting fact and expert discovery, motion practice, pretrial and trial preparation. Given her professional qualifications and reputation in the field, the requested hourly rate of $795 for Ms. Parks is reasonable.

18. Thomas Zito, a 2010 graduate of Northeastern University School of Law, seeks compensation at a rate of $525 per hour. This is well within the range of reasonable rates for attorneys of comparable skill and experience. Mr. Zito is a

Supervising Attorney at Disability Rights Advocates (DRA), which has successfully litigated over 100 disability rights class action cases across the country, and is generally acknowledged to be one of the nation's leading public interest firms in the area of disability rights.[1]

19. I am informed that over the past ten years Mr. Zito has been lead attorney and lead class counsel in a number of public interest and housing cases, including *Lewis v. Silvertree Mohave Homeowners Assn.*, No. 16-cv-03581-WHA (N.D.Cal.), a class action involving discrimination against resident children and families, which settled for significant injunctive relief and more than $800,000 in damages to the class; and *Huynh v. Harasz*, No. 14-cv-02367-LHK (N.D. Cal), a class action on behalf of Section 8 voucher holders with disabilities which settled for significant injunctive relief and $3.2 million in damages to the class). *Id.*

20. An hourly rate of $445 per hour is sought for Ms. Iorio. This is well within the range of reasonable rates for attorneys of comparable skill and

---

[1] I am aware that DRA's rates are regularly approved by federal courts in California. *See*, *e.g., Cmty. Res. For Indep. Living, et al. v. Mobility Works of Cal., et al.*, No. 4:18-cv-06012-JSW, Dkt. No. 68 (N.D. Cal. May 22, 2020) (awarding 2020 rates, including $525 for Thomas Zito, $425 for Sean Betouliere, $275 for paralegals, and $230 for litigation assistants); *Cole v. Cty. of Santa Clara*, No. 16-CV-06594-LHK, Dkt. No. 86 (N.D. Cal. Mar. 21, 2019) (awarding 2018 rates of $775 for Mr. Seaborn, $525 for an attorney with eight years of experience, and $425 for an attorney with five years of experience); *see also Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, 3:14-cv-04086 NC, Dkt. Nos. 139, 144, 193 (N.D. Cal.) (approving DRA's 2016 rates); *G.F. v. Contra Costa Cty.*, No. 3:13-cv-03667, Dkt. No. 307 (N.D. Cal. Nov. 25, 2015) (approving settlement fees based on 2014 rates); *Gray v. Golden Gate Nat'l Recreation Area*, No. 3:14-cv-00511, Dkt. No. 26 (N.D. Cal. July 10, 2014) (finding requested rates reasonable to support negotiated lodestar); *Communities Actively Living Free and Independent v. City of Los Angeles*, CV 09-0287 CBM (C.D. Cal. June 10, 2013), Dkt. No. 255 (C.D. Cal. June 10, 2013) (approving 2012 rates); *Californians for Disability Rts. v. Cal. Dep't of Transp.*, No. C 06-5125 SBA, Dkt. No. 528, 529 (N.D. Cal.) (finding 2010 rates reasonable); *Nat'l Fed'n of the Blind v.Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) (finding 2008 rates reasonable).

experience. Ms. Iorio is a Staff Attorney at DRA and received her law degree from UC Berkeley School of Law (Boalt Hall) in 2013. I am informed that since joining DRA in 2015, Ms. Iorio has been counsel in multiple class action lawsuits advancing the civil rights of persons with disabilities, including *Cole v. County of Santa Clara*, No. 5:16-cv-06594-LHK (N.D. Cal.) (class action on behalf of prisoners with mobility disabilities concerning physical accessibility and access to assistive devices); *Jahoda v. Redbox,* No. 2:14-cv-01278-LPL, (W.D. Pa.) (national class action challenging the inaccessibility of Redbox's video rental kiosks); and *O'Hanlon v. Uber*, No. 2:19-cv-00675-LPL, (W.D. Pa.) (class action challenging Uber's failure to provide wheelchair accessible service in Pittsburgh). In the *Cole* case, Ms. Iorio was the lead DRA attorney negotiating a broad settlement ensuring accessibility of new and existing jail facilities. Prior to joining DRA, Ms. Iorio was a Berkeley Law Public Interest Fellow at the nonprofit UnCommon Law, where she worked on a federal class action lawsuit challenging the use of psychological evaluations in the parole hearings of California life-term prisoners.

