# EXHIBIT 1

**DEPARTMENT OF
CITY PLANNING**

CITY PLANNING COMMISSION

DAVID H. J. AMBROZ
PRESIDENT

RENEE DAKE WILSON
VICE-PRESIDENT

CAROLINE CHOE
RICHARD KATZ
JOHN W. MACK
SAMANTHA MILLMAN
MARC MITCHELL
VERONICA PADILLA-CAMPOS
DANA M. PERLMAN

ROCKY WILES
COMMISSIONOFFICE MANAGER
(213) 978-1300

# CITY OF LOS ANGELES
## CALIFORNIA



ERIC GARCETTI
MAYOR

**EXECUTIVE OFFICES**
200 N. SPRING STREET, ROOM 525
LOS ANGELES, CA 90012-4801

VINCENT P. BERTONI, AICP
DIRECTOR
(213) 978-1271

KEVIN J. KELLER, AICP
EXECUTIVE OFFICER
(213) 978-1272

LISA M. WEBBER, AICP
DEPUTY DIRECTOR
(213) 978-1274

JAN ZATORSKI
DEPUTY DIRECTOR
(213) 978-1273

http://planning.lacity.org

## DIRECTOR'S DETERMINATION
## DENSITY BONUS & AFFORDABLE HOUSING INCENTIVES

September 1, 2017

| | | |
|---|---|---|
| **Applicant/Owner** | | |
| Hiro Kobayashi | **Case No.** | DIR-2016-4880-DB |
| 3568 Motor LLC | **CEQA:** | ENV-2016-4881-CE |
| 800 South Figueroa Street, | **Location:** | 3558-3570 South Motor Avenue, |
| Suite 960 | | 10313 West Tabor Street |
| Los Angeles, CA 90017 | **Council District:** | 5 – Koretz |
| | **Neighborhood Council:** | Palms |
| | **Community Plan Area:** | Palms – Mar Vista – Del Rey |
| **Representative** | **Land Use Designation:** | General Commercial |
| Dana Sayles | **Zone:** | C2-1 |
| Three6ixty | **Legal Description:** | Block: S, Tract: THE PALMS, |
| 4309 Overland Avenue | | Lot: 13 |
| Culver City, CA 90230 | | |
| | **Last Day to File an Appeal:** | September 18, 2017 |

**DETERMINATION – Density Bonus/Affordable Housing Incentives Program**

Pursuant to the Los Angeles Municipal Code (LAMC) Section 12.22 A.25, I have reviewed the proposed project and as the designee of the Director of Planning, I hereby:

> **Approve** the following incentive requested by the applicant for a project totaling 42 dwelling units. The project will reserve 10 percent, or 4 dwelling units, of the 38 total base dwelling units permitted on the site for Very Low Income household occupancy for a period of 55 years. The Density Bonus includes the following requested incentive:

> 1. **Floor Area Ratio.** A 32.5 percent increase in the allowable Floor Area Ratio allowing a total floor area ratio of 1.98:1 in lieu of the normal maximum of 1.5:1.

> Determined, based on the whole of the administrative record the project is exempt from the California Environmental Quality Act (CEQA) pursuant to State CEQA Guidelines Article 19, Sections 15304 and 15332, and City CEQA Guidelines Article III, Section 1, Class 4 Category 1, and there is no substantial evidence demonstrating that an exception to a categorical exemption pursuant to CEQA Guidelines, Section 15300.2 applies.

> **Adopt** the attached Findings.

**CONDITIONS OF APPROVAL**

1. **Site Development.** Except as modified herein, the project shall be in substantial conformance with the plans and materials submitted by the Applicant, stamped "Exhibit A," and attached to the subject case file. No change to the plans will be made without prior review by the Department of City Planning, West/Coastal/South Project Planning Division, and written approval by the Director of Planning. Each change shall be identified and justified in writing. Minor deviations may be allowed in order to comply with the provisions of the Los Angeles Municipal Code or the project conditions.

2. **Residential Density**. The project shall be limited to a maximum density of 42 residential units including Density Bonus Units.

3. **Affordable Units.** A minimum of 4 units, that is 10 percent of the base 38 dwelling units, shall be reserved as affordable units, as defined by the State Density Bonus Law 65915 (c)(1) or (c)(2). No additional affordable units are required per Assembly Bill (AB) 2222 as replacement units as HCIDLA has determined there are currently no affordable units on-site.

4. **Changes in Restricted Units**. Deviations that increase the number of restricted affordable units or that change the composition of units or change parking numbers shall be consistent with LAMC Section 12.22 A.25 (9a-d).

5. **Housing Requirements.** Prior to issuance of a building permit, the owner shall execute a covenant to the satisfaction of the Los Angeles Housing and Community Investment Department (HCIDLA) to make 4 units available to Very Low Income Households, for rental as determined to be affordable to such households by HCIDLA for a period of 55 years. Enforcement of the terms of said covenant shall be the responsibility of HCIDLA. The applicant will present a copy of the recorded covenant to the Department of City Planning for inclusion in this file. The project shall comply with any monitoring requirements established by the HCIDLA. Refer to the Density Bonus Legislation Background section of this determination.

6. **Floor Area**. The project shall be limited to 29,807 square feet of floor area, as shown in Exhibit "A".

7. **Automobile Parking**. Based upon the number and/or type of dwelling units proposed 42 parking spaces shall be provided for the project. Vehicle parking shall be provided consistent with LAMC Section 12.22 A.25, Parking Option 1, which permits one on-site parking space for each residential unit with one or fewer bedrooms; two on-site parking spaces for each residential unit with two to three bedrooms; and two-and-one-half parking spaces for each residential unit with four or more bedrooms. The Bicycle Parking Ordinance, LAMC Section 12.21.A.4, allows affordable residential projects to reduce required vehicle parking by 10 percent. Based upon the number and type of dwelling units proposed and the 10 percent reduction per the Bicycle Ordinance, 38 residential parking spaces shall be provided. The project shall provide 42 residential parking spaces as provided in Exhibit A. For the commercial uses, the project shall provide 7 commercial parking spaces, at a ratio of one space for every 250 square feet of commercial square footage.

