# EXHIBIT 2

STATE OF CALIFORNIA AUTHENTICATED ELECTRONIC LEGAL MATERIAL  
LEGISLATIVE COUNSEL BUREAU

**State of California**

**GOVERNMENT CODE**

**Section 65915**

---

65915. (a) (1) When an applicant seeks a density bonus for a housing development within, or for the donation of land for housing within, the jurisdiction of a city, county, or city and county, that local government shall comply with this section. A city, county, or city and county shall adopt an ordinance that specifies how compliance with this section will be implemented. Failure to adopt an ordinance shall not relieve a city, county, or city and county from complying with this section.

(2) A local government shall not condition the submission, review, or approval of an application pursuant to this chapter on the preparation of an additional report or study that is not otherwise required by state law, including this section. This subdivision does not prohibit a local government from requiring an applicant to provide reasonable documentation to establish eligibility for a requested density bonus, incentives or concessions, as described in subdivision (d), waivers or reductions of development standards, as described in subdivision (e), and parking ratios, as described in subdivision (p).

(3) In order to provide for the expeditious processing of a density bonus application, the local government shall do all of the following:

(A) Adopt procedures and timelines for processing a density bonus application.

(B) Provide a list of all documents and information required to be submitted with the density bonus application in order for the density bonus application to be deemed complete. This list shall be consistent with this chapter.

(C) Notify the applicant for a density bonus whether the application is complete in a manner consistent with the timelines specified in Section 65943.

(D) (i) If the local government notifies the applicant that the application is deemed complete pursuant to subparagraph (C), provide the applicant with a determination as to the following matters:

(I) The amount of density bonus, calculated pursuant to subdivision (f), for which the applicant is eligible.

(II) If the applicant requests a parking ratio pursuant to subdivision (p), the parking ratio for which the applicant is eligible.

(III) If the applicant requests incentives or concessions pursuant to subdivision (d) or waivers or reductions of development standards pursuant to subdivision (e), whether the applicant has provided adequate information for the local government to make a determination as to those incentives, concessions, or waivers or reductions of development standards.

(ii) Any determination required by this subparagraph shall be based on the development project at the time the application is deemed complete. The local

government shall adjust the amount of density bonus and parking ratios awarded pursuant to this section based on any changes to the project during the course of development.

(b) (1) A city, county, or city and county shall grant one density bonus, the amount of which shall be as specified in subdivision (f), and, if requested by the applicant and consistent with the applicable requirements of this section, incentives or concessions, as described in subdivision (d), waivers or reductions of development standards, as described in subdivision (e), and parking ratios, as described in subdivision (p), when an applicant for a housing development seeks and agrees to construct a housing development, excluding any units permitted by the density bonus awarded pursuant to this section, that will contain at least any one of the following:

(A) Ten percent of the total units of a housing development for lower income households, as defined in Section 50079.5 of the Health and Safety Code.

(B) Five percent of the total units of a housing development for very low income households, as defined in Section 50105 of the Health and Safety Code.

(C) A senior citizen housing development, as defined in Sections 51.3 and 51.12 of the Civil Code, or a mobilehome park that limits residency based on age requirements for housing for older persons pursuant to Section 798.76 or 799.5 of the Civil Code.

(D) Ten percent of the total dwelling units in a common interest development, as defined in Section 4100 of the Civil Code, for persons and families of moderate income, as defined in Section 50093 of the Health and Safety Code, provided that all units in the development are offered to the public for purchase.

(E) Ten percent of the total units of a housing development for transitional foster youth, as defined in Section 66025.9 of the Education Code, disabled veterans, as defined in Section 18541, or homeless persons, as defined in the federal McKinney-Vento Homeless Assistance Act (42 U.S.C. Sec. 11301 et seq.). The units described in this subparagraph shall be subject to a recorded affordability restriction of 55 years and shall be provided at the same affordability level as very low income units.

(F) (i) Twenty percent of the total units for lower income students in a student housing development that meets the following requirements:

(I) All units in the student housing development will be used exclusively for undergraduate, graduate, or professional students enrolled full time at an institution of higher education accredited by the Western Association of Schools and Colleges or the Accrediting Commission for Community and Junior Colleges. In order to be eligible under this subclause, the developer shall, as a condition of receiving a certificate of occupancy, provide evidence to the city, county, or city and county that the developer has entered into an operating agreement or master lease with one or more institutions of higher education for the institution or institutions to occupy all units of the student housing development with students from that institution or institutions. An operating agreement or master lease entered into pursuant to this subclause is not violated or breached if, in any subsequent year, there are not sufficient

students enrolled in an institution of higher education to fill all units in the student housing development.

