# EXHIBIT 3

## SEC. 12.22.  EXCEPTIONS.

A.  **Use.**

1.  **Private Garage Not Required – Topography –** Where a lot abuts upon a street or place which due to topographic conditions or excessive grades is not accessible by automobile, and such lot is to be occupied by not more than a one–family dwelling, no private garage shall be required.

2.  **Public Utilities and Public Services –** The provisions of this article shall not be so construed as to limit or interfere with the construction, installation, operation and maintenance for public utility purposes of water and gas pipes, mains and conduits, electric light and electric power transmission and distribution lines, telephone and telegraph lines, oil pipe lines, sewers and sewer mains, and incidental appurtenances.

3.  **Family Day Care Homes.  (Title and Subdiv. Amended by Ord. No. 173,085, Eff. 3/19/00.)** Notwithstanding any other provisions of this article to the contrary, and in all zones wherein residential uses are permitted by right the following shall apply:

(a)  **Small Family Day Care Homes**:  Any dwelling unit may be used as a small family day care home, with up to eight children, as defined in Section 12.03, if it is licensed by the State of California as a small family day care home.  **(Amended by Ord. No. 176,545, Eff. 5/2/05.)**

(b)  **Large Family Day Care Homes**:  Any dwelling unit may be used as a large family day care home, with up to 14 children, as defined in Section 12.03, if it is licensed by the State of California as a large family day care home, and if it complies with the conditions set forth in Subparagraph (1) below.  **(Amended by Ord. No. 176,545, Eff. 5/2/05.)**

(1)  **Conditions**.  A large family day care home shall comply with the following conditions:

(i)  Provide drop-off facilities, such as curb spaces or driveway area, which are necessary to avoid interference with traffic and promote the safety of the children;

(ii)  Comply with any standards adopted by the State Fire Marshal pursuant to Subdivision (d) of Section 1597.46 of the California Health and Safety Code relating to large family day care homes;

(iii)  Comply with all provisions of the Los Angeles Municipal Code relating to large family day care homes and dwelling units;

(iv)  The use shall not create an unreasonable level of disruption or interference with the peaceful enjoyment of the adjoining and neighboring properties;

(v)  Name plates and signs shall conform to the provisions of Section 12.21 A.7.;

(vi)  Play equipment, swings, sandboxes, or structures shall be located in the rear yard only;

(vii)  No loud speaker or public address system shall be installed or operated on any open portion of the premises, and any phonograph, radio or other recorded music used in connection with any activity shall be sufficiently modulated to ensure that the use does not disturb the adjoining and neighboring residents;

(viii)    The existing residential character of the building and site shall be maintained, including the exterior facade, landscaping, fences, walls, lawn area, and driveways;

(ix)    The floor space of any dwelling unit used for the operation of a large family day care home shall not be increased for such use, and the floor space shall not be altered to reasonably preclude its continued use as a dwelling unit; and

(x)    There shall be at least 300 feet between the lot containing the building where the proposed large family day care home will be located and the building housing any existing large family day care home.  This distance is to be measured along the shortest street route between the two lots as determined by the Department of Recreation and Parks.  **(Second Sentence Amended by Ord. No. 181,192, Eff. 7/27/10.)**

(2)    **Notice of Intention to Operate Large Family Day Care Home**.  **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** A Notice of Intention to Operate a Large Family Day Care Home shall be filed in the public office of the Department of City Planning, on forms provided by the Department.  The forms shall be accompanied by all information deemed necessary by the Department.  The notice shall include verification provided by the Department of Recreation and Parks that the large family day care home is in compliance with the concentration and spacing condition set forth in Section 12.22 A.3.(b)(1)(x) above.  **(Sentence Amended by Ord. No. 181,192, Eff. 7/27/10.)**  No fee shall be charged and no public hearing shall be required in connection with the filing of the notice.

(3)    **Exemption from Concentration and Spacing Condition**.  If a proposed Large Family Day Care Home is not in compliance with the concentration and spacing condition set forth in Section 12.22 A.3.(b)(1)(x) above, then the operator may apply to the Zoning Administrator for an exemption from this condition pursuant to Section 12.24 X.25.  **(Amended by Ord. No. 176,545, Eff. 5/2/05.)**

(4)    **Violation of Conditions - Authority of Zoning Administrator to Require Modification of Conditions of Operation or Discontinuance of Large Family Day Care Homes.**    Notwithstanding any other provision of this Code, the Zoning Administrator may require a modification of the conditions of operation or the discontinuance of a large family day care home if the Zoning Administrator finds that as operated or maintained there has been a violation of any of the conditions or standards set forth in Subparagraph (1) of Paragraph (b) of this subdivision, or that such use:

(i)    jeopardizes or endangers the public health or safety of persons residing in, working on, or occupying the premises; or

(ii)    constitutes a public nuisance; or

(iii)    violates any provision of this chapter or any other city, state or federal regulations, ordinance or statute.

The procedure for the modification of the conditions of operation or discontinuance of a large family day care home shall be as provided for in Section 12.27.1 of this Code.

4.    **Sale of Christmas Trees** – Notwithstanding any provisions of this article to the contrary, the annual retail sale, including sales by philanthropic, political, patriotic, and charitable associations, of

Christmas trees and ornaments shall be permitted in all zones, except the RE, RS, R1, RU, RZ, and RMP Zones, between December first and twenty-fifth, inclusive, and the necessary permits and licenses may be issued provided that: **(Amended by Ord. No. 164,904, Eff. 7/6/89.)**

(a)   Any lights used to illuminate the site shall be arranged to reflect the light away from any adjacent residentially-zoned property except that this restriction does not apply to frosted light bulbs of 100 watts or less; and

(b)   There shall be no use of any sound equipment in the residential zone in conjunction with the retail sale of Christmas trees; and

(c)   The operator of such a sale of Christmas trees shall post a Two Hundred Dollar ($200.00) cleanup deposit with the Office of the City Clerk prior to any lot preparation or sales; and

(d)   The operator of such a sale of Christmas trees shall comply with all other applicable provisions of the Los Angeles Municipal Code.

5.   **(Title and First Para. Deleted by Ord. No. 172,489, Eff. 4/16/99.)**

(a)   **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** Notwithstanding any other provisions of Articles 2 and 3 of this chapter to the contrary, no oil well, controlled drill site or temporary geological exploratory hole may be permitted in an A, R, P or C Zone within the area located between the mean high tide line of the City's shoreline and a line 1,000 yards landward from that line.  This prohibition shall not be construed or interpreted as affecting:

(1)   any shore line areas within the Los Angeles Harbor except for Cabrillo Beach;

(2)   any oil well, controlled drill site or a facility for the production of oil gases or other hydrocarbon substances in existence on the effective date of this subdivision;

(3)   any connected subterranean gas holding areas and facilities that are operated as a public utility pursuant to Section 14.00; and

(4)   subsurface drilling and producing operations more than 500 feet below the surface of this area.

(b)   Ordinances 159,607, 159,608 and 159,609, which created Oil Drilling Districts U–171–A, U–172–A and U–173–A, respectively, to allow exploration and production of oil within 1,000 yards of the mean high tide in the City of Los Angeles, are hereby repealed.

(c)   This subdivision shall apply to all supplemental use districts within this area for which a vested right for production of oil has not accrued as of the effective date of this subdivision

(d)   If any provision or clause of this Ordinance or the application thereof to any person or circumstance is held to be unconstitutional or otherwise invalid by any court of competent jurisdiction, such invalidity shall not affect other Ordinance provisions thereof which can be implemented without the invalid provision, clause or application, and to this end the provisions and causes of this ordinance are declared to be severable.

**[Subdivision 5(a) - (d) adopted by the voters as Initiative Ordinance "O" on November 8, 1988, Eff. 11/30/88.]**

6.   **Infrequent Helicopter Landings.(Amended by Ord. No. 150,623, Eff. 4/13/78.)** – Notwithstanding any provision of this article to the contrary, helicopters may land and take off in any

zone except RA, R, C1 and CR Zones, provided that a permit therefore has first been obtained from the Fire Department under the provisions of Division 5, Article 7 of Chapter 5 of this Code. Such helicopter landings and takeoffs shall not exceed three per day in or upon any single location or premises except that the Fire Department may permit as many such landings and takeoffs in or upon any single location or premises in a day as it determines are required by the individual nature of each such helicopter use, including occasions of civic interest, and are consistent with the public health, safety, general welfare and intent of this article. In the RA, R, C1 or CR Zones helicopters may land and take off in or upon any single location not more than two times per calendar year in a park, school ground or other similar type of public open space, for educational programs sponsored by the Los Angeles Police Department or the Los Angeles City Unified School District, provided that the Fire Department permit referred to above has first been obtained. Nothing herein shall prevent nor curtail the operation of emergency helicopter landing facilities as required in Section 57.4705 of the Los Angeles Municipal Code.

The provisions of this subdivision shall not be construed or interpreted as permitting the establishment of a regularly operating airport, aircraft landing field, heliport or helistop.

7. **Temporary Operations of Carnivals and Rides. (Added by Ord. No. 130,076, Eff. 5/26/65.)** – Notwithstanding any provisions of this article to the contrary, carnival shows and amusement enterprises of a similar type may be operated in the P Zone for a period of not to exceed five consecutive days in any 30 day period in or upon any single location, provided that:

    (1)  All such operations are conducted at least 200 feet from any school or adjoining occupied property classified in any A or R Zone.

    (2)  Such operations do not cause or produce any dust, gas, smoke, noise, fumes, odors, or vibrations detrimental to other property in the neighborhood or to the welfare of the occupants thereof.

    (3)  Any lights used to illuminate the event are arranged so as to reflect the light away from any adjacent residentially used premises.

    (4)  No public address system in connection with the event is installed on the property unless it is modulated so as not to be disturbing to occupants of any nearby dwelling units.

    (5)  All structures, apparatus and appurtenances shall be removed from the premises the next day following the closing of the carnival.

    (6)  The hours of such operation to be limited between the hours of 10:00 a.m. and 10:00 p.m.

8. **Occasional Use of Private Homes for Adult Education Classes. (Added by Ord. No. 132,573, Eff. 8/5/66.)** – Notwithstanding any provision of this article to the contrary, adult education classes shall be permitted in homes in the RA or R Zones and no additional off-street parking shall be required in conjunction therewith, provided that:

    (a)  Classes are held not more than one day a week for a period not to exceed three hours per day end each class does not meet for more than fifteen weeks in any one semester.

    (b)  Classes are purely incidental to the use of the property as a home and no more than thirty persons are permitted to attend each class.

    (c)  Classes primarily involve oral discussions and no laboratory equipment, heavy machinery, or large tools are used in connection therewith, except small record players, slide projectors and other similar audiovisual teaching aids.

(d)    All classes are scheduled on the first floor of the building.

For the purpose of this subdivision "**adult education classes**" shall mean any educational programs conducted by University Extension of University of California or any other comparable university.

No certificate of occupancy shall be required in connection with the use authorized by this ordinance.

9.    **Maintenance of Accessory Structures.   (Amended by Ord. No. 172,839, Eff. 11/1/99.)** Notwithstanding any provisions of this article to the contrary, an accessory building or structure may be maintained on a lot without a main building and a residential building may be maintained on a lot without the required off-street parking for the periods of time as authorized by the Advisory Agency in conformance with Article 7 of Chapter 1 of this Code.

10.    **Model.   (Amended by Ord. No. 174,999, Eff. 1/15/03.)**  Notwithstanding any other provision of this article, a model or models, as defined in Article 7 of Chapter 1 of this Code, may be erected and maintained on any lot or site designated by the Advisory Agency as a site for a model or models on an approved or conditionally approved tentative map, in the A, RE, RS, R1, RU, RZ, RMP, or RW1 Zones with respect to one-family homes, and in the R2, RD, RW2, R3, RAS3, R4, RAS4, or R5 Zones with respect to multiple unit structures, i.e., buildings containing more than one dwelling unit, for a period of time as determined by the Advisory Agency, provided that:

(a)    In an "**H**" hillside or mountainous area, a grading plan for the entire approved or conditionally approved subdivision or any final map unit thereof has been approved by the Grading Division of the Department of Building and Safety and a Grading Certificate has been issued for the property involved or that the grading is being carried on under the authorization of a valid grading permit.

(b)    Necessary easements for the installation of water system facilities and underground utilities have been dedicated and the developer has guaranteed the cost of relocation or future adjustment of these facilities to the satisfaction of the Department of Water and Power.

(c)    The owner assumes liability for any damage caused to water system facilities and underground utilities prior to final street improvements in a manner satisfactory to the Department of Water and Power.

(d)    Adequate fire protection facilities are provided to the satisfaction of the Fire Department.

(e)    Adequate sewer facilities are provided to the satisfaction of the Bureau of Engineering and the Los Angeles County Health Department.

(f)    A paved access roadway at least 20 feet in width is provided which is satisfactory to the Department of Building and Safety.

(g)    Off-street parking be provided as follows:

(1)    For multiple unit structures, the numbers and location of the off-street parking facilities shall be determined by the Advisory Agency;

(2)    For one-family detached structures, one lot for each six model dwellings or fraction thereof shall be located contiguous to the model dwelling sites. All off-street parking facilities and driveways shall be dust-proofed with asphaltic surfacing or with

decomposed granite which is sprinkled at sufficient intervals to prevent dust, or by an alternate method of dust control satisfactory to the Department of Building and Safety.

(h)    The model dwelling sites are attractively maintained and, with respect to one-family detached structures, attractively landscaped.

(i)   Not more than one sign is placed on each designated model dwelling. Said sign shall not exceed 12 square feet in area and shall be used only for identification or directional purposes. Prohibited are banners, posters, pennants, ribbons, streamers, string of light bulbs, spinners, or other similarly moving devices.

(j)   Any furnishings placed in the model dwelling are maintained solely for purposes accessory to the display of the model dwelling and in no way used to sell or promote the sale of such furnishings.

(k)   Prior to the issuance of any building permit for a model dwelling, the property owner shall first execute and file with the Superintendent of Building a notarized agreement assuming all risks and agreeing to all of the conditions set forth in this Subdivision 10. With respect to one-family detached structures, the agreement shall further provide that in the event that a final map which includes the property whereon the model dwelling is located is not recorded, all buildings or structures authorized by said permit shall be removed, within 90 days from the expiration of the tentative tract, and that if all buildings and structures are not completely removed as required above, they may be confiscated and removed or demolished by the City without further notice. Prior to the erection of any model dwelling that is a one–family detached structure, authorized pursuant to the approval of any subdivision and contingent thereon, the property owner shall post in the Department of Building and Safety a bond in favor of the City of Los Angeles (to be approved by the City Attorney and duplicates to be furnished to him) in an amount satisfactory to the Department of Building and Safety sufficient to defray any expense incurred by the City in the removal or demolition of the model dwelling or dwellings. The bond shall be released to the property owner or person legally entitled thereto either upon recordation of the subdivision tract map or upon removal of the concerned structures or buildings, as the case may be, to the satisfaction of the Superintendent of Building. **(Amended by Ord. No. 158,561. Eff. 1/14/84.)**

(l)    This subdivision shall apply to approved or conditionally approved tentative tract maps which include model dwelling units and which have not been recorded as of the effective date of this ordinance.  **(Added by Ord. No. 158,561, Eff. 1/14/84.)**

11.    **(Amended by Ord. No. 145,410, Eff. 2/16/74.)** Notwithstanding any other provisions of this article, a real estate tract sales office may be established and maintained in one model dwelling approved in accordance with the provisions of Section 12.22 A.10. or in a dwelling constructed on a recorded lot previously designated as a model dwelling site by the Advisory Agency and temporarily serving as an example of houses or units built or to be built in the same subdivision, provided that:

(a)   No general real estate brokerage business is conducted on the premises, and any business transacted thereon is limited to the original sale of vacant or improved land shown on the tentative map or units of airspace shown on the condominium plan.

(b)   All name plates and signs conform to the provisions of Section 12.21 A.7.

(c)   The tract sales office is attractively maintained and, where located in a one-family detached structure, is attractively landscaped.

(d)    The property owner has first executed and filed with the Superintendent of Building a notarized agreement agreeing to comply with all other provisions of this Subdivision and, further,

agreeing that after all dwelling units in the development are initially sold or rented, all tract sales being conducted within the structure will cease; all signs will be entirely removed from the premises; any residential type of sliding glass door in a private garage doorway will be replaced with a conventional private garage door, and any sales office activity located in a private garage will be discontinued and this area reconverted for the storage of private vehicles. **(Amended by Ord. No. 158,561, Eff. 1/14/84.)**

12. **(Added by Ord. No. 149,472, Eff. 5/14/77.)** Notwithstanding any other provision of this article, equipment and material storage yards used exclusively in connection with public facilities projects may be located in the A, R and C Zones, provided the following conditions are complied with.

(a)   That such storage activities not be commenced prior to the execution of the construction contract with the governmental entity authorizing such work, and such storage activity be terminated within 30 days of the expiration of the contract or 30 days after completion of the construction, whichever comes first.

(b)   That no storage or related activities be located closer than 25 feet to any residential improvement unless a solid 8 foot high fence be constructed along the entire property line adjoining such improvement, except at parking of employees' personal vehicles shall be permitted within the 25 foot buffer area, and such parking area need not comply with the requirements of Section 12.21 A.6. of this article.

(c)   That the premises and grounds be frequently sprinkled and watered to prevent dust from becoming a nuisance to the neighboring residents.

(d)   That there be no stockpiling of materials above 8 feet.

(e)   That hours of operation including servicing and maintenance of all stored equipment be only between 7:00 a.m. and 6:00 p.m., and at no time on Saturdays, Sundays or holidays except in emergencies.

Prior to the use of any land for equipment and material storage activities pursuant to this Subdivision, the operator or operators of such storage yard shall obtain a certificate of occupancy of land as provided for in Section 12.26 E. of the Los Angeles Municipal Code. Where it can be shown to the satisfaction of the Superintendent of Building that the conditions of this Subdivision are not being complied with, the Superintendent may revoke the certificate of occupancy. Such revocation may be appealed to the Board of Building and Safety Commissioners pursuant to the provisions of Section 98.0403 of this Code.

13. **Infrequent Use of Property for Commercial Filming.  (Amended by Ord. No. 170,516, Eff. 6/18/95.)**  Notwithstanding any of the provisions of this article to the contrary, property in all zones may be used for the purpose of infrequent filming of commercial motion pictures and still photographs, provided that a permit therefor has first been obtained from the City Council, or whomever the Council by order, resolution or ordinance may delegate such authority.  The City Council, or whomever the Council by order, resolution or ordinance may delegate such authority shall adopt such rules and regulations concerning the issuance of said permits as may be necessary to assure that filming will be conducted at such times and in such a manner as to cause a minimum of interference with the enjoyment and use of adjacent property, and consistent with public health, safety and general welfare.

14. **(None)**

15. **Parking Requirements For Showcase Theaters.  (Added by Ord No 148,910, Eff. 11/18/76.)** Notwithstanding any provision of this article to the contrary, the parking for showcase theaters required under Section 12.21 A.4.(e) (g) (i) (m); Section 12.21 A.5.; and Section 12.26 C. and 12.26 E.5. may be provided on the site, or off the site under a written agreement approved by the City Attorney and the

Superintendent of Building. Where off-site parking is provided under any written agreement other than a Parking Covenant, such agreement shall be for a minimum of one year and shall be signed by the theater operator and the lessee or owner of the property upon which the required parking spaces shall be located. This agreement shall remain in effect for the duration of the existence of the showcase theater. Such agreement shall be filed with the Department of Building and Safety.

Where the parking covenant or other written agreement provides for parking on a lot which does not meet the design standards set forth in Section 12.21 A.5. and 12.21 A.6., but which parking area met the applicable Municipal Code design standard when originally established, such spaces shall be accepted for purposes of this Subdivision without compliance with the provisions of Section 12.21 A.5. and 12.21 A.6.

16. **Outside Automobile Hoists. (Amended by Ord. No. 172,468, Eff. 4/1/99.)** Any type of outside automobile hoist in the C2, C4, C5, CM or M1 Zones is prohibited.

