# EXHIBIT 12

Olu K. Orange, Esq. (SBN 213653)
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
Phone: (213) 736-9900
Fax: (213) 417-8800
orangelawoffices@att.net

Shawna L. Parks, Esq. (SBN 208301)
LAW OFFICE OF SHAWNA L. PARKS
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Phone/Fax: (323) 389-9239
sparks@parks-law-office.com



CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

DEC 18 2017

Sherri R. Carter, Executive Officer/Clerk
By: Marlon Gomez, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| S.G., a minor, by and through her guardian *ad litem*, Brittany Dorn; A.D.G., and R.L., minors, by and through their guardian *ad litem*, Derek Spencer; N.B., a minor, by and through his guardian *ad litem*, Araceli Boyce; A.G., a minor, by and through his guardian *ad litem*, Karla Garcia; CHRISTAL LORD; and DYANNA SANABRIA, <br><br> *Petitioners and Plaintiffs,* <br> vs. <br><br> CITY OF LOS ANGELES; LOS ANGELES CITY COUNCIL; and DOES 1 THROUGH 10, inclusive, <br><br> *Respondents and Defendants.* | Case No.: **BS 171903** <br><br> **VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> [Code Civ. Proc. §§ 1085, 1094.5; Pub. Res. Code §§ 21168, 21168.5; 14 CCR §15001, *et seq.*] <br><br> (filed concurrently with Declaration of Petitioners' counsel Olu K. Orange, and Exhibits A, B and C) |
| HIRO KOBAYASHI, 3568 MOTOR LLC, AND ROES 1 THROUGH 10, inclusive, <br><br> *Real Parties In Interest* | |

- 1 -

## I.   INTRODUCTION

1. This petition stands between 350 elementary school children and their teachers on one side – and grave risks of cancer, far beyond legal limits – on the other.

2. For the several days prior to filing this action, through several pleas and entreaties to officials, these children and their teachers have fought to no avail to protect their health – and their lives. Meanwhile City of Los Angeles ("City") officials continued to collaborate and show preference to a developer who proposes to engage in a sizeable demolition, excavation and construction project on the fence-line of the kindergarten playground at Palms Elementary School.

3. Per the City and developer's own documentation, the project will send toxic dust, vapors, PM2.5 and PM10 particles, volatile organic compounds, reactive organic gases, NOx gas, and other poisonous contaminants into the air covering the children's playground and the school. Additionally, many of the children at Palms Elementary School are in the Deaf and Hard of Hearing program and wear sound amplifying listening devices to accommodate their disabilities. The construction noise from the project will cause them pain and prevent them from learning.

4. Nevertheless, through meetings with politicians where parents were specifically excluded, the City and developer have pushed the project through the approval process – no Environmental impact report, no Health Risk Analysis, and no protective measures for the 350+ children, or their teachers.

5. Neither the City, nor the developer, served the children, their parents, nor their teachers, with notice of the planned construction, much less information about the impacts of the construction, and the harm currently scheduled to befall them.

6. The children and teachers now seek through this action an order from the Court revoking all approvals and permits granted by City to developer, mandating an Environmental impact report and Health Risk Analysis, and requiring Petitioners to have reasonable notice thereof and a meaningful opportunity to be heard.

## II.   JURISDICTION AND VENUE

7. The children and their teachers ("Petitioners") at all times mentioned herein, resided in the County of Los Angeles. Respondents conducted business, at all times mentioned herein, in and about the County of Los Angeles, out of which the causes of action described herein arose. Thus, the County of Los Angeles is the proper county for the determination of this action and this Court may exercise jurisdiction over Respondents.

8. Venue is proper because most or all of the acts and omissions complained of in this litigation took place within this judicial district.

## III.   PARTIES

A.   PETITIONERS

9.    S.G., A.D.G., R.L., N.B., and A.G., are all minors who currently attend, and at all times material herein, attended as pupils Palms Elementary School, located at 3520 Motor Avenue, in the City of Los Angeles, California. Each of them are private residents in the County of Los Angeles, State of California. Plaintiffs S.G., A.D.G., R.L., and N.B. are qualified individuals with disabilities under Cal Gov't Code §§ 12926, 12926.1.

10.  Petitioner CHRISTAL LORD ("Lord") is a private resident in the County of Los Angeles, State of California. She is currently employed as a teacher at Palms Elementary School, and at all times material herein, she was so employed.

11. DYANNA SANABRIA ("Sanabria") is a private resident in the County of Los Angeles, State of California. She is currently employed as a teacher's assistant at Palms Elementary School, and at all times material herein, she was so employed. Petitioner Sanabria is a qualified individual with a disability under Cal Gov't Code §§ 12926, 12926.1.

12. Petitioners have a substantial interest in ensuring that the City's decisions are in conformity with the requirements of law, and in having those requirements

- 2 -

properly executed and the public duties of the City enforced. Petitioners will be adversely affected by impacts resulting from the City's actions and approvals, and are aggrieved by the acts, decisions and omissions of the City as alleged in this petition and complaint Petitioners are suing on their own behalf, and on behalf of similarly situated others who will be affected near schools in the City of Los Angeles.