21. An hourly rate of $415 per hour is sought for Mr. Betouliere—again, well within the range of reasonable rates for attorneys of comparable skill and experience. Mr. Betouliere is a Staff Attorney at DRA, and a 2015 graduate of Berkeley Law. I am informed that Mr. Betouliere has negotiated groundbreaking settlements and served as counsel in multiple class action and impact lawsuits advancing the rights of people with disabilities since joining DRA in 2015, including (among others) *Senior and Disability Action, et al. v. San Francisco Bay Area Rapid Transit Authority*, et al., No. 3:17-cv-01876-LB (N.D. Cal), an ongoing class action regarding the accessibility of BART's subway system for people with mobility disabilities; and *Ochoa v. City of Long Beach*, No. 2:14-cv-04307-DSF-FFM, (C.D. Cal.), class action regarding accessibility of the city's

sidewalks and other pedestrian pathways that resulted in a settlement mandating numerous policy changes and hundreds of millions of dollars worth of injunctive relief. I am also informed that Mr. Betouliere recently argued a successful opposition to dismissal in the class action suit *Smith et al. v. City of Oakland*, Case No. 4:19-cv-05398-JST, obtaining a favorable decision in the first case in the country to consider the application of disability laws to city rent control programs. *See Smith v. City of Oakland, Case No. 4:19-cv-05398-JST*, Dkt. No 38 (N.D. Cal. April 2, 2020). While in law school, Mr. Betouliere served as an extern to Magistrate Judge Donna M. Ryu in the Northern District of California.

22. The first fee award I discuss is the class-action *Communities Actively Living Free and Independent v. City of Los Angeles*, CV 09-0287 CBM (C.D. Cal. June 10, 2013) [Document #255]. A true and correct copy of the order in this case is attached at **Exhibit 2**. It is important to note that, although the order approving fees issued in mid-2013, the rates were 2012 rates as the settlement had been reached almost a year earlier but was delayed in being approved by the local government entities that were defendants in the case. *Id.* at ¶ 13.

23. In *Communities Actively Living*, the Court approved rates for attorneys at Disability Rights Legal Center and Disability Rights Advocates (DRA), the latter of which is counsel in this case.[2] Ex. 2, ¶8. The chart below shows the approved rate and graduation year for comparably experienced attorneys to those in this matter.

| Attorney | Graduation Year | Rate | Cite |
|---|---|---|---|
| Laurence Paradis | 1985 | $800 | Ex. 2 ¶6, p.5, l.14; ¶ 8 |

---

[2] At the time of *Communities Actively Living*, Ms. Parks, who is also counsel in this case, was the co-director of litigation at DRA.

| | | | |
|---|---|---|---|
| Michelle Uzeta | 1992 | $700 | Ex. 2 ¶6, p.5, l.8 |
| Shawna Parks | 1999 | $665 | Ex. 2 ¶5, p.4, l.1; ¶ 8 |
| Katherine Weed | 2002 | $600 | Ex. 2, ¶6, p.5, l.2 |
| Jennifer Lee | 2003 | $550 | Ex. 2, ¶6, p.6, l.13; ¶ 8 |
| Matthew Strugar | 2004 | $525 | Ex. 2, ¶6, p.6, l.1; ¶ 8 |
| Mary-Lee Smith | 2005 | $555 | Ex. 2 ¶5, p.4, l.17; ¶ 8 |
| Karla Gilbride | 2007 | $430 | Ex. 2 ¶ 5, p.5 l. 17-23; ¶ 8 |
| Stephanie Biedermann | 2007 | $430 | Ex. 2 ¶ 6, p5. l. 22-25; ¶ 8 |
| Christine Chuang | 2007 | $430 | Ex. 2 ¶ 6, p5. l. 25 – p6, l.4; ¶ 8 |
| Kara Janssen | 2010 | $330 | Ex. 2, ¶6, p.6, l.7; ¶ 8. |

24. These awarded rates establish the reasonableness of the rates sought in this case.

25. For example, Ms. Van Dyke had more experience in 2019 (30 years) than Mr. Paradis had when he received his $800 hourly rate in 2012 (27 years). Moreover, given a modest 3% annual increase, Mr. Paradis' $800 per hour 2012 rate would be equivalent to an hourly rate of nearly $955 in 2019—far more than the $905 rate Ms. Van Dyke seeks.

26. Similarly, both Mr. Orange and Ms. Parks had more experience in 2019 than Ms. Uzeta did in 2012 (21 and 20 years respectively, versus Ms. Uzeta's 20 years of experience at the time of *Communities Actively Living*). Assuming the same modest 3% annual increase, Ms. Uzeta's approved 2012 rate of $700 would now be equivalent to an award of approximately $835—again, much more than the $815 sought for Mr. Orange, or the $795 rate for Ms. Parks.