8. **Automobile Parking for Commercial Uses.** As required by LAMC Section 12.21 A.4(c), the project shall provide a minimum of 7 automobile parking spaces for the 1,770 square feet of commercial uses, at a ratio of one space for every 250 square feet of commercial square footage. The project shall provide 12 commercial parking spaces as provided in Exhibit A.

9. **Adjustment of Parking**. In the event that the number of Restricted Affordable Units should increase, or the composition of such units should change (i.e. the number of bedrooms, or the

number of units made available to Senior Citizens and/or Disabled Persons), or the applicant selects another Parking Option (including Bicycle Parking Ordinance) and no other Condition of Approval or incentive is affected, then no modification of this determination shall be necessary, and the number of parking spaces shall be re-calculated by the Department of Building and Safety based upon the ratios set forth above.

10. **Bicycle Parking.**  Bicycle parking shall be provided consistent with LAMC 12.21 A.16.  Long-term bicycle parking shall be provided at a rate of one per dwelling unit or guest room.   Additionally, short-term bicycle parking shall be provided at a rate of one per ten dwelling units or guest rooms, with a minimum of two short-term bicycle parking spaces.  Short-term and long-term bicycle parking for general retail stores requires one bicycle parking space per 2,000 square feet, with a minimum of two bicycle parking spaces for both long- and short-term bicycle parking.  Based upon the number of dwelling units, 42 long-term and 5 short-term bicycle parking spaces shall be provided on-site for residential uses. In addition, 2 long-term and 2 short-term bicycle parking spaces shall be provided for commercial uses. Both long-term and short-term bicycle parking must be located consistent with LAMC Section 12.21 A.16.

**Administrative Conditions**

11. **Final Plans.** Prior to the issuance of any building permits for the project by the Department of Building  and  Safety, the applicant shall submit all final construction plans that are awaiting issuance of a building permit by the Department of Building  and Safety for final review and approval by the Department of City Planning. All plans that are awaiting issuance of a building permit by the Department of Building and Safety shall be stamped by Department of City Planning staff "Plans Approved". A copy of the Plans Approved, supplied by the applicant, shall be retained in the subject case file.

12. **Notations on Plans.** Plans submitted to the Department of Building and Safety, for the purpose of processing a building permit application shall include all of the Conditions of Approval herein attached as a cover sheet, and shall include any modifications or notations required herein.

13. **Approval, Verification and Submittals.** Copies of any approvals, guarantees or verification of consultations, review of approval, plans, etc., as may be required by the subject conditions, shall be provided to the Department of City Planning prior to clearance of any building permits, for placement in the subject file.

14. **Code Compliance.** Use, area, height, and yard regulations of the zone classification of the subject property shall be complied with, except where granted conditions differ herein.

15. **Department of Building and  Safety**. The granting of this determination by the Director of Planning does not in any way indicate full compliance with applicable provisions of the Los Angeles Municipal Code Chapter IX (Building Code). Any corrections and/or modifications to plans made subsequent to this determination by a Department of Building and  Safety Plan Check Engineer that affect any part of the exterior design or appearance of the project as approved by the Director, and which are deemed necessary by the Department of Building and  Safety for Building Code compliance, shall require a referral of the revised plans back to the Department of City Planning for additional review and sign-off prior to the issuance of any permit in connection with those plans.

16. **Covenant.** Prior to the issuance of any permits relative to this matter, an agreement concerning all the information contained in these conditions shall be recorded in the County

Recorder's Office. The agreement shall run with the land and shall be binding on any subsequent property owners, heirs or assign. The agreement must be submitted to the Department of City Planning for approval before being recorded. After recordation, a copy bearing the Recorder's number and date shall be provided to the Department of City Planning for attachment to the file.

17. **Indemnification and Reimbursement of Litigation Costs.**

Applicant shall do all of the following:

(i)      Defend, indemnify and hold harmless the City from any and all actions against the City relating to or arising out of, in whole or in part, the City's processing and approval of this entitlement, including <u>but not limited to</u>, an action to attack, challenge, set aside, void, or otherwise modify or annul the approval of the entitlement, the environmental review of the entitlement, or the approval of subsequent permit decisions, or to claim personal property damage, including from inverse condemnation or any other constitutional claim.

(ii)     Reimburse the City for any and all costs incurred in defense of an action related to or arising out of, in whole or in part, the City's processing and approval of the entitlement, including but not limited to payment of all court costs and attorney's fees, costs of any judgments or awards against the City (including an award of attorney's fees), damages, and/or settlement costs.

(iii)    Submit an initial deposit for the City's litigation costs to the City within 10 days' notice of the City tendering defense to the Applicant and requesting a deposit. The initial deposit shall be in an amount set by the City Attorney's Office, in its sole discretion, based on the nature and scope of action, but in no event shall the initial deposit be less than $50,000. The City's failure to notice or collect the deposit does not relieve the Applicant from responsibility to reimburse the City pursuant to the requirement in paragraph (ii).

(iv)    Submit supplemental deposits upon notice by the City. Supplemental deposits may be required in an increased amount from the initial deposit if found necessary by the City to protect the City's interests. The City's failure to notice or collect the deposit does not relieve the Applicant from responsibility to reimburse the City pursuant to the requirement in paragraph (ii).

(v)     If the City determines it necessary to protect the City's interest, execute an indemnity and reimbursement agreement with the City under terms consistent with the requirements of this condition.

The City shall notify the applicant within a reasonable period of time of its receipt of any action and the City shall cooperate in the defense. If the City fails to notify the applicant of any claim, action, or proceeding in a reasonable time, or if the City fails to reasonably cooperate in the defense, the applicant shall not thereafter be responsible to defend, indemnify or hold harmless the City.