(II) The applicable 20-percent units will be used for lower income students. For purposes of this clause, "lower income students" means students who have a household income and asset level that does not exceed the level for Cal Grant A or Cal Grant B award recipients as set forth in paragraph (1) of subdivision (k) of Section 69432.7 of the Education Code. The eligibility of a student under this clause shall be verified by an affidavit, award letter, or letter of eligibility provided by the institution of higher education that the student is enrolled in, as described in subclause (I), or by the California Student Aid Commission that the student receives or is eligible for financial aid, including an institutional grant or fee waiver, from the college or university, the California Student Aid Commission, or the federal government shall be sufficient to satisfy this subclause.

(III) The rent provided in the applicable units of the development for lower income students shall be calculated at 30 percent of 65 percent of the area median income for a single-room occupancy unit type.

(IV) The development will provide priority for the applicable affordable units for lower income students experiencing homelessness. A homeless service provider, as defined in paragraph (3) of subdivision (d) of Section 103577 of the Health and Safety Code, or institution of higher education that has knowledge of a person's homeless status may verify a person's status as homeless for purposes of this subclause.

(ii) For purposes of calculating a density bonus granted pursuant to this subparagraph, the term "unit" as used in this section means one rental bed and its pro rata share of associated common area facilities. The units described in this subparagraph shall be subject to a recorded affordability restriction of 55 years.

(G) One hundred percent of the total units, exclusive of a manager's unit or units, are for lower income households, as defined by Section 50079.5 of the Health and Safety Code, except that up to 20 percent of the total units in the development may be for moderate-income households, as defined in Section 50053 of the Health and Safety Code.

(2) For purposes of calculating the amount of the density bonus pursuant to subdivision (f), an applicant who requests a density bonus pursuant to this subdivision shall elect whether the bonus shall be awarded on the basis of subparagraph (A), (B), (C), (D), (E), (F), or (G) of paragraph (1).

(3) For the purposes of this section, "total units," "total dwelling units," or "total rental beds" does not include units added by a density bonus awarded pursuant to this section or any local law granting a greater density bonus.

(c) (1) (A) An applicant shall agree to, and the city, county, or city and county shall ensure, the continued affordability of all very low and low-income rental units that qualified the applicant for the award of the density bonus for 55 years or a longer period of time if required by the construction or mortgage financing assistance program, mortgage insurance program, or rental subsidy program.

(B) (i) Except as otherwise provided in clause (ii), rents for the lower income density bonus units shall be set at an affordable rent, as defined in Section 50053 of the Health and Safety Code.

(ii) For housing developments meeting the criteria of subparagraph (G) of paragraph (1) of subdivision (b), rents for all units in the development, including both base density and density bonus units, shall be as follows:

(I) The rent for at least 20 percent of the units in the development shall be set at an affordable rent, as defined in Section 50053 of the Health and Safety Code.

(II) The rent for the remaining units in the development shall be set at an amount consistent with the maximum rent levels for a housing development that receives an allocation of state or federal low-income housing tax credits from the California Tax Credit Allocation Committee.

(2) An applicant shall agree to, and the city, county, or city and county shall ensure that, the initial occupant of all for-sale units that qualified the applicant for the award of the density bonus are persons and families of very low, low, or moderate income, as required, and that the units are offered at an affordable housing cost, as that cost is defined in Section 50052.5 of the Health and Safety Code. The local government shall enforce an equity sharing agreement, unless it is in conflict with the requirements of another public funding source or law. The following apply to the equity sharing agreement:

(A) Upon resale, the seller of the unit shall retain the value of any improvements, the downpayment, and the seller's proportionate share of appreciation. The local government shall recapture any initial subsidy, as defined in subparagraph (B), and its proportionate share of appreciation, as defined in subparagraph (C), which amount shall be used within five years for any of the purposes described in subdivision (e) of Section 33334.2 of the Health and Safety Code that promote home ownership.