17. **Temporary Residency in Residential Vehicle Pending Reconstruction of Disaster – Destroyed Dwelling. (Added by Ord. No. 153,144, Eff. 12/28/79.)**

(a) **Use of Land Permit.** Notwithstanding any other provision of this Code to the contrary, the Department of Building and Safety may issue a use of land permit to any resident–owner of a single–family dwelling destroyed by disaster to temporarily place and reside in a residential vehicle upon the subject property. Such use of land permit shall be limited to a period of one year from the date of the subject disaster, during which period a building permit for the reconstruction of the subject dwelling unit must be obtained. When such a building permit is obtained the use of land permit shall be valid for an additional period to total no more than two years from the date of the subject disaster or until the dwelling unit is complete, whichever occurs first. No other extension of time shall be granted for such use of land permit.

(b) **Fence Requirement.** Where a residential vehicle is placed within a required yard area, such residential vehicle shall be screened from public view by a fence constructed to the specifications of Section 91.4401 (c) of this Code; on corner lots, the restrictions of Section 62.200 of this Code shall also apply. Such fence shall be maintained in good condition and appearance.

(c) **Yard Area Requirements.** Such residential vehicle must observe five–foot front, side and rear yards and adequate access shall be assured to permit the removal of such residential vehicle after reconstruction of the disaster-destroyed dwelling unit.

(d) **Site Restoration.** Within thirty (30) days of the removal of the residential vehicle, all equipment and utilities accessory to such residential vehicle and any nonconforming fence constructed pursuant to this section shall be removed and the site restored to permitted use and condition.

18. **Developments Combining Residential and Commercial Uses.** Except where the provisions of Section 12.24.1 of this Code apply, notwithstanding any other provision of this chapter to the contrary, the following uses shall be permitted in the following zones subject to the following limitations: **(Amended by Ord. No. 163,679, Eff. 7/18/88.)**

(a) Any use permitted in the R5 Zone on any lot in the CR, C1, C1.5, C2, C4 or C5 Zones provided that such lot is located within the Central City Community Plan Area or within an area designated on an adopted community plan as "Regional Center" or "Regional Commercial". Any combination of R5 uses and the uses permitted in the underlying commercial zone shall also be permitted on such lot. **(Amended by Ord. No. 182,452, Eff. 4/4/13.)**

(b)   Any use permitted in the CR, C1, C1.5, C2, C4 or C5 Zones on any lot in the R5 Zone provided that the lot is located within the Central City Community Plan Area.  Any combination of these commercial and residential uses shall also be permitted on the lot.  Commercial uses or any combination of commercial and residential uses may be permitted on any lot in the R5 Zone by conditional use pursuant to Section 12.24 W.15. outside the Central City Community Plan Area.  **(Amended by Ord. No. 182,452, Eff. 4/4/13.)**

(c)   **Yards.** Except as provided herein, the yard requirements of the zone in which the lot is located shall apply.

(1)   The yard requirements of the C2 Zone shall apply to buildings located on lots in the R5 Zone in a redevelopment project area approved by the City Council if such buildings are used exclusively for commercial uses.

(2)   The following yard requirements shall apply to buildings located on lots in the R5 Zone which are used for any combination of commercial and residential uses:

(i)   The yard requirements of the C2 Zone shall apply to the portions of such buildings used exclusively for commercial uses.

(ii)   No yard requirements shall apply to the portions of such buildings which are used exclusively for residential uses and which abut a street, private street or alley, if the first floor of such buildings at ground level is used for commercial uses or access to the residential portions of such buildings.

(3)   No yard requirements shall apply to the residential portions of buildings located on lots in the CR, C1, C1.5, C2, C4, and C5 Zones used for combined commercial and residential uses, if such portions are used exclusively for residential uses, abut a street, private street or alley, and the first floor of such buildings at ground level is used for commercial uses or for access to the residential portions of such buildings.

(4)   No yards shall be required along air space lot boundaries within the interior of buildings.

(d)   The residential and commercial density, maximum floor area or height otherwise permitted for any lot shall not be increased by reason of the existence of one or more air space lots.

(e)   **Pedestrian Bridges.** Residential uses in a building combining residential and commercial uses shall be limited to the floors above the level of a connecting pedway or pedestrian bridge except that the Director of Planning may modify or waive this requirement if the Director finds unusual topography or other special circumstances justify such modification or waiver.

(f)   **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** In the event of a conflict between the terms of this subdivision and the terms of a specific plan enacted prior to December 31, 1981, the terms of the specific plan shall prevail.  The terms of this subdivision shall not apply within the boundaries of the Century City North Specific Plan.

19.   **Dwelling Adjacent to An Equinekeeping Use**.  **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** Notwithstanding any provision of this Code to the contrary, the City shall not issue a building permit for a residential building (excluding non-habitable rooms) that is less than 35 feet from a legally established equine use, unless the Zoning Administrator makes an exception in accordance with Section 12.24 X.5.

20.   **Adult Entertainment Businesses. (Amended by Ord. No. 161,111, Eff. 5/18/86.)**

(a)   **Exceptions from Section 12.70 C.**

(i)   A person may establish and maintain, or continue to operate, an adult entertainment business on a lot within 500 feet of an "**A**" or "**R**" Zone, or within the "**CR**," "**C1**" or "**C1.5**" Zones, if a site consistent with Section 12.70 C. is not reasonably available elsewhere in the City for the establishment or relocation of the subject adult entertainment business. This exception shall only apply to an adult entertainment business which is otherwise in compliance with all other provisions of this chapter including Section 12.70 C.

A site is "**reasonably available**" elsewhere in the City if it meets all of the following criteria:

(1)   Its use as the proposed adult entertainment business is consistent with all applicable zoning regulations, including Section 12.70 C.

(2)   It is available for use, purchase, or rental as an adult entertainment business.

(3)   It has adequate street access, street lighting, and sidewalks.

(4)   It is at least 500 feet away from any uses which are or may become obnoxious or offensive by reason of emission of odor, dust, smoke, noise, gas, fumes, cinders, refuse matter or water carried waste.

This exception shall not apply to massage parlors or sexual encounter establishments.

(ii)   **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** To apply for an exception, an applicant shall file an application with the Department of City Planning, on a form provided by the Department, identifying the present or proposed location of the adult entertainment business, and accompanied by data supporting the proposed exception and the fee provided for in Section 19.01 of this Code.

The procedures described in Section 12.24 shall be followed to the extent applicable. However, a hearing shall be held and a decision made within 60 days from the date of filing of an application.  This time limit may be extended by mutual written consent of the applicant and the Zoning Administrator.  An exception shall be approved if it meets the requirements of Subparagraph (i) above.

An appeal from the determination of the Zoning Administrator on whether a proposed exception meets the requirements of Subparagraph (i) may be taken to the Area Planning Commission in the same manner as prescribed in Section 12.24 I.  The Area Planning Commission's decision may be appealed to the City Council.  The appeal to the Council shall follow the procedures set forth in Section 12.24 I. However, a decision on any appeal shall be made within 30 days of the expiration of the appeal period.  This time limit may be extended by mutual written consent of the applicant and the Area Planning Commission or Council, whichever then has jurisdiction over the appeal.

If the Zoning Administrator, Area Planning Commission or Council disapproves an exception, then it shall make findings of fact showing how a site consistent with Section 12.70 C. is reasonably available elsewhere in the City for the establishment or relocation of the subject adult entertainment business.

(b)  **Extensions of the Section 12.70 C. Amortization Period.**

6/24/2020 Case 2:17-cv-09003-SVW-PJW Document 208-3 Filed 06/24/20 Page 12 of 65 Page ID #:4778

(i)  An adult entertainment business existing on March 6, 1986 and operating within 500 feet of a lot in an "**A**" Zone of "**R**" Zone or, within the "**CR**", "**C1**", or "**C1.5**" Zones may be continued, as specified below:

    (1)  If the adult entertainment business is otherwise in compliance with all other provisions of this chapter including Section 12.70 C.; and

    (2)  If the adult entertainment business is subject to a written lease, entered into prior to March 6, 1986, with a termination date extending beyond March 6, 1988, then the adult entertainment. business may continue until the expiration of the present term of the lease but no later than March 6, 1991; or

    (3)  If the adult entertainment business invokes the investment of money in real property, improvements, or stocks in trade such that a termination date beyond March 6, 1988 is necessary to prevent undue financial hardship, then it may be continued until March 6, 1991.

    (ii)  **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** To apply for an extension of time, an applicant shall file an application with the Department of City Planning, on a form provided by the Department, identifying the present or proposed location of the adult entertainment business, and accompanied by data supporting the extension request and the fee provided for in Section 19.01 of this Code.  An extension shall be approved if it meets the requirements of Subparagraph (i) above.

    The procedures described in Section 12.24 shall be followed to the extent applicable.  However, a hearing shall be held and a decision made within 60 days from the date of filing.  This time limit may be extended by mutual written consent of the applicant and the Zoning Administrator.

    An appeal from the determination of the Zoning Administrator on whether a proposed exception meets the requirements of Subparagraph (i) may be taken to the Area Planning Commission in the same manner as prescribed in Section 12.24I.  The Area Planning Commission's decision may be appealed to the City Council.  The appeal to the Council shall follow the procedures set forth in Section 12.24I.  However, a decision on any appeal shall be made within 30 days of the expiration of the appeal period.  This time limit may be extended by mutual written consent of the applicant and the Area Planning Commission or Council, whichever then has jurisdiction over the appeal.

    If the Zoning Administrator, Area Planning Commission or Council disapproves an extension, then it shall make findings of fact showing how the proposed extension fails to meet the requirements of Subparagraph (i).

21.  **(Deleted by Ord. No. 171,687, Eff. 8/19/97.)**

22.  **(Deleted by Ord. No. 170,752, Eff. 12/14/95.)**

23.  **Mini-Shopping Centers and Commercial Corner Development.  (Amended by Ord. No. 175,223, Eff. 6/30/03.)**  If the requirements set forth in Paragraph (a) and the conditions set forth in Paragraph (b) of this subdivision are met, and the proposed use or uses are not enumerated in Section 12.24 W.27., then a conditional use approval pursuant to Section 12.24 W.27. shall not be required for any new use, change of use or addition of floor area to a Mini-Shopping Center or a Commercial Corner Development.

    (a)  **Development Standards.**

(1) **Height.** Buildings or structures located in Height District Nos. 1 and 1-L shall not exceed a maximum height of 45 feet. However, buildings or structures shall comply with the provisions of Section 12.21.1 A.10., "Transitional Height," of this Code.

(2) **Front Yard.** The front yard requirements set forth in Sections 12.12.2 C., 12.13 C.1. and 12.13.5 B.1. of this Code shall not apply to Mini-Shopping Centers or Commercial Corner Developments.

(3) **Windows.** The exterior walls and doors of a ground floor containing non-residential uses that front adjacent streets shall consist of at least fifty percent transparent windows, unless otherwise prohibited by law.

(4) **Parking.**

(i) Notwithstanding Section 12.21 A.5.(h) of this Code to the contrary, no tandem parking shall be permitted, except those spaces reserved exclusively for residential use.

(ii) Bicycle parking shall be provided as required by Section 12.21 A.16. of this Code.

(iii) Parking in the Downtown Business District shall be provided as required by Section 12.21 A.4.(i) of this Code.

(5) **Lighting.** All public areas of the lot or lots not covered by a building shall have night lighting for safety and security. All other open exterior areas, such as walkways and trash areas, shall have low-level, security-type lighting. All exterior lighting shall be directed onto the lot or lots, and all flood lighting shall be designed to eliminate glare to adjoining properties. All parking areas shall have a minimum of 3/4 foot-candle of flood lighting measured at the pavement.

(6) **Signs.**

(i) In addition to the requirements set forth in Division 62 of this Code, no person shall erect on the lot or lots the following signs, as defined in Section 91.6203 of this Code without first obtaining a conditional use permit: pole signs; projecting signs; or roof signs.

(ii) Monument signs and information signs shall be located only within the landscape-planted areas of the lot or lots.

(7) **Utilities.** All new utility lines which directly service the lot or lots shall be installed underground. If underground service is not currently available, then provisions shall be made for future underground service.

(8) **Walls and Trash Storage.** A solid masonry wall at least six feet in height shall be erected along the lot lines of the lot or lots where the lot or lots abut or are across an alley from any residential zone or use, except for that portion of the lot line where an access driveway is required by the City. Trash storage bins shall be located within a gated, covered enclosure constructed of materials identical to the exterior wall materials of the building.

6/24/2020    Case 2:17-cv-09003-JAK-PJW    Document 208-3, filed 06/24/20    Page 14 of 65    Page ID #:4780

(9)  **Recycling Area or Room.**  Every Mini-Shopping Center or Commercial Corner Development shall conform to the requirements of Section 12.21 A.19.(c) of this Code.

(10)  **Landscaping.**  All landscaping shall comply with Sections 12.41, 12.42 and 12.43 of this Code and the following requirements:

(i)  **Landscaping - Setback.  (Amended by Ord. No. 177,103, Eff. 12/18/05.)**  A landscaped, planted area having a minimum inside width of five feet shall be required along all street frontages of the lot and on the perimeters of all parking areas of the lot or lots which abut a residential zone or use.

Notwithstanding the above, in the Downtown Business District as defined in Section 12.21 A.4.(i) of this Code, a landscape (planted) area having a minimum inside width of five feet shall be required on the perimeters of all parking areas of the lot which abut a residential zone or use.

(ii)  **Irrigation System.**  An automatic irrigation system shall be provided for all landscaped areas.  This system shall be installed prior to the issuance of any certificate of occupancy.

(b)  **Conditions of Operation.**  A Mini-Shopping Center or a Commercial Corner Development shall comply with the following conditions:

(1)  **Maintenance.**  The condition of the lot or lots, including but not limited to parking areas, exterior walls, required lighting, and landscaped areas, shall at all times be maintained in a safe and sanitary condition and in a state of good repair.  Exterior wall surfaces shall at all times be kept free from graffiti and any marks of vandalism.

(2)  **Debris Removal.**  The lot or lots shall at all times be kept clear of weeds, rubbish, and all types of litter and combustible materials.  Trash receptacles shall be located throughout the open areas of the lot or lots.

(3)  **Hours.**  Parking lot cleaning and sweeping, and trash collections from and deliveries to a Mini-Shopping Center or Commercial Corner Development, shall occur no earlier than 7 a.m., nor later than 8 p.m., Monday through Friday, and no earlier than 10 a.m., nor later than 4 p.m., on Saturdays and Sundays.

(4)  **Landscape Maintenance.**  Maintenance of landscaped areas shall include continuous operations of watering, removal of weeds, mowing, trimming, edging, cultivation, reseeding, plant replacement, fertilization, spraying, control of pests, insects, and rodents, or other operations necessary to assure normal plant growth.  All trees, shrubs and ground cover shall be maintained as healthy and vigorous at all times. Irrigation systems, installed pursuant to the requirements in Subsubparagraph (a)(10)(ii) above shall be continuously maintained in accordance with Section 12.41 B.5. of this Code.

(5)  **Covenant.**  Prior to the issuance of a building permit or land use permit, the owner of the lot or lots shall execute and record a covenant and agreement in a form satisfactory to the Director of Planning, acknowledging that the owner shall implement each of the conditions set forth in Paragraph (b) of this subdivision, and shall not permit the erection of any of the signs enumerated in Paragraph (a)(6) of this subdivision or the establishment of any uses enumerated in Section 12.24 W.27. of this Code without first obtaining a conditional use approval.  The covenant and agreement shall run with the land and be binding upon the owners, and any assignees, lessees, heirs, and successors of the owners.

Case 2:17-cv-09003-JAK-PJW Document 208-5 Filed 06/24/20 Page 15 of 65 Page ID #:4781

The City's right to enforce the covenant and agreement is in addition to any other remedy provided by law.

(c)   **Existing Building Changed to Mini-Shopping Center or Commercial Corner Development.**

(1)   An existing building or buildings may be converted to a Mini-Shopping Center or to a Commercial Corner Development without first obtaining a conditional use approval if all of the following requirements are met:

(i)   all alterations result in no more than a twenty percent increase in the existing floor area of all of the buildings on a lot or lots;

(ii)   the proposed Mini-Shopping Center or the Commercial Corner Development use or uses are not enumerated in Section 12.24 W.27.;

(iii)   no sign identified in Paragraph (a)(6) of this subdivision shall be erected on the site; and

(iv)   the proposed Mini-Shopping Center or the Commercial Corner Development complies with the conditions of operation of Paragraph (b) of this subdivision.

(2)   For an existing Mini-Shopping Center, or existing Commercial Corner Development use, no person shall establish as a new use, any of the uses enumerated in Section 12.24 W.27. of this subdivision without first obtaining a conditional use approval.

(d)   **Exemptions.** The following Projects shall not be subject to this subdivision:

(1)   A Mixed Use Project as defined in Section 13.09 B.3. that consists of predominantly residential uses and does not contain commercial uses enumerated in Section 12.24 W.27.;

(2)   Adaptive Reuse Projects as defined in Section 12.22 A.26.; and

(3)   Libraries, governmental offices, police stations, fire stations, and other government owned related facilities or uses.

(e)   **Specific Plan Compliance.**   If, as determined by the Director of Planning or his/her designee, the provisions of this Section conflict with those of an adopted Specific Plan, then the provisions of the Specific Plan shall prevail.

24.   **Mobile Medical Facilities and Bloodmobiles.  (Added by Ord. No. 166,045, Eff. 8/17/90.)**

(a)   Notwithstanding any provision of this article to the contrary, any mobile medical facility may operate once a month for no more than 72 consecutive hours, in any single established parking area, in the P, PB, CR, C1, C1.5, C2, C4, CM, M1, M2 and M3 Zones, provided the parking area meets all requirements of the Municipal Code for a parking area and the operation of the facility does not obstruct any driveway access aisle or required parking space.

(b)   Notwithstanding any provision of the article to the contrary, any bloodmobile may operate once a month for no more than 72 consecutive hours, in any single established parking area in any zone, provided the parking area meets all requirements of the Municipal Code for a parking

area and the operation of the bloodmobile does not obstruct any driveway access aisle or required parking space.

(c)   Notwithstanding any provision of this article to the contrary, any mobile medical facility may operate once a week for no more that 72 consecutive hours, in any single established hospital parking area, in the P, PB, CR, C1, C1.5, C2, C4, CM, M1, M2 and M3 zones, provided the parking area meets all requirements of the Municipal Code for a parking area and the operation of the facility does not obstruct any driveway access aisle or required parking space.  **(Added by Ord. No. 170,161, Eff. 1/16/95.)**

25.   **Affordable Housing Incentives - Density Bonus.   (Amended by Ord. No. 179,681, Eff. 4/15/08.)**

(a)   **Purpose.**   The purpose of this subdivision is to establish procedures for implementing State Density Bonus requirements, as set forth in California Government Code Sections 65915-65918, and to increase the production of affordable housing, consistent with City policies.

(b)   **Definitions.**   Notwithstanding any provision of this Code to the contrary, the following definitions shall apply to this subdivision:

**Affordable Housing Incentives Guidelines** - the guidelines approved by the City Planning Commission under which Housing Development Projects for which a Density Bonus has been requested are evaluated for compliance with the requirements of this subdivision.

**Area Median Income (AMI)** - the median income in Los Angeles County as determined annually by the California Department of Housing and Community Development (HCD) or any successor agency, adjusted for household size.

**Density Bonus** - a density increase over the otherwise maximum allowable residential density under the applicable zoning ordinance and/or specific plan granted pursuant to this subdivision.

**Density Bonus Procedures** - procedures to implement the City's Density Bonus program developed by the Departments of Building and Safety, City Planning and Housing.

**Disabled Person** - a person who has a physical or mental impairment that limits one or more major life activities, anyone who is regarded as having that type of an impairment or, anyone who has a record of having that type of an impairment.

**Floor Area Ratio** - the multiplier applied to the total buildable area of the lot to determine the total floor area of all buildings on a lot.

**Housing Development Project** - the construction of five or more new residential dwelling units, the addition of five or more residential dwelling units to an existing building or buildings, the remodeling of a building or buildings containing five or more residential dwelling units, or a mixed use development in which the residential floor area occupies at least fifty percent of the total floor area of the building or buildings.  For the purpose of establishing the minimum number of five dwelling units, Restricted Affordable Units shall be included and density bonus units shall be excluded.

**Incentive** - a modification to a City development standard or requirement of Chapter I of this Code (zoning).

**Income, Very Low, Low or Moderate** - annual income of a household that does not exceed the amounts designated for each income category as determined by HCD or any successor agency.