B.    RESPONDENTS

13. Respondent City of Los Angeles ("City") is a public entity organized and existing under the laws of the State of California. This respondent is sued in its own right for City policies, practices and/or customs which cause respondents' injuries. The City is a public entity and receives  state financial. The Project is within the jurisdictional limits of the City.

14. Respondent Los Angeles City Council is the elected governing body of the City, and is the body responsible for the decision at issue herein.

15. Petitioners are informed and believe that Hiro Kobayashi, named as a real party in interest, is and at all time material herein was, an owner and developer ("Developer") of the "3568 Motor Avenue" project ("the Project"), located in the City of Los Angeles, currently scheduled to be built on the fence-line of Palms Elementary School. By contract, defendant Kobayashi is personally obligated to defend, indemnify and hold harmless the City of Los Angeles as to all legal actions related to the Project.

16. Petitioners are informed and believe that 3568 Motor LLC ("the LLC"), named as a real party in interest, is the business entity formed to constitute and own the Project. At all times material herein, the LLC was registered with the California Secretary of State, having its business address in the County of Los Angeles.

17. Petitioners are ignorant of the true names and capacities of respondents sued herein as DOES 1 through 10, inclusive, and therefore sue these respondents by

- 3-

1   such fictitious names. Petitioners will amend this petition and give notice of this

2   petition, and of one or more DOES' true names and capacities, when ascertained.

3   Petitioners allege, based on  information and belief, that respondent DOES 1

4   through 10 are responsible in some manner for the damages and injuries

5   hereinafter complained of.

6   18. Petitioners are ignorant of the true names and capacities of real parties sued

7   herein as ROES 1 through 10, inclusive, and therefore sue these real parties by

8   such fictitious names. Petitioners will amend this petition and give notice of this

9   petition, and of one or more ROES' true names and capacities, when ascertained.

10   Petitioners allege, based on  information and belief, that real party ROES 1

11   through 10 are responsible in some manner for the damages and injuries

12   hereinafter complained of.

13   19. Petitioners are informed and believe that at all times relevant herein, the

14   individual respondents and real parties, and each of them, were the agents,

15   servants and employees of each other and/or their respective employers and were

16   acting at all times within the scope of their agency and employment, and with the

17   knowledge and consent of their principals and employers. At all times herein,

18   respondents and real parties, and each of them, acted in coordination with,

19   approval of, and in conspiracy with one another.  All said respondents and real

20   parties, and each of them, ratified the aforesaid conduct committed under color of

21   law. All entity defendants are liable for the acts of their public employees, the

22   individual defendants herein, for conduct and/or omissions herein alleged,

23   pursuant to the doctrine of *Respondeat Superior*, codified at California

24   Government Code § 815.2.

25

26                        **IV.   FIRST CAUSE OF ACTION**

27                  **[WRIT OF MANDATE – VIOLATION OF CEQA]**

28

20. Each and every allegation throughout this entire Petition is incorporated as though repeated and fully set forth herein.

21. As more fully set forth herein below, Petitioners allege that Respondents violated CEQA by failing to perform an Environmental Impact Report, inclusive of a Health Risk Analysis, in light of the following:

- the City failed to properly consider that Petitioners constitute an 'unusual circumstance' upon whose environment the Project will have a significant impact;

- the City failed to properly consider that the Project presents an increased risk of cancer well above the acceptable SCAQMD limits to the children and teachers at Palms Elementary School;

- the City failed to properly consider that the Project site was occupied by a dry cleaner from 1958 to at least 1985;

- the City failed to properly consider that the Project violates the City's CEQA shade thresholds;

- the City failed to properly consider that the Project violates the City's CEQA construction noise thresholds

### *No Categorical Exemption Should Have Been Given To This Project*

22. Petitioners are informed and believe that developer applied to the City for approval to engage in the Project at some time in 2016. The Project was given Case Nos. DIR-2016-4880-DB and ENV-2016-4881-CE. [see EXHIBIT A, Bates No. 001114 through 001134, Determination Letter].

23. On September 1, 2017, the City, by and through Planning Director Vincent Bertoni, City issued a "Director's Determination" letter ("Bertoni Letter") approving the Project, expediting it, and exempting it from environmental review. [see EXHIBIT A, Bates No. 001114 through 001134, Determination

- 5 -

1    Letter]. Petitioners are informed and believe that City and/or its Planning

2    Department are a lead agency for CEQA purposes.

3    24. "The foremost principle under CEQA is that the Legislature intended the act 'to

4    be interpreted in such manner as to afford the fullest possible protection to the

5    environment within the reasonable scope of the statutory language.'" *Laurel*

6    *Heights Improvement Assn. v. Regents of University of California*, 47 Cal. 3d

7    376, 390 (1988).