27. In 2012, Katherine Weed had only one year more experience than Mr. Zito had in 2019 (9 years), and her $600 hourly rate—awarded eight years ago—is

significantly more than the 2019 hourly rate of $525 that Mr. Zito seeks in this case. Moreover, accounting for a 3% annual increase, Ms. Weed's approved 2012 rate in *Communities Actively Living* would be equivalent to approximately $716 now.

28. In 2012, attorneys Gilbride, Biedermann, and Chuang had less experience than Ms. Iorio had in 2019 (5 years against Ms. Iorio's 6), and only one year more experience than Mr. Betouliere had in 2019 (5 years against Mr. Betouliere's 4). Accounting for modest 3% annual increases, as before, their awarded $430 annual rate would be equivalent to over $513 in 2019—much more than Ms. Iorio's 2019 rate of $455, or the $415 rate for Mr. Betouliere.

29. I also reviewed the class-action fee award in *Charlebois v. Angels Baseball, Inc.*, 2012 U.S. Dist. LEXIS 91069, cv-10-0853 DOC (C.D. Cal. May, 2012). The lead firm in the case was Schonbrun, DeSimone, Seplow, Harris & Hoffman. I am very familiar with all of the attorneys at the firm, worked with Paul Hoffman when he was the legal director of the ACLU Foundation of Southern California, and co-counsel cases with them regularly. As noted in the decision, I provided a supporting declaration on market rates in the case. *Id.* at p.7. In *Charlebois*, the Court approved the following rates:

| Attorney | Graduation Year | Rate | Cite |
|---|---|---|---|
| V. James DeSimone | 1985 | $695 | p.4 |
| Michael Seplow | 1990 | $630 | p.4 |
| David Sarnoff | 2005 | $460 | p.5 |
| Amanda Canning | 2006 | $450 | p.4 |
| Menaka Fernando | 2010 | $325 | p.5 |

30. These awarded rates also support those sought by Plaintiffs in this case. For example, Michael Seplow had approximately the same amount of experience in 2012 (22 years) as Mr. Orange and Ms. Parks do now, and his $630

1  rate would be equivalent to a rate of $829 in 2019 (assuming a 3% increase) –
2  more than either Ms. Parks or Ms. Orange now seek. The rates awarded to David
3  Sarnoff and Amanda Canning—attorneys with 7 and 6 years of experience in
4  2012—are also substantially higher than those sought by Ms. Iorio and Mr.
5  Betouliere in this case, when adjusted for the passage of time. Mr. Sarnoff's award
6  would have been equivalent to $549 per hour in 2019, assuming a 3% increase,
7  while Ms. Canning's would amount to $537. In each case, this is more than Ms.
8  Iorio and Mr. Betouliere now seek.

9       31.   I also reviewed the class action award in *G.F. v. Contra Costa County,
10  et al.*, 2015 U.S. Dist. LEXIS 159597, C-13-03367 MEJ (N.D. Cal. Nov. 25,
11  2015). The case was brought by Disability Rights Advocates ("DRA"), which was
12  counsel in Communities Actively Living, above, as well as in the instant case.
13  Although the case was brought in the Northern District, in my experience,
14  attorneys in Southern California and San Francisco apply the same rates statewide
15  in their litigation. The parity of rates in these two legal markets was noted in *Minor
16  v. Christie*, 2011 U.S. Dist. LEXIS 9219, *22 [C-08-0545] (N.D. Cal. 2011)
17  ("While the relevant community is San Francisco, and not Los Angeles or New
18  York where the lawyers [in Minor] predominantly practice, the parties agree that the
19  Los Angeles, San Francisco, and New York communities have comparable
20  community rates"). The same is true for civil rights lawyers who practice statewide.
21  *See e.g.*, **Exhibit 3** (Declaration of Paradis, *LAUSD v. Garcia*, 09-cv-9289 VBF
22  (C.D. Cal.), Ninth Circuit Case No. 10-55879), attesting that rates in the Central
23  District are "generally comparable" to those in San Francisco and that "DRA
24  does not make a distinction in its rates between Southern and Northern
25  California cases." Ex. 3 ¶ 17, lines 7-10.