The City shall have the sole right to choose its counsel, including the City Attorney's office or outside counsel. At its sole discretion, the City may participate at its own expense in the defense of any action, but such participation shall not relieve the applicant of any obligation imposed by this condition. In the event the Applicant fails to comply with this condition, in whole or in part, the City may withdraw its defense of the action, void its approval of the entitlement, or take any other action. The City retains the right to make all decisions with respect to its representations in any legal proceeding, including its inherent right to abandon or settle litigation.

For purposes of this condition, the following definitions apply:

"City" shall be defined to include the City, its agents, officers, boards, commissions, committees, employees, and volunteers.

"Action" shall be defined to include suits, proceedings (including those held under alternative dispute resolution procedures), claims, or lawsuits. Actions includes actions, as defined herein, alleging failure to comply with <u>any</u> federal, state or local law.

Nothing in the definitions included in this paragraph are intended to limit the rights of the City or the obligations of the Applicant otherwise created by this condition.

**PROJECT BACKGROUND**

The site is located in the Palms – Mar Vista – Del Rey Community Plan area at the northeastern corner of Motor Avenue and Tabor Street, and consists of two lots that measure approximately 14,997 square feet in lot area. The subject site is zoned C2-1, with a General Plan land use designation of General Commercial. The C2-1 zone permits a 1.5:1 Floor Area Ratio ("FAR") and unlimited height. The subject property is within the West Los Angeles Transportation Improvement and Mitigation Specific Plan and in a Transit Priority Area.

The proposed project includes the demolition of an existing one-story three-unit commercial building, and the construction of a six-story mixed-use commercial and residential building providing 42 apartment units, including a minimum of 4 units for Very Low Income Households, and 1,770 square feet of ground-floor retail. The project proposes a total of 54 vehicular parking spaces and a total of 44 long-term and 7 short-term bicycle parking spaces. The project consists of 20 vehicular parking spaces at the ground floor and 34 residential parking spaces in one subterranean parking level. The total project size is limited to 29,807 square feet, and the building will measure approximately 72 feet and 7 inches in height. The proposed project requests a haul route to export 6,000 cubic yards of soil. Two non-protected trees are being removed.

The proposed project will provide pedestrian-oriented retail, enhanced paving, off-street parking, bicycle parking, and planters to enhance this portion of Motor Avenue and Tabor Street. Parking access is located off the alley, opening Motor Avenue and Tabor Street for pedestrian and bicycle access only. Open space is provided in the form of front-facing private balconies along Motor Avenue and Tabor Street, an inner courtyard and outdoor deck on Level 2, and an outdoor deck on Level 6. The amenities on Level 2 include stained color concrete paving, steel frame seating areas, COR-TEN steel and built-in benches, 30-inch high steel planters, a green wall, portable barbecues, and fiberglass rectangular planters, as provided in Exhibit "A". Eight (8) new street trees will be planted along the sidewalk on Motor Avenue and Tabor Avenue per the Urban Forestry Division. The proposed project will provide a total of 51 bicycle parking spaces, and five percent (4 spaces) of the required vehicular parking will be configured as electric vehicle charging stations.

Pursuant to LAMC Section 12.22.A.25, the applicant requests a Density Bonus Compliance Review.  In consideration of 4 affordable units, the applicant seeks one on-menu incentive: a 32.5 percent increase in Floor Area Ratio (FAR) from 1.5:1 to 1.98:1.

In accordance with California State Law (including Senate Bill 1818, and Assembly Bills 2280 and 2222), the applicant is proposing to utilize Section 12.22 A.25 (Density Bonus) of the Los Angeles Municipal Code (LAMC), which permits a density bonus of 35 percent. The project is requesting a density bonus of 32.5 percent. This allows for a maximum of 52 total dwelling units in lieu of the otherwise maximum density limit of 38 dwelling units on the property. A density bonus is automatically granted in exchange for the applicant setting aside a portion of dwelling units, in this case 4 units, for habitation by Very Low Income Households for a period of 55 years. Consistent with the Density Bonus Ordinance, the Applicant is also automatically granted a reduction in required parking based on two Parking Options, and a reduction based on the Bicycle Parking Ordinance.  The Applicant selected Parking Option 1, which requires a total of 42 residential parking spaces. The Applicant also selected an automobile parking reduction based on the Bicycle Parking Ordinance. Based on the 10 percent automobile parking reduction with the replacement of bicycle parking spaces in excess of the normally required bicycle parking spaces, the proposed project shall provide a minimum of 38 automobile spaces and a minimum of 51 bicycle parking spaces.

**Housing Replacement**

With Assembly Bill 2222, applicants of Density Bonus projects filed as of January 1, 2015 must demonstrate compliance with the housing replacement provisions which require replacement of rental dwelling units that either exist at the time of application of a Density Bonus project, or have been vacated or demolished in the five-year period preceding the application of the project. This applies to all pre-existing units that have been subject to a recorded covenant, ordinance, or law that restricts rents to levels affordable to persons and families of lower or very low income; subject to any other form of rent or price control; or occupied by Low or Very Low Income Households. A Determination made by the Los Angeles Housing and Community Investment Department (HCIDLA) dated February 24, 2017 concluded that there are no residential units on the property within the last five years; AB 2222 does not apply to commercial structures, so no AB 2222 replacement affordable units are required. Per Density Bonus state law, the proposed project will be required to provide 4 units affordable to Very Low Income Households. This is reflected in the Conditions of Approval. Refer to the Density Bonus Legislation Background section of this determination for additional information.

**LAMC Criteria**

As permitted by LAMC Section 12.22 A.25 the applicant is requesting two incentives that will facilitate the provision of affordable housing at the site: a 32.5 percent increase in the allowable FAR from 1.5:1 to 1.98. Pursuant to LAMC Section 12.22 A.25 (e)(2), in order to be eligible for any on-menu incentives, a Housing Development Project (other than an Adaptive Reuse Project) shall comply with the following criteria, <u>which it does</u>:

    *a.* *The façade of any portion of a building that abuts a street shall be articulated with a change of material or a break in plane, so that the façade is not a flat surface.*

        The proposed mixed-use development abuts two streets, Motor Avenue and Tabor Street, as well as a full 20-foot wide alley to the rear and side. As provided in Exhibit "A", the street-facing facades are articulated to modulate the building wall and create distinct breaks in the building plane. The building design incorporates a variety of recesses, stepbacks, and varied rooflines, and different materials to add architectural interest to the building and create distinct breaks in the building plane. The building façade is articulated horizontally to create distinct vertical components through the use of varied building planes and materials. The building materials include corrugated metal siding, longboard wood siding, cement plaster, clear anodized storefront system, steel canopies, glass guardrails, and perforated metal sun shades as provided in Exhibit "A". Together, these elements are applied to create sufficient breaks in plane and articulation.