(B) For purposes of this subdivision, the local government's initial subsidy shall be equal to the fair market value of the home at the time of initial sale minus the initial sale price to the moderate-income household, plus the amount of any downpayment assistance or mortgage assistance. If upon resale the market value is lower than the initial market value, then the value at the time of the resale shall be used as the initial market value.

(C) For purposes of this subdivision, the local government's proportionate share of appreciation shall be equal to the ratio of the local government's initial subsidy to the fair market value of the home at the time of initial sale.

(3) (A) An applicant shall be ineligible for a density bonus or any other incentives or concessions under this section if the housing development is proposed on any property that includes a parcel or parcels on which rental dwelling units are or, if the dwelling units have been vacated or demolished in the five-year period preceding the application, have been subject to a recorded covenant, ordinance, or law that restricts rents to levels affordable to persons and families of lower or very low income; subject to any other form of rent or price control through a public entity's valid exercise of its police power; or occupied by lower or very low income households, unless the proposed housing development replaces those units, and either of the following applies:

(i) The proposed housing development, inclusive of the units replaced pursuant to this paragraph, contains affordable units at the percentages set forth in subdivision (b).

(ii) Each unit in the development, exclusive of a manager's unit or units, is affordable to, and occupied by, either a lower or very low income household.

(B) For the purposes of this paragraph, "replace" shall mean either of the following:

(i) If any dwelling units described in subparagraph (A) are occupied on the date of application, the proposed housing development shall provide at least the same number of units of equivalent size to be made available at affordable rent or affordable housing cost to, and occupied by, persons and families in the same or lower income category as those households in occupancy. If the income category of the household in occupancy is not known, it shall be rebuttably presumed that lower income renter households occupied these units in the same proportion of lower income renter households to all renter households within the jurisdiction, as determined by the most recently available data from the United States Department of Housing and Urban Development's Comprehensive Housing Affordability Strategy database. For unoccupied dwelling units described in subparagraph (A) in a development with occupied units, the proposed housing development shall provide units of equivalent size to be made available at affordable rent or affordable housing cost to, and occupied by, persons and families in the same or lower income category as the last household in occupancy. If the income category of the last household in occupancy is not known, it shall be rebuttably presumed that lower income renter households occupied these units in the same proportion of lower income renter households to all renter households within the jurisdiction, as determined by the most recently available data from the United States Department of Housing and Urban Development's Comprehensive Housing Affordability Strategy database. All replacement calculations resulting in fractional units shall be rounded up to the next whole number. If the replacement units will be rental dwelling units, these units shall be subject to a recorded affordability restriction for at least 55 years. If the proposed development is for-sale units, the units replaced shall be subject to paragraph (2).

(ii) If all dwelling units described in subparagraph (A) have been vacated or demolished within the five-year period preceding the application, the proposed housing development shall provide at least the same number of units of equivalent size as existed at the highpoint of those units in the five-year period preceding the application to be made available at affordable rent or affordable housing cost to, and occupied by, persons and families in the same or lower income category as those persons and families in occupancy at that time, if known. If the incomes of the persons and families in occupancy at the highpoint is not known, it shall be rebuttably presumed that low-income and very low income renter households occupied these units in the same proportion of low-income and very low income renter households to all renter households within the jurisdiction, as determined by the most recently available data from the United States Department of Housing and Urban Development's Comprehensive Housing Affordability Strategy database. All replacement calculations resulting in fractional units shall be rounded up to the next whole number. If the

replacement units will be rental dwelling units, these units shall be subject to a recorded affordability restriction for at least 55 years. If the proposed development is for-sale units, the units replaced shall be subject to paragraph (2).

(C) Notwithstanding subparagraph (B), for any dwelling unit described in subparagraph (A) that is or was, within the five-year period preceding the application, subject to a form of rent or price control through a local government's valid exercise of its police power and that is or was occupied by persons or families above lower income, the city, county, or city and county may do either of the following:

(i) Require that the replacement units be made available at affordable rent or affordable housing cost to, and occupied by, low-income persons or families. If the replacement units will be rental dwelling units, these units shall be subject to a recorded affordability restriction for at least 55 years. If the proposed development is for-sale units, the units replaced shall be subject to paragraph (2).

(ii) Require that the units be replaced in compliance with the jurisdiction's rent or price control ordinance, provided that each unit described in subparagraph (A) is replaced. Unless otherwise required by the jurisdiction's rent or price control ordinance, these units shall not be subject to a recorded affordability restriction.