**Residential Hotel** - any building containing six or more Guest Rooms or Efficiency Dwelling Units, which are intended or designed to be used, or are used, rented, or hired out to be occupied, or are occupied for sleeping purposes by guests, so long as the Guest Rooms or Efficiency Dwelling Units are also the primary residence of those guests, but not including any building containing six or more Guest Rooms or Efficiency Dwelling Units, which is primarily used by transient guests who do not occupy that building as their primary residence.

**Residential Unit** - a dwelling unit or joint living and work quarters; a mobilehome, as defined in California Health and Safety Code Section 18008; a mobile home lot in a mobilehome park, as defined in California Health and Safety Code Section 18214; or a Guest Room or Efficiency Dwelling Unit in a Residential Hotel.

**Restricted Affordable Unit** - a residential unit for which rental or mortgage amounts are restricted so as to be affordable to and occupied by Very Low, Low or Moderate Income households, as determined by the Housing and Community Investment Department. **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

**Senior Citizens** - individuals who are at least 62 years of age, except that for projects of at least 35 units that are subject to this subdivision, a threshold of 55 years of age may be used, provided all applicable City, state and federal regulations are met.

**Senior Citizen Housing Develop- ment**- a Housing Development Project for senior citizens that has at least 35 units.

**Specific Adverse Impact** - a significant, quantifiable, direct, and unavoidable impact, based on objective, identified written public health or safety standards, policies, or conditions as they existed on the date the application was deemed complete.

**Transit Stop/Major Employment Center** - any one of the following:

    (1)   A station stop for a fixed transit guideway or a fixed rail system that is currently in use or whose location is proposed and for which a full funding contract has been signed by all funding partners, or one for which a resolution to fund a preferred alignment has been adopted by the Los Angeles County Metropolitan Transportation Authority or its successor agency; or

    (2)   A Metro Rapid Bus stop located along a Metro Rapid Bus route; or, for a Housing Development Project consisting entirely of Restricted Affordable Units, any bus stop located along a Metro Rapid Bus route; or

    (3)   The boundaries of the following three major economic activity areas, identified in the General Plan Framework Element: Downtown, LAX and the Port of Los Angeles; or

    (4)   The boundaries of a college or university campus with an enrollment exceeding 10,000 students.

(c) **Density Bonus.** Notwithstanding any provision of this Code to the contrary, the following provisions shall apply to the grant of a Density Bonus for a Housing Development Project:

(1) **For Sale or Rental Housing with Low or Very Low Income Restricted Affordable Units.** A Housing Develop- ment Project that includes 10% of the total units of the project for Low Income households or 5% of the total units of the project for Very Low Income households, either in rental units or for sale units, shall be granted a minimum Density Bonus of 20%, which may be applied to any part of the Housing Development Project. The bonus may be increased according to the percentage of affordable housing units provided, as follows, but shall not exceed 35%:

| Percentage Low Income Units | Percentage Density Bonus |
|---|---|
| 10 | 20 |
| 11 | 21.5 |
| 12 | 23 |
| 13 | 24.5 |
| 14 | 26 |
| 15 | 27.5 |
| 16 | 29 |
| 17 | 30.5 |
| 18 | 32 |
| 19 | 33.5 |
| 20 | 35 |

| Percentage Very Low Income Units | Percentage Density Bonus |
|---|---|
| 5 | 20 |
| 6 | 22.5 |
| 7 | 25 |
| 8 | 27.5 |
| 9 | 30 |
| 10 | 32.5 |
| 11 | 35 |

(2) **For Sale or Rental Senior Citizen Housing (Market Rate).** A Senior Citizen Housing Development or a mobile- home park that limits residency based on age requirements for housing for older persons pursuant to California Civil Code Sections 798.76 or 799.5 shall be granted a minimum Density Bonus of 20%.

(3) **(Deleted by Ord. No. 181,142, Eff. 6/1/10.)**

(4) **A Common Interest Develop-ment That Includes Moderate Income Restricted Affordable Units. (Amended by Ord. No. 181,142, Eff. 6/1/10.)** A common interest development as defined in Section 1351 of the Civil Code that includes at least 10% of its units for Moderate Income households shall be granted a minimum Density Bonus of 5%. The bonus may be increased according to the percentage of affordable housing units provided, as follows, but shall not exceed 35%:

| Percentage<br>Moderate Income Units | Percentage<br>Density Bonus |
|---|---|
| 10 | 5 |
| 11 | 6 |
| 12 | 7 |
| 13 | 8 |
| 14 | 9 |
| 15 | 10 |
| 16 | 11 |
| 17 | 12 |
| 18 | 13 |
| 19 | 14 |
| 20 | 15 |
| 21 | 16 |
| 22 | 17 |
| 23 | 18 |
| 24 | 19 |
| 25 | 20 |
| 26 | 21 |
| 27 | 22 |
| 28 | 23 |
| 29 | 24 |
| 30 | 25 |
| 31 | 26 |
| 32 | 27 |
| 33 | 28 |
| 34 | 29 |
| 35 | 30 |
| 36 | 31 |
| 37 | 32 |
| 38 | 33 |
| 39 | 34 |
| 40 | 35 |

(5) **Land Donation.** An applicant for a subdivision, parcel map or other residential development approval that donates land for housing to the City of Los Angeles satisfying the criteria of California Government Code Section 65915(h)(2), as verified by the Department of City Planning, shall be granted a minimum Density Bonus of 15%.

(6) **Child Care.** A Housing Development Project that conforms to the requirements of Subparagraphs (1), (2), (3), (4) or (5) of this paragraph and includes a child care facility

located on the premises of, as part of, or adjacent to, the project, shall be granted either of the following:

>   (i)   an additional Density Bonus that is, for purposes of calculating residential density, an increase in the floor area of the project equal to the floor area of the child care facility included in the project.

>   (ii)   An additional Incentive that contributes significantly to the economic feasibility of the construction of the child care facility.

(7)   **Fractional Units.**   In calculating Density Bonus and Restricted Affordable units, any number resulting in a fraction shall be rounded up to the next whole number.

(8)   **Other Discretionary Approval.**   Approval of Density Bonus units shall not, in and of itself, trigger other discretionary approvals required by the Code.

(9)   **Other Affordable Housing Subsidies.**   Approval of Density Bonus units does not, in and of itself, preclude projects from receipt of other government subsidies for affordable housing.

(10)   **Additional Option for Restricted Affordable Units located near Transit Stop/Major Employment Center.**   In lieu of providing the requisite number of Restricted Affordable Units in a Housing Development Project located in or within 1,500 feet of a Transit Stop/Major Employ- ment Center that would otherwise be required under this subdivision, an applicant may opt to provide a greater number of smaller units, provided that:

>   (i)   the total number of units in the Housing Development Project including Density Bonus units does not exceed the maximum permitted by this subdivision;

>   (ii)   the square footage of the aggregate smaller Restricted Affordable units is equal to or greater than the square footage of the aggregate Restricted Affordable Units that would otherwise be required under this subdivision;

>   (iii)   the smaller Restricted Affordable units are distributed throughout the building and have proportionally the same number of bedrooms as the market rate units; and

>   (iv)   the smaller Restricted Affordable Units meet the minimum unit size requirements established by the Low Income Housing Tax Credit Program as administered by the California Tax Credit Allocation Committee (TCAC).

(11)   **Common Interest Development with Low or Very Low Income restricted Affordable Units for Rent.**   In a common interest development as defined in California Government Code Section 1351, such as a condominium, Restricted Affordable Units may be for sale or for rent.

(12)   **Condominium Conversion.**   A Housing Development Project that involves the conversion of apartments into condominiums and that includes 33 percent of its units restricted to households of Low or Moderate income or 15 percent of its units restricted to households of Very Low Income shall be granted a Density Bonus of 25 percent or up to three incentives as provided in Paragraph (e) of this subdivision.

(d) **Parking in a Housing Development Project.** Required parking spaces for a Housing Development Project that is for sale or for rent and qualifies for a Density Bonus and complies with this subdivision may be provided by complying with whichever of the following options requires the least amount of parking: applicable parking provisions of Section 12.21 A.4. of this Code, or Parking Option 1 or Parking Option 2, below. Required parking in a Housing Development Project that qualifies for a Density Bonus may be sold or rented separately from the dwelling units, so that buyers and tenants have the option of purchasing or renting a unit without a parking space. The separate sale or rental of a dwelling unit and a parking space shall not cause the rent or purchase price of a Restricted Affordable Unit (or the parking space) to be greater than it would otherwise have been.

(1) **Parking Option 1.** Required parking for all residential units in the Housing Development Project (not just the restricted units), inclusive of handicapped and guest parking, shall be reduced to the following requirements:

(i) For each Residential Unit of 0-1 bedroom: 1 on-site parking space.

(ii) For each Residential Unit of 2-3 bedrooms: 2 on-site parking spaces.

(iii) For each Residential Unit of 4 or more bedrooms: 2-1/2 on-site parking spaces.

(2) **Parking Option 2.** Required parking for the Restricted Affordable Units only shall be reduced as set forth in Subparagraphs (i) and (ii) below. Required parking for all other non-restricted units in the Housing Development Project shall comply with applicable provisions of Section 12.21 of this Code.

(i) One parking space per Restricted Affordable Unit, except:

a. 0.5 parking space for each dwelling unit restricted to Low or Very Low Income Senior Citizens or Disabled Persons; and/or

b. 0.25 parking space for each Restricted Affordable Unit in a Residential Hotel.

(ii) Up to 40% of the required parking for the Restricted Affordable Units may be provided by compact stalls.

(e) **Incentives.**

(1) In addition to the Density Bonus and parking options identified in Paragraphs (c) and (d) of this subdivision, a Housing Development Project that qualifies for a Density Bonus shall be granted the number of Incentives set forth in the table below.

| Number of Incentiv.es | Required Percentage* of Units Restricted for Very Low Income Households | Required Percentage* of Units Restricted for Low Income Households | Required Percentage* of Units Restricted for Moderate Income Households (For Sale Only) |
|---|---|---|---|
| One Incentive | 5% or | 10% or | 10% |
| Two Incentives | 10% or | 20% or | 20% |
| Three Incentives | 15% or | 30% or | 30% |

\* Excluding Density Bonus units.

(2)   To be eligible for any on-menu incentives, a Housing Development Project (other than an Adaptive Reuse project) shall comply with the following:

(i)   The facade of any portion of a building that abuts a street shall be articulated with a change of material or with a break in plane, so that the facade is not a flat surface.

(ii)   All buildings must be oriented to the street by providing entrances, windows, architectural features and/or balconies on the front and along any street-facing elevations.

(iii)   The Housing Development Project shall not be a contributing structure in a designated Historic Preservation Overlay Zone and shall not be on the City of Los Angeles list of Historical-Cultural Monuments.

(iv)   The Housing Development Project shall not be located on a substandard street in a Hillside Area or in a Very High Fire Hazard Severity Zone as established in Section 57.4908 of this Code.

(f)   **Menu of Incentives.**   Housing Development Projects that meet the qualifications of Paragraph (e) of this subdivision may request one or more of the following Incentives, as applicable:

(1)   **Yard/Setback.**   Up to 20% decrease in the required width or depth of any individual yard or setback except along any property line that abuts an R1 or more restrictively zoned property provided that the landscaping for the Housing Development Project is sufficient to qualify for the number of landscape points equivalent to 10% more than otherwise required by Section 12.40 of this Code and Landscape Ordinance Guidelines "O."

(2)   **Lot Coverage.**  Up to 20% increase in lot coverage limits, provided that the landscaping for the Housing Development Project is sufficient to qualify for the number of landscape points equivalent to 10% more than otherwise required by Section 12.40 of this Code and Landscape Ordinance Guidelines "O".

(3)   **Lot Width.**  Up to 20% decrease from a lot width requirement, provided that the landscaping for the Housing Development Project is sufficient to qualify for the number of landscape points equivalent to 10% more than otherwise required by Section 12.40 of this Code and Landscape Ordinance Guidelines "O".

(4)   **Floor Area Ratio.**

(i)   A percentage increase in the allowable Floor Area Ratio equal to the percentage of Density Bonus for which the Housing Development Project is eligible, not to exceed 35%; or

(ii)   In lieu of the otherwise applicable Floor Area Ratio, a Floor Area Ratio not to exceed 3:1, provided the parcel is in a  commercial zone in Height District 1 (including 1VL, 1L and 1XL), and fronts on a Major Highway as identified in the City's General Plan, and

Case 2:17-cv-09003-SJK-PJW Document 208-3 Filed 06/24/20 Page 23 of 65 Page ID #:4789

a.  the Housing Develop- ment Project includes the number of Restricted Affordable Units sufficient to qualify for a 35% Density Bonus, and

b.  50% or more of the commercially zoned parcel is located in or within 1,500 feet of a Transit Stop/Major Employ- ment Center.

A Housing Development Project in which at least 80% of the units in a rental project are Restricted Affordable Units or in which 45% of the units in a for-sale project are Restricted Affordable Units shall be exempt from the requirement to front on a Major Highway.

(5)  **Height.**  A percentage increase in the height requirement in feet equal to the percentage of Density Bonus for which the Housing Development Project is eligible.  This percentage increase in height shall be applicable over the entire parcel regardless of the number of underlying height limits.  For purposes of this subparagraph, Section 12.21.1 A.10. of this Code shall not apply.

(i)  In any zone in which the height or number of stories is limited, this height increase shall permit a maximum of eleven additional feet or one additional story, whichever is lower, to provide the Restricted Affordable Units.

(a)  No additional height shall be permitted for that portion of a  of a building in a Housing Development Project that is located within fifteen feet of a lot classified in the R2 Zone.

(b)  For each foot of additional height the building shall be set back one horizontal foot.

(ii)  No additional height shall be permitted for that portion of a building in a Housing Development Project that is located within 50 feet of a lot classified in an R1 or more restrictive residential zone.

(iii)  No additional height shall be permitted for any portion of a building in a Housing Development Project located on a lot sharing a common lot line with or across an alley from a lot classified in an R1 or more restrictive zone.  This prohibition shall not apply if the lot on which the Housing Development Project is located is within 1,500 feet of a Transit Stop but no additional height shall be permitted for that portion of a building in the Housing Development Project that is located within 50 feet of a lot classified in an R1 or more restrictive residential zone.

(6)  **Open Space.**  Up to 20% decrease from an open space requirement, provided that the landscaping for the Housing Development Project is sufficient to qualify for the number of landscape points equivalent to 10% more than otherwise required by Section 12.40 of this Code and Landscape Ordinance Guidelines "O".

(7)  **Density Calculation.**  The area of any land required to be dedicated for street or alley purposes may be included as lot area for purposes of calculating the maximum density permitted by the underlying zone in which the project is located.

(8)  **Averaging of Floor Area Ratio, Density, Parking or Open Space, and permitting Vehicular Access.**  A Housing Development Project that is located on two or more contiguous parcels may average the floor area, density, open space and parking over

the project site, and permit vehicular access from a less restrictive zone to a more restrictive zone, provided that:

    (i)   the Housing Development Project includes 11% or more of the units as Restricted Affordable Units for Very Low Income households, or 20% of the units for Low Income households, or 30% of the units for Moderate Income households; and

    (ii)   the proposed use is permitted by the underlying zone(s) of each parcel; and

    (iii)   no further lot line adjustment or any other action that may cause the Housing Development Project site to be subdivided subsequent to this grant shall be permitted.

(g)  **Procedures.**

  (1)  **Density Bonus and Parking.**  Housing Development Projects requesting a Density Bonus without any Incentives (which includes a Density Bonus with only parking requirements in accordance with Paragraphs (c) and (d) of this subdivision) shall be considered ministerial and follow the Affordable Housing Incentives Guidelines and the Density Bonus Procedures.  No application for these projects need be filed with the City Planning Department.

  (2)  **Requests for Incentives on the Menu.**

    (i)   The applicant for Housing Development Projects that qualify for a Density Bonus and that request up to three Incentives on the Menu of Incentives in Paragraph (f) of this subdivision, and which require no other discretionary actions, the following procedures shall apply:

      a.  **Application.**  The request shall be made on a form provided by the Department of City Planning, as set forth in Section 11.5.7 B.2.(a) of this Code, accompanied by applicable fees.

      b.  **Authority.  (Amended by Ord. No. 182,106, Eff. 5/20/12.)**  The Director shall be the initial decision maker for applications seeking on Menu incentives.

      **EXCEPTION:**  When the application is filed as part of a project requiring multiple approvals, the initial decision maker shall be as set forth in Section 12.36 of this Code; and when the application is filed in conjunction with a subdivision and no other approval, the Advisory Agency shall be the initial decision-maker.

      c.  **Action.**  The Director shall approve a Density Bonus and requested Incentive(s) unless the Director finds that:

        (i)   The Incentive is not required in order to provide for affordable housing costs as defined in California Health and Safety Code Section 50052.5, or Section

50053 for rents for the affordable units; or

(ii)  The Incentive will have a Specific Adverse Impact upon public health and safety or the physical environment or on any real property that is listed in the California Register of Historical Resources and for which there is no feasible method to satisfactorily mitigate or avoid the Specific Adverse Impact without rendering the development unaffordable to Very Low, Low and Moderate Income households. Inconsistency with the zoning ordinance or general plan land use designation shall not constitute a specific, adverse impact upon the public health or safety.

d.  **Transmittal of Written Decision.**  Within three business days of making a decision, the Director shall transmit a copy by First Class Mail to the applicant and to all owners of properties abutting, across the street or alley from, or having a common corner with the subject property, and to the local Certified Neighborhood Council.

e.  **Effective Date of Initial Decision.**  The Director's decision shall become effective after an elapsed period of 15 calendar days from the date of the mailing of the written decision unless an appeal is filed to the City Planning Commission.

f.  **Appeals.  (Amended by Ord. No. 182,106, Eff. 5/20/12.)**  An applicant or any owner or tenant of a property abutting, across the street or alley from, or having a common corner with the subject property aggrieved by the Director's decision may appeal the decision to the City Planning Commission pursuant to applicable procedures set forth in Section 11.5.7 C.6. of this Code that are not in conflict with the provisions of this paragraph (g)(2)(i).  The appeal shall include a filing fee pursuant to Section 19.01 B. of this Code.  Before acting on any appeal, the City Planning Commission shall set the matter for hearing, with written notice of the hearing sent by First Class Mail at least ten days prior to the meeting date to:  the applicant; the owner(s) of the property involved; and the interested parties who have requested notice in writing.  The appeal shall be placed on the agenda for the first available meeting date of the City Planning Commission and acted upon within 60 days from the last day of the appeal period.  The City Planning Commission may reverse or modify, in whole or in part, a decision of the Director.  The City Planning Commission shall make the same findings required to be made by the

Director, supported by facts in the record, and indicate why the Director erred making the determination.

> **EXCEPTION:** When the application is filed as part of a project requiring multiple approvals, the appeals procedures set forth in Section 12.36 of this Code shall govern. When the application is filed in conjunction with a Parcel Map and no other approval, the appeals procedures set forth in Section 17.54 of this Code shall govern. When the application is filed in conjunction with a tentative map and no other approval, the appeals procedures set forth in Section 17.06 A.3. of this Code shall govern, provided that such applications shall only be appealable to the Appeal Board, as defined in Section 17.02 of this Code, and shall not be subject to further appeal to the City's legislative body.

(ii) For Housing Development Projects that qualify for a Density Bonus and for which the applicant requests up to three Incentives listed in Paragraph (f), above, and that require other discretionary actions, the applicable procedures set forth in Section 12.36 of this Code shall apply.

> a. The decision must include a separate section clearly labeled "Density Bonus/ Affordable Housing Incentives Program Determination".

> b. The decision-maker shall approve a Density Bonus and requested Incentive(s) unless the decision-maker, based upon substantial evidence, makes either of the two findings set forth in Subparagraph (2)(i)(c), above.

(3) **Requests for Waiver or Modification of any Development Standard(s) Not on the Menu.**

(i) For Housing Development Projects that qualify for a Density Bonus and for which the applicant request a waiver or modification of any development standard(s) that is not included on the Menu of Incentives in Paragraph (f), above, and that are not subject to other discretionary applications, the following shall apply:

> a. The request shall be made on a form provided by the Department of City Planning, accompanied by applicable fees, and shall include a pro forma or other documentation to show that the waiver or modification of any development standard(s) are needed in order to make the Restricted Affordable Units economically feasible.