8    25. Petitioners are informed and believe the City "exempted" the Project from CEQA

9    upon certain predetermined screening criteria – to wit: City CEQA Guidelines

10   Article III, Section 1, Class 4 Category 1 (published with City's "thresholds of

11   significance");   14 CCR § 15304, titled "Minor Alterations to Land";[1] and 14

12   CCR § 15332, titled, "In-Fill Development Projects" – which require that

13   "Approval of the project would not result in any significant effects relating to

14   traffic, noise, air quality, or water quality." [see EXHIBIT A, Bates No. 001114

15   through 001134, Determination Letter]

16   26. Thus, an exemption cannot apply, if it is established that the project falls within

17   an exception to the exemptions set forth in 14 CCR §15300.2. Section (c)

18   mandates, "Significant Effect. A categorical exemption shall not be used for an

19   activity where there is a reasonable possibility that the activity will have a

20   *significant effect on the environment due to unusual circumstances.*" Moreover,

21   section (e) requires that a categorical exemption shall not be used for any project

22   located on a site where hazardous substances may have been used. Accordingly,

23   City's project approval application requires disclosure, under penalty of perjury,

24   as to whether a site was *"developed with use that could release hazardous*

25

26
_____

27   [1] For perspective, the statute gives as an example: "Minor temporary use of land having

28   negligible or no permanent effects on the environment, including carnivals, sales of Christmas trees, etc." *Id at Section (e)*. The proposed Project at issue clearly fails this definition.

- 6 -

1   *materials on soil and/or groundwater (e.g. dry cleaning … ".* [see EXHIBIT A,

2   Bates No. 001086 through 001094, Planning Application]

3

4   *An EIR Is Required Whenever There Is a Reasonable Possibility*

5   *of Significant Negative Effects on the Environment*

6   27. Per Cal Pub Resources Code § 21100, "All lead agencies shall prepare, or cause

7   to be prepared by contract, and certify the completion of, an environmental

8   impact report on any project which they propose to carry out or approve that may

9   have a significant effect on the environment. Whenever feasible, a standard

10  format shall be used for environmental impact reports."

11  28. "An EIR is required whenever "'substantial evidence in the record supports a

12  'fair argument' significant impacts or effects may occur … .'" *Keep Our*

13  *Mountains Quiet v. Cty. of Santa Clara*, 236 Cal. App. 4th 714, 730, (2015). "In

14  the CEQA context, substantial evidence 'means enough relevant information and

15  reasonable inferences from this information that a fair argument can be made to

16  support a conclusion, even though other conclusions might also be reached.'

17  (Guidelines, § 15384, subd. (a).) Substantial evidence includes 'facts, reasonable

18  assumptions predicated upon facts, and expert opinion supported by facts' (id.,

19  subd. (b)), but not '[a]rgument, speculation, unsubstantiated opinion or narrative,

20  evidence which is clearly erroneous or inaccurate, or evidence of social or

21  economic impacts which do not contribute to or are not caused by physical

22  impacts on the environment' (id., subd. (a))." *Id.* Moreover, "Relevant personal

23  observations of area residents on nontechnical subjects may qualify as substantial

24  evidence … ." *Id.*

25

26  *The City Failed to Properly Consider That Petitioners Constitute*

27  *an 'Unusual Circumstance' Upon Whose Environment the*

28  *Project Will Have a Significant Impact*

- 7 -

29. Petitioners are all children with sensitivities, disabilities, and the teachers who work with them at an elementary school on the fence-line of the Project. Whatever the City's predefined thresholds of significance are – they do not take Petitioners into account. Moreover, Petitioners' environment is not a dwelling environment. It is a teaching and learning environment wherein certain conditions must be in a delicate balance to be healthy and effective. The proposed Project wipes out the balance and substantially and negatively impacts the environment. [see EXHIBIT A, Bates No. 001007 through 001085, Teachers and Parents Declarations]

30. Petitioner S.G. is a student with a disability at Palms Elementary School. As an accommodation for her disability-related learning needs, she wears a sound amplifying listening device and participates in the school's Deaf and Hard of Hearing ("DHH") program as part of her Individualized Education Program ("IEP"). In her classroom, as in all of the DHH classrooms, sound is controlled via use of carpets on the classroom floor, fabric on the walls, and a drop ceiling to minimize sound reverberation.

31. Sound control is necessary for the DHH classrooms because acoustic interruptions are amplified and make it impossible for students who are new to sounds to discern which sounds are voices and sources of information which need to be interpreted, as opposed to sounds which should be filtered out as noise. Background noise causes early attention fatigue. Amplification of sharp unexpected sounds is painful because there is no chance to adjust volume, and ongoing repetitive sounds are annoying and cause headaches.

32. Petitioner A.D.G. is a student with a disability at Palms Elementary School. He wears a sound amplifying listening device but does not participate in the DHH program. For Petitioner A.D.G., background noise is distracting and causes an inability to focus. Amplification of sharp unexpected sounds can be painful and ongoing repetitive sounds can be annoying and cause headaches.

- 8 -

33. Petitioner N.B. is a student with a disability at Palms Elementary School. As an accommodation for his disability-related learning needs, his IEP includes services related to Autism Spectrum Disorder. As a result of his disability he is easily and severely distracted by loud noises. Additionally, N.B. has been diagnosed with mastocytosis. Environmental changes caused by dust, fumes and chemicals have the high probability of triggering an anaphylactic allergic reaction which could result in N.B's death.

34. Petitioner R.L. is a student with a disability at Palms Elementary School. He has an IEP and accommodations for his disability-related learning needs associated with speech and language impairment.  Loud noises distract his attention and interfere with his ability to receive, interpret and replicate word formation, as well as linguistic distinctions in intonation, inflection and cadence – which are necessary to mastering effective communication, and effectively accessing and participating in his curriculum.