26       32.   In *G.F.*, the Court approved class fees but did not set out individual
27  rates in the order. 2015 U.S. Dist. LEXIS 159597, *33-35. I have provided the
28

underlying declarations filed in support of the fee request. Attached at **Exhibit 4** is a true and correct copy of the declaration of Mary-Lee Smith of DRA, setting out the 2014 rates for DRA attorneys as set forth below in paragraph 12:

| Attorney | Graduation Year | Rate |
|---|---|---|
| Laurence Paradis | 1985 | $845 |
| Shawna Parks | 1999 | $690 |
| Mary-Lee Smith | 2005 | $580 |
| Rebecca Williford | 2009 | $405 |
| Kara Janssen | 2010 | $370 |
| Ann Kelsey | 2012 | $325 |

33. The rates sought by this motion are comparable to the rates approved in *G.F.* For example, in 2014 Mary-Lee Smith had the same amount of experience Mr. Zito had in 2019, but the rate she was awarded 6 years ago was $55 higher than the 2019 rate Mr. Zito seeks in this case. Ms. Williford's awarded 2014 rate of $405 per hour, when she had only 5 years of experience, also supports the reasonableness of the rates that attorneys Betouliere and Iorio seek now. Indeed, accounting for 3% annual inflation, Ms. Williford's 2014 award would be equivalent to a 2019 hourly rate of $469—much more either Mr. Betouliere or Ms. Iorio now seek. Finally, at the time of *G.F.* Mr. Paradis had 29 years experience—less than Ms. Van Dyke had in 2019—and the $905 rate she now seeks is only about 6.8% greater than what he was awarded in 2014; an increase of less than 2% per year.

34. The rates sought and awarded in disability rights cases are consistent with the market rates for other types of similarly complex civil rights litigation. For example, in 2014 in *Rodriguez v. County of Los Angeles*, cv-10-6342 CBM, the

Court awarded fees to the law firm of Kaye, McLain, Bednarski & Litt ("KMBL") in an excessive force case involving several inmates at the Los Angeles County jail. A true and correct copy of the order in *Rodriguez* is attached at **Exhibit 5**. The 2014 approved fees for KMBL, set forth at p.14, are as follows:

| Attorney | Graduation Year | Rate |
|---|---|---|
| Barry Litt | 1969 | $975 |
| Ronald Kaye | 1988 | $775 |
| David McLane | 1986 | $775 |
| Kevin LaHue | 2004 | $600 |
| Caitlin Weisberg | 2008 | $500 |

35. The rates approved in *Rodriguez* support the reasonableness of the rates sought by this motion. For example, the $600 rate awarded to Kevin LaHue in 2014 is substantially higher than the $525 2019 rate sought by Mr. Zito, who in 2019 had only one year less experience than Mr. LaHue had in 2014. Similarly, the $500 per hour awarded to Ms. Weisberg in 2014, when she had six years of experience, supports the reasonableness of Ms. Iorio's 2019 rate of $445 (when she also had six years of experience).

### REASONABLENESS OF MULTIPLIER

36. I understand that Plaintiffs are requesting a 2.0 multiplier on their fees under California fee-shifting law. A state-law multiplier is available to plaintiffs who succeed on both federal and state claims. *Chaudhry v. City of Los Angeles*, 2014 U.S. App. LEXIS 9208, *39-40 (9th Cir. 2014). In this instance, plaintiffs' counsel achieved exceptional results in a highly novel case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

37. In my experience over the last nearly 40 years, there are very few attorneys in Los Angeles who would be willing to and capable of taking on a novel

case such as this, for which there was no precedent. Based on my own experience, I am aware of the amount of effort required to take on a case of this sort, which required Plaintiffs' counsel to litigate in multiple forums. I am also aware that a positive outcome in this action was far from assured. In light of that, I would not have taken on this case in view of my own caseload over the past several years.

38.  In my experience, attorneys anticipate a substantial multiplier of at least two times the lodestar to account for an expected market return for contingent risk and the complexity of the case, among other factors. *See e.g., Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988) ("contingent fees that yield approximately two times the ordinary hourly rate for time expended is the return expected by lawyers in the relevant market"); *Wing v. Asarco, Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (approving a 2.0 multiplier for the risk of loss); *Crommie v. California Public Utilities Commission*, 840 F. Supp. 719 (N.D. Cal. 1994), *aff'd sub nom, Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995) (affirming contingent-risk enhancement of 2.0 applied under California substantive law); *Chabner v. United of Omaha Life Insurance Company*, 1999 WL 33227443 (N.D. Cal. 1999) (multiplier of 2.0 under California Civil Code §52.1). *See also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2002) (multiplier assessed by "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award"). "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Ketchum*, 24 Cal.4th at 1132-33, citing Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992).

39. Based on the above, I believe that Plaintiffs' requested multiplier of 2.0 is fair and reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of June, 2020 at Santa Monica, California.

*Carol A. Sobel*

CAROL A. SOBEL