    *b.* *All buildings must be oriented to the street by providing entrances, windows architectural features and/or balconies on the front and along any street facing elevation.*

        The subject site has a frontage of approximately 100 feet along Motor Avenue and 150 feet along Tabor Street. The proposed project has one residential entrance and two commercial entrances along Tabor Street, with balconies along both Motor Avenue and Tabor Street. The vehicular entrance is provided along the rear alley that is accessed from Tabor Street. The proposed project includes many architectural features to help define the main entrances. For instance, the residential lobby is recessed to create a distinct break from the commercial storefront. The commercial entrances are accentuated through steel canopies and storefront system to create transparency at the ground floor along Tabor Street.

c. *The Housing Development Project shall not involve a contributing structure in a designated Historic Preservation Overlay Zone (HPOZ) and shall not involve a structure that is a City of Los Angeles designated Historic-Cultural Monument (HCM).*

The proposed project is not located within a designated Historic Preservation Overlay Zone, nor does it involve a property that is designated as a City Historic-Cultural Monument.

d. *The Housing Development Project shall not be located on a substandard street in a Hillside Area or in a Very High Fire Hazard Severity Zone as established in Section 57.25.01 of the LAMC.*

The project is not located in a Hillside Area, nor is it located in a Very High Fire Hazard Severity Zone.

The project proposes an allowance for a 1.98:1 Floor Area Ratio (FAR) in lieu of the normal maximum 1.5:1 FAR. The proposed project qualifies for a Density Bonus FAR increase because it is located within 1,500 feet of several transit stops as defined by LAMC Section 12.22.A.25. The subject site is located at the intersection of Motor Avenue and Tabor Street, and is served by a variety of transit options including the Metro Expo Line (806) Palms Station, which is located approximately 0.3 miles from the subject site, and is within 1,500 feet of Transit Stops served by Culver City Bus Line 3 and Big Blue Bus Lines 17 and Rapid 12.

**DENSITY BONUS/AFFORDABLE HOUSING INCENTIVES COMPLIANCE FINDINGS**

1. **Pursuant to Section 12.22 A.25(c) of the LAMC, the Director <u>shall approve</u> a density bonus and requested incentive(s) unless the director finds that:**

   a. *The incentives are not required to provide for affordable housing costs as defined in California Health and Safety Code Section 50052.5 or Section 50053 for rents for the affordable units.*

   The record does not contain substantial evidence that would allow the Director to make a finding that the requested incentives are not necessary to provide for affordable housing costs per State Law.  The California Health & Safety Code Sections 50052.5 and 50053 define formulas for calculating affordable housing costs for Very Low, Low, and Moderate Income Households. Section 50052.5 addresses owner-occupied housing and Section 50053 addresses rental households. Affordable housing costs are a calculation of residential rent or ownership pricing not to exceed 25 percent gross income based on area median income thresholds dependent on affordability levels.

   The list of on-menu incentives in 12.22 A.25 was pre-evaluated at the time the Density Bonus Ordinance was adopted to include types of relief that minimize restrictions on the size of the project.  As such, the Director will always arrive at the conclusion that the density bonus on-menu incentives are required to provide for affordable housing costs because the incentives by their nature increase the scale of the project.

   The requested incentive, an increase in the Floor Area Ratio, is expressed in the Menu of Incentives per LAMC 12.22 A.25(f) and, as such, permit exceptions to zoning requirements that result in building design or construction efficiencies that provide for affordable housing costs. The requested incentive allows the developer to expand the building envelope so the additional units can be constructed and the overall space dedicated to residential uses is increased.   The incentive supports the applicant's decision to set aside 4 Very Low Income dwelling units for 55 years.

   *Floor Area Ratio Increase:* The subject site is zoned C2-1 which allows 38 units on the 14,997 square foot site, with a maximum 1.5:1 Floor Area Ratio (FAR) and unlimited building height. The FAR Increase incentive permits a percentage increase in the allowable Floor Area Ratio equal to the percentage of Density Bonus for which the Housing Development Project is eligible, not to exceed 35 percent. While the proposed project qualifies for a maximum 2.025:1 FAR, the proposed project is actually providing a maximum 1.98 FAR and is proposing 29,782 square feet of floor area. The proposed 1.98:1 FAR creates 7,311 additional square feet.

| FAR by-right | Buildable Lot Area (sf) | Total Floor Area (sf) |
|---|---|---|
| 1.5:1 | 14,997 | 14,997 X 1.5= 22,495.5 |

| FAR proposed | Buildable Lot Area (sf) | Total Floor Area (sf) | Additional Floor Area (sf) |
|---|---|---|---|
| 1.98:1 | 14,997 | 29,806.5 | 29,806.5- 22,495.5= **7,311** |

b. *The Incentive will have specific adverse impact upon public health and safety or the physical environment, or on any real property that is listed in the California Register of Historical Resources and for which there is no feasible method to satisfactorily mitigate or avoid the specific adverse Impact without rendering the development unaffordable to Very Low, Low and Moderate Income households. Inconsistency with the zoning ordinance or the general plan land use designation shall not constitute a specific, adverse impact upon the public health or safety.*

The proposed incentives <u>will not</u> have a specific adverse impact. A "specific adverse impact" is defined as "a significant, quantifiable, direct and unavoidable impact, based on objective, identified written public health or safety standards, policies, or conditions as they existed on the date the application was deemed complete" (LAMC Section 12.22.A.25(b)). The proposed Project and potential impacts were analyzed in accordance with the California Environmental Quality Act (CEQA) Guidelines and the City's L.A. CEQA Thresholds Guide. These two documents establish guidelines and thresholds of significant impact, and provide the data for determining whether or not the impacts of a proposed Project reach or exceed those thresholds. Analysis of the proposed Project determined that it is Categorically Exempt from environmental review pursuant to State CEQA Guidelines Article 19, Sections 15304 (Class 4) and 15332 (Class 32), and City CEQA Guidelines Article III, Section 1, Class 4 Category 1. The Class 32 Exemption is intended to promote infill development within urbanized areas.