(D) For purposes of this paragraph, "equivalent size" means that the replacement units contain at least the same total number of bedrooms as the units being replaced.

(E) Subparagraph (A) does not apply to an applicant seeking a density bonus for a proposed housing development if the applicant's application was submitted to, or processed by, a city, county, or city and county before January 1, 2015.

(d) (1) An applicant for a density bonus pursuant to subdivision (b) may submit to a city, county, or city and county a proposal for the specific incentives or concessions that the applicant requests pursuant to this section, and may request a meeting with the city, county, or city and county. The city, county, or city and county shall grant the concession or incentive requested by the applicant unless the city, county, or city and county makes a written finding, based upon substantial evidence, of any of the following:

(A) The concession or incentive does not result in identifiable and actual cost reductions, consistent with subdivision (k), to provide for affordable housing costs, as defined in Section 50052.5 of the Health and Safety Code, or for rents for the targeted units to be set as specified in subdivision (c).

(B) The concession or incentive would have a specific, adverse impact, as defined in paragraph (2) of subdivision (d) of Section 65589.5, upon public health and safety or the physical environment or on any real property that is listed in the California Register of Historical Resources and for which there is no feasible method to satisfactorily mitigate or avoid the specific, adverse impact without rendering the development unaffordable to low-income and moderate-income households.

(C) The concession or incentive would be contrary to state or federal law.

(2) The applicant shall receive the following number of incentives or concessions:

(A) One incentive or concession for projects that include at least 10 percent of the total units for lower income households, at least 5 percent for very low income

households, or at least 10 percent for persons and families of moderate income in a common interest development.

(B) Two incentives or concessions for projects that include at least 20 percent of the total units for lower income households, at least 10 percent for very low income households, or at least 20 percent for persons and families of moderate income in a common interest development.

(C) Three incentives or concessions for projects that include at least 30 percent of the total units for lower income households, at least 15 percent for very low income households, or at least 30 percent for persons and families of moderate income in a common interest development.

(D) Four incentives or concessions for projects meeting the criteria of subparagraph (G) of paragraph (1) of subdivision (b). If the project is located within one-half mile of a major transit stop, as defined in subdivision (b) of Section 21155 of the Public Resources Code, the applicant shall also receive a height increase of up to three additional stories, or 33 feet.

(3) The applicant may initiate judicial proceedings if the city, county, or city and county refuses to grant a requested density bonus, incentive, or concession. If a court finds that the refusal to grant a requested density bonus, incentive, or concession is in violation of this section, the court shall award the plaintiff reasonable attorney's fees and costs of suit. Nothing in this subdivision shall be interpreted to require a local government to grant an incentive or concession that has a specific, adverse impact, as defined in paragraph (2) of subdivision (d) of Section 65589.5, upon health, safety, or the physical environment, and for which there is no feasible method to satisfactorily mitigate or avoid the specific adverse impact. Nothing in this subdivision shall be interpreted to require a local government to grant an incentive or concession that would have an adverse impact on any real property that is listed in the California Register of Historical Resources. The city, county, or city and county shall establish procedures for carrying out this section that shall include legislative body approval of the means of compliance with this section.

(4) The city, county, or city and county shall bear the burden of proof for the denial of a requested concession or incentive.

(e) (1) In no case may a city, county, or city and county apply any development standard that will have the effect of physically precluding the construction of a development meeting the criteria of subdivision (b) at the densities or with the concessions or incentives permitted by this section. Subject to paragraph (3), an applicant may submit to a city, county, or city and county a proposal for the waiver or reduction of development standards that will have the effect of physically precluding the construction of a development meeting the criteria of subdivision (b) at the densities or with the concessions or incentives permitted under this section, and may request a meeting with the city, county, or city and county. If a court finds that the refusal to grant a waiver or reduction of development standards is in violation of this section, the court shall award the plaintiff reasonable attorney's fees and costs of suit. Nothing in this subdivision shall be interpreted to require a local government to waive or reduce development standards if the waiver or reduction would have a specific, adverse

impact, as defined in paragraph (2) of subdivision (d) of Section 65589.5, upon health, safety, or the physical environment, and for which there is no feasible method to satisfactorily mitigate or avoid the specific adverse impact. Nothing in this subdivision shall be interpreted to require a local government to waive or reduce development standards that would have an adverse impact on any real property that is listed in the California Register of Historical Resources, or to grant any waiver or reduction that would be contrary to state or federal law.