> b. **Notice and Hearing.** The application shall follow the procedures for conditional uses set forth in Section 12.24 D. of this Code. A public hearing shall be held by the City Planning Commission or its designee. The decision of the City Planning Commission shall be final.

> c. The City Planning Commission shall approve a Density Bonus and requested waiver or modification of any development standard(s) unless the Commission, based upon substantial evidence, makes either of the two findings set forth in Subparagraph (g)(2)(i)c., above.

(ii) For Housing Development Projects requesting waiver or modification of any development standard(s) not included on the Menu of Incentives in Paragraph

(f) above, and which include other discretionary applications, the following shall apply:

       a.    The applicable procedures set forth in Section 12.36 of this Code shall apply.

       b.    The decision must include a separate section clearly labeled "Density Bonus/ Affordable Housing Incentives Program Determination".

       c.    The decision-maker shall approve a Density Bonus and requested waiver or modification of any development standard(s) unless the decision-maker, based upon substantial evidence, makes either of the two findings set forth in Subparagraph (g)(2)(i)c., above.

(h)   **Covenant.**   Prior to issuance of a Building Permit, the following shall apply:

     (1)    For any Housing Development Project qualifying for a Density Bonus and that contains housing for Senior Citizens, a covenant acceptable to the Housing and Community Investment Department shall be recorded with the Los Angeles County Recorder, guaranteeing that the occupancy restriction to Senior Citizens shall be observed for at least 30 years from the issuance of the Certificate of Occupancy or a longer period of time if required by the construction or mortgage financing assistance program, mortgage assistance program, or rental subsidy program.   **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

     (2)    For any Housing Development Project qualifying for a Density Bonus and that contains housing for Low or Very Low Income households, a covenant acceptable to the Housing and Community Investment Department shall be recorded with the Los Angeles County Recorder, guaranteeing that the affordability criteria will be observed for at least 30 years from the issuance of the Certificate of Occupancy or a longer period of time if required by the construction or mortgage financing assistance program, mortgage assistance program, or rental subsidy program.   **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

     (3)    For any Housing Development Project qualifying for a Density Bonus and that contains housing for Moderate Income households for sale, a covenant acceptable to the Housing and Community Investment Department and consistent with the for sale requirements of California Government Code Section 65915(c)(2) shall be recorded with the Los Angeles County Recorder guaranteeing that the affordability criteria will be observed for at least ten years from the issuance of the Certificate of Occupancy. **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

     (4)    If the duration of affordability covenants provided for in this subdivision conflicts with the duration for any other government requirement, the longest duration shall control.

     (5)    Any covenant described in this paragraph must provide for a private right of enforcement by the City, any tenant, or owner of any building to which a covenant and agreement applies.

(i)   **Fee Deferral.**   At the option of the applicant, payment of fees may be deferred pursuant to Sections 19.01 O. and 19.05 A.1. of this Code.

(j)  **Applicability.**  To the extent permitted under applicable State law, if a conflict arises between the terms of this subdivision and the terms of the City's Mello Act Settlement Agreement, Interim Administrative Procedures for Complying with the Mello Act or any subsequent permanent Mello Ordinance, Procedures or Regulations (collectively "Mello Terms"), the Mello Terms preempt this subdivision.

26.  **Downtown Adaptive Reuse Projects. (Amended by Ord. No. 174,315, Eff. 12/20/01.)**

(a)  **Purpose.**  The purpose of this Subdivision is to revitalize the Greater Downtown Los Angeles Area and implement the General Plan by facilitating the conversion of older, economically distressed, or historically significant buildings to apartments, live/work units or visitor-serving facilities.  This will help to reduce vacant space as well as preserve Downtown's architectural and cultural past and encourage the development of a live/work and residential community Downtown, thus creating a more balanced ratio between housing and jobs in the region's primary employment center.  This revitalization will also facilitate the development of a "24-hour city" and encourage mixed commercial and residential uses in order to improve air quality and reduce vehicle trips and vehicle miles traveled by locating residents, jobs, hotels and transit services near each other.

(b)  **Application.**  If the provisions of Subparagraph (2) of Paragraph (h) and of Subparagraphs (1), (2) or (3) of Paragraph (j) of this subdivision conflict with those of any specific plan, supplemental use district, "Q" condition, "D" limitation, or citywide regulation, any of which were adopted or imposed by City action prior to the effective date of this ordinance, then this Subdivision shall prevail.

(c)  **Definition of Adaptive Reuse Project.**  Notwithstanding any other provisions of this chapter to the contrary, for the purposes of this subdivision, an Adaptive Reuse Project is any change of use to dwelling units, guest rooms, or joint living and work quarters in all or any portion of any eligible building.

(d)  **Eligible Buildings.**  The provisions of this subdivision shall apply to Adaptive Reuse Projects in all or any portion of the following buildings in the CR, C1, C1.5, C2, C4, C5, CM and R5 Zones in the Downtown Project Area:

(1)  Buildings constructed in accordance with building and zoning codes in effect prior to July 1, 1974.  A Certificate of Occupancy, building permit, or other suitable documentation may be submitted as evidence to verify the date of construction.

(2)  Buildings constructed in accordance with building and zoning codes in effect on or after July 1, 1974, if:

(i)  Five years have elapsed since the date of issuance of final Certificates of Occupancy; and

(ii)  A Zoning Administrator finds that the building is no longer economically viable in its current use or uses, pursuant to Section 12.24 X.1.(c).  **(Amended by Ord. No. 175,588, Eff. 12/1/03.)**

(3)  Buildings designated on the National Register of Historic Places, the California Register of Historical Resources, or the City of Los Angeles List of Historic-Cultural Monuments.  Contributing Buildings in National Register Historic Districts or Contributing Structures in Historic Preservation Overlay Zones (HPOZ) established pursuant to Section 12.20.3 of this Code are also eligible buildings.

(e)  **M Zones.**  The Zoning Administrator may, upon application, permit Adaptive Reuse Projects in all or any portion of any eligible building in the MR1, MR2, M1, M2 and M3 Zones in the Downtown Project Area, pursuant to Section 12.24 X.1.(b).  **(Amended by Ord. No. 175,588, Eff. 12/1/03.)**

(f)  **Floor Area Averaging.**  The Zoning Administrator may, upon application, permit floor area averaging in unified Adaptive Reuse Projects, pursuant to Section 12.24 X.1.(d).  **(Amended by Ord. No. 175,588, Eff. 12/1/03.)**

(g)  **Downtown Project Area.**  The Downtown Project Area includes the following areas:

(1)  The Central City Community Plan Area as shown on the General Plan of the City of Los Angeles; and

(2)  All that real property in the City of Los Angeles, described by the following boundary lines:  Bounded northerly by the centerline of Freeway Number 10 (commonly called the Santa Monica Freeway); bounded southerly by the centerline of Vernon Avenue; bounded easterly and southeasterly by the following centerline courses: beginning at the intersection of the Santa Monica Freeway and Grand Avenue, then southerly along Grand Avenue to the most easterly line of Freeway Number 110 (commonly called the Harbor Freeway), then southerly along that right of way to the centerline of Martin Luther King, Jr. Boulevard, then easterly along Martin Luther King, Jr. Boulevard to the centerline of Grand Avenue, then southerly along Grand Avenue to the centerline of Vernon Avenue.  Bounded westerly and northwesterly by the following centerline courses:  beginning at the intersection of Vermont Avenue and Vernon Avenue, then northerly along Vermont Avenue to Jefferson Boulevard, then easterly along Jefferson Boulevard to University Avenue, then northerly along University Avenue to 28th Street, then westerly along 28th Street to Severance Street, then northerly along Severance Street to Adams Boulevard, then westerly along Adams Boulevard to Scarff Street, then northerly along Scarff Street to 23rd Street, then southerly along 23rd Street to Bonsallo Avenue, then northerly along Bonsallo Avenue to Washington Boulevard, then westerly along Washington Boulevard to Oak Street, then northerly along Oak Street and its northerly prolongation to the Santa Monica Freeway.

(h)  **Incentives.**  Notwithstanding any other provisions of this chapter to the contrary, Adaptive Reuse Projects shall be entitled to the incentives set forth below.  Except for the provision concerning mezzanines set forth in Subparagraph (1) below, these incentives shall not apply to any new floor area that is added to an Adaptive Reuse Project.

(1)  **Mezzanines.**  Loft spaces in joint living and work quarters, dwelling units and guest rooms which do not exceed more than 33 percent of the floor area of the space below shall not be considered new floor area.  Mezzanines may be included in the calculation of floor area for the purpose of determining compliance with the standards set forth in Paragraph (i) of this subdivision.

(2)  **Density.**  Dwelling units, joint living and work quarters and guest rooms shall not be subject to the lot area requirements of the zone or height district.

(3)  **Off-Street Automobile Parking.**  The required number of parking spaces shall be the same as the number of spaces that existed on the site on June 3, 1999, and shall be maintained and not reduced.  Adaptive Reuse Projects shall otherwise be exempt from the provisions of Section 12.21 A.4.(m) of this Code.

(4) **Mini-Shopping Center and Commercial Corner Development Regulations.** Adaptive Reuse Projects shall be exempt from the mini-shopping center and commercial corner development regulations set forth in Section 12.22 A.23.

(5) **Site Plan Review.** Adaptive Reuse Projects shall be exempt from the requirements for Site Plan Review set forth in Section 16.05.

(6) **Loading Space.** Where an existing loading space is provided, the provisions of Section 12.21 C.6.(h) shall apply. If no loading spaces exist, then a loading space shall not be required in conjunction with the development of an Adaptive Reuse Project.

(i) **Standards.** Adaptive Reuse Projects permitted pursuant to this subdivision shall be developed in compliance with the following standards:

(1) **Dwelling Units and Joint Living and Work Quarters. (Amended by Ord. No. 175,588, Eff. 12/1/03.)** The minimum floor area for new dwelling units and joint living and work quarters shall be 450 square feet, provided however, that the average floor area of all such units and quarters in a single eligible building, including those that existed prior to June 3, 1999, shall be at least 750 square feet. That minimum average size shall be maintained and not reduced.

Floor area, as defined in Section 12.03 of the Code, shall also not include hallways or other common areas. The floor area of both the living space and the work space shall be combined to determine the size of joint living and work quarters.

(2) **Guest Rooms.** Guest rooms shall include a toilet and bathing facilities.

(j) **Exceptions.** Notwithstanding the nonconforming provisions of Section 12.23, the following exceptions shall apply to the buildings in which Adaptive Reuse Projects are located. These exceptions shall also apply to any building in which new floor area or height was added or observed yards changed on or after July 1, 1974, as evidenced by a valid Certificate of Occupancy.

(1) **Floor Area.** Existing floor area which exceeds that permitted by the zone, height district, specific plan, supplemental use district, or any other land use regulation shall be permitted.

(2) **Height.** Existing height which exceeds that permitted by the zone, height district, specific plan, supplemental use district, or any other land use regulation shall be permitted.

(3) **Yards.** Existing observed yards which do not meet the yards required by the zone, height district, specific plan, supplemental use district, or any other land use regulation shall be permitted.

(k) **Uses.** Notwithstanding the nonconforming provisions of Section 12.23, dwelling units, guest rooms, and joint living and work quarters shall be permitted in Adaptive Reuse Projects, so long as the use is permitted by the underlying zone.

27. **Reasonable Accommodation - Fair Housing Protections for Individuals with Disabilities. (Added by Ord. No. 177,325, Eff. 3/18/06.)**

(a) **Purpose.** The purpose of this provision is to establish a formal procedure for an Individual with a Disability seeking equal access to housing to request a reasonable accommodation as

provided by the federal Fair Housing Amendments Act of 1988 and California's Fair Employment and Housing Act, and to establish criteria to be used when considering these requests. Reasonable accommodation means providing an Individual with a Disability or developers of housing for an Individual with a Disability, flexibility in the application of land use and zoning regulations or policies (including the modification or waiver of certain requirements), when it is necessary to eliminate barriers to housing opportunities.

(b) **Definitions.**

**Acts** - the Federal Fair Housing Amendments Act of 1988 and California's Fair Employment and Housing Act.

**Individual with a Disability** - As defined under the Acts, a person who has a physical or mental impairment that limits one or more major life activities, anyone who is regarded as having that type of impairment or, anyone who has a record of that type of impairment.

(c) **Procedures.**

(1)    A written request for reasonable accommodation from a land use or zoning regulation or policy shall be made on a form provided by the Department of City Planning by any Individual with a Disability, his or her representative or a developer or provider of housing for an Individual with a Disability.

(2)    A request for reasonable accommodation shall state the basis of the request including but not limited to a modification or exception to the regulations, standards and practices for the siting, development and use of housing or housing related facilities that would eliminate regulatory barriers and provide an Individual with a Disability equal opportunity to housing of his or her choice.

(3)    The Director may request additional information necessary for making a determination on the request for reasonable accommodation that complies with the fair housing law protections and the privacy rights of the Individual with a Disability to use the specified housing. If additional information is requested, the 45-day time period for making a determination on the request stops running until the additional information is provided.

(4)    Prior to the issuance of any permits relative to an approved reasonable accommodation, the Director may require the applicant to record a covenant in the County Recorder's Office acknowledging and agreeing to comply with the terms and conditions established in the determination. The covenant shall be required only if the Director finds that a covenant is necessary to provide notice to future owners that a reasonable accommodation has been approved.

(d) **Time to Act.**

(1)    The Director shall issue a written determination to either grant, grant with modifications, or deny a request for reasonable accommodation within 45 days of the date the application is deemed complete, or within an extended period as mutually agreed upon in writing by the applicant and the Director.

(2)    While a request for reasonable accommodation is pending, all laws and regulations otherwise applicable to the property that is the subject of the request shall remain in full force and effect.

Case 2:17-cv-09003-SAK-PJW Document 208-3 Filed 06/24/20 Page 32 of 65 Page ID #:4798

(e)  **Findings.**  The written decision to grant, grant with modifications or deny a request for reasonable accommodation shall include the following findings:

    (1)  that the housing, which is the subject of the request for reasonable accommodation, will be used by an Individual with a Disability protected under the Acts;

    (2)  that the requested accommodation is necessary to make housing available to an Individual with a Disability protected under the Acts;

    (3)  that the requested accommodation would not impose an undue financial or administrative burden on the City; and

    (4)  that the requested accommodation would not require a fundamental alteration in the nature of the City's land use and zoning program.

(f)  **Applicability.**  If the Director grants the request, the request shall be granted to an individual and shall not run with the land unless the Director determines that (1) the modification is physically integrated into the residential structure and cannot easily be removed or altered to comply with the Code or (2) the accommodation is to be used by another Individual with a Disability.

(g)  **Notice.**  Notice of the determination shall be provided to the applicant and to abutting owners of the property, which is the subject of the request for reasonable accommodation.  All written decisions shall give notice of the right to appeal and to request reasonable accommodation in the appeals process as set forth in Subsection (h), below.

(h)  **Appeal of Determination.**

    (1)  A determination by the Director shall be final unless appealed to the City Council within 15 calendar days of the date of mailing of the determination.

    (2)  Only the aggrieved applicant and abutting owners who received notice of the reasonable accommodation determination have a right to appeal the decision.

    (3)  An appeal shall be made in writing, pursuant to procedures established in Section 12.24 I.2. through 5. of this Code.

(i)  **Coastal Zone Properties.**  For housing located in the Coastal Zone, a request for reasonable accommodation under this section shall be approved by the City if it is consistent with the requisite findings above, with Chapter 3 of the California Coastal Act of 1976, and with the Interpretative Guidelines for Coastal Planning and Permits as established by the California Coastal Commission dated February 11, 1977, and any subsequent amendments, and, within the Venice Community Plan, with the certified Local Coastal Program Land Use Plan.

Where a request for reasonable accommodation is not consistent with the regulations identified in the paragraph above, the City may waive compliance with an otherwise applicable provision of these regulations and approve the request for reasonable accommodation if the City finds:

    (1)  that the requested reasonable accommodation is consistent, to the maximum extent feasible, with the regulations identified in this subsection; and,

    (2)  that there are no feasible alternative means for providing an accommodation at the property that would provide greater consistency with the regulations identified in this subsection.

28. **Automotive Use. (Added by Ord. No. 178,382, Eff. 3/24/07.)** In the C2 or less restrictive zones, a new automotive use, change of use or addition of floor area to an existing automotive use may be established without first obtaining an approval pursuant to Section 12.24 W.4. of this Code if the development standards set forth in Paragraph (a) and the operating conditions set forth in Paragraph (b) of this subdivision are met. Notwithstanding the above, new automobile dealership franchises, and their associated activities, are exempt from the requirements of this subdivision.

    (a) **Development Standards.**

      (1) **Windows.** The exterior walls and doors of any building, excluding bay doors and/or security grills, housing an automotive use, which are parallel to a street, shall consist of at least 50 percent transparent windows, unless otherwise prohibited by law.

      (2) **Bay Doors.** Bay doors or vehicle entrances, exits and openings shall not face any school, lot with a Certificate of Occupancy for a one-family dwelling, multiple-family dwelling, or mixed use project containing a residential use, or A or R zone that is within 100-feet from the face of the building containing the bay door, vehicle entrance, exit or opening.

      (3) **Wash Rack.** Every wash rack shall be constructed or arranged so that entrances, exits and openings shall not face any school, lot with a Certificate of Occupancy for a one-family dwelling, multiple-family dwelling, or mixed use project containing a residential use, or A or R zone within 100-feet of the side of the building containing the bay door, vehicle entrance, exit or opening.

      (4) **Fences.** Fences or walls erected along the front lot line shall not exceed 36-inches in height.

      (5) **Automotive hoists.** Automotive hoists of any type or size, shall be located and operated only inside a building enclosed on at least three sides.

      (6) **Signs.**

        (i) In addition to the requirements set forth in Sections 91.6201 et seq. of this Code, no person shall erect a pole sign or projecting sign, as defined in Section 91.6203 of this Code, on the lot or lots without first obtaining a conditional use permit pursuant to Section 12.24 W.4. of this Code.

        (ii) Monument signs and information signs may only be located within the landscape-planted areas of the lot or lots.

      (7) **Utilities.** All new utility lines which directly service the lot or lots shall be installed underground. If underground service is not available at the time the application is submitted and fees paid for plan check, then provisions should be made for future underground service to the satisfaction of the Bureau of Engineering, if determined necessary by the Department of Water and Power.

      (8) **Walls and Trash Storage.** A solid masonry wall at least six feet in height shall be erected along the lot lines of the lot or lots where the lot or lots abut or are across an alley from any school, lot with a Certificate of Occupancy for a one-family dwelling, multiple-family dwelling, or mixed use project containing a residential use, or A or R zone, except for that portion of the lot line where an access driveway is required by the City as determined by the Department of Building and Safety. Trash storage bins shall be located

within a gated enclosure constructed of solid masonry and finished to match the exterior wall materials of the main building.

(9) **Landscaping.** All landscaping shall comply with Sections 12.41, 12.42 and 12.43 of this Code and the following requirements:

(i) **Landscaping - Setback.** A landscaped, planted area having a minimum width of five feet shall be required along all street frontages of the lot or lots, except for that portion of the lot line where an access driveway is required by the City as determined by the Department of Building and Safety, and on the perimeters of all parking areas of the lot or lots that abut a residential zone or use.

(ii) **Irrigation System.** An automatic irrigation system shall be provided for all landscaped, planted areas. The system shall be installed and operational prior to the issuance of any certificate of occupancy.

(10) **Lighting.** All exterior and flood lighting shall be directed onto the lot or lots and shall be designed to eliminate any glare to adjoining properties.

(b) **Operating Conditions.**

(1) Spray painting shall not be conducted.

(2) Junkyard or automobile dismantling activities shall not be conducted.

(3) Public address system shall not be permitted.

(4) Site cleaning, sweeping, trash collection, and deliveries to the site shall be limited to the following hours: Monday through Friday, 7:00 AM to 7:00 PM and Saturday and Sunday 8:00 AM to 5:00 PM. Notwithstanding the above, trash collection shall not be allowed on Sundays or legal holidays.