35. Petitioner A.G. is a student at Palms Elementary School. Like many elementary school students, he is vibrant, curious, and intellectually agile. He also has reactions to noise, dust and fumes which are manageable when not in quantities above normal. However, when noise, dust and fumes are in increased quantities, A.G. is distracted and cannot focus on his educational activities.

36. Petitioner Lord is a teacher at Palms Elementary School. She spends no less than six hours per day, five days per week inside of, and on the grounds surrounding, the buildings comprising Palms Elementary School.

37. Petitioner Sanabria is a teacher's assistant at Palms Elementary School. She spends several hours per day, on multiple days per week inside of, and on the grounds surrounding, the buildings comprising Palms Elementary School. She is a cancer survivor, but remains under doctor's instructions to limit exposure to carcinogens, and is highly susceptible to relapse.

38. Palms Elementary is a pre-K through 5 primary school located in a fast-developing section of West L.A., with a population of approximately 350 young children. The vast majority of its student body is composed of minority students. 82.2% of the students are classified by the California Department of Education as socioeconomically disadvantaged. 36% of the students are English learners. The school is also the site of one of LAUSD's four Deaf and Hard of Hearing program dedicated sites, a unique and specialized program designed to address the needs of this population of young students.

39. Palms Elementary School is immediately adjacent the proposed construction project. Moreover, the kindergarten playground is on the fence-line of the Project. The Project will involve multiple years of demolition, excavation and construction. Upon information and belief, the developer has indicated that the demolition, excavation and construction of the Project will take place between December of 2017 and October of 2019.

40. The City has not conducted or required an Environmental Impact Report, Health Risk Analysis, or any other protective measures for the 350+ children, or their teachers, who will be at Palms Elementary during the Project.

41. During each school day at Palms Elementary School, the children eat lunch in the outdoor areas with teachers and teaching assistants. The children also run, play, breathe heavily and roll around on the ground in their outdoor play areas.

42. Per the City and developer's own documentation, the project will send, construction noise,  toxic dust, vapors, PM2.5 and PM10 particles, volatile organic compounds, reactive organic gases, NOx gas, and other poisonous contaminants into the air covering the children's playground and the school – for at least two years.

43. The exhibits from Petitioners' appeal to City Council appeal contain declarations from teachers and parents explaining factual observations detailing the Petitioners' sensitivities, the features of their environment, and the impact the

- 10-

1   Project would have on it. [see EXHIBIT A, Bates No. 001007 through 001085,

2   Teachers and Parents Declarations]

3   44. Upon information and belief, Petitioners allege that had City properly considered

4   their unusual circumstances, no exemption and/or approval would have been

5   granted without conducting an EIR – which would have disclosed the adverse

6   impacts on Petitioners and the environment around them.

7   45. The impact upon Petitioners cannot be taken lightly. In California, education is a

8   fundamental right. "Among other things … for California purposes, education

9   remains a fundamental interest 'which [lies] at the core of our free and

10   representative form of government [fn.] . . ..' (citation omitted)." *Butt v. State of*

11   *Cal.*, 4 Cal. 4th 668, 683 (1992). Moreover, "In these days, it is doubtful that any

12   child may reasonably be expected to succeed in life if he is denied the

13   opportunity of an education.  Such an opportunity, where the state has undertaken

14   to provide it, is a right which must be made available to all on equal terms."

15   *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954).

16   46. In this case, the Project at 3568 Motor Avenue, will severely infringe upon each

17   of the children's educational rights and fundamental interests by compromising,

18   and in some cases eliminating, the safety and effectiveness of their learning

19   environments. The declarations of the teachers and parents, submitted with their

20   City Council appeal, explain that their children are, *inter alia*, easily distracted by

21   sharp, as well as ambient noises. Their children are also subject to allergies and

22   physical ailments related to airborne irritants. Additionally, many of the teachers'

23   declarations detail the additional harm their Deaf and Hard of Hearing ("DHH")

24   students would suffer.

25   47. The DHH teachers relate that elementary school years are the point in the

26   students' lives wherein they are gaining the bedrock understandings of how to

27   socialize with and understand each other, as well as children without hearing

28

- 11-

challenges, and that preventing that process from happening would have far-reaching consequences for the rest of their lives.

48. As set forth in supporting declarations, construction noise would make it difficult, and in many cases impossible, for students to distinguish between voices and other sources of information – as opposed to noise and other sounds which should be disregarded. So-called "new listeners" – students who have just activated cochlear implants – would experience pain and listening fatigue, but not even know how to express what is happening to them – or why.

49. Substantial evidence exists to support a fair argument that significant environmental impacts might result from unusual circumstances surrounding the Project.

*The City Failed to Properly Consider That the Project Presents an Increased Risk of Cancer Well Above the Acceptable SCAQMD Limits to the Children and Teachers at Palms Elementary School*

50. Per 14 CCR §15300.2(c), another demonstration of the significant impact upon the environment had by the unusual circumstance of the *unstudied* Project being in such close proximity to hundreds of small children is its increased cancer risks.