The proposed project qualifies for a Categorical Exemption because it conforms to the definition of "In-fill Projects" as follows:

*(a)    The project is consistent with the applicable general plan designation and all applicable general plan policies as well as with applicable zoning designation and regulations:*

The project is consistent with the following Elements of the General Plan: Framework Element, Land Use Element (Palms – Mar Vista – Del Rey Community Plan), Housing Element, and the Mobility Element.

**Framework Element**: The Citywide General Plan Framework is a guide for communities to implement growth and development policies by providing a comprehensive long-range view of the City as a whole. The Framework establishes categories of land use that are broadly described by ranges of intensity/density, heights, and lists of typical uses. The Framework Element's land use designation of General Commercial has corresponding zones of C2 and [Q]C2. The subject site is designated for General Commercial land uses and zoned C2-1; therefore, the subject site is consistent with the Framework Element.

**Land Use Element (Palms – Mar Vista – Del Rey Community Plan)**: The subject site is located within the Palms – Mar Vista – Del Rey Community Plan ("Community Plan"). The Community Plan designates the site for General Commercial land uses, which has corresponding zones of C1.5, C2, C4, RAS3, and RAS4. The subject site is zoned C2-1, and is therefore consistent with the Community Plan's land use designation. The C2-

1 zoning of the subject site allows for residential uses at R4 density, unlimited building height and a maximum Floor Area Ratio (FAR) of 1.5:1. The subject site has a lot area of approximately 14,997 square feet, which allows a by-right density 38 residential units in conjunction with LAMC Sections 12.14 A.1(a), 12.13.5 A.1, and 12.11, and up to a maximum of 52 residential units through the Density Bonus pursuant to LAMC Section 12.22 A.25 and Assembly Bill (AB) 2501. The proposed Project is for the construction of new six-story 42-unit mixed-use development containing 1,770 square feet of ground-floor retail and measuring 72 feet and 7 inches in height. The proposed uses, density, and height are allowed by the Community Plan's land use designation in combination with the site's zoning in combination with state Density Bonus law.

**Housing Element**: The Housing Element indicates that not only are more housing units needed to accommodate the City's growth, but that these units need to be a broader array of typologies to meet evolving household types and sizes. In addition, the Housing Element includes an Inventory of Sites for Housing (Housing Element Exhibit H) that identifies parcels suitable for additional residential development without the need for any discretionary zoning action by the City. The site's Assessor Parcel Number (APN # 4314014002) has been identified in the Inventory, and is therefore meeting Housing Element provisions of providing housing on these applicable sites. As mentioned, the proposed Project will demolish an existing commercial building and construct 42 new residential units. The proposed Project will therefore provide a net increase of 42 residential units within close proximity to jobs, transit, and other amenities including an elementary school. Pursuant to Density Bonus requirements, 4 of the total units will be reserved for Very Low Income households, and is therefore achieving the Housing Element goal of providing affordable units and promoting mixed-income developments.

**Mobility Element**: The Mobility Element sets forth objectives and policies to establish a citywide strategy to achieve long-term mobility and accessibility within the City of Los Angeles. The subject site is located at the intersection of Motor Avenue and Tabor Street, and is served by a variety of transit options including the Metro Expo Line (806) Palms Station, which is located approximately 0.3 miles from the subject site, as well as by local and regional bus lines operated by Culver City Bus, Big Blue Bus, Los Angeles Metro, and LADOT. Specifically, the subject site is within 1,500 feet of Transit Stops served by Culver City Bus Line 3 and Big Blue Bus Lines 17 and Rapid 12; and the subject site is within 0.5 miles from Transit Stops served by Metro Bus Line 33 and 733, Big Blue Bus Line 5, and LADOT Line Commuter Express Line 431. The proposed Project will allow for a reduction of vehicle trips by placing high-density residential within proximity to public transit, as well as existing retail and amenities along Motor Avenue and the greater Palms neighborhood. Furthermore, the location of ground floor commercial uses and residential lobby will facilitate a pedestrian-oriented environment by providing transparency at the street level, thereby activating the streets. The project also involves the dedication of 3 feet along Motor Avenue and 5 feet along Tabor Street; therefore the building wall will be set back further from the street and allow for wider sidewalks to facilitate pedestrian activity. The proposed Project will also provide bicycle parking spaces in accordance with the Bicycle Parking Ordinance and LAMC Section 12.21 A.16 for residents and visitors, thereby facilitating bicycle ridership.

The subject site is also located within the West Los Angeles Transportation Improvement and Mitigation Specific Plan. The West Los Angeles Transportation Improvement and Mitigation Specific Plan does not address development issues.  It identifies trip fee requirements for non-residential projects.

Consistent with the Palms – Mar Vista – Del Rey Community Plan and General Plan, the proposed 42-unit mixed-use development adds new mixed-income multi-family

housing to Los Angeles' housing supply in a neighborhood which is conveniently located to a variety of community services including transit stops. The project meets parking, yard, open space, and landscaping requirements, with modifications to allow additional FAR, and reduced parking through the Density Bonus Ordinance. Therefore, the project is consistent with the applicable general plan designation and all applicable general plan policies as well as with the applicable zoning designation and regulations.

*(b)    The proposed development occurs within city limits on a project site of no more than five acres substantially surrounded by urban uses:*

The subject site is located in close at the intersection of Motor Avenue and Tabor Street in the Palms neighborhood. The development consists of a mixed-use project on a lot that is approximately 14,997 square feet (0.344 acres) in size, and is wholly within the City of Los Angeles.