(2) A proposal for the waiver or reduction of development standards pursuant to this subdivision shall neither reduce nor increase the number of incentives or concessions to which the applicant is entitled pursuant to subdivision (d).

(3) A housing development that receives a waiver from any maximum controls on density pursuant to clause (ii) of subparagraph (D) of paragraph (3) of subdivision (f) shall not be eligible for, and shall not receive, a waiver or reduction of development standards pursuant to this subdivision, other than as expressly provided in subparagraph (D) of paragraph (2) of subdivision (d) and clause (ii) of subparagraph (D) of paragraph (3) of subdivision (f).

(f) For the purposes of this chapter, "density bonus" means a density increase over the otherwise maximum allowable gross residential density as of the date of application by the applicant to the city, county, or city and county, or, if elected by the applicant, a lesser percentage of density increase, including, but not limited to, no increase in density. The amount of density increase to which the applicant is entitled shall vary according to the amount by which the percentage of affordable housing units exceeds the percentage established in subdivision (b).

(1) For housing developments meeting the criteria of subparagraph (A) of paragraph (1) of subdivision (b), the density bonus shall be calculated as follows:

| Percentage Low-Income Units | Percentage Density Bonus |
| --- | --- |
| 10 | 20 |
| 11 | 21.5 |
| 12 | 23 |
| 13 | 24.5 |
| 14 | 26 |
| 15 | 27.5 |
| 17 | 30.5 |
| 18 | 32 |
| 19 | 33.5 |
| 20 | 35 |

(2) For housing developments meeting the criteria of subparagraph (B) of paragraph (1) of subdivision (b), the density bonus shall be calculated as follows:

| Percentage Very Low Income Units | Percentage Density Bonus |
| --- | --- |
| 5 | 20 |

| | |
|---|---|
| 6 | 22.5 |
| 7 | 25 |
| 8 | 27.5 |
| 9 | 30 |
| 10 | 32.5 |
| 11 | 35 |

(3) (A) For housing developments meeting the criteria of subparagraph (C) of paragraph (1) of subdivision (b), the density bonus shall be 20 percent of the number of senior housing units.

(B) For housing developments meeting the criteria of subparagraph (E) of paragraph (1) of subdivision (b), the density bonus shall be 20 percent of the number of the type of units giving rise to a density bonus under that subparagraph.

(C) For housing developments meeting the criteria of subparagraph (F) of paragraph (1) of subdivision (b), the density bonus shall be 35 percent of the student housing units.

(D) For housing developments meeting the criteria of subparagraph (G) of paragraph (1) of subdivision (b), the following shall apply:

(i) Except as otherwise provided in clause (ii), the density bonus shall be 80 percent of the number of units for lower income households.

(ii) If the housing development is located within one-half mile of a major transit stop, as defined in subdivision (b) of Section 21155 of the Public Resources Code, the city, county, or city and county shall not impose any maximum controls on density.

(4) For housing developments meeting the criteria of subparagraph (D) of paragraph (1) of subdivision (b), the density bonus shall be calculated as follows:

| Percentage Moderate-Income Units | Percentage Density Bonus |
|---|---|
| 10 | 5 |
| 11 | 6 |
| 12 | 7 |
| 13 | 8 |
| 14 | 9 |
| 15 | 10 |
| 16 | 11 |
| 17 | 12 |
| 18 | 13 |
| 19 | 14 |
| 20 | 15 |
| 21 | 16 |
| 22 | 17 |
| 23 | 18 |
| 24 | 19 |
| 25 | 20 |
| 26 | 21 |

| | |
|---|---|
| 27 | 22 |
| 28 | 23 |
| 29 | 24 |
| 30 | 25 |
| 31 | 26 |
| 32 | 27 |
| 33 | 28 |
| 34 | 29 |
| 35 | 30 |
| 36 | 31 |
| 37 | 32 |
| 38 | 33 |
| 39 | 34 |
| 40 | 35 |

(5) All density calculations resulting in fractional units shall be rounded up to the next whole number. The granting of a density bonus shall not require, or be interpreted, in and of itself, to require a general plan amendment, local coastal plan amendment, zoning change, or other discretionary approval.