(5) Hours of operation shall be limited to: Monday through Friday, 7:00 AM to 7:00 PM; Saturday, 9:00 AM to 8:00 PM; and Sunday, 11:00 AM to 8:00 PM.

(6) All loading, including those of vehicles, shall occur on-site.

(7) Vehicles being repaired shall be stored on-site. Any off-site parking shall comply with Section 12.21 A.6. of this Code.

(8) Accessory sales activities shall not occur outside a fully enclosed building.

(9) Trailers and/or temporary modular buildings shall not be permitted as a work area.

(10) Arcades or game machines shall not be permitted.

(11) Temporary canopy tents shall not be permitted when the tents are visible from the street.

(12) The site where the automotive use is located shall be kept clear of weeds, rubbish, and all types of litter and combustible materials at all times. One trash receptacles shall be located for every 200 square feet of open space and shall be uniformly distributed throughout the open areas of the site.

    (13)   Any automotive laundry or wash rack, in which power driven or steam cleaning machinery is used, shall maintain noise levels below the levels provided in Table II of Section 111.03 of this Code.  The comparison between the noise emanating from the automotive laundry or wash rack and from Table II shall be made in the manner set forth in Section 111.02(a) of this Code.

    (14)   Any automotive sound shop or automotive alarm shop shall be wholly conducted within a fully enclosed building.  No portion of the building or its associated parking area shall be within 50 feet of any school, lot with a Certificate of Occupancy for a one-family dwelling, multiple-family dwelling, or mixed use project containing a residential use, A or R zoned lot.

    (15)   All operational conditions imposed by the Department of Building and Safety in its annual inspections of automotive repair and used vehicle sales area pursuant to Section 12.26 I. of this Code shall be followed.

    (16)   On-site pennants, banners, ribbons, streamers, spinners, balloons and supergraphic signs are prohibited.

    (17)   All windows and glass doors shall be maintained free of any signs.

    (18)   **Covenant.** Prior to the issuance of a building permit or land use permit, the owner of the lot or lots shall execute and record a covenant and agreement in a form satisfactory to the Director of Planning, acknowledging that the owner shall implement each of the conditions set forth in this paragraph, and shall not permit the establishment of any uses enumerated in Section 12.24 W.4. of this Code without first obtaining a conditional use approval.  The covenant and agreement shall run with the land and be binding upon the owners, and any assignees, lessees, heirs, and successors of the owners.  The City's right to enforce the covenant and agreement is in addition to any other remedy provided by law.

    (c)   **Existing Building Changed to Automotive Use and/or an Existing Automotive Use Being Expanded or Remodeled.**  An existing building or buildings may be converted or an existing automotive use may be expanded without first obtaining a conditional use approval if all of the following requirements are met:

    (1)   All alterations result in no more than a 20 percent increase in the existing floor area of all of the buildings on a lot or lots cumulatively over the previous five years.

    (2)   The proposed automotive use complies with all the conditions of operation of Paragraph (b) above.

    (3)   Any reuse of an existing structure that is required to go through a CUP process shall have all standards established by the Zoning Administrator.

    (d)   **Specific Plan Compliance.**  Notwithstanding any other provision of this Code to the contrary, if the Director determines that the provisions of this subdivision conflict with those of an adopted Specific Plan, pedestrian oriented, commercial and artcraft, community design overlay, historic preservation overlay or transit-oriented district, area or zone, then the provisions of that Specific Plan, district, area or zone shall prevail.

    29.   **Floor Area Bonus for the Greater Downtown Housing Incentive Area.  (Added by Ord. No. 179,076, Eff. 9/23/07.)**

    (a)   **Definitions.**

**Area Median Income (AMI)** - the median income in the Los Angeles County as determined annually by the United States Department of Housing and Urban Development (HUD), or any successor agency, adjusted for household size.

**Floor Area Bonus** - an increase in floor area greater than the otherwise maximum allowable floor area, as set forth in Section 12.21.1 of the Code.

**Income, Very Low, Low or Moderate** - annual income of a household that does not exceed amounts designated for each income category as determined by HUD, or any successor agency.

**Income, Workforce** - the annual income of a household that does not exceed 150% of the Area Median Income as determined by HUD, or any successor agency.

**Restricted Affordable Unit** - a residential unit for which rental or mortgage amounts are restricted so as to be affordable to and occupied by Very Low, Low, Moderate or Workforce Income households, as determined by the Housing and Community Investment Department. **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

(b) **Eligibility for Floor Area Bonus.** A residential (including Apartment Hotel and mixed-use) building in the Greater Downtown Housing Incentive Area containing the requisite number of Restricted Affordable Units as determined by the Department of City Planning and as set forth in Subparagraphs (1), (2) and (3) below shall be granted the following incentives in accordance with Paragraph (c) below:

(1) 5% of the total number of dwelling units shall be provided for Very Low Income households; and

(2) One of the following shall be provided:

(i) 10% of the total number of dwelling units for Low Income households; or

(ii) 15% of the total number of dwelling units for Moderate Income households; or

(iii) 20% of the total number of dwelling units for Workforce Income households.

(3) Any dwelling unit or guest room occupied by a household earning less than 50% of the Area Median Income that is demolished or otherwise eliminated shall be replaced on a one-for-one basis within the Community Plan Area in which it is located.

(4) Fractional Units. In calculating Restricted Affordable Units, any number resulting in a fraction shall be rounded up to the next whole number.

(c) **Incentives.**

(1) A 35% increase in total floor area. In computing the total floor area of a residential building or residential portion of a building, any public area accessible to all residents, including public common areas that serve both residential and commercial uses, and any unenclosed architectural features and areas of a building shall not be considered part of the total floor area of a residential or residential portion of a building. The floor area shall

be measured to the center line of partitions separating public and non-public common areas.

(2)   The open space required by Section 12.21 G. of this chapter shall be reduced by one-half, provided that a fee equivalent to the amount of the relevant park fee, pursuant to Section 19.17, shall be paid for all dwelling units, with the following exception:  units qualifying under Section 12.33 C.3.(d) shall be allowed to reduce the open space requirement by one-half without payment of such fee.  The in-lieu fee shall be placed in a trust fund with the Department of Recreation and Parks for the purpose of acquisition, development and maintenance of open space and/or streetscape amenities within the Greater Downtown Housing Incentive Area, and within the Community Plan Area in which the project is located.  The in-lieu fee is independent of any required park and recreation impact fee.  **(Amended by Ord. No. 184,505, Eff. 1/11/17.)**

(3)   No parking space shall be required for dwelling units or guest rooms dedicated to or set-aside for households that earn less than 50% of the Area Median Income as determined by the Housing and Community Investment Department.  **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

(4)   No more than one parking space (including spaces allocated for guest parking) shall be required for each dwelling unit.

(d)   **Covenant.**  Prior to issuance of a building permit to create a residential or mixed-use building or an Apartment Hotel, the following shall apply:

(1)   For any project qualifying for a Floor Area Bonus that contains rental housing for Low, Very Low, Moderate or Workforce Income households, a covenant acceptable to the Housing and Community Investment Department shall be recorded with the Los Angeles County Recorder, guaranteeing that the affordability criteria will be observed for at least 30 years from the issuance of the Certificate of Occupancy or a longer period of time if required by the construction or mortgage financing assistance program, mortgage assistance program, or rental subsidy program.  **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

(2)   For any project qualifying for a Floor Area Bonus that contains for-sale housing for Moderate or Workforce Income households, a covenant acceptable to the Housing and Community Investment Department and consistent with the for-sale requirements of California Government Code Section 65915(c)(2) shall be recorded with the Los Angeles County Recorder.  **(Amended by Ord. No. 182,718, Eff. 10/30/13.)**

(3)   If the duration of affordability covenants provided for in this subdivision conflicts with the duration for any other government requirement, the longest duration shall control.

30.   **Downtown Design Guide.  (Added by Ord. No. 181,557, Eff. 3/15/11.)**

(a)   **Purpose.**  The purpose of this Subdivision is to implement the standards and guidelines in the Downtown Design Guide (the "Design Guide"), adopted by the City Planning Commission and incorporated as part of the Central City Community Plan, an element of the General Plan of the City of Los Angeles.  Given the importance of Downtown Los Angeles as the civic, cultural, institutional, governmental, social and economic center of the region, the urban form is critical to its continued vitality and economic viability and the preservation and enhancement of its historic fabric.  The Downtown Design Guide regulates projects that have the potential to affect the urban

form, pedestrian orientation and street-level activity, and its implementation will ensure a quality built environment.

(b) **Definition of Project. (Amended by Ord. No. 186,325, Eff. 11/11/19.)** For the purposes of this Subdivision, a Project is the construction, erection, addition to or alteration, of any building or structure, or a use of land or change of use on a lot located in whole or in part within the Downtown Design Guide Project Area, as defined in Section 12.03 and shown on the adopted ordinance map, which requires the issuance of a grading permit, foundation permit, building permit, sign permit or use of land permit.

A Project does not include any of the following: (1) demolition; (2) adaptive reuse of an existing building which conforms to Section 12.22 A.26. of this Code; (3) remodeling of designated historic resources; (4) alterations of or additions to any existing building or structure in which the aggregate value of the work, in any one 24-month period, is less than 50% of the Building or Structure's replacement value before the alterations or additions, as determined by the Department of Building and Safety; and (5) interior remodeling of any other existing Building, unless the interior alterations are to the ground floor and will result in the alteration of windows, display windows, entrances, storefronts or otherwise minimize ground floor transparency.

(c) **Downtown Design Guide.** Every project within the Project Area must comply with the Downtown Design Guide standards and guidelines. The Director shall have the authority to review projects for compliance with the Downtown Design Guide prior to the issuance of a building permit in the Project Area.

(1) **Exception.** Projects conforming to the Downtown Design Guide shall be exempt from the mini-shopping center and commercial corner development regulations set forth in Section 12.22 A.23. of this Code.

(d) **Administrative Clearance - Authority of the Director for Sign Off.**

(1) **Application, Form and Contents.** To apply for an Administrative Clearance, an applicant shall file an application with the Department of City Planning, on a form provided by the Department, and include all information required by the instructions on the application and any additional submission requirements. The Director shall determine if the application qualifies for Administrative Clearance and whether the Project complies with all applicable District regulations.

(2) **Application Fees.** The application fee for an Administrative Clearance shall be as set forth in Section 19.01 E. or 19.01 I. of this Code. The fee in Section 19.01 E. shall be charged for administrative clearance of new construction permits only. The fee in Section 19.01 I. shall be charged for all other building permit sign-offs.

(3) **Procedures.** Applicants for Projects that comply with the provisions of the Downtown Design Guide shall submit plans to the Director for conformance review and administrative sign off. The Director or his/her designee shall review the Project for compliance with the standards and guidelines in the Downtown Design Guide. Projects that fail to demonstrate compliance with the Downtown Design Guide shall follow relief procedures set forth below.

(e) **Adjustment - Authority of the Director with Appeals to the Area Planning Commission.** If an application fails to conform to the provisions of the Downtown Design Guide, the Director or the Director's designee shall have initial decision-making authority to grant an Adjustment in accordance with Section 11.5.7 E.1.(a) and with the procedures set forth in Section 11.5.7 C.4. - 6. of this Code.

(1) **Limitations.** An Adjustment shall be limited to deviations from regulations which do not substantially alter the execution or intent of those regulations as applicable to a proposed Project.

(2) **Findings.** The determination by the Director shall include written findings in support of the determination. In order to approve a proposed project pursuant to this subsection, the Director must find that:

(a) There are special circumstances applicable to the project or project site which make the strict application of the Design Guide regulations impractical;

(b) In granting the adjustment, the Director has imposed project requirements and/or decided that the proposed project will substantially comply with the purpose and intent of all Design Guide regulations;

(c) In granting the adjustment, the Director has considered and found no detrimental effects of the adjustment on surrounding properties and public rights-of-way;

(d) The project incorporates mitigation measures, monitoring of measures when necessary, or alternatives identified in the environmental review which would mitigate the negative environmental effects of the project, to the extent physically feasible; and

(e) The project is compatible with the neighborhood character of the surrounding district.

31. **Transit Oriented Communities Affordable Housing Incentive Program. (Added by Ord. No. 184,745, Eff. 12/13/16.)**

(a) **Application of TOC Affordable Housing Incentive Program.** This Transit Oriented Communities Affordable Housing Incentive Program, and the provisions contained in the TOC Affordable Housing Incentive Program Guidelines, shall apply to all Housing Developments that are located within a one-half mile radius of a Major Transit Stop, as defined in subdivision (b) of Section 21155 of the California Public Resources Code. Each one-half mile radius around a Major Transit Stop shall constitute a unique Transit Oriented Communities Affordable Housing Incentive Area.

(b) **Preparation and Content of TOC Incentive Guidelines.** Within 90 days of enactment of this Ordinance, the Director of Planning shall prepare TOC Affordable Housing Incentive Program Guidelines ("TOC Guidelines") that provide the eligibility standards, incentives, and other necessary components of this TOC Incentive Program described herein. Nothing in the TOC Guidelines shall restrict any right authorized in the underlying zone or height district. The TOC Guidelines shall be drafted consistent with the purposes of this Subdivision and shall include the following:

(1) **Eligibility for TOC Incentives.** A Housing Development located within a TOC Affordable Housing Incentive Area shall be eligible for TOC Incentives if it provides minimum required percentages of On-Site Restricted Affordable Units, meets any applicable replacement requirements of California Government Code Section 65915(c)(3), and is not seeking and receiving a density or development bonus under the provisions of California Government Code Section 65915 or any other State or local program that provides development bonuses. Minimum required percentages of On-Site Restricted

Affordable Units shall be determined by the Department of City Planning and set forth in the TOC Guidelines at rates that meet or exceed 11% of the total number of dwelling units affordable to Very Low income households; or 20% of the total number of dwelling units affordable to Lower Income households. The Department of City Planning shall also establish an option for a Developer to qualify for the TOC Incentives by providing a minimum percentage of units for Extremely Low Income Households, which shall be set at no less than 7%. In calculating the required Restricted Affordable Units, the percentage shall be based on the total final project unit count, and any number resulting in a fraction shall be rounded up to the next whole number. In creating the TOC Guidelines, the Department of City Planning shall identify incentives for projects that adhere to the labor standards required in Section 5 of this Ordinance provided, that no such incentives will be created that have the effect of undermining the affordable housing incentives contained herein or in Government Code Section 65915.

(2) **TOC Incentives.** An Eligible Housing Development shall be granted TOC Incentives, as determined by the Department of City Planning consistent with the following:

(i) **Residential Density increase.** An Eligible Housing Development shall be granted increased residential density at rates that shall meet or exceed a 35% increase. In establishing the density allowances, the Department of City Planning may allow adjustments to minimum square feet per dwelling unit, floor area ratio, or both, and may allow different levels of density increase depending on the Project's base zone and density.

(ii) **Parking.** An Eligible Housing Development shall be granted parking reductions consistent with California Government Code Section 65915(p).

(iii) **Incentives and Concessions.** An Eligible Housing Development may be granted up to either two or three incentives or concessions based upon the requirements set forth in California Government Code Section 65915(d)(2).

(c) **Approval of TOC Guidelines and Incentives.** The City Planning Commission shall review the TOC Guidelines and shall by vote make a recommendation to adopt or reject the TOC Guidelines.

(d) **Process for Changing TOC Incentives and Eligibility.** The TOC Incentives and the required percentages for On-Site Restricted Affordable Units may be adjusted for an individual TOC Affordable Housing Incentive Area through a Community Plan update, Transit Neighborhood Plan, or Specific Plan, provided that the required percentages for On-Site Restricted Affordable Units may not be reduced below the percentages set forth in subdivision (b).

(e) **Procedures.** Application for the TOC Incentives shall be made on a form provided by the Department of City Planning, and shall follow the procedures outlined in Los Angeles Municipal Code Section 12.22 A.25.(g).

(f) **Covenant.** Prior to issuance of a building permit to create a Housing Development, the following shall apply:

(1) For any Housing Development qualifying for a TOC Incentive that contains rental housing for Extremely Low, Very Low, or Lower Income households, a covenant acceptable to the Los Angeles Housing and Community Investment Department shall be

recorded with the Los Angeles County Recorder, guaranteeing that the affordability criteria will be observed for 55 years or longer.

(2)    For any Housing Development qualifying for a TOC Incentive that contains for-sale housing, a covenant acceptable to the Housing and Community Investment Department and consistent with the for-sale requirements of California Government Code Section 65915(c)(2) shall be recorded with the Los Angeles County Recorder.

(3)    If the duration of affordability covenants provided for in this subdivision conflicts with the duration for any other government requirement, the longest duration shall control.

(g)    **Definitions.**

"**Eligible Housing Development**" shall mean a Housing Development that includes On-Site Restricted Affordable Units at a rate that meets or exceeds the minimum requirements to satisfy the TOC Incentives, as determined by the Department of City Planning and as set forth in paragraph (b)(1) above.

"**Extremely Low-Income Households**" is defined in Section 50106 of the Health and Safety Code.

"**Housing Development**" shall mean the construction of five or more new residential dwellings units, the addition of five or more residential dwelling units to an existing building or buildings, the remodeling of a building or buildings containing five or more residential dwelling units, or a mixed use development containing residential dwelling units.

"**Lower Income Households**" is defined in Section 50079.5 of the Health and Safety Code.

"**On-Site Restricted Unit**" shall mean a residential unit for which rental or mortgage amounts are restricted so as to be affordable to and occupied by Extremely Low, Very Low, or Lower income households, as determined by the Housing and Community Investment Department.

"**Very Low-Income Households**" is defined in Section 50105 of the Health and Safety Code.

32.    **Home-Sharing.  (Added by Ord. No. 185,931, Eff. 7/1/19.)**  In all zones wherein residential uses are permitted by right, the following shall apply:

(a)    **Purpose.**  The purpose of this subdivision is to allow for the efficient use and sharing of a residential structure which is a Host's Primary Residence, without detracting from the surrounding residential character or the City's available housing stock.

(b)    **Definitions.**  The following definitions shall apply to this subdivision:

(1)    **Administrative Guidelines.**  The Department of City Planning or Office of Finance may promulgate regulations, which may include, but are not limited to, application requirements, interpretations, conditions, reporting requirements, enforcement procedures, and disclosure requirements, to implement the provisions, and consistent with the intent, of this subdivision.

(2) **Booking Service.** Any reservation and/or payment service provided by a Person that facilitates a Short-Term Rental transaction between a Person and a prospective guest or Transient user, and for which the Person collects or receives, directly or indirectly through an agent or intermediary, a fee in connection with the reservation and/or payment of services provided for the transaction.

(3) **Citation.** Includes any enforcement citation, order, ticket or similar notice of violation, relating to the condition of or activities at a Person's Primary Residence or property, issued by the Los Angeles Department of Building and Safety, Los Angeles Housing and Community Investment Department, Los Angeles Police Department or Los Angeles Fire Department, including an Administrative Citation issued pursuant to Article 1.2 of the Los Angeles Municipal Code.

(4) **Extended Home-Sharing.** Home-Sharing that is permitted for an unlimited number of days in a calendar year.

(5) **Hosting Platform.** A Person that participates in Short-Term Rental business by collecting or receiving a fee, directly or indirectly through an agent or intermediary, for conducting a Booking Service transaction using any medium of facilitation.

(6) **Host.** An individual who is registered for Home-Sharing as the term is defined in Section 12.03 of this Code.

(7) **Person.** Shall have the same meaning as that term is defined in Section 21.7.2 of this Code.

(8) **Platform Agreement.** A signed agreement between a Home-Sharing Hosting Platform (Platform) and the City, which, among other things, provides that the Platform will collect and submit the Transient Occupancy Tax to the City on behalf of Hosts and Persons listed for Short Term Rentals.

(9) **Primary Residence.** The sole residence from which the Host conducts Home-Sharing and in which the Host resides for more than 6 months of the calendar year.

(10) **Rental Unit.** A Dwelling Unit, Guest Room, Accessory Living Quarters, other residential structure, or portion thereof.

(11) **Short-Term Rental.** A Rental Unit, rented in whole or in part, to any Person(s) for transient use of 30 consecutive days or less. Rental Units within City-approved Hotels, motels, Transient Occupancy Residential Structures and Bed and Breakfasts shall not be considered a Short-Term Rental.