51. Petitioners submitted the Bertoni letter to Dr. Paul Rosenfeld, an environmental scientist and chemist for review. Dr. Rosenfeld's December 5, 2017, review and comments concluded that a proper health analysis was necessary because the Project could result in significant cancer risks to nearby adults and children far exceeding acceptable thresholds. Dr. Rosenfeld's review and comments were submitted as part of the record with Petitioners' City Council appeal. [see EXHIBIT A, Bates No. 001001 through 001006, Rosenfeld Comments]

52. Dr. Paul Rosenfeld is a Co-Founder and Principal Environmental Chemist at Soil / Water / Air Protection Enterprise ("SWAPE"). He has over twenty years' experience conducting remedial investigations, risk assessments, and developing

- 12-

cleanup programs for sites containing petroleum hydrocarbons, chlorinated solvents, pesticides, radioactive waste, PCBs, PAHs, dioxins/furans, volatile and semi-volatile organics, perchlorate, heavy metals, asbestos, PFOA, unusual polymers, fuel oxygenates (MTBE), and odors. Dr. Rosenfeld conducts contaminant fate and transport modeling in all environmental media and is a specialist regarding the analysis and modeling of airborne contaminants. [see http://www.swape.com/staff/paul-rosenfeld-ph-d/].

53. In his comments, Dr. Rosenfeld noted that there are hundreds of sensitive receptors are in the immediate vicinity of the site of the Project. "Sensitive receptors" include, but are not limited to, children and the elderly. They are most likely found at schools and nursing homes.[2]

54. Upon review, Dr. Rosenfeld concluded that "the Determination report and associated documents demonstrates that the Project's potential health risk impact posed to nearby sensitive receptors has not been adequately evaluated." Dr. Rosenfeld further concluded that "there is substantial evidence indicating that the proposed Project could result in a potentially significant impact to the surrounding environment, something that the Determination and associated documents failed to evaluate or even address." [see EXHIBIT A, Bates No. 001001 through 001006, Rosenfeld Comments]

55. As part of Dr. Rosenfeld's review, he compared his analysis of a project similarly located near sensitive receptors, children. The project was called, "the View." The screening level Health Risk Analysis demonstrated that the excess cancer

---

[2] The California Air Pollution Control Officer's Association (CAPCOA) categorizes receptors as sensitive receptors or work receptors. According to CAPCOA, "Sensitive receptors refer to those segments of the population most susceptible to poor air quality (i.e., children, the elderly, and those with pre-existing serious health problems affected by air quality). Land uses where sensitive individuals are most likely to spend time include schools and schoolyards, parks and playgrounds, daycare centers, nursing homes, hospitals, and residential communities (these sensitive land uses may also be referred to as sensitive receptors). Worker receptors refer to employees and locations where people work."

1    risk posed to adults, children, and infants near the View would be, out of one

2    million, approximately 43, 290 and 25, respectively. Furthermore, the analysis

3    demonstrated that the excess cancer risk over the course of a residential lifetime

4    (30 years) was approximately 580 in one million. The Southern California Air

5    Quality Management District's maximum allowable threshold is 10 in one

6    million. Independent of Dr. Rosenfeld's analysis, a simple extrapolation for the

7    proposed Project (3568 Motor) based upon number of units, the excess cancer

8    risk over the course of a residential lifetime for receptors at Palms Elementary

9    School would be 277 in one million – _27 times_ the SCAQMD threshold.[3]

10   56. Based upon the unusual circumstance of such a large number of sensitive

11   receptors (300+ children) in the immediate vicinity of the Project site, and the

12   multi-year timeframe within which the Project would emit toxic pollutants into

13   the air the children breathe, and the ground upon which they run and play, a fair

14   argument can be made that the Project would create the reasonable possibility of

15   significant negative effects on the environment, per CEQA Guidelines

16   §15300.2(c). Thus, an EIR was required.

17

18            _The City Failed To Properly Consider That the Project Site Was_

19            _Occupied by a Dry Cleaner from 1958 to at Least 1985_

20   57. CEQA requires full disclosure of a project's significant environmental effects so

21   that decision-makers and the public are informed of these consequences before

22   the project is approved, to ensure that government officials are held accountable

23

24   _____

25   [3] Extrapolated cancer risk depends upon all other factors being equal and is determined as

26   follows:

27   **Step 1** ---> "View" Cancer Risk  (divided by)  "View" # of Units  =  Cancer Risk Ratio

28   **Step 2** ---> Cancer Risk Ratio  (multiplied by) "Motor Ave" # of Units  =  "Motor Ave" Cancer Risk

1    for these consequences. *Laurel Heights Improvement Ass'n of San Francisco v.*

2    *Regents of the University of California*, 47 Cal.3d 376, 392 (1988).