The subject site is substantially surrounded by urban uses in close proximity to major arterials including Motor Avenue to the west and Palms Boulevard to the north. Lots adjacent to the subject site are zoned R3-1, C2-1, and [Q]PF-1XL, and are developed with low- to mid-rise multi-family and commercial uses Neighboring lots to the east (across the alley) are zoned R3-1 and developed with multi-family uses. The lot to the north (across the alley) is zoned [Q]PF-1XL and developed with an elementary school. The subject site is also served by a variety of transit options including the Metro Expo Line (806) Palms Station, which is located approximately 0.3 miles from the subject site, as well as by local and regional bus lines operated by the Culver City Bus, Big Blue Bus, Los Angeles Metro, and LADOT. Therefore, it can be found that the proposed development occurs within city limits on a project site of no more than five acres substantially surrounded by urban uses.

*(c)    The project site has no value as habitat for endangered, rare or threatened species:*

The subject site is located within an established area that is fully-developed with a commercial corridor with low- to medium-density multi-family and commercial uses. The site is previously disturbed and surrounded by development. There are no protected trees on the site. The project does not involve the removal of healthy, mature, scenic trees because the trees being removed (palm) are not protected trees. Therefore, the site is not, and has no value as, a habitat for endangered, rare or threatened species.

*(d)    Approval of the project would not result in any significant effects relating to traffic, noise, air quality, or water quality:*

The proposed project replaces an existing one-story commercial building, adding 42 new housing units and 1,770 square feet of ground-floor commercial to the subject site.

Based upon the existing mobility and circulation networks in direct proximity to the proposed project, the introduction of 42 additional units to the community will result in no traffic impacts. The traffic impact analysis, prepared by Overland Traffic Consultants, Inc. dated May 1, 2017, concluded the Project will result in net project trip generation of 179 daily trips with thirty (30) a.m. peak hour trips and two (2) p.m. peak hour trips. The traffic impact analysis also indicated there will be no significant traffic impacts at the intersection of Motor Avenue and Palms Boulevard, at the intersection of Motor Avenue and Tabor Street, and at the driveway off of Linwood Avenue. The traffic impact analysis was reviewed by the Los Angeles Department of Transportation (LADOT). In a memo dated May 30, 2017, LADOT determined that the analysis adequately describes

the project-related impact of the proposed development. Therefore, the project will not have any significant impacts to traffic.

The Department of Building and Safety will require a haul route for the export of 6,000 cubic yards of soil in a Special Grading Area. Regulatory Compliance Measures (RCMs) include the submittal of a Geology and Soils Report to the Department of Building and Safety (DBS), and compliance with a Geology and Soils Report Approval Letter, issued by DBS on March 8, 2017 (LOG # 96213-01), which details conditions of approval that must be followed. In addition, the RCMs require that design and construction of the building must conform to the California Building Code, and grading on site shall comply with the City's Landform Grading Manual, as approved by the Department of Building and Safety Grading Division. According to Navigate LA, within 500 feet of the subject site, there is one other haul route application in conjunction with the construction of a new 5-story, 49-unit apartment building over 1 level of subterranean parking, located at 3628-3642 South Motor Avenue, which is currently pending. In light of the increase in construction activity in Grading Hillside Areas and the increase in associated truck traffic related to the import and export of soil, a haul route monitoring program is being implemented by the Department of Building and Safety for Council Districts 4 and 5 for added enforcement to ensure safety and to protect the quality of life of area residents. As part of this program, a haul route monitor is assigned to a geographic area to monitor haul routes and keep track of daily activities in order to minimize impacts to neighboring residents. Haul routes are tracked via a Map for each district to identify the locations of construction sites for which a haul route was required. The haul route approval will include RCMs and recommended conditions prepared by LADOT to be considered by the Board of Building and Safety Commissioners to reduce the impacts of construction related hauling activity, monitor the traffic effects of hauling, and reduce haul trips in response to congestion. Therefore, no foreseeable cumulative impacts are expected

The project will be subject to Regulatory Compliance Measures (RCMs), which require compliance with the City of Los Angeles Noise Ordinance; pollutant discharge, dewatering, stormwater mitigations; and Best Management Practices for stormwater runoff. The project must comply with the adopted City of Los Angeles Noise Ordinances Nos. 144,331 and 161,574, as well as any subsequent Ordinances, which prohibit the emission or creation of noise beyond certain levels. These Ordinances cover both operational noise levels (i.e., post-construction), and any construction noise impacts. These RCMs will ensure the project will not have significant impacts on noise and water. As a result of this mandatory compliance, the proposed project will not result in any significant impacts on noise or water.

The building construction phase includes the construction of the proposed building on the subject property, which grading and a haul-route for the importing/exporting of approximately 6,000 cubic yards of dirt, connection of utilities, laying irrigation for landscaping, architectural coatings, paving, and landscaping the subject property. These construction activities would temporarily create emissions of dusts, fumes, equipment exhaust, and other air contaminants. Construction activities involving grading and foundation preparation would primarily generate PM2.5 and PM10 emissions.  Mobile sources (such as diesel-fueled equipment onsite and traveling to and from the Project Site) would primarily generate NOx emissions. The application of architectural coatings would result primarily in the release of ROG emissions. The amount of emissions generated on a daily basis would vary, depending on the amount and types of construction activities occurring at the same time.

Nevertheless, appropriate dust control measures would be implemented as part of the Proposed Project during each phase of development, as required by SCAQMD Rule 403

- Fugitive Dust. Specifically, Rule 403 control requirements include, but are not limited to, applying water in sufficient quantities to prevent the generation of visible dust plumes, applying soil binders to uncovered areas, reestablishing ground cover as quickly as possible, utilizing a wheel washing system to remove bulk material from tires and vehicle undercarriages before vehicles exit the Project Site, and maintaining effective cover over exposed areas.