(g) (1) When an applicant for a tentative subdivision map, parcel map, or other residential development approval donates land to a city, county, or city and county in accordance with this subdivision, the applicant shall be entitled to a 15-percent increase above the otherwise maximum allowable residential density for the entire development, as follows:

| Percentage Very Low Income | Percentage Density Bonus |
|---|---|
| 10 | 15 |
| 11 | 16 |
| 12 | 17 |
| 13 | 18 |
| 14 | 19 |
| 15 | 20 |
| 16 | 21 |
| 17 | 22 |
| 18 | 23 |
| 19 | 24 |
| 20 | 25 |
| 21 | 26 |
| 22 | 27 |
| 23 | 28 |
| 24 | 29 |
| 25 | 30 |
| 26 | 31 |
| 27 | 32 |

| 28 | 33 |
| 29 | 34 |
| 30 | 35 |

(2) This increase shall be in addition to any increase in density mandated by subdivision (b), up to a maximum combined mandated density increase of 35 percent if an applicant seeks an increase pursuant to both this subdivision and subdivision (b). All density calculations resulting in fractional units shall be rounded up to the next whole number. Nothing in this subdivision shall be construed to enlarge or diminish the authority of a city, county, or city and county to require a developer to donate land as a condition of development. An applicant shall be eligible for the increased density bonus described in this subdivision if all of the following conditions are met:

(A) The applicant donates and transfers the land no later than the date of approval of the final subdivision map, parcel map, or residential development application.

(B) The developable acreage and zoning classification of the land being transferred are sufficient to permit construction of units affordable to very low income households in an amount not less than 10 percent of the number of residential units of the proposed development.

(C) The transferred land is at least one acre in size or of sufficient size to permit development of at least 40 units, has the appropriate general plan designation, is appropriately zoned with appropriate development standards for development at the density described in paragraph (3) of subdivision (c) of Section 65583.2, and is or will be served by adequate public facilities and infrastructure.

(D) The transferred land shall have all of the permits and approvals, other than building permits, necessary for the development of the very low income housing units on the transferred land, not later than the date of approval of the final subdivision map, parcel map, or residential development application, except that the local government may subject the proposed development to subsequent design review to the extent authorized by subdivision (i) of Section 65583.2 if the design is not reviewed by the local government before the time of transfer.

(E) The transferred land and the affordable units shall be subject to a deed restriction ensuring continued affordability of the units consistent with paragraphs (1) and (2) of subdivision (c), which shall be recorded on the property at the time of the transfer.

(F) The land is transferred to the local agency or to a housing developer approved by the local agency. The local agency may require the applicant to identify and transfer the land to the developer.

(G) The transferred land shall be within the boundary of the proposed development or, if the local agency agrees, within one-quarter mile of the boundary of the proposed development.

(H) A proposed source of funding for the very low income units shall be identified not later than the date of approval of the final subdivision map, parcel map, or residential development application.

(h) (1) When an applicant proposes to construct a housing development that conforms to the requirements of subdivision (b) and includes a childcare facility that will be located on the premises of, as part of, or adjacent to, the project, the city, county, or city and county shall grant either of the following:

(A) An additional density bonus that is an amount of square feet of residential space that is equal to or greater than the amount of square feet in the childcare facility.

(B) An additional concession or incentive that contributes significantly to the economic feasibility of the construction of the childcare facility.

(2) The city, county, or city and county shall require, as a condition of approving the housing development, that the following occur:

(A) The childcare facility shall remain in operation for a period of time that is as long as or longer than the period of time during which the density bonus units are required to remain affordable pursuant to subdivision (c).

(B) Of the children who attend the childcare facility, the children of very low income households, lower income households, or families of moderate income shall equal a percentage that is equal to or greater than the percentage of dwelling units that are required for very low income households, lower income households, or families of moderate income pursuant to subdivision (b).

(3) Notwithstanding any requirement of this subdivision, a city, county, or city and county shall not be required to provide a density bonus or concession for a childcare facility if it finds, based upon substantial evidence, that the community has adequate childcare facilities.

(4) "Childcare facility," as used in this section, means a child daycare facility other than a family daycare home, including, but not limited to, infant centers, preschools, extended daycare facilities, and schoolage childcare centers.