(12) **Transient.** Shall have the same meaning as that term is defined in Section 21.7.2 of this Code.

(c) **Home-Sharing Registration.**

(1) **Application.** To register for Home-Sharing, an applicant shall file an application with the Department of City Planning in a manner provided by the Department, and shall include: information needed to verify the Host's identification and Primary Residence; identification of a local responsible contact person; a list of all Hosting Platforms to be used; whether Home-Sharing is for an entire Rental Unit or a portion thereof; and any other information required by the instructions on the application and/or by the guidelines promulgated by the Director of Planning. Payment of any filing fee required under

Section 19.01 E. shall be included with the application. If the required information for registration, including any filing fee, is not received within 45 days of submittal of the application, the Home-Sharing registration will be considered withdrawn.

(2)  **Eligibility Requirements.**  The following requirements must be met at the time of submitting an application for Home-Sharing registration:

(i)  The applicant has obtained a Transient Occupancy Registration Certificate from the Office of Finance pursuant to Section 21.7.6 of this Code, unless the applicant exclusively lists his or her Primary Residence on Hosting Platforms that have a Platform Agreement with the City of Los Angeles.

(ii)  The proposed Home-Sharing is consistent with the provisions of this subdivision and is limited to the Host's Primary Residence.

a.  A renter or lessee shall not engage in Home-Sharing without prior written approval of the landlord. A renter or lessee shall provide copies of the landlord's written approval to the City at the time of filing the application for registration. A landlord may proactively prohibit Home-Sharing by tenants at any or all of the owner's properties by submitting a notification in writing to the Department of City Planning.

b.  A Primary Residence that is subject to affordable housing covenants, and/or Chapter 15 of the Los Angeles Municipal Code ("Rent Stabilization Ordinance"), and/or are income-restricted under City, state or federal law, is not eligible for Home-Sharing.

c.  No Primary Residence which is the subject of any pending Citation may be registered for Home-Sharing.

d.  No Person may apply for or obtain more than one Home-Sharing registration or otherwise operate more than one Home-Sharing Rental Unit at a time in the City of Los Angeles.

(3)  **Expiration and Renewal.**  A Home-Sharing registration is valid for one year from the date of issuance. It may not be transferred or assigned and is valid only at the Host's Primary Residence. A Home-Sharing registration may be renewed annually if the Host: (1) pays the renewal fee; (2) has complied with the provisions of this subdivision for the past year; (3) provides information concerning any changes to the previous application for, or renewal of, the Home-Sharing registration; and (4) submits Home-Sharing records described in Subparagraph (e)(2) for the last year to demonstrate compliance with this subdivision, unless the Host lists exclusively on a Hosting Platform with a Platform Agreement that includes a provision for pass-through registration for applicants for a Home-Sharing registration. The records described in Subparagraph (e)(2) shall be made public to the extent required by law.

(4)  **Suspensions and Revocations.**  Notwithstanding any other provision of this Code to the contrary, the Director may require the suspension, modification, discontinuance or revocation of any Home-Sharing registration if it is found that the Host has violated this subdivision or any other city, state, or federal regulation, ordinance or statute.

(i)  **Suspension.**  If a Host receives two Citations, the Host's Home-Sharing registration shall be suspended for 30 days or as long as at least one Citation is open, whichever is longer. The suspension shall become effective 15 days after

the mailing of a Notice of Intent to Suspend the Host. If a Host initiates an appeal of either Citation, the suspension will take effect only if the appeal is not resolved entirely in the Host's favor.

> a. A Host may challenge a Citation by submitting an appeal to the City department that issued the Citation and providing notice to the Department of Planning as described in the Administrative Guidelines.

> b. Where no process is described in the Citation, a Host may challenge a Citation by submitting an appeal to the Director of Planning in accordance with the process in Section 12.24 Z. of this Code, with no further appeal to a Commission or City Council.

(ii) **Revocation.** If three Citations have been issued to the Host and have been sustained (after exhaustion of any related remedies, including appeals) within a registration year, the Host's Home-Sharing registration shall be revoked. The revocation of a Host's Home-Sharing registration shall become effective 15 days after the mailing of a Notice of Intent to Revoke to the Host.

> a. A Host may challenge a Notice of Intent to Revoke by submitting an appeal to the Director of Planning in accordance with the process in Section 12.24 Z. of this Code, with no further appeal to a Commission or City Council.

> b. Pursuant to the revocation, the Host shall be prohibited from participating in Home-Sharing for one year from the effective date of the Notice of Intent to Revoke.

(iii) **Modification.** The Director may modify, discontinue or revoke any Home-Sharing registration based upon an order to show cause, pursuant to Section 12.27.1 B. of this Code, why any proposed modifications, discontinuances or revocations of any Home-Sharing registration should not be issued. The Director shall provide notice to the Host and/or recorded owner and lessee(s) of the Host's Primary Residence to appear at a public hearing at a time and place fixed by the Director to respond to the Director's order to show cause.

(d) **Prohibitions.**

(1) No Person shall offer, advertise, book, facilitate or engage in Home Sharing or Short-Term Rental activity in a manner that does not comply with this subdivision.

(2) A Host may not participate in Home-Sharing unless all advertisements clearly list the City-issued Home Sharing registration number or pending registration status number.

(3) No Host shall engage in Home-Sharing for more than 120 days in any calendar year unless the City has issued the Host an Extended Home-Sharing registration pursuant to Paragraph (h).

(4) Accessory Dwelling Units for which a complete building permit application was submitted on or after January 1, 2017, to the Department of Building and Safety pursuant to Section 12.26 A.3. may not be used for Home-Sharing, unless an applicant demonstrates the Accessory Dwelling Unit is the applicant's Primary Residence.

(5)   No Host shall offer, advertise, or engage in Home-Sharing in a non-Residential Building, including but not limited to, a vehicle parked on the property, a storage shed, trailer or any temporary structure, including, but not limited to, a tent.

(6)   If a Host lists a Primary Residence on multiple listings on multiple Hosting Platforms, only one listing may be booked at any given time.

(7)   A Host may not rent all or a portion of his Primary Residence for the purposes of Home-Sharing to more than one group of guests or under more than one booking, at any given time.

(8)   Home Sharing is not permitted in buildings that have been converted from units subject to Chapter 15 of the Los Angeles Municipal Code ("Rent Stabilization Ordinance") to single family homes until five years after the date of conversion.

(9)   Except for allowable Home Occupations, non-residential uses including, but not limited to, sales or exchange of products, events that charge a fee, or the promotion, display or servicing of any product shall not be permitted during Home-Sharing activity.

(10)   A Host shall only advertise on a Hosting Platform that was listed on the Host's Home-Sharing application form, unless the Host has submitted a written request and received written approval from the Department of City Planning to use another Hosting Platform.

(11)   No more than 2 overnight guests (not including children) are allowed per habitable room, not including kitchens, during Home-Sharing activities.

(12)   There shall be no use of sound amplifying equipment, as that term is defined in Section 111.01(j) of this Code after 10:00 pm and no evening outdoor congregations of more than 8 people (excluding children) during Home-Sharing activities.  Home-Sharing activities are subject to the noise regulations in the Los Angeles Municipal Code.

(13)   A Host whose Home-Sharing registration has been suspended is prohibited from participating in Home-Sharing for the duration of the suspension.

(14)   A Host whose Home-Sharing registration has been revoked may not participate in Home-Sharing unless and until a new registration is authorized.

(e)   **Host Requirements.**

(1)   A Host may be responsible for any nuisance violations, as described in Section 12.27.1 B. of this Code, arising at the Host's Primary Residence during Home-Sharing activities.  The Host, or owner of the Host's Primary Residence if the Host does not own it, may be assessed a minimum inspection fee, as specified in Section 98.0412 of this Code for each site inspection.

(2)   The Host shall keep and preserve, for a minimum period of three years, all records regarding each Home-Sharing stay, including the length of stay and the price paid for each stay, and any other records required by Administrative Guidelines promulgated by the Director.

(3)   On the Home-Sharing registration application, a Host shall acknowledge and consent to Office of Finance and other City agencies' inspection of records at all reasonable times and places for purposes of enforcement of this Subdivision.

(4)    The Host shall fully comply with all the requirements of Article 1.7 of the Los Angeles Municipal Code (establishing the Transient Occupancy Tax) and successor Sections.

(5)    The Host shall pay a per-night fee for each night of Home-Sharing, which will be deposited into the Short Term Rental Enforcement Fund per the requirements in Section 5.576 of the Los Angeles Administrative Code.    The City Council shall adopt, by resolution, a per-night fee based on an analysis of the cost of implementing, maintaining, and enforcing this subdivision.

(6)    Every Host shall provide and maintain working fire extinguishers, smoke detectors, and carbon monoxide detectors, in compliance with fire, life and safety codes; information related to emergency exit routes on the property and contact information, including the contact information of the Host or a designated responsible agent of the Host.

(7)    Every Host that lists a Primary Residence located in a Very High Fire Hazard Severity Zone designated by the City of Los Angeles Fire Department pursuant to Government Code Section 51178 shall include in all Host listings and post written notices on any patio or deck that smoking is not permitted in any exterior of the property.

(8)    Every Host shall provide a code of conduct to guests that includes the relevant provisions of this Subdivision and other information to address behavioral, safety, security, and other matters, as required in the Department's Administrative Guidelines.

(9)    Every Host shall authorize any Hosting Platform on which his or her Primary Residence is listed to provide to the City the Host listing and other information described in in Subsection (f)(4).

(10)    Every Host must consent to receive all City notices and citations regarding their Home-Sharing registration by U.S. mail.

(f)    **Hosting Platform Responsibilities.**

(1)    Hosting Platforms shall not process or complete any Booking Service transaction for any Person unless the Person has a valid Home-Sharing registration number issued by the City or a pending registration status number.

(2)    Hosting Platforms shall not process or complete any Booking Service transaction for any Host listing that has exceeded the authorized 120-day limit in one calendar year unless the Host has obtained an Extended Home-Sharing approval.

(3)    Within 45 days of the effective date of this Ordinance, Hosting Platforms with listings located in the City shall provide to the Department of City Planning contact information for an employee or representative responsible for responding to requests for information, including requests related to possible violations of this Subdivision.  Hosting Platforms that commence listings in the City after the effective date must provide this information prior to facilitating Home-Sharing activity or providing Booking Services within the City.

(4)    Subject to applicable laws, a Hosting Platform with listings in the City shall provide to the Department of City Planning, on at least a monthly basis, in a format as specified by the City, the Home-Sharing registration number of each listing, the name of

the person responsible for each listing, the street address of each listing and, for each booking that occurs within the reporting period, the number of days booked.

(5)    In the event a Hosting Platform has entered into an agreement with the Office of Finance to collect and remit Transient Occupancy Tax pursuant to Los Angeles Municipal Code Section 21.7.1 et seq., and a Host has assigned the responsibilities for the collection and remittance of the Transient Occupancy Tax to the Hosting Platform, then the Hosting Platform and the Host shall have the same duties and liabilities, including but not limited to the collection and remittance of the tax to the City on a monthly basis.

(6)    **Exception.**  The provisions of this paragraph shall not apply to a Hosting Platform whenever it (a) complies with the Administrative Guidelines, issued by DCP and approved by resolution of the City Council, that describe how the Platform shall satisfy the Hosting Platform responsibilities in this paragraph, or (b) enters into a Platform Agreement, the terms of which shall be set forth in a master Platform Agreement approved by the City Council, that establishes the manner in which the Hosting Platform supports the City's enforcement of this subdivision and meets the purposes of the Platform responsibilities in this paragraph.  Each individual Platform Agreement shall be approved by the City Council.

(g)    **Enforcement of Violations.**

(1)    The provisions in this Subsection shall be in addition to any criminal, civil or other legal remedy established by law that may be pursued to address violations of this Subdivision.

(2)    Any Person who has failed to comply with the provisions of this Subdivision may be subject to the provisions of Section 11.00 of this Code.  The owner and/or operator of any property used for Short Term Rentals, including the Host or owner of any Host Primary Residence, may be assessed a minimum inspection fee, as specified in Section 98.0412 of this Code for each site inspection.

(3)    The Director may, at any time, require the modification, discontinuance, or revocation of any Home-Sharing registration in the manner prescribed in Subparagraph (c)(4).

(4)    The ACE program in Article 1.2 of this Chapter may be utilized to issue administrative citations and impose fines pursuant to this Subdivision.  The citation shall be served by personal service or by depositing in the mail for delivery by the United States Postal Service, in a sealed envelope, postage prepaid, addressed to the operator of the Short Term Rental, the Host, and/or the property owner, if different than the operator or Host, shown on the County's last equalized property tax assessment roll.  Fines for violations of this subdivision shall be as follows:

(i)    Hosting Platform:  a $1,000 fine per day shall be imposed for any of the following violations:

a.    Completing a Booking Service transaction for each listing without a valid City Home-Sharing registration number or pending registration status number.

b.    Completing a Booking Service transaction for each listing where more than one property is affiliated with a single Host, or each listing where the Host's home address does not match the listing location.

      c.  Completing a Booking Service transaction for any listing for a Rental Unit where the Host's Home-Sharing or Extended Home-Sharing registration has been revoked or suspended by the City.

      d.  Completing a Booking Service transaction for any Rental Unit lacking Extended Home-Sharing approval that has exceeded the authorized 120-day limit for hosting Short-Term Rentals in one calendar year.

  (ii)  Owner of Primary Residence and/or Host and/or Person:

      a.  A daily fine of $500, or two times the nightly rate charged, whichever is greater, for advertising a Rental Unit for the purposes of Short-Term Rental in violation of this Subdivision.

      b.  A daily fine of $2,000, or two times the nightly Rent charged, whichever is greater, for each day of Home-Sharing activity beyond the 120 day limit in a calendar year, unless the Host has a valid Extended Home-Sharing Registration.

      c.  For all other violations of this subdivision, the administrative fine shall be levied according to the amounts described in Section 11.2.04(a)(2) of this Code. The square footage for the use in calculating the fine shall be the amount of indoor space to which the Transient guest has access. If the square footage is unable to be ascertained, it shall be deemed to be between 500 and 2,499 square feet.

  (iii)  The fine amounts listed above shall be updated annually, from the date of effective date of this ordinance, according to the Consumer Price Index for All Urban Consumers (CPI-U).

  (h)  **Extended Home-Sharing.**  For Hosts who participate in Extended Home-Sharing, the following shall apply:

  (1)  **Application and Eligibility Requirements.**

    (i)  **Ministerial Approval.**  Extended Home-Sharing may be approved by the Director if, in addition to the eligibility requirements for Home-Sharing, all of the following requirements are met:

      a.  The Host maintains a current Home-Sharing registration and has maintained a Home-Sharing registration for at least six months or has hosted for at least 60 days based on substantial evidence provided by the Host or Hosting Platform;

      b.  No more than one Citation was issued within the prior three years; and

      c.  The Host provides proof of mailing of a notification concerning commencement of Extended Home-Sharing, which includes a Director-issued publication outlining the complaint process, to adjacent and abutting owners and occupants on a form provided by the Department.

(ii)  **Discretionary Approval.**  A discretionary review of an Extended Home-Sharing application is required if the Host complies with Subparagraph (h)(1)(i)a., but two Citations have been issued within the prior three years.

    a.  If the Director finds that the matter may have a significant effect on neighboring properties, the Director may set the matter for public hearing. Written notice of the hearing shall be sent by First Class Mail at least 21 days prior to the hearing to the applicant, owners and tenants of the property involved, owners and tenants of all properties adjacent and abutting the proposed Extended Home-Sharing activity, the City Councilmember representing the area in which the property is located, and the applicable Neighborhood Council.  If the Director determines that the matter will not have a significant effect on neighboring properties, no hearing shall be held.

    b.  The Extended Home-Sharing application may only be approved if, in addition to the eligibility requirements for Home-Sharing, all of the following requirements are met, to the satisfaction of the Director of Planning:

        1.  The Host provides proof of mailing of a notification, which includes a Director-issued publication outlining the complaint process, to adjacent and abutting owners and occupants on a form provided by the Department;

        2.  In consideration of any comments received by the public on the application, the Director finds the use is in substantial conformance with the following findings:

            A.  That the Extended Home-Sharing will enhance the built environment in the surrounding neighborhood or will perform a function or provide a service that is essential or beneficial to the community, city or region;

            B.  That the Extended Home-Sharing operations and other significant features will be compatible with and will not adversely affect or further degrade adjacent properties, the surrounding neighborhood, the availability of housing, or the public health, welfare, and safety;

            C.  That the Extended Home-Sharing substantially conforms with the purpose, intent, and provisions of the General Plan, the applicable community plan, and any applicable specific plan; and

            D.  That there is no substantial evidence of continued nuisance behavior from the

location.

c. If no appeal is filed within 15 days from the date of the Director's determination approving or denying an Extended Home-Sharing application, the Director's decision is final. An appeal to the Area Planning Commission may be filed by the applicant or any adjacent and abutting owner and occupant. An appeal shall be filed at the public counter of the Planning Department within 15 days of the date of the Director's decision. The appeal shall set forth specifically how the appellant believes the Director's findings and decision are in error. The Area Planning Commission may grant, conditionally grant or deny the appeal. The failure of the Commission to act upon an appeal within 75 days after the expiration of the appeal period, or within an additional period as may be agreed upon by the applicant and the Director, shall be deemed a denial of the appeal and the original action on the matter shall become final.

(2) **Ineligibility.** If the Host's Home-Sharing registration has been suspended or revoked, the Host is not eligible to apply for Extended Home-Sharing for two years from the effective date of the revocation or suspension or as long as a Citation remains open or unresolved, whichever is later.

(3) **Expiration and Renewal.** An Extended Home-Sharing registration is valid for one year from the date of issuance. An Extended Home-Sharing registration is subject to the same expiration and renewal terms described in Subparagraph (c)(3) and may be renewed annually if the Host meets the same renewal requirements in that subparagraph.

(4) **Revocations.** An Extended Home Sharing approval shall be revoked if there are two Citations within a registration year in accordance with the process set forth in Paragraph (c)(4). Pursuant to the revocation, the Host shall be prohibited from participating in Home-Sharing for two years from the effective date of the Notice of Revocation or as long as a Citation remains open or unresolved, whichever is later.

(i) **Administration and Regulations.** No Person shall fail to comply with the Administrative Guidelines.

(j) **Effective Date.** This ordinance shall take effect on July 1, 2019.

(k) **Severability.** If any provision of this Subdivision is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions of this Subdivision which can be implemented without the invalidated provisions, and to this end, the invalid provisions of this Subdivision are declared to be severable. The City Council hereby declares that it would have adopted each and every provision and portion thereof not declared invalid or unconstitutional, without regard to whether any portion of the ordinance would subsequently be declared invalid or unconstitutional.

33. **Accessory Dwelling Units (ADU) and Junior Accessory Dwelling Units (JADU). (Added by Ord. No. 186,481, Eff. 12/19/19.)**

(a) **Purpose.** The purpose of this subdivision is to provide for the creation of ADUs and JADUs consistent with California Government Code Sections 65852.2 and 65852.22, as amended from time to time.

(b) **Applicability.** The following development standards shall apply:

(1)    A detached ADU shall be approved if in compliance with all of the provisions provided in Paragraphs (c) and (d).

(2)    An attached ADU shall be approved if in compliance with all of the provisions provided in Paragraphs (c) and (e).

(3)    A Movable Tiny House (MTH) shall be approved if in compliance with all of the provisions in Paragraph (c), except for those provisions in Paragraph (c) which apply solely to buildings and structures; and all of the provisions in Paragraph (f).

(4)    A JADU shall be approved if in compliance with all of the provisions provided in Sections 65852.2(e)(1)(A) and 65852.22 of the Government Code.

(5)    An ADU described by Section 65852.2(e)(1)(A) or (C) of the Government Code shall be approved if in compliance with all of the applicable provisions in Section 65852.2(e) of the Government Code.

(6)    An ADU described by Section 65852.2(e)(1)(B) or (D) of the Government Code shall be approved if in compliance with all of the applicable provisions in Section 65852.2(e) of the Government Code; and all of the applicable provisions of Paragraphs (c), (d) and (e) of this subdivision, except for those provisions which do not allow such an ADU otherwise in compliance with all applicable provisions in Section 65852.2(e) of the Government Code; and all of the provisions provided in Paragraph (g).