3    58. CEQA rule 14 CCR §15300.2(e) requires that a categorical exemption shall not

4    be used for any project located on a site where hazardous substances may have

5    been used. Accordingly, City's project approval application requires disclosure,

6    under penalty of perjury, as to whether a site was *"developed with use that could*

7    *release hazardous materials on soil and/or groundwater (e.g. dry cleaning ... ".*

8    [see EXHIBIT A, Bates No. 001086 through 001094, Planning Application]

9    59. Upon information and belief, Petitioners allege that the City failed to become

10   informed of, and properly consider, that 3568 Motor Avenue was occupied by a

11   dry cleaners for approximately 27 years. Moreover, Petitioners content that if

12   City had properly considered this fact, no exemption and/or approval would have

13   been granted without conducting an EIR – which would have disclosed the

14   adverse impacts on Petitioners and the environment around them.

15

16              *The City Failed to Properly Consider That the Project Violates*

17                     *The City's CEQA Shade Thresholds*

18   60. The 'screening criteria' for shade/shadow impacts from the City's CEQA

19   Thresholds Guide

20   (http://planning.lacity.org/Documents/MajorProjects/CEQAThresholdsGuide.pdf

21   pp. A.3-1 to A.3-10) are as follows:

22

23   -  QUESTION: Would the project include light-blocking structures in excess of

24   60 feet in height above the ground elevation that would be located within a

25   distance of three times the height of the proposed structure to a shadow-

26   sensitive use on the north, northwest or northeast?

27

28

- 15-

- *ANSWER: Clearly yes. The proposed building is over 70 ft and the Palms Elementary School play yard (a shadow-sensitive use) is well within 210 ft to the north/northeast (i.e., it's adjacent).*

- THEREFORE: Further study is indicated (as opposed to a categorical exemption).

61. A project impact would normally be considered significant if shadow-sensitive uses would be shaded by project-related structures for more than three hours between the hours of 9:00 a.m. and 3:00 p.m. Pacific Standard Time (between late October and early April), or for more than four hours between the hours of 9:00 a.m. and 5:00 p.m. Pacific Daylight Time (between early April and late October). [see 2006 L.A. CEQA Thresholds Guide, pp. A.3-1 to A.3-10].

62. Here the developer's own shade studies demonstrate unacceptable shading during the proscribed time periods. [see EXHIBIT A, Bates Nos. 001109 through 001113, Shade Studies]. Accordingly, this should have precluded the City from exempting this Project from CEQA. Exemptions cannot be claimed if there is a reasonable possibility that the project will result in a significant adverse impact. There is such a reasonable possibility here. The City's failure to consider and properly evaluate the impact of shade is an appropriate basis for revoking the Project's approval and all exemptions – and, requiring an EIR.

### *The City Failed to Properly Consider That*
### *The Project Violates the City's CEQA Construction Noise Thresholds*

63. The 'screening criteria' for noise impacts from the City's CEQA Thresholds Guide (pp. I.1-1 to I.1-9) is as follows:

- QUESTION: Would construction activities occur within 500 feet of a noise sensitive use?

- *ANSWER: Clearly yes. Palms Elementary School and its play yard (both noise-sensitive uses) are well within 500 ft of the Project (i.e., it's adjacent).*

- THEREFORE: Further study is indicated (as opposed to a categorical exemption).

64. "Noise sensitive uses include residences, transient lodgings, schools, libraries, churches, hospitals, nursing homes, auditoriums, concert halls, amphitheaters, playgrounds, and parks. Determine whether construction activities would occur within 500 feet of a noise sensitive use or during the hours specified in the Screening Criteria." *Id.* at (p. I.1-3).

65. In order to determine the impacts of the Project, it is necessary to "[r]eview the description of the proposed project, including the duration of construction activities. Identify the type, amount, and scheduling of construction equipment to be used during each construction phase, and the distance from construction activities to noise sensitive uses. Calculate the noise emissions from individual equipment by using the noise levels shown in Exhibits I.1-1 and I.1-2, or other applicable references, the distance to the noise sensitive uses, and noise attenuation standards." *Id.* at (p. I.1-4).

66. In the instant case, the City was required to make a determination of the impacts of the Project as specified by its own CEQA guidelines, but did not. In fact, it could not – as there was no information provided by the developer as to the "type, amount, and scheduling of construction equipment to be used during each construction phase." The City failed to require the Developer to provide the necessary information. Thus, no calculations as to noise levels of individual equipment were ever made, or considered.

67. Because it is incumbent upon the developer to demonstrate CEQA compliance, this should have precluded the City from exempting this Project from CEQA. The City's failure to demand necessary information, precluded the demonstration that there is not a reasonable possibility that the project will result in a significant

- 17-

adverse impact upon the environment. Therefore, an EIR is required to evaluate the environmental impacts.

68. To date, the City has required no analysis from developer, including no environmental impact report or health risk analysis. There are no mandatory protections for the children and their teachers at Palms Elementary School.

*Petitioners Were Given No Notice of the Project and Are Specifically Excluded From the Class of Persons Allowed to Appeal the Director's Determination by its Terms*

69. The Bertoni letter explicitly limited the group of persons who could appeal to only owners or tenants of adjacent or abutting property and indicated that no hearings would be held. [see EXHIBIT A, Bates No. 001113 (top of page), Determination Letter] Petitioners are not owners or tenants of property abutting or adjacent the Project. They were not mailed notice of the Project. Thus, per Cal Pub Resources Code §21177, Petitioners are not subject to an exhaustion of administrative remedies requirement. Moreover, the appropriate standard of review is set forth by Cal Pub Resources Code §21168.5 - prejudicial abuse of discretion.