Best Management Practices (BMP) will be implemented that would include (but not be limited to) the following:
- Unpaved demolition and construction areas shall be wetted at least three times daily during excavation and construction, and temporary dust covers shall be used to reduce emissions and meets SCAQMD Rule 403;
- All dirt/soil loads shall be secured by trimming, watering or other appropriate means to prevent spillage and dust;
- General contractors shall maintain and operate construction equipment to minimize exhaust emissions; and
- Trucks shall not idle but be turned off.

The project, a 29,782-square foot mixed-use building will replace an approximately 6,768-square foot existing commercial building. The project will not result in significant impacts related to air quality because it falls below interim air threshold established by DCP staff. Interim thresholds were developed by DCP staff based on CalEEMod model runs relying on reasonable assumptions, consulting with AQMD staff, and surveying published air quality studies for which criteria air pollutants did not exceed the established SCAQMD construction and operational thresholds. Possible project-related air quality concerns will derive from the mobile source emissions generated from the proposed residential uses for the project site. Operational emissions for project-related traffic will be less than significant. In addition to mobile sources from vehicles, general development causes smaller amounts of "area source" air pollution to be generated from on-site energy consumption (natural gas combustion) and from off-site electrical generation. These sources represent a small percentage of the total pollutants. The inclusion of such emissions adds negligibly to the total significant project-related emissions burden generated by the proposed project. The proposed project will not cause the SCAQMD's recommended threshold levels to be exceeded. Operational emission impacts will be at a less-than-significant level.

The development of the project would not result in any significant effects relating to water quality. The project is not adjacent to any water sources and construction of the project will not create any impact to water quality. The project will be subject to Regulatory Compliance Measures (RCMs) for pollutant discharge, dewatering, stormwater mitigations, and Best Management Practices for stormwater runoff. Furthermore, the project will comply with the City's stormwater management provisions per LAMC 64.70.

The subject property has a slope of less than 10 percent and is not in a waterway, wetland, or officially designated scenic area. Therefore, there is no substantial evidence that the proposed project will have a specific adverse impact on the physical environment.

Furthermore, the subject site is located within a Transit Priority Area (TPA) as defined by Public Resources Code (PRC) Section 21099(a)(7) and Zoning Information (ZI) File 2452, due to its location within one-half mile of a major transit stop. Therefore, pursuant to SB 743 and PRC Section 21099 (d)(1), "aesthetic and parking impacts of a residential, mixed-use residential, or employment center project on an infill site within a Transit Priority Area shall not be considered significant impacts on the environment". Therefore,

the project's aesthetic impacts, such as visual resources, aesthetic character, shade and shadow, light and glare, shall not be considered a significant impact on the environment for CEQA purposes.

***(e)   The site can be adequately served by all required utilities and public services:***

The project site will be adequately served by all public utilities and services given that the construction of a mixed-use development will be on a site which has been previously developed and is consistent with the general plan. The site is currently and adequately served by the City's Department of Water and Power, the City's Bureau of Sanitation, the Southern California (SoCal) Gas Company, the Los Angeles Police Department, the Los Angeles Fire Department, Los Angeles Unified School District, Los Angeles Public Library, and other public services. These utilities and public services have continuously served the neighborhood for more than 50 years. In addition, the California Green Code requires new construction to meet stringent efficiency standards for both water and power, such as high-efficiency toilets, dual-flush water closets, minimum irrigation standards, LED lighting, etc. As a result of these new building codes, which are required of all projects, it can be anticipated that the proposed project will not create any impact on existing utilities and public services through the net addition of 42 dwelling units.

The project and its related haul route application can be characterized as in-fill development within urban areas for the purpose of qualifying for Class 32 Categorical Exemption as a result of meeting the five conditions listed above.

## DENSITY BONUS LEGISLATION BACKGROUND

The California State Legislature has declared that "[t]he availability of housing is of vital statewide importance," and has determined that state and local governments have a responsibility to "make adequate provision for the housing needs of all economic segments of the community." Section §65580, subds. (a), (d). Section 65915 further provides that an applicant must agree to, and the municipality must ensure, the "continued affordability of all Low and Very Low Income units that qualified the applicant" for the density bonus.

With Senate Bill 1818 (2004), state law created a requirement that local jurisdictions approve a density bonus and up to three "concessions or incentives" for projects that include defined levels of affordable housing in their projects. In response to this requirement, the City created an ordinance that includes a menu of incentives (referred to as "on-menu" incentives) comprised of eight zoning adjustments that meet the definition of concessions or incentives in state law (California Government Code Section 65915). The eight on-menu incentives allow for: 1) reducing setbacks; 2) reducing lot coverage; 3) reducing lot width, 4) increasing floor area ratio (FAR); 5) increasing height; 6) reducing required open space; 7) allowing for an alternative density calculation that includes streets/alley dedications; and 8) allowing for "averaging" of FAR, density, parking or open space. In order to grant approval of an on-menu incentive, the City utilizes the same findings contained in state law for the approval of incentives or concessions.

California State Assembly Bill 2222 went into effect January 1, 2015, and with that Density Bonus projects filed as of that date must demonstrate compliance with the housing replacement provisions which require replacement of rental dwelling units that either exist at the time of application of a Density Bonus project, or have been vacated or demolished in the five-year period preceding the application of the project. This applies to all pre-existing units that have been subject to a recorded covenant, ordinance, or law that restricts rents to levels affordable to persons and families of lower or very low income; subject to any other form of rent or price control

(including Rent Stabilization Ordinance); or is occupied by Low or Very Low Income Households (i.e., income levels less than 80 percent of the area median income [AMI]). The replacement units must be equivalent in size, type, or both and be made available at affordable rent/cost to, and occupied by, households of the same or lower income category as those meeting the occupancy criteria.  Prior to the issuance of any Director's Determination for Density Bonus and Affordable Housing Incentives, the Housing and Community Investment Department (HCIDLA) is responsible for providing the Department of City Planning, along with the applicant, a determination letter addressing replacement unit requirements for individual projects. The City also requires a Land Use Covenant recognizing the conditions be filed with the County of Los Angeles prior to granting a building permit on the project.