(i) "Housing development," as used in this section, means a development project for five or more residential units, including mixed-use developments. For the purposes of this section, "housing development" also includes a subdivision or common interest development, as defined in Section 4100 of the Civil Code, approved by a city, county, or city and county and consists of residential units or unimproved residential lots and either a project to substantially rehabilitate and convert an existing commercial building to residential use or the substantial rehabilitation of an existing multifamily dwelling, as defined in subdivision (d) of Section 65863.4, where the result of the rehabilitation would be a net increase in available residential units. For the purpose of calculating a density bonus, the residential units shall be on contiguous sites that are the subject of one development application, but do not have to be based upon individual subdivision maps or parcels. The density bonus shall be permitted in geographic areas of the housing development other than the areas where the units for the lower income households are located.

(j) (1) The granting of a concession or incentive shall not require or be interpreted, in and of itself, to require a general plan amendment, local coastal plan amendment, zoning change, study, or other discretionary approval. For purposes of this subdivision, "study" does not include reasonable documentation to establish eligibility for the

concession or incentive or to demonstrate that the incentive or concession meets the definition set forth in subdivision (k). This provision is declaratory of existing law.

(2) Except as provided in subdivisions (d) and (e), the granting of a density bonus shall not require or be interpreted to require the waiver of a local ordinance or provisions of a local ordinance unrelated to development standards.

(k) For the purposes of this chapter, concession or incentive means any of the following:

(1) A reduction in site development standards or a modification of zoning code requirements or architectural design requirements that exceed the minimum building standards approved by the California Building Standards Commission as provided in Part 2.5 (commencing with Section 18901) of Division 13 of the Health and Safety Code, including, but not limited to, a reduction in setback and square footage requirements and in the ratio of vehicular parking spaces that would otherwise be required that results in identifiable and actual cost reductions, to provide for affordable housing costs, as defined in Section 50052.5 of the Health and Safety Code, or for rents for the targeted units to be set as specified in subdivision (c).

(2) Approval of mixed-use zoning in conjunction with the housing project if commercial, office, industrial, or other land uses will reduce the cost of the housing development and if the commercial, office, industrial, or other land uses are compatible with the housing project and the existing or planned development in the area where the proposed housing project will be located.

(3) Other regulatory incentives or concessions proposed by the developer or the city, county, or city and county that result in identifiable and actual cost reductions to provide for affordable housing costs, as defined in Section 50052.5 of the Health and Safety Code, or for rents for the targeted units to be set as specified in subdivision (c).

(*l*) Subdivision (k) does not limit or require the provision of direct financial incentives for the housing development, including the provision of publicly owned land, by the city, county, or city and county, or the waiver of fees or dedication requirements.

(m) This section does not supersede or in any way alter or lessen the effect or application of the California Coastal Act of 1976 (Division 20 (commencing with Section 30000) of the Public Resources Code). Any density bonus, concessions, incentives, waivers or reductions of development standards, and parking ratios to which the applicant is entitled under this section shall be permitted in a manner that is consistent with this section and Division 20 (commencing with Section 30000) of the Public Resources Code.

(n) If permitted by local ordinance, nothing in this section shall be construed to prohibit a city, county, or city and county from granting a density bonus greater than what is described in this section for a development that meets the requirements of this section or from granting a proportionately lower density bonus than what is required by this section for developments that do not meet the requirements of this section.

(o) For purposes of this section, the following definitions shall apply:

(1) "Development standard" includes a site or construction condition, including, but not limited to, a height limitation, a setback requirement, a floor area ratio, an onsite open-space requirement, or a parking ratio that applies to a residential development pursuant to any ordinance, general plan element, specific plan, charter, or other local condition, law, policy, resolution, or regulation.

(2) "Maximum allowable residential density" means the density allowed under the zoning ordinance and land use element of the general plan, or, if a range of density is permitted, means the maximum allowable density for the specific zoning range and land use element of the general plan applicable to the project. If the density allowed under the zoning ordinance is inconsistent with the density allowed under the land use element of the general plan, the general plan density shall prevail.

(p) (1) Except as provided in paragraphs (2), (3), and (4), upon the request of the developer, a city, county, or city and county shall not require a vehicular parking ratio, inclusive of handicapped and guest parking, of a development meeting the criteria of subdivisions (b) and (c), that exceeds the following ratios:

(A) Zero to one bedroom: one onsite parking space.
(B) Two to three bedrooms: two onsite parking spaces.
(C) Four and more bedrooms: two and one-half parking spaces.