(c)    **Development Standards.**

(1)    Comply with all applicable objective provisions required pursuant to Chapter 1 of this Code, including provisions stated in the underlying applicable zone and height district, Specific Plan, Historic Preservation Overlay Zone, Community Planning Implementation Overlay and other applicable zoning ordinances, policies or other documents established pursuant to Chapter 1, Article 3 of this Code.  In any instance where there is conflict, this subdivision shall govern.  Notwithstanding the prior two sentences and notwithstanding anything to the contrary in this Subdivision 33:

(i)    No minimum lot size requirement shall apply to an ADU;

(ii)    No minimum square footage requirement for either an attached or detached ADU shall apply that prohibits an efficiency unit;

(iii)    No other minimum or maximum size for an ADU, including size based upon a percentage of the proposed or existing primary dwelling, or limits on lot coverage, floor area ratio, open space, and minimum lot size, shall apply for either attached or detached dwellings that does not permit at least an 800 square foot ADU that is at least 16 feet in height with 4-foot side and rear yard setbacks to be constructed in compliance with all other local development standards.

(2)    An ADU which complies with this subdivision shall not require a discretionary planning approval.  The ADU project shall be reviewed in a ministerial and administrative manner, limited to only considering the project's compliance with the applicable objective standards.  An application to create an ADU shall be acted upon within 60 days from the date the City receives a completed application if there is an existing single-family or multifamily dwelling on the lot.  If the permit application to create an ADU unit is submitted with a permit application to create a new single-family dwelling on the lot, the City may delay acting on the permit application for the ADU until the City acts on the

permit application to create the new single-family dwelling. If the applicant requests a delay, the 60-day time period shall be tolled for the period of the delay.

(3)   Except where otherwise prohibited by this subdivision, an ADU is permitted in all zones where residential uses are permitted by right.

(4)   No ADU is permitted on any lot that is located in both a Very High Fire Hazard Severity Zone designated by the City of Los Angeles Fire Department pursuant to Government Code Section 51178 and a Hillside Area as defined by the Hillside Area Map pursuant to Section 12.03 of this Code, unless it meets one of the following exceptions:

   (i)   The ADU is located within the boundaries of either the Northeast Los Angeles Community Plan Area or  the Silver Lake - Echo Park - Elysian Valley Community Plan Area; or

   (ii)   The ADU complies with all of the following requirements:

      a.   Notwithstanding Subparagraph (c)(10) below, the ADU is protected throughout with an approved automatic fire sprinkler system, in compliance with the Los Angeles Plumbing Code;

      b.   Notwithstanding Subparagraph (c)(12) below, one off-street parking space is provided for the ADU; and

      c.   The ADU is located on a lot fronting on a street that is improved with a roadway width of 20 feet or more in unobstructed width, as measured along the entire frontage of the subject property, after any associated dedication and improvement.  In the event the ADU is located on a Through Lot or a Corner Lot, the lot must front on at least one street that is improved with a roadway width of 20 feet or more in unobstructed width after any associated dedication and improvement.

(5)   Except as otherwise permitted by this subdivision, only one ADU is permitted per lot.

(6)   An ADU may only be created on a lot that contains a proposed or existing dwelling.  Other non-residential uses and accessory residential uses may be permitted on the lot, consistent with the uses permitted by the zone.

(7)   No passageway for an ADU, nor space between buildings, as per LAMC 12.21 C.2. and LAMC 12.21 C.5.(d), is required in conjunction with the construction of an ADU. Building Code separation requirements still apply.

(8)   No additional setbacks shall be required for an existing living area or accessory structure, or a structure constructed in the same location and to the same dimensions as an existing structure, converted to an ADU or portion of an ADU.  A setback of no more than 4 feet from the side and rear lot lines shall be required for an accessory dwelling unit that is not converted from an existing structure or a new structure constructed in the same location and to the same dimensions as an existing structure.

(9)   ADUs are required to comply with all applicable Building and Residential Codes for the proposed use.

(10)   ADUs are not required to provide fire sprinklers if they are not required for the primary residence.

(11)   ADUs located where a private sewage disposal system is being used, shall require approval by the local health officer.

(12)   Parking Requirements:

(i)   **ADU Parking.**  One parking space is required for an ADU, except that no parking is required for an ADU that is:

a.   Located within one-half mile walking distance of a public transit.  For this purpose, public transit means a location, including, but not limited to, a bus stop or train station, where the public may access buses, trains, subways, and other forms of transportation that charge set fares, run on fixed routes, and are available to the public; or

b.   Located within one block of a designated pick-up and drop-off location of a car share vehicle; or

c.   Located in an architecturally and historically significant district listed in or formally determined eligible for listing in the National Register of Historic Places or California Register of Historical Resources or located in any City Historic Preservation Overlay Zone; or

d.   Part of the proposed or existing primary residence or an accessory structure.

(ii)   **ADU Parking Location.**   ADU parking is allowed in any yard area or passageway.  When located in a required front yard, the parking must be located on an existing driveway. Parking may be provided through tandem parking where two or more automobiles are parked on a driveway or in any other location on a lot, lined up behind one another.  Driveway access areas located in the required front yard shall not be expanded to provide required parking. Other objective parking and driveway standards in the LAMC apply, including those found in Sections 12.21 A.5. and 12.21 A.6.  However, Section 12.21 A.6.(d) of this Code shall not apply to parking required for an ADU.

(iii)   **Replacement Parking.**  No replacement parking shall be required when a garage, carport or covered parking structure is demolished in conjunction with the construction of an ADU or converted to an ADU.

(d)   **Detached Accessory Dwelling Unit Requirements.**   Detached ADUs, except those described in Paragraph (f), below, must comply with all provisions of Paragraph (c) and all of the following provisions provided in this Paragraph (d).  In addition, Detached ADUs must comply with all applicable provisions of Section 12.21 C.5. that are not in conflict with these Paragraphs (c) and (d).

(1)   The Floor Area for a detached ADU shall not exceed 1,200 square feet.  Limits on Floor Area on a lot apply separately and may further limit allowable Detached ADU square footage, except as otherwise provided by this Subdivision 33.

(2)   Structures containing a detached ADU shall not be greater than two stories.

(3)   Detached ADUs shall not be located between a proposed or existing dwelling unit and the street adjoining the front yard, except in the following cases:

(i)   Where the ADU is on a Through Lot and complies with LAMC Section 12.21 C.5.(k); or

(ii)   Where the ADU is being added to a lawfully existing garage or accessory structure building.

(e)   **Attached Accessory Dwelling Unit Requirements.**   Attached ADUs can be either attached to or completely contained within an existing or proposed dwelling, and must comply with all provisions in Paragraph (c) and all of the following provisions in this Paragraph (e):

(1)   If there is an existing primary dwelling, the Floor Area of an attached ADU may not exceed 50 percent of the existing primary dwelling.

(2)   Limits on Floor Area on a lot apply separately and may further limit allowable attached ADU square footage, except as otherwise provided by this Subdivision 33.

(3)   Nothing in this subdivision shall prohibit an attached ADU with a Floor Area of less than 850 square feet, or less than 1,000 square feet for an attached ADU that provides for more than one bedroom.

(f)   **Requirements for Movable Tiny Houses as Accessory Dwelling Units.**   A Movable Tiny House must comply with all of the provisions provided in Paragraph (c) except for any provisions in Paragraph (c) which apply solely to buildings and structures; and this Paragraph (f):

(1)   Only one Movable Tiny House is allowed to be located on a lot and no lot may be approved for more than one moveable tiny house in a twelve month period.

(2)   When sited on a lot, the undercarriage (wheels, axles, tongue and hitch) shall be hidden from view.

(3)   The wheels and leveling or support jacks must sit on a paved surface compliant with LAMC 12.21 A.6.(c).

(4)   Mechanical equipment shall be incorporated into the structure and not located on the roof.

(5)   Movable Tiny Houses shall be connected to water, sewer and electric utilities.

(6)   Moveable Tiny Houses are not required to have separate street addresses from the primary dwelling unit.

(7)   Movable Tiny Houses are not required to have sprinklers, but shall follow the ANSI A119.5 or NFPA 1192 standards relating to health, fire and life-safety.

(8)   Movable Tiny Houses shall have the following design elements:

(i)   **Cladding and Trim.**   Materials used on the exterior of a moveable tiny house shall exclude single piece composite, laminates, or interlocked metal sheathing.

https://export.amlegal.com/api/export-requests/68260a5a-8a38-407f-a4b6-f1975698bbc6/download/

Case 2:17-cv-09003-JAK-PJW Document 208-3 Filed 06/24/20 Page 55 of 65 Page ID #:1821

(ii) **Windows and Doors.** Windows shall be at least double pane glass and labelled for building use, and shall include exterior trim. Windows and doors shall not have radius corners.

(iii) **Roofing.** Roofs shall have a minimum of a 12:2 pitch for greater than 50 percent of the roof area, and shall not be composed of wooden shingles.

(iv) **Extensions.** All exterior walls and roof of a moveable any tiny house used as an ADU shall be fixed with no slide-outs, tip-outs, nor other forms of mechanically articulating room area extensions.

(9) Movable Tiny Houses shall not be greater than two stories.

(10) Movable Tiny Houses shall not be located between the proposed or existing single-family dwelling unit and the street adjoining the front yard, except where the Movable Tiny House is on a Through Lot and complies with LAMC 12.21 C.5.(k).

(g) **Accessory Dwelling Units Otherwise Required By State Law.** An application for a building permit shall be approved to create an ADU pursuant to Section 65852.2(e)(1)(B) or (D) of the Government Code within a residential or mixed-use zone, in compliance with all of the applicable provisions in Section 65852.2(e) of the Government Code; and all of the applicable provisions of Paragraphs (c), (d) and (e) of this subdivision, except for those provisions which do not allow such an ADU otherwise in compliance with all applicable provisions in Section 65852.2(e) of the Government Code; and all of the following requirements:

(1) An ADU created pursuant to Section 65852.2(e)(1)(B) of the Government Code shall have a Floor Area of not more than 800 square feet and a height of no more than 16 feet; and

(2) An ADU created pursuant to Section 65852.2(e)(1)(B) or (D) of the Government Code shall not be located on any lot that is located in both a Very High Fire Hazard Severity Zone designated by the City of Los Angeles Fire Department pursuant to Government Code Section 51178 and a Hillside Area as defined by the Hillside Area Map pursuant to Section 12.03 of this Code, unless it meets one of the exceptions stated in Subparagraph (4) of Paragraph (c) of this subdivision.

(h) **General Provisions.** The following general provisions apply to all ADUs, JADUs, and lots where any ADU or JADU is located.

(1) In the event where an ADU or JADU would be created as a result of a conversion of an entire existing dwelling unit, any newly constructed dwelling unit located between the ADU or JADU, and the rear lot line, shall not exceed 1,200 square feet.

(2) In cases where additional dwelling units are added to a lot after the creation of the ADU or JADU, an ADU and JADU will be counted towards the overall number of dwelling units as permitted by the zone.

(3) ADUs and JADUs may be rented but shall not be sold separate from the existing or proposed dwelling unit on the same lot. Movable Tiny Houses may be sold when removed from the lot.

(4) Applicants for ministerial approval of a permit application for the creation of an ADU or JADU shall not be required to correct nonconforming zoning conditions. For this

purpose, nonconforming zoning condition means a physical improvement on a property that does not conform to current zoning standards.

    (5)  A certificate of occupancy for an ADU or JADU shall not be issued before a certificate of occupancy for the primary dwelling.

  (i)  **Zoning Administrator Authority.**  It is the intent of the City to retain all portions of this subdivision regarding ADUs and JADUs not in conflict with state law.  The Zoning Administrator shall have authority to clarify, amend or revoke any provision of this subdivision as may be necessary to comply with any state law regarding ADUs or JADUs.

  (j)  **Interpretation Consistent with State Law.**  This subdivision is not intended to conflict with state law.  This subdivision shall be interpreted to be compatible with state enactments.

  (k)  **California Coastal Act.**  Nothing in this subdivision shall be construed to supersede or in any way alter or lessen the effect or application of the California Coastal Act of 1976 [Division 20 (commencing with Section 30000) of the Public Resources Code], except that the Department shall not be required to hold public hearings for coastal development permit applications for ADUs or JADUs.

  (l)  **Enforcement.**  Enforcement of building standards pursuant to Article 1 (commencing with Section 17960) of Chapter 5 of Part 1.5 of Division 13 of the Health and Safety Code for an ADU described in paragraph (1) or (2) below, upon request of an owner of an ADU, shall be delayed subject to compliance with Section 17980.12 of the Health and Safety Code:

    (1)  The ADU unit was built before January 1, 2020.

    (2)  The ADU was built on or after January 1, 2020, in a local jurisdiction that, at the time the ADU was built, had a noncompliant ADU ordinance, but the ordinance is compliant at the time the request is made.

**B.  (None)**

**C.  AREA.**

  1.  **Building Lines** – Where a Building Line or Setback Line has been established by ordinance, the space between such Building or Setback Line and the front or side lot line may be used as the front or side yard, as the case may be, in lieu of the front or side yard required by this article.

  2.  **Side Yard Waived for First Story Garage** – Where a residential building is more than two stories or 28 feet in height and the first story is designed and used solely for automobile parking or other accessory purpose, the required side yard need not be increased in width for said first story; provided that the floor surface above such story is not more than seven feet above the adjacent ground elevation at any point, except that the floor surface may be eight feet above the adjacent ground elevation at the exits and entrances to the automobile parking area. **(Added by Ord. No. 109,714, Eff. 8/26/57.)**

  3.  **Incentives to Produce Housing in the Greater Downtown Housing Incentive Area.  (Amended by Ord. No. 179,076, Eff. 9/23/07.)**  Notwithstanding any other provision of this chapter to the contrary, for lots in the R4, RAS4, R5, CR, C2, C4, and C5 zones in the Greater Downtown Housing Incentive Area, the following shall apply:

    (a)  No yard requirements shall apply except as required by the Downtown Design Guide as approved by the City Planning Commission.  The Director of Planning or his/her designee shall stamp and sign the plans showing the required yards.  The applicant shall submit the stamped and

signed plans to the Department of Building and Safety along with the plans submitted for a building permit. **(Amended by Ord. No. 186,325, Eff. 11/11/19.)**

    (b)  For the purpose of calculating the buildable area for residential (including Apartment Hotel or mixed-use) buildings, the buildable area shall be the same as the lot area.

    (c)  The maximum number of dwelling units or guest rooms permitted shall not be limited by the lot area provisions of this chapter so long as the total floor area utilized by guest rooms does not exceed the total floor area utilized by dwelling units.

    (d)  Notwithstanding the provisions of Section 12.21 G.2. of this Code to the contrary, there shall be no prescribed percentage of the required open space that must be provided as either common open space or private open space.

  4.  **(Repealed by Ord. No. 181,076, Eff. 3/28/10.)**

  5.  **(Repealed by Ord. No. 181,076, Eff. 3/28/10.)**

  6.  **Front Yard – Sloping Lot** – Where the elevation of the ground at a point fifty (50) feet from the front lot line of a lot and midway between the side lot lines differs ten  (10) feet or more from the curb level, the front yard need not exceed fifty (50) percent of that required in the zone.

  7.  **(None)**

  8.  **Front Yard – Unit Development** – Where all the lots in a frontage in an "R" Zone are developed as a unit with one–family dwellings, the required front yard may be reduced by not more than five feet on part of the lots, provided the average of the front yard depth for the entire frontage is not less than the minimum front yard required in the zone in which the property is located.

  9.  **Side Yards Reduced** – Where all the lots in a frontage are developed as a unit with residential buildings, the required side yard may be reduced on one side of each lot, provided that:

    (a)  The total combined width of the side yards on each lot is not less than the sum of the widths of the side yards required in the zone in which the property is located; and

    (b)  The buildings are so located that the narrow side yard on one lot adjoins the wide side yard on the adjoining lot; and

    (c)  No side yard is less than three feet in width for buildings two stories or less in height, nor less than three feet in width, plus the increased width for additional stories above two stories where required by the area regulations of the zone in which the property is located.  **(Amended by Ord. No. 138,685, Eff. 7/10/69.)**

  Where lots comprising 50% or more of a frontage are developed with buildings having varying side yards conforming to the above regulations, or where all the lots in a frontage have deed restrictions requiring such varying side yards, all the lots in such frontage may be developed in the same manner.

  10.  **Rear Yard – Includes One-Half Alley**.  Except in the RS, R1, RU, RZ, RMP, and R2 Zones, in computing the depth of a rear yard where the rear yard opens onto an alley or in the RW Zone onto a court of not more than 30 feet in width, one-half the width of the alley or court may be assumed to be a portion of the required rear yard.  **(Amended by Ord. No. 177,103, Eff. 12/18/05.)**

  11.  **Rear Yard – Includes Loading Space**  – Loading space provided in accordance with this article may occupy a required rear yard or portion thereof but in no case shall any portion of a street or alley be

6/24/2020

counted as part of the required loading space.

12. **Accessory Buildings in Yards.** Accessory buildings may be located in a required yard in conformance with the provisions of Section 12.21 C.5. **(Amended by Ord. No. 125,278, Eff. 9/16/63.)**

13. **Lots Affected by Acquisitions for Public Use. (Amended by Ord. No. 144,536, Eff. 5/3/73.)** Where a building or structure is located upon a lot portion of which is acquired for any public use, (by condemnation, purchase, dedication, or otherwise) by any governmental entity, or if all or a part of a separate off-street automobile parking area serving such building or structure is acquired for public use, such building or structure may be maintained, and may thereafter be used, maintained or repaired without relocating or altering the same to comply with the area regulations or off-street automobile parking requirements of this article. Further, if such building or structure is partially located upon the area being acquired for public use, it may be relocated upon the same lot or premises or remodeled or reconstructed without observing the required yard space adjacent to the new lot line created by such acquisition, and without reducing the number of dwelling units to conform to the area regulations of the zone in which it is located and without observing the off-street automobile parking requirements of this article. The exemptions provided in this paragraph permit compliance only to the extent that such non–compliance is caused by an acquisition for public use.

If only a portion of an existing building or structure is acquired for public use, the repair, remodeling or reconstruction of the remainder of said building or structure which was made necessary by said acquisition, shall conform to the provisions of the building code. Any portion of the building or structure which is not required to be repaired, remodeled or reconstructed by reason of said acquisition shall not be required to be made to conform to the provisions of the building code, unless it would otherwise be required to conform thereto independently of and in the absence of said acquisition of only a portion of the building or structure.