70. Petitioners and parents became aware of the Bertoni letter only after they became aware of the Project, on or near the Thanksgiving holiday of 2017 – purely by way of rumor and happenstance. The Bertoni letter also indicated that the determinations as to the Project became final on September 18, 2017. This Petition is timely filed within 90 days thereafter.

71. Additionally, when parents of petitioning minors attempted to be heard, they were shut out. On and before November 30, 2017, L.A. City Councilman Paul Koretz's ("Koretz") office held a number of so-called community meetings to discuss the project. Koretz's office invited the developer and purported neighborhood stakeholders, but refused to allow the meetings to be attended by

- 18-

1   any, or even one, Palms parent. During a phone call with one of the parents,

2   Koretz's office took the express position that any persons who were not in favor

3   of the project were not allowed to attend the meetings.

4  72. Since becoming aware of the Bertoni letter, Palms parents and teachers have

5   made daily calls and sent daily emails to Bertoni's office, LA City Councilman

6   Paul Koretz's office, and various other City offices to ask to have their objections

7   heard as to the project. Petitioners have been denied opportunities to have their

8   objections heard.

9  73. Councilman Koretz's office also expressly banned Petitioner Lord from attending

10   and being heard at the meetings. Petitioner Lord was banned from the meetings

11   because in an earlier community meeting she made statements in opposition to

12   the Project.

13  74. Nevertheless, on December 12, 2017, Petitioners served upon the City Council

14   and developer an unsolicited CEQA appeal, and exhibits [see EXHIBIT A, Proof

15   of Filing, Bates No. 001001 through 001137, City Council Appeal] pursuant to

16   Cal. PRC §21151. Later, on December 14, 2017, the same appeal was filed with

17   the City Council through the City's Department of Planning (Receipt No.

18   0302113714), at the instruction of City Senior Planner, Debbie Lawrence.

19   Petitioners are informed and believe that the appeal is currently under

20   consideration by the City Council. (see *Browning-Ferris Indus. v City Council*,

21   181 Cal.App.3d 852 (1986) ("the petitioner's comments on the EIR were given to

22   the city council but not to the planning commission. The court held that

23   administrative remedies had been exhausted because under the city's ordinance

24   the final decision on the EIR rested with the city council; the planning

25   commission's determination was advisory only.")

26

27        **V.   REQUEST FOR STAY AND INJUNCTION**

28  75. Petitioners hereby request that the Court stay and/or enjoin Respondents and real

- 19-

1   parties in interest as set forth below in the Prayer.

2   76. Petitioners have no adequate remedy at law to address the matter set forth in this

3      petition.

4   77. Petitioners as well as members of the general public will suffer irreparable harm

5      if the relief requested herein is not granted and the Project is commenced based

6      upon approvals and exemptions in the Bertoni letter.

7   78. Pursuant to Code of Civil Procedure section 1085 and section 1094.5, the Court

8      may stay or enjoin the operation of any administrative decision or order involved

9      in this proceeding.

10  79. A stay or injunction of Respondents' and real parties' in interest actions relating

11     to the Project would not be against the public interest because Respondents are

12     required by CEQA to conduct an adequate environmental review of the Project

13     before taking any actions to approve it, because construction and operation of the

14     Project could have significant environmental impacts and because neither

15     Respondents nor real parties in interest will be harmed by the Court's issuance of

16     a stay or an injunction.

17  80. Because City has issued real parties in interest exemptions and approval for the

18     construction of the Project, there is a real, concrete threat that real parties will

19     proceed with such construction despite the absence of an EIR, Health Risk

20     Assessment or appropriate mitigation to protect Petitioners.

21  81. Moreover, because on December 14, 2017, the City (a few days prior to the filing

22     of this petition) instructed Petitioners to file their City Council appeal and are

23     considering it and may order and EIR, a stay or injunction is appropriate to allow

24     the Council to consider and decide on Petitioners' appeal. Indeed, per the

25     California Supreme Court,

26        "CEQA requires that an agency determine whether a project may

27        have a significant environmental impact, and thus whether an EIR

28        is required, before it approves that project. ... A fundamental

- 20-

purpose of an EIR is to provide decision makers with information they can use in deciding whether to approve a proposed project, not to inform them of the environmental effects of projects that they have already approved. If post-approval environmental review were allowed, EIR's would likely become nothing more than post hoc rationalizations to support action already taken. We have expressly condemned this use of EIR's." *Laurel Heights Improvement Ass'n v. Regents of Univ. of Cal.*, 47 Cal. 3d 376, 394 (1988).

82. Petitioners' City Council Appeal and proof of filing are filed herewith as [EXHIBIT A, Proof of Filing, Bates No. 001001 through 001137, City Council Appeal], and incorporated herein as if set forth in full.

83. Petitioners have performed all conditions imposed by law precedent to filing this action, including complying with the requirement of Public Resources Code Section 21167.5 by mailing notice to the City and developer as real party in interest that this action would be filed. A copy of the notices are attached as [EXHIBIT B, Notice of Suit to City and Developer].