Assembly Bill 2222 also increases covenant restrictions from 30 to 55 years for projects approved after January 1, 2015. This determination letter reflects these 55 year covenant restrictions.

Under Government Code Section § 65915(a), § 65915(d)(2)(C) and  § 65915(d)(3) the City of Los Angeles complies with the State Density Bonus law by adopting density bonus regulations and procedures as codified in Section 12.22 A.25 of the Los Angeles Municipal Code. Section 12.22 A.25 creates a procedure to waive or modify Zoning Code standards which may prevent, preclude or interfere with the effect of the density bonus by which the incentive or concession is granted, including legislative body review. The Ordinance must apply equally to all new residential development.

In exchange for setting aside a defined number of affordable dwelling units within a development, applicants may request up to three incentives in addition to the density bonus and parking relief which are permitted by right. The incentives are deviations from the City's development standards, thus providing greater relief from regulatory constraints. Utilization of the Density Bonus/Affordable Housing Incentives Program supersedes requirements of the Los Angeles Municipal Code and underlying ordinances relative to density, number of units, parking, and other requirements relative to incentives, if requested.

For the purpose of clarifying the Covenant Subordination Agreement between the City of Los Angeles and the United States Department of Housing and Urban Development (HUD) note that the covenant required in the Conditions of Approval herein shall prevail unless pre-empted by State or Federal law.

**TIME LIMIT – OBSERVANCE OF CONDITIONS**

All terms and conditions of the Director's Determination shall be fulfilled before the use may be established. Pursuant to LAMC Section 12.25 A.2, the instant authorization is further conditional upon the privileges being utilized within **three years** after the effective date of this determination and, if such privileges are not utilized, building permits are not issued, or substantial physical construction work is not begun within said time and carried on diligently so that building permits do not lapse, the authorization shall terminate and become void.

**TRANSFERABILITY**

This determination runs with the land. In the event the property is to be sold, leased, rented or occupied by any person or corporation other than yourself, it is incumbent that you advise them regarding the conditions of this grant. If any portion of this approval is utilized, then all other conditions and requirements set forth herein become immediately operative and must be strictly observed.

**VIOLATIONS OF THESE CONDITIONS, A MISDEMEANOR**

The applicant's attention is called to the fact that this grant is not a permit or license and that any permits and licenses required by law must be obtained from the proper public agency. Furthermore, if any condition of this grant is violated or not complied with, then the applicant or his successor in interest may be prosecuted for violating these conditions the same as for any violation of the requirements contained in the Municipal Code, or the approval may be revoked.

Section 11.00 of the LAMC states in part (m): "It shall be unlawful for any person to violate any provision or fail to comply with any of the requirements of this Code.  Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this Code shall be guilty of a misdemeanor unless that violation or failure is declared in that section to be an infraction.  An infraction shall be tried and be punishable as provided in Section 19.6 of the Penal Code and the provisions of this section.  Any violation of this Code that is designated as a misdemeanor may be charged by the City Attorney as either a misdemeanor or an infraction.

Every violation of this determination is punishable as a misdemeanor unless provision is otherwise made, and shall be punishable by a fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and imprisonment."

**APPEAL PERIOD - EFFECTIVE DATE**

**The Determination in this matter will become effective and final fifteen (15) days after the date of mailing of the Notice of Director's Determination** unless an appeal there from is filed with the City Planning Department.  It is strongly advised that appeals be filed early during the appeal period and in person so that imperfections/incompleteness may be corrected before the appeal period expires.  Any appeal must be filed on the prescribed forms, accompanied by the required fee, a copy of this Determination, and received and receipted at a public office of the Department of City Planning on or before the above date or the appeal will not be accepted. Forms are available on-line at http://planning.lacity.org.

Planning Department public offices are located at:

| Downtown Office | Valley Office | West Office |
|---|---|---|
| Figueroa Plaza | Marvin Braude Constituent | West Los Angeles Development |
| 201 North Figueroa Street, | Service Center | Services Center |
| 4th Floor | 6262 Van Nuys Boulevard, | 1828 Sawtelle Boulevard, |
| Los Angeles, CA 90012 | Suite 251 | 2nd Floor |
| (213) 482-7077 | Van Nuys, CA 91401 | Los Angeles, CA 90025 |
| | (818) 374-5050 | (310) 231-2912 |

**Only an applicant or any owner or tenant of a property abutting, across the street or alley from, or having a common corner with the subject property can appeal this Density Bonus Compliance Review Determination.** Per the Density Bonus Provision of State Law (Government Code Section §65915) the Density Bonus increase in units above the base density zone limits and the appurtenant parking reductions are not a discretionary action and therefore cannot be appealed. Only the requested incentives are appealable. Per Section 12.22 A.25 of the LAMC, appeals of Density Bonus Compliance Review cases are heard by the City Planning Commission.

Verification of condition compliance with building plans and/or building permit applications are done at the Development Services Center of the Department of City Planning at either Figueroa Plaza in Downtown Los Angeles or the Marvin Braude Constituent Service Center in the Valley. In order to assure that you receive service with a minimum amount of waiting, applicants are encouraged to schedule an appointment with the Development Services Center either through the Department of City Planning website at http://planning.lacity.org or by calling (213) 482-7077 or (818) 374-5050. The applicant is further advised to notify any consultant representing you of this requirement as well.

The time in which a party may seek judicial review of this determination is governed by California Code of Civil Procedures Section 1094.6. Under that provision, a petitioner may seek judicial review of any decision of the City pursuant to California Code of Civil Procedure Section 1094.5, only if the petition for writ of mandate pursuant to that section is filed no later than the 90th day following the date on which the City's decision becomes final.


VINCENT P. BERTONI, AICP
Director of Planning



Approved by:

Faisal Roble, Principal City Planner

Reviewed by:

Michelle Singh, City Planner

Reviewed by:

Debbie Lawrence, AICP, Senior City Planner

Prepared by:

Connie Chauv, City Planning Associate
connie.chauv@lacity.org