(2) Notwithstanding paragraph (1), if a development includes the maximum percentage of low-income or very low income units provided for in paragraphs (1) and (2) of subdivision (f) and is located within one-half mile of a major transit stop, as defined in subdivision (b) of Section 21155 of the Public Resources Code, and there is unobstructed access to the major transit stop from the development, then, upon the request of the developer, a city, county, or city and county shall not impose a vehicular parking ratio, inclusive of handicapped and guest parking, that exceeds 0.5 spaces per bedroom. For purposes of this subdivision, a development shall have unobstructed access to a major transit stop if a resident is able to access the major transit stop without encountering natural or constructed impediments.

(3) Notwithstanding paragraph (1), if a development consists solely of rental units, exclusive of a manager's unit or units, with an affordable housing cost to lower income families, as provided in Section 50052.5 of the Health and Safety Code, then, upon the request of the developer, a city, county, or city and county shall not impose a vehicular parking ratio, inclusive of handicapped and guest parking, that exceeds the following ratios:

(A) If the development is located within one-half mile of a major transit stop, as defined in subdivision (b) of Section 21155 of the Public Resources Code, and there is unobstructed access to the major transit stop from the development, the ratio shall not exceed 0.5 spaces per unit.

(B) If the development is a for-rent housing development for individuals who are 62 years of age or older that complies with Sections 51.2 and 51.3 of the Civil Code, the ratio shall not exceed 0.5 spaces per unit. The development shall have either paratransit service or unobstructed access, within one-half mile, to fixed bus route service that operates at least eight times per day.

(4) Notwithstanding paragraphs (1) and (8), if a development consists solely of rental units, exclusive of a manager's unit or units, with an affordable housing cost to lower income families, as provided in Section 50052.5 of the Health and Safety Code, and the development is either a special needs housing development, as defined in Section 51312 of the Health and Safety Code, or a supportive housing development, as defined in Section 50675.14 of the Health and Safety Code, then, upon the request of the developer, a city, county, or city and county shall not impose any minimum vehicular parking requirement. A development that is a special needs housing development shall have either paratransit service or unobstructed access, within one-half mile, to fixed bus route service that operates at least eight times per day.

(5) If the total number of parking spaces required for a development is other than a whole number, the number shall be rounded up to the next whole number. For purposes of this subdivision, a development may provide onsite parking through tandem parking or uncovered parking, but not through onstreet parking.

(6) This subdivision shall apply to a development that meets the requirements of subdivisions (b) and (c), but only at the request of the applicant. An applicant may request parking incentives or concessions beyond those provided in this subdivision pursuant to subdivision (d).

(7) This subdivision does not preclude a city, county, or city and county from reducing or eliminating a parking requirement for development projects of any type in any location.

(8) Notwithstanding paragraphs (2) and (3), if a city, county, city and county, or an independent consultant has conducted an areawide or jurisdictionwide parking study in the last seven years, then the city, county, or city and county may impose a higher vehicular parking ratio not to exceed the ratio described in paragraph (1), based upon substantial evidence found in the parking study, that includes, but is not limited to, an analysis of parking availability, differing levels of transit access, walkability access to transit services, the potential for shared parking, the effect of parking requirements on the cost of market-rate and subsidized developments, and the lower rates of car ownership for low-income and very low income individuals, including seniors and special needs individuals. The city, county, or city and county shall pay the costs of any new study. The city, county, or city and county shall make findings, based on a parking study completed in conformity with this paragraph, supporting the need for the higher parking ratio.

(9) A request pursuant to this subdivision shall neither reduce nor increase the number of incentives or concessions to which the applicant is entitled pursuant to subdivision (d).

(q) Each component of any density calculation, including base density and bonus density, resulting in fractional units shall be separately rounded up to the next whole number. The Legislature finds and declares that this provision is declaratory of existing law.

(r)  This chapter shall be interpreted liberally in favor of producing the maximum number of total housing units.

(Amended (as amended by Stats. 2018, Ch. 937) by Stats. 2019, Ch. 666, Sec. 1.  (AB 1763) Effective January 1, 2020.)