If a lot resulting from the acquisition of all or a portion of a parcel for public use does not comply with the area requirements of the zone in which it is located, or if a legally existing nonconforming lot is further reduced in size because of such acquisition, said lot may be utilized and a building permit shall be issued for any purpose permitted in the zone, so long as the lot is not smaller in size or width than one-half (1/2) of the minimum area or width required for the zone. **(Amended by Ord. No. 150,362, Eff. 1/13/78.)**

14. **(None)**

15. **(None)**

16. **Lot Area – Includes One-Half Alley.** In computing the number of dwelling units allowed by the minimum lot area per dwelling unit requirements of this article on a lot abutting upon one or more alleys, one-half the width of such alley or alleys may be assumed to be a portion of the lot. **(Added by Ord. No. 121,925, Eff. 6/4/62.)**

17. **Lot Area Acreage – Includes One-Half Street.** In computing the lot area of a lot in the A1 and A2 Zones, that portion of the width of all abutting streets or highways, which would normally revert to the lot if the street were vacated, may be assumed to be a portion of the lot. **(Amended By Ord. No. 133,218, Eff. 11/19/66.)**

18. **Lot Area in Hillside Subdivisions** – On land located within an RA or RE Zone and also within the "H" Hillside or mountainous area, there may be lots having less than the minimum lot area specified within said zones and there may be a single–family dwelling on each lot if the lot is shown with a separate letter or lot number on a recorded Subdivision Tract Map or Parcel Map. **(Amended By Ord. No. 139,736, Eff. 1/31/70.)**

Case 2:17-cv-09003-AKT-PJW Document 208-3 Filed 06/24/20 Page 59 of 65 Page ID #:485

19. **Through Lot – May Be Two Building Site** – Where a through lot has a depth of 150 feet or more, each half of the lot may be improved as though it is a separate lot, with the rear line of each approximately equidistant from the front lot lines. The location of all buildings and the number of dwelling units therein shall comply with the requirements of the zone in which the through lot is located, except that in any case there may be at least one single–family dwelling on each half. **(Amended By Ord. No 116,389, Eff. 6/29/60.)**

The provisions of this subdivision shall not apply to lots in the RE Zone, or to lots in any zone that are also within the "H" Hillside or Mountainous Area. **(Amended by Ord. No. 127,777, Eff. 8/1/64.)**

20. **Projections Into Yards.**

(a) A canopy above an entrance and extending over a driveway which leads to a detached garage or a parking space not abutting a dwelling, for the temporary shelter of automobiles, commonly referred to as a porte–cochere, may project into a required side yard, but not nearer than 30 in to any lot line, provided such structure is not more than one story in height and 20 feet in length, and is entirely open on at least three sides except for the necessary supporting columns and customary architectural features. **(Amended by Ord. No. 138,685, Eff. 7/10/69.)**

(b) Cornices, belt courses, sills, or other similar architectural features (not including bay windows or vertical projections), may project into a required side yard, other than the side yard adjoining the street lot line of a corner lot, not more than two inches for each one foot of width of such yard, and may project into a required front yard, rear yard, side yard adjoining the street lot line of a corner lot, passageway, or other open space not more than 30 inches, except as provided in Section 12.08.5 C1.(c), provided the width of a side yard adjoining the street lot line of a corner lot is not reduced to less than three feet. Eaves may project into a required side yard, other than the side yard adjoining the street lot line of a corner lot, not more than four inches for each one foot of width of such yard, provided the width of such side yard is not reduced to less than two and one-half feet. Eaves may also project into a required front yard, rear yard, side yard adjoining the street lot line of a corner lot, passageway, or other open space not more than 30 inches, provided the width of a side yard adjoining the street lot line of a corner lot is not reduced to less than two and one-half feet. Chimneys may project into a required passageway not more than one foot and may project into a required front yard, rear yard, side yard, or other required open space, except as provided in Section 12.08.5 C.1.(c), not more than two feet, provided the width of any required side yard is not reduced to less than three feet. **(Amended by Ord. No. 138,685, Eff. 7/10/69.)**

(c) Fire escapes may extend or project into any front, side or rear yard not more than four (4) feet.

(d) **(Amended by Ord. No. 138,685, Eff. 7/10/69.)** Except in an RW Zone, where a required passage may not be reduced in any manner, open, unenclosed stairways or balconies, not covered by a roof or canopy, may extend or project into a required rear yard not more than four feet, and such balconies may extend into a required front yard, passageway, other open space, or the side yard adjoining the street lot line of a corner lot, not more than 30 inches, provided the width of a side yard adjoining the street lot line or a corner lot is not reduced to less than 30 inches.

(e) Open, unenclosed porches, platforms, or landing places (including access stairways thereto) not covered by a roof or canopy, which do not extend above the level of the first floor of the building, may extend or project into the required front yard, side yard, rear yard, passageway, or other open space, not more than six feet, provided that in no event shall any such porch, platform or landing space be more than six feet above the natural ground level adjacent thereto. **(Amended by Ord. No. 138,685, Eff. 7/10/69.)**

(f) **Fences and Walls in the A and R Zones. (Amended by Ord. No. 154,798, Eff. 2/20/81.)**

(1) **Fences and Walls**. For the purposes of Article 2 through 6 of this chapter, the terms "**fence**" and "**wall**" shall include latticework, ornamental fences, screen walls, hedges or thick growths of shrubs or trees. Fence and wall height shall be measured from the natural ground level adjacent thereto.

(2) **Front Yards. (Amended by Ord. No. 173,754, Eff. 3/5/01.)** In the R Zones, fences, walls, and landscape architectural features of guard railing around depressed ramps, not more than three and one-half feet in height above the natural ground level adjacent to the feature, railing or ramp, may be located and maintained in any required front yard. In the A Zones (including the RA Zone), a fence or wall not more than six feet in height may be located and maintained in the required front yard. In both the A and R Zones, a fence or wall not more than eight feet in height may be located and maintained in the required front yard when authorized by a Zoning Administrator pursuant to Section 12.24 X.7.

In both the A and R zones, an unobstructed chainlink fence not more than ten feet in height may be located and maintained in all yards when required by the Department of Building and Safety pursuant to the provisions of Sections 91.3303 and 91.6103 and Division 89 of Article 1 of Chapter IX of this Code.

(3) **Side Yards, Rear Yards and Other Spaces. (Amended by Ord. No. 173,492, Eff. 10/10/00.)** A fence or wall not more than eight feet in height may be located and maintained within the required side yard, rear yard or other open space of any lot in an RW Zone and within the required side yard, rear yard or other open space of a lot within any other A or R zone which is 40 feet or more in width, provided the lot is not located within the boundary of a "**Hillside Area**", as defined in Section 91.7003 of this Code.

A fence or wall not more than six feet in height may be located and maintained within the required side yard, rear yard or other open space of any lot in an A or R Zone, other than an RW Zone, which is less than 40 feet in width or which is located within the boundary of a "**Hillside Area**", as defined in Section 91.7003 of this Code, except that in either case a fence or wall not more than eight feet in height may be located in the yards or other open space when authorized by a Zoning Administrator pursuant to Section 12.21A2.

In the A Zones (including the RA Zone), a fence or wall not more than eight feet in height may be located on the side street lot line of any reversed corner lot; provided, however, that if the lot is located within the boundary of a "Hillside Area", as defined in Section 91.7003, the fence or wall shall not exceed six feet in height.

In the R Zones, other than the RW Zones, a fence or wall located within five feet of the side street lot line of a reversed corner lot may not exceed three and one-half feet in height. In the RW Zones, a fence or wall located within three feet of the side street lot line of either a corner lot or a reversed corner lot may not exceed three and one-half feet in height.

(4) **Access Ways.** Access ways shall be maintained in accordance with the provisions of Section 12.22C20(1).

(5) **Maintenance of Fences and Walls**. Fences shall be maintained in accordance with the provisions of Section 12.21A9.

6/24/2020  Case 2:17-cv-09003-SAK-PJW  Document 208-5  Filed 06/24/20  Page 61 of 65 Page ID #:4827

(6) **Masonry and Concrete Walls.  (Amended by Ord. No. 173,492, Eff. 10/10/00.)** A masonry or concrete fence or wall over three and one-half feet in height shall be built in accordance with the provisions of Section 91.106.1 of this Code.

(7) **Fences and Walls Enclosing Parking Areas**.  Fences and walls enclosing parking areas shall be provided in accordance with the provisions of Section 12.21A6.

(8) **Fences and Walls Around Pools**.  **(Amended by Ord. No. 173,492, Eff. 10/10/00.)** A fence or wall not exceeding four and one-half feet in height, as required by Section 91.6109 of this Code, may be erected and maintained to enclose a swimming pool, fish pond or other body of water existing in a required yard prior to June 1, 1956.

(9) **Fences and Walls Around Schools.**  An open mesh type fence to enclose an elementary or high school site may be located and maintained in any required yard.

(10) **Fences and Walls Around Tennis Courts.**  The provisions of Section 12.20 C 20(m) shall control with respect to tennis court fences.

(11) **Fences and Walls at Street Intersections.**  Fences and Walls at street intersections shall comply with the provisions of 62.200 of this Code.

(g) **(None)**

(h) A one–story covered passageway, commonly referred to as a breezeway, not over five feet in width, extending from a main residential building to a private garage or other accessory building may be erected and maintained in a required rear yard. Such passageway shall be located not less than five feet from all lot lines and shall be unenclosed, except that on a corner lot there may be a wall or fence not over six feet in height along the street side of such passageway.

(i) Landscape features such as trees, shrubs, flowers or plants, shall be permitted in any required front, side, or rear yard, passageway or other open space, provided that they do not produce a hedge effect contrary to the provisions of Paragraphs (f) and (g) above. **(Amended by Ord. No. 107,884, Eff. 9/23/56.)**

(j) Name plates, signs, and advertising matter, as permitted by this article, may be located in any required front yard, side yard, rear yard, passageway or other open space; provided that the total area of all identification signs in any required yard, shall not exceed 12 square feet, and any sign appertaining to the sale of farm products raised or produced on the premises shall be located at least ten feet from any side lot line.  **(Amended by Ord. No. 107,884, Eff. 9/23/56.)**

(k) Awnings or canopies without enclosing walls or screening may be attached to the exterior walls of a Group R or Group H Occupancy, provided that: such awnings or canopies do not extend more than four feet into a required front yard or building line space at the front of a lot, and have no vertical support within said yard or space; such awnings or canopies do not extend more than 30 inches into a required side yard, rear yard, building line space at the side of a lot, passageway or other open space, but in no event nearer than 30 inches to an interior lot line; and where such awnings or canopies project into a required front or side yard, passageway or other open space, they may extend only over the windows or doors to be protected and for 12 inches on each side thereof. **(Amended by Ord. No. 121,925, Eff. 6/4/62.)**

(l) Notwithstanding the provisions of this subdivision, no architectural feature, fire escape, porch, balcony, or other projection permitted in a yard, passageway or other open space, shall be located and maintained so as to preclude complete access about and on each side of and in close proximity to main buildings and accessory living quarters at all times. Where a fence or wall is

6/24/2020

provided or maintained, a gate or other suitable opening at least two and one–half feet in width shall be deemed adequate for access through said fence or wall; provided further that where such fence or wall is located adjacent to an alley and is over six feet in height, adequate access shall be provided through such wall or fence onto the adjacent alley. At least five feet of clear and open space shall be maintained between any two main buildings, including the projections, on any one lot. **(Amended by Ord. No. 154,798, Eff. 2/20/81.)**

(m)  **(Added by Ord. No. 151,466, Eff. 10/27/78.)**  Tennis or paddle tennis courts, including fences and light which are accessory to a primary residential use on the same lot in the A or R Zones may extend into a portion of the required rear yard of such lot if such court and its appurtenances meet all of the following conditions:

(i)   The court surface is not more than 2 feet above the natural adjacent grade at any point.

(ii)   The court is enclosed with a fence no higher than 10 feet above the court surface and all portions of such fence above a height of six feet are an open chain link type fence.

(iii)   Any light standards and fixtures are no higher than 20 feet above the court surface.

(iv)   The court is located a distance from the rear lot line at least equal to the width of the side yard required for a one–story main building in the zone but in no event less than 5 feet.

21.   **Lot Widths and Yard Requirements for RE15–H Zones.** Lot widths and yard area requirements for the R1 Zone shall apply to lots in the RE15–H Zone if said lots are shown as numbered lots on a tentative subdivision tract map or parcel map approved by the Advisory Agency or the Director of Planning for the City of Los Angeles prior to January 1, 1967 and recorded in the Office of the Los Angeles County Recorder prior to July 1, 1967. **(Added by Ord. No. 134,673, Eff. 7/31/67.)**

22.   **Width and Area Flag Lots in Mountainous Areas.**  Where a flag lot is situated in the "H" Hillside or the Very High Fire Hazard Severity Zone pursuant to Section 57.4908 of the Municipal Code, the lot width may be calculated by measuring the width of the main buildable portion of said flag lot on a straight line parallel to the general direction of the frontage street and midway between the rear and front lines of the main buildable portion of the flag lot provided, however, that the main buildable portion contains the lot width and not less than 90% of the lot area required for lots in the zone classification in which the flag lot is situated, said lot area to be calculated exclusive of the area contained within the access strip portion of the flag lot. **(Amended by Ord. No. 176,943, Eff. 10/5/05.)**

23.   **(Repealed by Ord. No. 164,145, Eff. 12/8/88.)**

24.   **Zero Side Yard Lots –  Remain Separate Lots.**  If several lots are developed with building crossing lot lines, as permitted by Section 12.08.3 B.1. of this Code, they shall remain separate lots, notwithstanding such construction across the lot lines. **(Added by Ord. No. 159,532, Eff. 1/3/85.)**

25.   **Zero Side and Rear Yard Development in Multiple Residential Zones.**  In the R2, RD, R3, RAS3, R4, RAS4, and R5 Zones, lots may be developed with either attached dwellings crossing lot lines or detached dwellings not crossing lot lines.  These dwellings may contain one dwelling unit on a lot and may observe the lot width, yard, passageway and other requirements for development in the RZ Zone. Every lot so developed shall have a minimum lot area of 2,500 square feet.  No lots may be developed in accordance with this subdivision unless the lots and uses are approved in connection with a preliminary parcel map, tentative tract map or modification approved subsequent to January 1, 1985.  Development so approved shall meet the density requirement of the zone in which the lots are located.  **(Amended by Ord. No. 174,999, Eff. 1/15/03.)**

26. **Yards Required for Historically Significant Buildings.** Notwithstanding any provision of the Los Angeles Municipal Code to the contrary, in connection with any change of use in an historically significant building, the yards required shall be the same as the yards observed by the existing structures on the site. An historically significant building is defined as a structure that is designated on the National Register of Historic Places, including Contributing Buildings in National Register Historic Districts, the California Register of Historical Resources, the City of Los Angeles List of Historic-Cultural Monuments, or a Contributing Structure in an Historic Preservation Overlay Zone (HPOZ) established pursuant to Section 12.20.3 of this Code. **(Added by Ord. No. 172,792, Eff. 10/4/99.)**

27. **Small Lot Subdivision. (Amended by Ord. No. 185,462, Eff. 4/18/18.)** The purpose of this provision is to create alternative fee-simple home ownership within the multi-family and commercial zones. A small lot subdivision shall be permitted in the RD, R3, R4, R5, RAS and the P and C zones pursuant to an approved tract or parcel map. A subdivision for the purposes of small lots enables the construction of new small lot homes and provides opportunities for the preservation of existing residential dwelling units located on a single lot to be rehabilitated as for-sale dwellings on individual small lots.

(a) **Construction of New Small Lots.** Notwithstanding any provisions of this Code relating to minimum lot area, in the RD, R3, R4, R5, RAS and the P and C zones, parcels of land may be subdivided into lots which may contain one, two or three dwelling units, provided that the density of the subdivision complies with the minimum lot area per dwelling unit requirement established for each zone, or, in the case of a P zone, the density of the subdivision shall comply with the minimum lot area per dwelling unit of the least restrictive abutting commercial or multi-family residential zone(s).

(1) A parcel map or tract map, pursuant to Section 17.00 et seq. of this Code, shall be required for the creation of a small lot subdivision. The parcel map or vesting tentative tract map must comply with the Advisory Agency Small Lot Map Standards; and

(2) For small lot subdivision projects, no demolition, grading, building permit or certificate of occupancy shall be issued unless the Director of Planning has reviewed the application and determined that the small lot subdivision project complies with the City Planning Commission's Small Lot Design Standards. The Director of Planning's sign-off as to compliance with the Commission's Small Lot Design Standards is a ministerial administrative clearance.

(i) The Director is authorized to designate one or more members of the professional staff of the Department of City Planning to perform any of the Director's duties in this section. The Director shall establish an administrative process, guidelines, procedures, requirements, and forms as may be necessary to conduct the review of the administrative clearance to determine conformance with the Small Lot Design Standards.

(ii) The application for this administrative clearance shall be filed concurrent with the tract or parcel map application and at any time a subsequent alteration or addition is proposed.

(iii) As a condition of approval, all small lot subdivisions shall be required to conform to the plans approved by the Director of Planning.

(3) The minimum lot width shall be 18 feet and the minimum lot area shall be 600 square feet. The Advisory Agency shall designate the location of front yards in the subdivision tract or parcel map approval.

Case 2:17-cv-09003-JAK-PJW  Document 208-3  Filed 06/24/20  Page 64 of 65  Page ID #:4830

(4)  Access shall be provided to a lot containing a dwelling unit and to its required parking spaces, pursuant to Section 12.21 A.4.(a) by way of a public or private street, an alley, or an access easement.

(5)  The lot area coverage by all structures shall not exceed 75% of an approved small lot, unless the tract or parcel map provides an open space easement equivalent to 25% of the lot area of each lot not meeting this provision.

(6)  No front, side, or rear yard shall be required between interior lot lines created within an approved small lot subdivision.

(7)  The provisions of the front yard of the underlying zone shall apply to the Front Lot Line of the perimeter of the subdivision.

(8)  The following shall apply to the perimeter of the subdivision:

(i)  For any subdivision that shares a property line with an R1 or more restrictive single family zone, the provisions of the front yard, side yard and rear yard of the underlying zone shall apply. A minimum five-foot side yard shall be required.

(ii)  For any subdivision that does not share a property line with an R1 or more restrictive single family zone,  the following shall apply:

a.  A minimum five-foot yard shall be required along the Side Lot Line of the perimeter of the subdivision; and

b.  A minimum ten-foot yard shall be required along the Rear Lot Line of the perimeter of the subdivision, except that where the Rear Lot Line abuts an alley a minimum five-foot rear yard shall be required along the perimeter of the subdivision.

(9)  No passageway pursuant to Section 12.21 C.2. of this Code shall be required.

(10)  In a P zone, lots may be developed as a small lot subdivision, provided that the General Plan land use designation of the lot is "commercial" or "multiple family residential".

(11)  A dwelling unit in a small lot subdivision shall not be required to comply with Paragraphs (a), (b), and (f) of Section 12.21 A.17. of this Code.

(12)  Fences and walls within the yard setback areas adjacent to a public right-of-way, except alleys, and along the perimeter of the proposed subdivision shall be no more than three and one-half feet in height in accordance with Section 12.22 C.20. of this Code. Fences and walls within the yard setback areas along the perimeter, not adjacent to the public right-of-way, of the proposed subdivision shall be no more than six feet in height in accordance with Section 12.22 C.20. of this Code.

(13)  Lots created within a small lot subdivision are exempt from the "frontage" requirement as defined in the definition of "Lot" pursuant to Section 12.03.

(b)  **Small Lot Subdivisions of Existing Dwelling Units.**  The purpose of this Subsection is to further facilitate fee-simple home ownership opportunities through the preservation of existing housing within the City.

Existing Group Dwellings, Bungalow Courts, and detached single, duplex, and triplex dwelling structures maintained under a single ownership with an original building permit issued more than 45 years prior to the date of submittal of the application for subdivision, or where information submitted with the subdivision application indicates that the building(s) is/are more than 45 years old based on the date the application is submitted may be subdivided into small lots and shall comply with Subparagraphs (1), (2) (4), and (9) through (13) of Paragraph (a) of this Subdivision. All existing structures shall be legally constructed with an issued building permit or Certificate of Occupancy.

(1) Notwithstanding any provisions of this Code relating to minimum lot area to the contrary, in the RD, R3, R4, R5, RAS and the P and C zones, parcels of land may be subdivided into lots which may contain one, two or three dwelling units, provided that the density of the subdivision complies with the minimum lot area per dwelling unit requirement established for each zone, or in the case of a P zone, the density of the subdivision shall comply with the minimum lot area per dwelling unit of the least restrictive abutting commercial or multi-family residential zone(s). Bungalow courts and existing structures that are nonconforming as to use, density, yards, or parking may be subdivided provided that the subdivision does not further increase the density nor reduce the yards, and that existing required parking be maintained, respectively.

(2) A nonconforming building, structure, or improvements may be maintained or repaired or structurally altered provided it conforms to Section 12.23 A. of this Code. However, alterations to existing structures shall also be in conformance with the "Bungalow Court and Existing Structure" Small Lot Design Standards adopted by the City Planning Commission.

(3) All existing dwellings shall provide parking as required on each dwelling's most recently issued permit. No additional parking is required.

(4) All new dwellings added to the small lot subdivisions of existing dwelling units shall be subject to subparagraphs (1) through (13) of Paragraph (a) of this Subdivision, including current setback requirements, parking, and applicable Small Lot Design Standards.

(c) **Exceptions.** The provisions of this section do not apply to any of the following projects, which shall comply with the regulations in effect prior to the effective date of this ordinance, as applicable:

(1) Any small lot subdivision entitlement application filed and accepted and deemed complete prior to the effective date of this ordinance as determined by the Department of City Planning.

(2) Any project for which the City has approved a small lot subdivision discretionary land use entitlement as of the effective date of this ordinance, but that has not yet submitted plans and appropriate fees to the Department of Building and Safety for plan check, as determined by the Department of City Planning.