84. Petitioners will also serve a copy of this Petition on the California Attorney General as required by law.

85. Petitioners have no plain, speedy or adequate remedy available to them in the ordinary course of law to redress the claims alleged in this petition unless this Court grants the requested writs of mandate and injunctive relief.

86. Petitioners are informed and believe that all children at Palms Elementary School will have their learning environments disrupted and made ineffective by the noise and toxins emitted by the Project.

87. Petitioners are informed and believe that all children and teachers at Palms Elementary School will suffer increased risks of cancer from toxins emitted by the Project.

Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief

88. Petitioners elect to have Respondent City of Los Angeles prepare the administrative record. A copy of Petitioners' request for Respondents to prepare the administrative record is attached as [EXHIBIT C, Request for Admin. Record].

## VI.   PRAYER

WHEREFORE, Petitioners, pray for judgment in their favor as follows:

1.   For a Peremptory Writ of Mandamus directing the City and City Council to vacate and set aside the actions exempting the Project from CEQA and approving the Project for demolition, excavation and construction;

2.   For a Peremptory Writ of Mandamus directing the City and City Council to require a full Environmental Impact Report and Health Risk Analysis as to the Project, with notice to Petitioners and a reasonable opportunity to be heard and object thereto, prior to the issuance of any further approvals or permits for the Project;

3.   That the Court enjoin the City, City Council and its agents from granting any authority, approvals, exemptions or permits as to the Project in the absence of a full Environmental Impact Report and Health Risk Analysis;

4.   For attorneys' fees, including pursuant to Code of Civil Procedure Section 1021.5;

5.   For costs of suit; and

6.   For such other relief as is just and proper.

Respectfully submitted,

DATE: December 17, 2017

Olu K. Orange, Esq.
Attorney for the Petitioners

- 22-

1
2
3                                    VERIFICATION
4
5          I, BRITTANY DORN, have petitioned for appointment as a guardian *ad litem*
6    for plaintiff/petitioner S.G. in this proceeding.   I have read the foregoing
7    PETITION/APPEAL with which this verification is filed and know the contents
8    thereof.  The same is true of my own knowledge, except as to those matters that are
9    therein alleged on information and belief, and as to those matters, I believe them to
10   be true.
11         I declare under penalty of perjury under the laws of the State of California
12   that the foregoing is true and correct.
13         Executed this December 17, 2017, at Los Angeles, California.
14
15
16                                    BRITTANY DORN
17
18
19
20
21
22
23
24
25
26
27
28

VERIFICATION

1
2
3                              **VERIFICATION**
4
5       I, CHRISTAL LORD, am a plaintiff/petitioner in this proceeding. I have read
6    the foregoing PETITION/APPEAL with which this verification is filed and know
7    the contents thereof. The same is true of my own knowledge, except as to those
8    matters that are therein alleged on information and belief, and as to those matters, I
9    believe them to be true.
10       I declare under penalty of perjury under the laws of the State of California
11   that the foregoing is true and correct.
12       Executed this December 17, 2017, at Los Angeles, California.
13
14
15                                      **CHRISTAL LORD**
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 1
VERIFICATION

1

2

3    **VERIFICATION**

4

5    I, ARACELI BOYCE, have petitioned for appointment as a guardian *ad litem*

6    for plaintiff/petitioner N.B. in this proceeding.   I have read the foregoing

7    PETITION/APPEAL with which this verification is filed and know the contents

8    thereof.  The same is true of my own knowledge, except as to those matters that are

9    therein alleged on information and belief, and as to those matters, I believe them to

10   be true.

11   I declare under penalty of perjury under the laws of the State of California

12   that the foregoing is true and correct.

13   Executed this December 17, 2017, at Los Angeles, California.

14

15

16   **ARACELI BOYCE**

17

18

19

20

21

22

23

24

25

26

27

28

# VERIFICATION

I, DYANNA SANABRIA, am a plaintiff/petitioner in this proceeding.  I have read the foregoing PETITION/APPEAL with which this verification is filed and know the contents thereof.  The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this December 17, 2017, at Los Angeles, California.


DYANNA SANABRIA

1
2
3                                    VERIFICATION
4
5        I, DEREK SPENCER, have petitioned for appointment as a guardian *ad litem*
6   for plaintiffs/petitioners A.D.G. and R.L. in this proceeding.   I have read the
7   foregoing PETITION/APPEAL with which this verification is filed and know the
8   contents thereof.  The same is true of my own knowledge, except as to those matters
9   that are therein alleged on information and belief, and as to those matters, I believe
10  them to be true.
11       I declare under penalty of perjury under the laws of the State of California
12  that the foregoing is true and correct.
13  Executed this December 17, 2017, at Los Angeles, California.
14
15
16                                    DEREK SPENCER
17
18
19
20
21
22
23
24
25
26
27
28

                                    Page 1
                                    VERIFICATION

## VERIFICATION

I, KARLA GARCIA, have petitioned for appointment as a guardian *ad litem* for plaintiff/petitioner A.G. in this proceeding.   I have read the foregoing PETITION/APPEAL with which this verification is filed and know the contents thereof.  The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this December 17, 2017, at Los Angeles, California.

KARLA GARCIA

VERIFICATION