Olu K. Orange, Esq. (SBN 213653)
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., No. 2910
Los Angeles, CA 90010
T: (213) 736-9900/F: (213) 417-8800
orangelawoffices@att.net

Shawna L. Parks, Esq. (SBN 208301)     Patricia A. Van Dyke (SBN160033)
LAW OFFICE OF SHAWNA L. PARKS          LAW OFFICE OF
4470 W. Sunset Blvd.,                  PATRICIA A. VAN DYKE
Ste. 107-347                           1120 Forest Ave, #292
Los Angeles, CA 90027                  Pacific Grove, CA 93950
Tel/Fax: (323) 389-9239                (818) 517-5371
sparks@parks-law-office.com            patsy@lawofficeofpvandyke.com

*Attorneys for Plaintiffs (additional counsel on next page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G., a minor, by and through her guardian *ad litem*, Brittany Dorn; A.D.G. and R.L., minors, by and through their guardian *ad litem*, Derek Spencer; N.B., a minor, by and through his guardian *ad litem*, Araceli Boyce; A.G., a minor, by and through his guardian *ad litem*, Karla Garcia; CHRISTAL LORD; and DYANNA SANABRIA;;<br><br>                                    *Plaintiffs,*<br>       vs.<br><br>CITY OF LOS ANGELES, PAUL KORETZ AND DOES 1 THROUGH 10.<br>                          *Defendants.* | Case No.: CV17-09003 JAK (JPR)<br><br>**FIFTH AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1.  VIOLATION OF CIVIL RIGHTS 42 U.S.C. §1983, First Amendment<br>2.  Cal. Const. Art. 1, Sec. 2 (Free Speech)<br>3.  Negligence<br><br>**DEMAND FOR JURY TRIAL** |

//

- 1-

Complaint-Fifth Amended

ADDITIONAL COUNSEL FOR PLAINTIFFS

Thomas P. Zito (SBN 304629)
Sean Betouliere (SBN 308645)
Michelle Iorio (SBN 298252)
DISABILITY RIGHTS ADVOCATES
2001 Center St., 4th Fl.
Berkeley, CA 94704
T: (510) 665-8644/F: (510) 665-8511
tzito@dralegal.org
sbetouliere@dralegal.org
miorio@dralegal.org


Janeen Steel (SBN 211401)
LEARNING RIGHTS LAW CENTER
205 S. Broadway, Ste 808
Los Angeles, CA 90012
T: (213) 542-1834/F: (213) 489-4033
janeen@learningrights.org

Complaint-Fifth Amended

## I.   INTRODUCTION[1]

1. This lawsuit involves 350 elementary school children and their teachers – and the City of Los Angeles' and certain of its officials' concerted efforts to deprive them of an opportunity to be heard as to their disability, educational and workplace rights.

2. Many of the children at Palms Elementary are in the school's special Deaf and Hard of Hearing program, and use hearing aids, cochlear implants, or other sound-amplifying devices to accommodate their disabilities. Unmitigated noise from nearby construction projects will predictably cause them pain, and prevent them from learning. Other students at Palms have asthma, mastocytosis, and other disabilities that make them especially susceptible to airborne pollutants. Exposure to unmitigated airborne pollution from nearby construction projects poses a unique and serious risks to these children, and in the case of at least one Palms student, Plaintiff N.B., such exposure can cause anaphylaxis and death.

### Palms Students, Teachers and Parents Were Intentionally Not Given Notice, and Were Prevented From Being Heard

3. Plaintiffs initially filed this action in 2017, after the City of Los Angeles approved a major construction project (the "3568 Motor Project") just steps away from the kindergarten playground of Palms Elementary (located at 3520 Motor Avenue, Los Angeles, CA 90034), without giving notice to obviously present families, students or teachers; without doing anything to account for the unique impacts this project would have on students with and without disabilities at the school; and without responding to an express request that those impacts be considered and that

---

[1] Plaintiffs do not here re-plead the claims and causes of actions previously dismissed with prejudice by the Court, including causes of action 1-6, 8-9, 11 and 13 from Plaintiffs' Fourth Amended Complaint (Dkt. 184). However, in doing so, Plaintiffs' do not waive any rights or remedies as to those claims, including but not limited to, rights on appeal.

Complaint-Fifth Amended

appropriate mitigating measures be imposed on the project, as a reasonable and necessary modification to the City's permit review and approval processes.

4. Prior to filing this action, Plaintiffs attempted to voice their health and education concerns to the City and petition for redress of their grievances. But Plaintiffs were denied the meaningful opportunity to do so.

## <u>The Initial Project Is Now Subject to the Court's Jurisdiction, But the City's Deficient Process and a New Unmitigated Project Establish That Harm is Ongoing</u>

5. In late 2018, Plaintiffs and the developers of the 3568 Motor Project agreed to a settlement that contained the sort of reasonable mitigating measures necessary to protect Plaintiff children with disabilities that the City had previously refused to consider or impose, and the 3568 Motor Developers were subsequently dismissed from this case. *See* ECF Nos. 126, 150.

6. The 3568 Motor Project has since gone forward, and to date the mitigating measures that Plaintiffs and the 3568 Motor Developers agreed to have successfully protected Palms students with disabilities from being harmed by noise, dust, or emissions associated with that project.

7. However, the City played no part in the settlement between Plaintiffs and the 3568 Motor Developers, and the discriminatory and unconstitutional City policies and practices at the heart of this action remain in place.

8. First, the City continues to consider and approve major construction projects without providing potentially affected individuals (including families and teachers at Palms Elementary) with constitutionally adequate notice of their existence.

9. Second, the City still operates planning and permitting programs that consider potential harms to the general public from proposed projects, and impose whatever mitigating measures are necessary to minimize them, but that *do not* consider or do anything to account for the unique impacts such projects are likely to have on nearby people with disabilities—even when the City knows, should know, or has

- 2-

been given actual notice that nearby people with disabilities will be uniquely impacted by a proposed project and that special measures are necessary to protect them from harm, as it did here. In this way, the City discriminatorily denies people with disabilities the benefit of its planning and permitting programs.

10. Third, the City still has a discriminatory policy and practice of refusing even to consider—much less make—reasonable and necessary modifications to its standard projects or its approval processes, when such modifications are specifically requested by or on behalf of impacted people with disabilities. Indeed, Counsel for the City has expressly acknowledged that "the program and services undertaken by the City is the review and issuance of a permit," and stated categorically that "[t]here is no request for accommodations in that permit process."

11. There has been no change to the City's planning and permitting processes—which continue to completely disregard impacts on people with disabilities, even when particular reasonable and necessary modifications are requested. Indeed, in the time since this complaint was first filed, the City's has expanded use of its expedited Sustainable Development Program and/or the Transit Oriented Communities Affordable Housing Incentive Programs ("TOC-SD Programs"), by which the City allows projects to go forward without considering impacts on people with disabilities at any point (even when there has been an express request for reasonable accommodations).

12. Thus, the discriminatory City conduct alleged in Plaintiffs' complaint is ongoing, and continues to subject Plaintiffs to harm. Recent events have made this very clear.

**The City Is Once Again Failing To Impose Reasonable And Necessary Mitigating Measures On A Project Right Next To Palms Elementary**

13. In January 2020, Plaintiffs learned that the City is in the process of approving yet another major construction project adjacent to Palms Elementary—this time, a 7-

- 3-

story, 104-unit development across the street from the school. Again, the City has provided parents and teachers with no notice of this project (the "3551-3563 Motor Project") and taken no apparent action to mitigate the foreseeable negative effects it will have on students with disabilities at the school. These failures are particularly remarkable, considering that they occurred while this suit, concerning the same discriminatory and unconstitutional pattern of behavior, was pending.

14. Grading and shoring for this new 3551-3563 Motor Project is scheduled to begin imminently—as soon as March 2020—and construction is expected to last approximately two years, with a current projected completion date of March 15, 2020. This new project is currently under review by several departments of the City as part of the City's planning and permitting programs.

15. If appropriate measures are not put in place now, Palms Elementary students with and without disabilities will be harmed by unmitigated noise, pollution, and carcinogenic emissions from this Project, because the City has done nothing to consider or account for their needs—a failure that will put the education, health, and possibly even the lives of this vulnerable population at risk, for years to come.

## II.    JURISDICTION AND VENUE

16. Plaintiff Christal Lord presents federal claims for relief under 42 U.S.C. §1983 and First Amendment to the United States Constitution. Accordingly, federal jurisdiction in conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims arise out of acts and omissions of the City of Los Angeles and its officials in the County of Los Angeles, State of California. Accordingly, venue is proper within the Central District of California.

17. Plaintiffs' state law causes of action arise under the general laws and Constitution of the State of California. Pursuant to 28 U.S.C. § 1367, this court has jurisdiction over Plaintiffs' state law claims as they arise from the same nucleus of operative facts as Plaintiffs' federal claims.

- 4-

18. Plaintiffs have complied with the California Tort Claims Act requirements by presenting a tort claim to the entity-affiliated defendants embracing the substance of the matters herein, which was denied.

## III.   PARTIES

### A.   A.   PLAINTIFFS

19. S.G., A.D.G., R.L., N.B., and A.G., are all minors who currently attend, and at all times material herein attended, Palms Elementary School, located at 3520 Motor Avenue, in the City of Los Angeles, California. Each of them are private residents in the County of Los Angeles, State of California. Plaintiffs S.G., A.D.G., R.L., and N.B. are qualified individuals with disabilities under the ADA and Section 504.

20. Plaintiff CHRISTAL LORD ("Lord") is a private resident in the County of Los Angeles, State of California. She is currently employed as a teacher at Palms Elementary School, and at all times material herein, she was so employed.

21. DYANNA SANABRIA ("Sanabria") is a private resident in the County of Los Angeles, State of California. She is currently employed as a teacher's assistant at Palms Elementary School, and at all times material herein, she was so employed. Plaintiff Sanabria is a qualified individual with a disability under the ADA and Section 504.

### B.   B.   DEFENDANTS

22. Defendant City of Los Angeles ("City") is a public entity organized and existing under the laws of the State of California. This Defendant is sued in its own right for City policies, practices, customs and/or acts and omissions which cause Plaintiffs' injuries in violation of one or more federal constitutional guarantees, and on Plaintiffs' state law claims based on *respondeat superior*, under California Government Code §815.2 and mandatory duties under California Government Code §815.6.

- 5-

23. Non-party Vincent Bertoni ("Bertoni") is, and at all times material herein was, the Director of City Planning for the City of Los Angeles. If Bertoni disapproves of a construction project, it does not go forward. As such, Bertoni is a supervisor and policymaker for the City.

24. Defendant Paul Koretz ("Koretz") is sued in his official and individual capacities, and at all times material herein was, a member of the Los Angeles City Council whose district includes the location of the "3568 Motor Avenue" project ("the 3568 Motor Project"), located in the City of Los Angeles, that is currently being built on the fence-line of Palms Elementary School, as well as the 3551-3563 Motor Avenue Project ("3551-3563 Motor Project") currently scheduled to be built just across the street from the school. Koretz and his staff exercise significant power over which, and how, construction projects are able to be built in his district. If Koretz disapproves of a construction project in his district, it does not go forward. As such, Koretz is a supervisor and policymaker for the City.

25. The planning and permitting programs in which the identified construction project developers participate with the City require those developers to observe and implement protocols to make sure the City meets mandated affordable housing goals for the public. Further, all construction activities are controlled by the City – including but not limited to fine details such as the distance between structural nails and electrical outlets. Additionally, the City's accelerated development programs benefit the developers financially by increasing the return on their investment over a shorter period of time.

26. Non-parties Hiro Kobayashi and 3568 Motor LLC (together referred to as "3568 Motor Developer") are obligated by contract to defend, indemnify and hold harmless the City of Los Angeles as to all legal actions related to City approvals of the 3568 Motor Project. However, as to civil rights damages and attorneys' fees, stemming from the City's own discriminatory or unconstitutional conduct, 3568 Motor Developer's obligation to City is unenforceable. All Plaintiffs settled all

Complaint-Fifth Amended

claims against 3568 Motor Developer on October 19, 2018. All Plaintiffs' claims against 3568 Motor Developer were dismissed as of April 16, 2019

27. Non-parties Michael Cohanzad, Isaac Wise Cohanzad, Motor Tabor, LP, and Willowstream Exchange Company, LLC (together referred to as "3551-3563 Motor Developers") are the developers of the 3551-3563 Motor Project, and are obligated by contract to defend, indemnify, and hold harmless the City of Los Angeles as to all legal actions related to City approvals of that Project. However, as to civil rights damages and attorneys' fees stemming from the City's own discriminatory or unconstitutional conduct, 3551-3563 Motor Project obligation to City is unenforceable.

28. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will give notice of this complaint, and of one or more DOES' true names and capacities, when ascertained. Plaintiffs allege, based on information and belief that Defendants DOES 1 through 10 are responsible in some manner for the damages and injuries hereinafter complained of.

29. Upon information and belief, Plaintiffs further allege that, at all times relevant herein, Bertoni, Koretz and/or Supervisory Doe Defendants participated in, approved, and/or ratified the unconstitutional and/or illegal acts complained of herein.

30. Plaintiffs are informed and believe that at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of each other and/or their respective employers and were acting at all times within the scope of their agency and employment, and with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of law – directly, and/or by conspiracy. All said Defendants, and each of them, ratified the aforesaid conduct committed under color of law. All entity Defendants are liable for the acts of their public employees,

- 7-

Complaint-Fifth Amended

the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## IV.    **FACTUAL ALLEGATIONS**

A. FACTUAL ALLEGATIONS RELATING TO PLAINTIFFS

31. Plaintiff S.G. is a student with a disability at Palms Elementary School. As an accommodation for her disability-related learning needs, she wears a sound-amplifying device and participates in the school's Deaf and Hard of Hearing ("DHH") program as part of her Individualized Education Program ("IEP"). In her classroom, as in all of the DHH classrooms, sound is controlled via use of carpets on the classroom floor, fabric on the walls, and a drop ceiling to minimize sound reverberation.

32. Plaintiff A.D.G. is a student with a disability at Palms Elementary School. As an accommodation for his disability-related hearing needs, he wears a sound-amplifying device but does not participate in the DHH program. He had been in the DHH program, but has now exited the program and participates in general education classrooms.  A.D.G. does not currently have an IEP or a section 504 plan for his education. For Plaintiff A.D.G., background noise is distracting and causes an inability to focus. Amplification of sharp unexpected sounds can be painful and ongoing repetitive sounds can be annoying and cause headaches.

33. Plaintiff N.B. is a student with a disability at Palms Elementary School. As an accommodation for his disability-related learning needs, his IEP includes services related to Autism Spectrum Disorder. As a result of his disability he is easily and severely distracted by loud noises. Additionally, N.B. has been diagnosed with mastocytosis. Environmental changes caused by dust, fumes and chemicals have the high probability of triggering an anaphylactic allergic reaction which could result in N.B's death. Because of the danger to his health from dust, fumes and chemicals, he carries an Epi-pen with him at all times.

- 8-

34. Plaintiff R.L. is a student with a disability at Palms Elementary School. He has an IEP and accommodations for his disability-related learning needs associated with speech and language impairment.  Loud noises distract his attention and interfere with his ability to receive, interpret and replicate word formation, as well as linguistic distinctions in intonation, inflection and cadence – which are necessary to mastering effective communication, and effectively accessing and participating in his curriculum.

35. Plaintiff A.G. is a student at Palms Elementary School. Like many elementary school students, he is vibrant, curious, and intellectually agile. He also has reactions to noise, dust and fumes which are manageable when not in quantities above normal. However, when noise, dust and fumes are in increased quantities, A.G. is distracted and cannot focus on his educational activities.

36. Plaintiff Lord is a teacher at Palms Elementary School. She spends no less than six hours per day, five days per week inside of, and on the grounds surrounding, the buildings comprising Palms Elementary School.

37. Plaintiff Sanabria is a teacher's assistant at Palms Elementary School. She spends several hours per day, on multiple days per week inside of, and on the grounds surrounding, the buildings comprising Palms Elementary School. She is a cancer survivor, but remains under doctor's instructions to limit exposure to carcinogens, and is highly susceptible to relapse.

B. <u>FACTUAL ALLEGATIONS RELATING TO DEFENDANTS' UNREASONABLE CONDUCT TOWARD PALMS ELEMENTARY AND ITS TEACHERS AND STUDENTS</u>

38. Palms Elementary is a pre-K through 5 primary school located in a fast-developing section of West L.A., with a population of approximately 350 young children. The vast majority of its student body is composed of minority students. 82.2% of the students are classified by the California Department of Education as socioeconomically disadvantaged – Palms Elementary is a so-called Title I school.

- 9-

36% of the students are English learners. The school is also the site of one of LAUSD's four dedicated Deaf and Hard of Hearing program sites, a unique and specialized program designed to address the needs of this population of young students.

39. The Deaf and Hard of Hearing Program at Palms Elementary services all children from preschool through fifth grade.  Children are bussed from all over the local region to attend the program – some travel an hour or more to attend the program. The program emphasizes oral skill development, the use of amplification, auditory learning, audiology, language and communication skill development, and speech. Children who are academically ready are mainstreamed into general education classes. Eighty percent of the students with special needs are placed in a general education class for 1st grade.

40. The DHH classrooms at Palms Elementary School are specially designed to minimize all ambient noise and acoustic interruption. In all of the DHH classrooms, sound is controlled via use of carpets on the classroom floor, fabric on the walls, and a drop ceiling to minimize sound reverberation. The program is designed to instruct students who are new to hearing environments, have cochlear implants or other hearing-amplification devices, and who need a low distraction and controlled-sound environment in order for them to learn as they adapt to a hearing world.

41. Sound control is necessary for the DHH classrooms because acoustic interruptions are amplified and make it impossible for students who are new to sounds to discern which sounds are voices and sources of information that need to be interpreted, as opposed to sounds which should be filtered out as noise. Background noise causes early attention fatigue. Amplification of sharp unexpected sounds is painful because there is no chance to adjust volume, and ongoing repetitive sounds are annoying and cause headaches.

- 10-

42. Loud external noises, typical of demolition, excavation, movement of loud trucks, and the general noise of an onsite construction of a five-story building has been and will be extremely disruptive to all students in the at Palms Elementary with sound-amplifying devices due to the pain, distraction, and attention fatigue they have and will experience.  It has and will cause students with sound-amplifying devices, or those who require low noise/distraction environments, to lose focus and lose the benefit of the educational services at Palms Elementary.

43. Because of the DHH program, all students at Palms Elementary are taught how to behave in the classroom so as to assist their DHH peer to participate fully in the general education setting. Examples of behavior that peers are taught to help DHH students succeed in mainstream classrooms include not fidgeting in squeaky chairs and not tapping pencil on their desks. Where such small noises are enough to prevent Palms' DHH students from receiving the benefit of educational services, there can be no doubt that immediately adjacent demolition and construction, with no mitigating measures, will be seriously disruptive.

**The City Has Repeatedly Refused To Consider The Impacts Of Projects Right Next To Palms Elementary**

44. During each school day at Palms Elementary School, the children eat lunch in the outdoor areas with teachers and teaching assistants. The children also run, play, breathe heavily and roll around on the ground in their outdoor play areas.

45. Palms Elementary School is immediately adjacent the ongoing 3568 Motor Project and directly across the street from the 3551-3563 Motor proposed construction project. Moreover, the kindergarten playground is on the fence-line of the 3568 Motor Project and on the side of the school directly across from the 3551-3563 Motor Project.

46. The 3568 Motor Project consists of a five-story residential development that includes multiple years of demolition, excavation and construction. The 3568 Developers broke ground and demolished a former dry-cleaning establishment on

Complaint-Fifth Amended

December 15, 2017, while school was in session. The City never conducted or required an Environmental Impact Review, Health Risk Analysis, or any other protective measures for the 350+ children, or their teachers, who have been at Palms Elementary during the 3568 Motor Project.

47. The 3551-3563 Motor Project is undergoing review by the City as of the filing of this Complaint.  Upon information and belief, the City is refusing to consider the impacts of the project on the Palms Elementary children.

48. Despite being put on notice of the health and safety concerns of the children at Palms Elementary, and especially the children with disabilities at Palms Elementary, the City has not conducted or required an Environmental Impact Review, Health Risk Analysis, sound mitigation measures, pollution mitigation measures, or any other protective measures for the 350+ children – including children with disabilities, or their teachers, who will be at Palms Elementary during the 3551-3563 Motor Project. The City has not considered any of these concerns despite the existence of this pending lawsuit, and multiple requests to the City and 3551-3563 developers by the Palms Neighborhood Council.

49. No Defendant has taken into consideration the impact of the demolition and construction on any child or teacher with a disability at Palms Elementary.

C. FACTUAL ALLEGATIONS RELATING TO THE CITY OF LOS ANGELES' UNREASONABLE DISTINCTIONS IN CONSIDERATION OF DISABLED AND NON-DISABLED ANGELENOS IN ITS OPERATION OF PROGRAMS AND SERVICES

50. The City operates several programs and many different services that analyze, review, inspect, and impose conditions on residential and commercial development projects prior to approving zoning variances or issuing permits for construction, demolition, occupancy, haul routes, or any other of the myriad of permits and approvals a residential or commercial development may require under City and State law.  Through these programs and services, conditions may be

- 12-

Complaint-Fifth Amended

imposed upon development projects, modifications can and often are required of projects, and when it imposes those conditions and requires those modifications, the City does so only after considering the health and safety of non-disabled members of the immediate community.[2]

51. These programs are operated or administered by several departments of the City that coordinate with each other, members of the community, and the developers. The departments include the Planning Department, the Department of Housing and Community Development, and the Department of Building and Safety among others. All of these departments operate programs and services to the Los Angeles Community to ensure that any proposed development project conforms to state and local laws, conforms to the needs of the community, and furthers the health, safety and general welfare of people in Los Angeles. However, none of these departments consider the unique needs of people with disabilities in the Los Angeles, including but not limited to when a specific request for accommodation is made based on the unique burdens imposed on the disability community by construction projects.

52. For example, a development may, among other permits require a permit to haul dirt out of an excavation, a so called "haul route" permit. That permit will be issued, and the route determined based on a number of factors including community safety, traffic impacts, and noise and pollution concerns. In this context these departments have already conceded the need to accommodate people with disabilities in limited contexts, for example, there are requirements to provide safe physical routes around construction for people with disabilities, when a sidewalk

---

[2] The City also operates a Department of Disability whose purpose is to ensure accessibility of City programs to people with disabilities, and to ensure that City programs provide reasonable accommodations to people with disabilities. *See* https://disability.lacity.org/dod-services/.

Complaint-Fifth Amended

or pedestrian right of way is blocked by construction. However, these programs refuse to consider any additional impacts on people with disabilities.

53. Similarly, the City operates, a "site plan review" program to "promote orderly development, evaluate and mitigate significant environmental impacts, and promote public safety and the general welfare by ensuring that development projects are properly related to their sites, surrounding properties, traffic circulation, sewers, other infrastructure and environmental setting; and to control or mitigate the development of projects which are likely to have a significant adverse effect on the environment as identified in the City's environmental review process, or on surrounding properties by reason of inadequate site planning or improvements." Los Angeles, California, Municipal Code ("LAMC") Chapter I, art. 6.1 § 16.05(A). Any application from a property owner or their representative "related to the use of land" will trigger this review. *Id.* at § 16.05(B)(2). In granting approval following a site plan review, the Director of the Department of City Planning "may condition and/or modify the project [as necessary. . .] to mitigate significant adverse effects . . . on the environment and surrounding areas." Id. at § 16.05(E). Again, however, the City refuses to consider the needs of people with disabilities and the effect of construction on this population, in this context.

54. The City also operates the TOC-SD Programs, the purpose of which is to benefit the general welfare of the City and its residents.

D. FACTUAL ALLEGATIONS RELATING TO UNREASONABLE ACTIONS REGARDING THE 3568 MOTOR PROJECT IN LIGHT OF ITS PROXIMITY TO PALMS ELEMENTARY

55. For the several days prior to the initial filing of this action, through several pleas and entreaties to officials, the Palms Elementary children and their teachers fought to no avail to protect their health – and their lives. Meanwhile City officials conferred and collaborated and conspired with a developer who proposed to engage in a towering demolition, excavation and construction project (the "3568

- 14-

Motor Project") on the fence-line of the kindergarten playground at Palms Elementary School, while at the same time refusing to impose any requested reasonable measures to mitigate the effects of that construction upon the children.

56. Indeed, when the children's parents and teachers first found out about the construction project, and expressed concerns, the developer sought to placate them by offering to *paint their handball wall*; the office of Paul Koretz, their City councilman, told them not to *"take it personally."*

57. When this action was filed, every department, administrator and/or City official supposedly responsible for protecting the children and teachers of Palms Elementary School failed them, leading Plaintiffs to seek justice and protection through this action, in this Court.

58. The 3568 Motor Project consists of a five-story residential development that will involve multiple years of demolition, excavation and construction. This project is part of both of the TOC-SD Programs.

59. Palms Elementary School is immediately adjacent to the 3568 Motor Project, and the school's kindergarten playground is on its fence-line.

60. Prior to providing an exemption to the Developers from CEQA and a density bonus to the project, the City knew of the presence of Palms Elementary and the presence of the Deaf and Hard of Hearing program at Palms Elementary, and the presence of children who participate in the DHH program and would be harmed by excessive noise from a multi-story construction project.

61. The City did not conduct or require an Environmental Impact Review, Health Risk Analysis, or any other protective measures for the 350+ children, or their teachers, who will be at Palms Elementary for the duration the 3568 Motor Project. No Defendant took into consideration the impact of the demolition and construction on any child or teacher with a disability at the adjacent Palms Elementary.

62. Per the City and Developer's own documentation, the 3568 Motor Project was anticipated to send toxic dust, vapors, PM2.5 and PM10 particles, volatile organic

- 15-

compounds, reactive organic gases, NOx gas, and other poisonous contaminants into the air covering the children's playground and the school.

63. The 3568 Motor Developer began demolition and construction on December 15, 2017, during school hours, and while school was still in session. This included jack-hammering concrete, digging holes for fence posts, drilling, and other loud and disruptive activities necessary to demolish the existing storefront, which was formerly the site of a highly toxic dry-cleaning business.  The noise startled and disrupted everyone on the Palms Elementary campus, but especially the DHH students and other students like A.D.G. and N.B, who need a quiet environment to access the educational curriculum at all.

64. As demolition continued throughout the next week, toxic and carcinogenic dust and particulate matter from the contaminated soil and storefront coated the playgrounds and other outdoor areas at Palms Elementary.

65. Plaintiffs are informed and believe that 3568 Motor Developer applied to the City for approval to engage in the 3568 Motor Project pursuant to the Community Sustainable Development Program ("SD-Program") at some time in 2016.

66. As part of the approval process for 3568 Motor Developer's application, City and Bertoni were required to perform a California Environmental Quality Act ("CEQA") analyses to determine, and lessen and/or eliminate any adverse environmental impacts Developer's 3568 Motor Project would have on the community surrounding the Project.

67. At the earliest phases of community and environmental impact screening – the exemption phase, Developers are given the green light to move ahead with demolition, excavation and construction projects that the Planning Dept. labels as "exempt" from environmental review, pursuant to the SD-Program, for not crossing predetermined "thresholds of significance."

68. Exemptions granted based upon these predetermined thresholds purportedly mean that a project will have no significant impact on the environment, including the

- 16-

people, surrounding the project. Plaintiffs allege, upon information and belief, that in the case of persons with disabilities (including children with disabilities that the City knew or should have known went to school immediately adjacent to the 3568 Motor Project), this finding of "no significant impact" was patently untrue.

69. The predetermined thresholds used to exempt the projects under City's Programs do not include consideration of persons with disabilities. Instead, the thresholds are set based upon consideration of what is appropriate for the general public under "normally acceptable" circumstances.

70. City's Planning Department's use of the TOC-SD Programs to exempt and approve projects is discriminatory, and it is harmful to adults and children with disabilities in Los Angeles. Plaintiffs' allege that City's use of this discriminatory process contributed to some, if not all, of their harm in this case.

71. City's failure to consider the consequences of the 3568 Motor Development on Palms Elementary children with disabilities, its failure to make any reasonable accommodations to its programs or processes that are harmful to adults and children with disabilities in Los Angeles, caused and continues to cause harm to Plaintiffs with disabilities in this case.

72. Plaintiffs are informed and believe that in addition to the discriminatory process used to screen 3568 Motor Developer's application pursuant to the TOC-SD Program(s), 3568 Motor Developer's application itself was flawed in that 3568 Motor Developer intentionally omitted and misrepresented information, including the property's prior use as a dry-cleaning establishment, in his applications and filings to the City so as to secure further expedited processing and environmental exemptions from the City for the 3568 Motor Project.

73. Plaintiffs are informed and believe that City employees and officials were aware of 3568 Motor Developer's omissions and misrepresentations, but nevertheless made arrangements and agreements with 3568 Motor Developer to expedite and

- 17-

approve the 3568 Motor Project contrary to law, as well as contrary to City's own procedures.

74. Plaintiffs are informed and believe that on and before September 1, 2017, City and 3568 Motor Developer were well aware that the children and teachers of Palms Elementary School, as well as the school itself, were immediately adjacent to the 3568 Motor Project. The City and the 3568 Motor Developer were aware of the presence of children and teachers with disabilities at the Palms Elementary School.

75. Plaintiffs are informed and believe that City and 3568 Motor Developer met and collaborated to determine, plan and execute measures to sidestep legal and/or administrative requirements and protocol that would have resulted in a notice to, and participation by, Plaintiffs and other similarly situated persons in the approval process of the 3568 Motor Project.

76. Plaintiffs are informed and believe that City and 3568 Motor Developer intentionally chose not to send notice of the 3568 Motor Project to the parents of students at Palms Elementary.

77. Plaintiffs are informed and believe that City and 3568 Motor Developer intentionally chose not to send notice of the 3568 Motor Project to the teachers at Palms Elementary.

78. On September 1, 2017, City and Bertoni issued a "Director's Determination" letter ("Bertoni letter") approving the 3568 Motor Project, expediting it, and exempting it from environmental review – even though it does not otherwise qualify to be expedited or exempt from environmental review except under the TOC-SD Programs.

79. Page 13 of the Bertoni letter specifically states:

"Construction activities involving grading and foundation preparation would primarily generate PM2.5 and PM10 emissions. Mobile sources (such as diesel-fueled equipment onsite and traveling to and from the 3568 Motor Project Site) would primarily generate NOx emissions. The

- 18-

application of architectural coatings would result primarily in the release of ROG emissions. The amount of emissions generated on a daily basis would vary, depending on the amount and types of construction activities occurring at the same time."

80. Exposure to these and other toxins, and the construction noise from the 3568 Motor Project, was scheduled to last at least two years.

81. The Bertoni letter also stated that the period within which to appeal the approval to the City Council, ended on September 18, 2017. However, the Bertoni letter limited the group of persons who could appeal to only owners or tenants of adjacent or abutting property.

82. Plaintiffs and the children's parents are not owners or tenants of property abutting or adjacent the 3568 Motor Project. They were not mailed notice of the Project. Plaintiffs and parents became aware of the Bertoni letter only after they became aware of the 3568 Motor Project, on or near the Thanksgiving holiday of 2017 – purely by way of rumor and happenstance.

83. Upon becoming aware of the Bertoni letter, Palms parents and teachers made daily calls and sent daily emails to Bertoni's office, LA City Councilman Paul Koretz' office, and various other City offices to ask to have their objections heard as to the project. Without exception, Plaintiffs and parents were told that it was too late to object to the project, and denied opportunities to have their objections heard.

84. The City, Bertoni, Koretz' office, and Developer made a concerted effort to deny Plaintiffs and parents the right and opportunity to know anything about the project, be heard about it, have any disability accommodated, or have the benefit of an environmental study of it.

85. Nevertheless, Plaintiffs obtained an expedited review and analysis of the Bertoni letter and 3568 Motor Project from Dr. Paul Rosenfeld, a respected environmental scientist. Dr. Rosenfeld's December 5, 2017, review concluded that a proper health

- 19-

analysis was necessary because the 3568 Motor Project could result in significant cancer risks to nearby adults and children far exceeding acceptable thresholds.

86. On December 4, 2017, Counsel for the Plaintiffs sent a letter to the City's Department of Disability, addressed to the executive director, Stephen David Simon, and formally requested that the City to stop its ongoing discrimination in the administration and operation of its planning, permitting and development programs and processes and reasonably accommodate Plaintiff children with disabilities.  The letter requested that the City reconsider the permit, protect the children at Palms with disabilities, and implement policies protecting all residents of Los Angeles with disabilities in the planning and permitting process, including requests for reasonable accommodations to the Programs. That letter requested as a reasonable accommodation that the City consider residents' disabilities in the planning and permitting process, and instead approved the Project under the SD-Program. Had the City acted upon the request and provided a reasonable accommodation, that accommodation would have inured to the benefit of persons with and without disabilities. However, the City did not respond to the request. In so doing, the City declined to act reasonably to protect teachers and children with and without disabilities at Palms Elementary.

87. Despite Plaintiffs' request in writing that the City consider the unique impacts of this project on children with disabilities, and how to mitigate them, the City did nothing to consider such harms, and required no analysis of such harms from Developer, including no environmental impact report or health risk analysis. There are thus no construction-related protections mandated by City for the children (including children with disabilities) or teachers at Palms Elementary School for any Project approved under the Programs.

88. Additionally, in the appeal of Director Bertoni's decision, the City's Planning and Land Use Committee and the full City Council ignored and did not respond or even appear to consider Plaintiffs' request for a reasonable accommodation to the

- 20-

planning and permitting programs.  They simply ignored Plaintiffs' letter and request despite its presence in the City's own file on appeal.

89. In late 2018, Plaintiffs and the developers of the 3568 Motor Project agreed to a settlement that *did* provide for such reasonable and necessary protections, and the 3568 Motor Developers were subsequently dismissed from this case. *See* ECF Nos. 126, 150.

90. The 3568 Motor Project has since gone forward, and to date the mitigating measures that Plaintiffs and the 3568 Motor Developers agreed to have successfully protected Palms students with and without disabilities from being harmed by noise, dust, or emissions associated with that project.

91. However, the City played no part in the settlement between Plaintiffs and the 3568 Motor Developers, and the discriminatory and unconstitutional City policies and practices at the heart of this action remain in place.

E. <u>FACTUAL ALLEGATIONS RELATING TO DEFENDANTS' "DOUBLING-DOWN" ON THEIR PRIOR UNREASONABLE CONDUCT AND ENGAGING IN THE SAME ACTS REGARDING THE NEW 3551-3563 MOTOR PROJECT</u>

92. In January 2020, Plaintiffs learned that the City had approved yet another major construction project in the immediate vicinity of Palms Elementary—this time, a 7-story, 104-unit development approximately 200 feet from the school.

93. The City "doubled-down" on its unreasonable conduct by again providing parents and teachers with no notice of this project (the "3551-3563 Motor Project"), and taken no apparent action to mitigate the foreseeable negative effects it will have on students with disabilities at the school. These failures are particularly remarkable, considering that they occurred while this suit, concerning the same discriminatory and unconstitutional pattern of behavior, was pending.

Complaint-Fifth Amended

94. Grading and shoring for this new 3551-3563 Motor Project was scheduled to begin as soon as March 2020 and construction is expected to last approximately two years.

95. The 3551-3563 Motor Project had been in the planning stages for over a year at the time of filing of Plaintiffs' Fourth Amended Complaint and had undergone substantial review and modification at the City's request.  For example, the City of Los Angeles Housing and Community Investment Department reviewed the proposed project and imposed conditions upon the proposed project requiring it to provide a covenant to ensure that twelve affordable units will replace twelve rent controlled units that were planned to be demolished, and have been demolished as of the time of filing the Fourth Amended Complaint. Additionally, several revisions have been made to the height and dimensions of the building and review of the plans are ongoing.

96. Despite all of this analysis, and imposition of conditions to mitigate other harms, the City has imposed no conditions on the 3551-3563 Motor Project to mitigate any harm to the children and teachers with and without disabilities at Palms Elementary.

97. If appropriate measures are not put in place now, Palms Elementary students with and without disabilities will be harmed by unmitigated noise, pollution, and emissions from this Project, because the City has done nothing to consider or account for their needs—a failure that will put the education, health, and possibly even the lives of this vulnerable population at risk, for years to come.

98. As this new Project makes clear, the unreasonable, discriminatory and unconstitutional City acts, omissions, policies and practices at the heart of this case are ongoing.

99. In particular,  the City continues to operate planning and permitting programs that consider potential harms to the general public from certain proposed projects, and imposes whatever mitigating measures are necessary to minimize them, but that

- 22-

*does not* consider (or do anything to account for) the unique impacts such projects are likely to have on nearby people with disabilities and children.

100.  This is true even where the City knows, or should know, that nearby people with disabilities (in this case, deaf and hard of hearing children), and other students with and without disabilities at Palms Elementary, will be particularly impacted by a proposed project, and that special and additional mitigating measures are necessary to protect them from harm.

101.  As members of the public, these Plaintiffs are "qualified" to receive the same benefits from the City's planning and permitting programs as everyone else, and defendants should act reasonably in light of those circumstances.

102.  These benefits flow to the public at large in the form of planning and permitting processes that consider their needs, and the imposition of any mitigating measures that are needed to ensure that noise, dust, toxins, traffic, and other negative impacts on the general public are kept in check. And, the public at large receives these benefits even though another party (the permitted) receives the actual permit.

103.  However, people with disabilities, and nearby children, are denied the same benefit, because the City does nothing to consider or plan for the particular impacts that proposed projects under control of the City's planning and permitting programs are likely to have on them, even when it knows that it should.

104.  By thus considering the needs of members of the general public, but not of people with disabilities, and nearby children, the City acts unreasonably under the circumstances – and is decidedly continuing to do so with the latest permitted project in the immediate vicinity of Palms Elementary.

F.  <u>FACTUAL ALLEGATIONS RELATING TO CITY AND KORETZ' INTENTIONAL AND UNREASONABLE ACTS TO IGNORE AND</u>

Complaint-Fifth Amended

CONCEAL IMPENDING HARM TO TEACHERS AND STUDENTS AT
PALMS ELEMENTARY – AND THE $500K "DONATION"

105.  On September 1, 2017, City and Bertoni issued a "Director's Determination"
letter ("Bertoni letter") approving the 3568 Motor Project.

106.  Page 13 of the Bertoni letter specifically states:

> "Construction activities involving grading and foundation
> preparation would primarily generate PM2.5 and PM10 emissions.
> Mobile sources (such as diesel-fueled equipment onsite and traveling
> to and from the 3568 Motor Project Site) would primarily generate
> NOx emissions. The application of architectural coatings would
> result primarily in the release of ROG emissions. The amount of
> emissions generated on a daily basis would vary, depending on the
> amount and types of construction activities occurring at the same
> time."

107.  Per the Ninth Circuit, "EPA has identified airborne particulate matter of
diameter 10 micrometers or less (PM-10) as an air pollutant that 'affects the
respiratory system and can cause damage to lung tissue and premature death. The
elderly, children, and people with chronic lung disease, influenza, or asthma are
especially sensitive to high levels of particulate matter.'" *Vigil v. Leavitt*, 381 F.3d
826, 830 (9th Cir. 2004).

108.  As to reactive organic gases, the California Court of Appeal has stated, "Ozone
is formed by photochemical reactions between directly emitted [nitrogen dioxide]
and reactive organic gases (ROG). ROG is formed from combustion of fuels and
from evaporation of organic solvents. Elevated ozone concentrations result in
reduced lung function, particularly during vigorous physical activity. This health
problem is particularly acute in children." *Dunn-Edwards Corp. v. S. Coast Air
Quality Mgmt. Dist.*, 19 Cal. App. 4th 519, 522 n.2 (1993).

109.  Plaintiffs obtained an expedited analysis of the Bertoni letter and 3568 Motor Project from Dr. Paul Rosenfeld, a respected environmental scientist. Dr. Rosenfeld's December 5, 2017, review concluded that a proper health analysis was necessary because the 3568 Motor Project could result in significant cancer risks to nearby adults and children far exceeding acceptable thresholds.

110.  In addition to air pollution from particulate matter, noise generated from the Project during certain phases would increase the ambient noise levels in the learning environments at Palms Elementary beyond allowable thresholds.

111.  City and Bertoni's September 1, 2017, "Director's Determination" letter wrongfully expedited and exempted the Project from environmental review.

112.  Plaintiffs are informed and believe that City and Developer intentionally chose not to send notice of the 3568 Motor Project to the students and teachers at Palms Elementary.

113.  On and about November 30, 2017, Koretz and/or his staff acting upon his direction and approval banned Plaintiff Lord from attending and participating in community meetings Koretz held at his West Los Angeles office to discuss community concerns about the 3568 Motor Project expressly because she previously expressed opposition to the project at prior meetings, in particular concerns about its noise, pollution and disruption of student education and activities at Palms Elementary, as well as the health of teachers at the school. In so doing, Koretz' intentionally and unreasonably prevented Plaintiff Lord from expressing and sharing her concerns with community stakeholders at the meeting, including the developer – who was preparing to begin demolition the very next month.

114.  On December 4, 2017, Counsel for the Plaintiffs sent a letter to the City's Department of Disability, requesting that the City reconsider the permit, protect the children at Palms with disabilities, and implement policies protecting all residents of Los Angeles with disabilities in the planning and permitting process.

Complaint-Fifth Amended

That letter requested as a reasonable accommodation that the City consider residents' disabilities in its planning and permitting process. The City did not respond to this request for a reasonable accommodation.

115. On December 15, 2017, during school hours, and while school was still in session, the 3568 Motor Developer began demolition and construction. This included jack-hammering concrete, digging holes for fence posts, drilling, and other loud and disruptive activities necessary to demolish the existing storefront, which was formerly the site of a highly toxic dry-cleaning business.  The noise startled and disrupted everyone on the Palms Elementary campus, including the DHH students and other students like A.D.G. and N.B, who need a quiet environment to access the educational curriculum at all.

116.  As demolition continued throughout the next week, toxic and carcinogenic dust and particulate matter from the contaminated soil and storefront coated the playgrounds and other outdoor areas at Palms Elementary.

117.  Moreover, the City has provided parents, students and teachers with no notice of the new project (the "3551-3563 Motor Project") near Palms Elementary, and taken no apparent action to mitigate the foreseeable negative effects it will have on students and teachers at the school. These failures are particularly remarkable, considering that they occurred while this suit, concerning the same unconstitutional pattern of behavior, was pending.

118.  By virtue of California law, Sections 6400 to 6404 of the California Labor Code establish that employees have a right to a healthy and safe workplace, and Section 6311 prohibits retaliation against employees who refuse to work in unsafe conditions. Cal. Labor Code §§ 6400-04, 6311

119.  As an additionally protected right, whenever "The environmental effects of a project will cause substantial adverse effects on human beings, either directly or indirectly" as set forth in Cal Pub Resources Code § 21083, CEQA provides Teacher Plaintiffs the right to "detailed information about the effect [that] a

- 26-

Complaint-Fifth Amended

proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project" … "If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees." *Sierra Club v. Cty. of Fresno*, 6 Cal. 5th 502, 511-12 (2018).

120. As a direct and proximate cause of the aforementioned acts, Student and Teacher Plaintiffs were damaged in an amount to be proven at trial.

121. The acts and omissions of Defendants' City and Koretz, as set forth throughout this entire Complaint were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sierra Lake Res. v. Rocklin*, 938 F.2d 951, 957-58 (9th Cir. 1991)(vacated on other grounds).

122. City and Koretz, for no less than an entire year intentionally and knowingly concealed and acted to accomplish acts that will spread chemicals, gases and carcinogenic dust throughout the play areas, classrooms and breathing air of children and teachers at an elementary school. Further, Defendant Koretz specifically acted to keep out of meetings objectors to the project, including Plaintiff Lord, as City was actively engaged in moving the Project along through further City approvals.

123. Additionally, Plaintiffs are informed and believe that phases of the Project initially faced barriers to later approvals from the City due to objections from the Los Angeles Unified School District. But, that the Los Angeles Unified School District removed its objections and exercised influence with the City and Koretz to move the Project along in exchange for a $500,000.00 "donation" from the Project's Developers.

Complaint-Fifth Amended

124. In a May 11, 2018 letter addressed to Defendant Koretz, LAUSD Asset Development Director, Al Grazioli states:

> "The Developer has agreed to donate $500,000 to the School ("Donation") in the hopes of providing a tangible benefit for the School and its students with some of the changes described above, and for any other priorities as determined by the School and District. **The Donation would only be made if a building permit(s) for the Building is issued by the City of Los Angeles.** The Developer has also agreed that, other than a temporary safety barrier, they will not commence construction of the Building until it has delivered the Donation to District." (emphasis added)

125. Plaintiffs are informed and believe that the LAUSD accepted the "donation," and in turn the City and Koretz caused the Project to obtain further approvals – without observation of the Plaintiffs' educational and environmental rights and safety, thus acting unreasonably under the circumstances – and that this was in part the motive for Defendant Koretz' suppression of Ms. Lord's speech.

126. The challenged actions and omissions by Defendants compromise the health and safety of the children and their teachers – and are clearly unreasonable. Beyond that, those actions shock the conscience. Concealing an impending barrage of carcinogenic particulate matter and disruptive noises from teachers and students at an elementary school is in fact despicable and intolerable within the bounds of a civilized society.

127. As a direct and proximate cause of the aforementioned acts, Plaintiffs were damaged in an amount to be proven at trial.

128. As a result of the foregoing, Plaintiffs suffered and continue to suffer injury. Plaintiffs seek damages and declaratory and injunctive relief, and attorneys' fees as a result.

Complaint-Fifth Amended

# COUNT ONE – 42 U.S.C. §  1983

## [FIRST AMENDMENT]

### (Plaintiff Christal Lord against Defendant City and Koretz)

129.  Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

130.  This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to her by the First Amendment to the United States Constitution.

131.  The First Amendment guarantees Plaintiff's freedom of speech and expression permitting Plaintiff to, inter alia, freely and lawfully express opinions or ideas. This expression may be accomplished verbally, demonstratively, and/or symbolically.

132.  On and about November 30, 2017, Koretz' office held a number of community meetings to discuss community concerns about the project at his West Los Angeles office. Koretz' office made the meetings open to the Developer, some teachers from Palms Elementary, and other purported neighborhood stakeholders, but refused to allow the meetings to be attended by any, or even one, Palms parent. Koretz' staff informed the persons scheduled to attend the last of the meetings that parents were not allowed to attend the meetings at his office because parents had previously vocalized strong opposition to the Project.

133.  Plaintiff Lord is a teacher at Palms Elementary and was initially told by Koretz' office that the last meeting was open to her. However, just before the meeting was to occur, Koretz' office informed Plaintiff Lord that she was expressly banned from attending and being heard at that meeting and any others because at an earlier community gathering at the school, she made statements in opposition to the 3568 Motor Project.

134.  Further, during a phone call with one of the parents, Koretz' office took the express position that any persons who were not in favor of the project were not

- 29-

Complaint-Fifth Amended

allowed to attend any of the community meetings about the Project at his office. After being confronted with the fact that the upcoming final meeting was very important because the wellbeing of children was at stake, Koretz' representative responded that the parent should not "take it personally."

135.  Koretz' West Los Angeles office is a public office upon the premises of which public business is conducted concerning his constituents, inclusive of Palms parents, teachers and students. The meetings about the Project were held to address members of the public's concerns about harm befalling public school students – and teachers, who are public employees.

136.  No matter what type of forum Koretz office is ruled to be – even if nonpublic – exclusion from it based upon viewpoint is impermissible. "If the forum is public, 'speakers can be excluded …only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.' If the forum is nonpublic, a more lenient standard applies, and the government may restrict access 'as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because the public officials oppose the speaker's view.'" *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th Cir. 2002)

137.  All of the acts complained of herein were retaliatory and directed toward Plaintiff Lord because of her statements, including criticism of the Project, how the City was handling the project, and questions regarding why Koretz and/or his staff were not doing more to protect the teachers and children and Palms Elementary School from the ill-effects of the Project.

138.  Defendants City and Koretz chilled, deterred and prevented Plaintiff Lord's expression by performing and the conduct complained of herein.

139.  As a direct and proximate cause of the aforementioned acts, Plaintiff suffered damages in an amount to be proven at trial.

Complaint-Fifth Amended

140.   Defendants and each of them, acted deliberately and oppressively to silence Plaintiff and prevent her from expressing her views based upon the content thereof.

141.  Defendants and each of them, knew Plaintiff Lord sought redress of grievances about their official actions and acted intentionally to prevent her from petitioning for such redress.

142.  Plaintiff specifically alleges that Defendant City's and Koretz' acts and omissions, as described herein, were within the control and feasibility of Defendants City and Koretz to alter, adjust, and/or correct so as to prevent some or all of the injury complained of herein by Plaintiff.

## COUNT TWO - CAL. CONST. ART. 1, SEC. 2
### (Free Speech) (Lord Against City & Koretz)

143.  Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

144.  Plaintiffs have complied with the California Tort Claims Act requirements by presenting a tort claim to the entity affiliated defendants, embracing the substance of the matters herein, which was denied.

145.  Per the California Constitution, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

146.  As set forth throughout this entire Compliant, including in Count Seven above, Defendants City and Koretz violated Plaintiff Lord's free expression rights.

147.  As a direct, legal and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injury as set forth herein, requiring injunctive and declaratory relieve according to proof at trial.

148.  Defendant City is liable to Plaintiffs for the acts of its employees, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2 (for public employees) and

Complaint-Fifth Amended

California Civil Code §2330, et seq. (for private employees). As a result of the foregoing, Plaintiff suffered and continues to suffer injury, including, but not limited to, denial of her civil rights.

**COUNT THREE - Cal Civ. Code §§ 1714, 3333**

**and Cal. Gov't Code §815.2**

**[NEGLIGENCE]**

**(All Plaintiffs Against City Only)**

149. Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

150. Plaintiffs have complied with the California Tort Claims Act requirements by presenting a tort claim to the entity affiliated defendants, embracing the substance of the matters herein, which was denied.

151. Defendant City owed Plaintiffs a duty of reasonable care to avoid exposing them to reasonably foreseeable risks of harm or injury by acting reasonably under the circumstances complained of in this Complaint.

152. Defendant City breached its duty of reasonable care as complained of in this Complaint by failing to act reasonably, through its agents and officials, in the following ways under the following circumstances:

  a. By permitting demolition and construction activities which would and did create unreasonable and disruptive noise and release poisonous airborne pathogens (¶¶ 59-64, 70, 85, 107, 108, 115, 116); immediately adjacent to an elementary school attended by 350+ young children, some of whom have disabilities for which they wear sound amplifying headgear, others of whom have deadly allergies to airborne pollutants, and all of whom eat, play, run, breathe heavily and roll around in the outdoor play yards of the school while being supervised by teachers and school staff (¶¶ 41-45);

  b. By banning Plaintiff Lord from attending and participating in  community meetings Koretz  held at his West Los Angeles office and preventing her

- 32-

Complaint-Fifth Amended

from expressing and sharing her concerns about noise, health impacts, pollution and disruption of student education and activities at Palms Elementary with community stakeholders at the meeting, including the developer – who was preparing to begin demolition the very next month (¶ 113); while permitting demolition and construction activities which would and did create unreasonable and disruptive noise and release poisonous airborne pathogens (¶¶ 59-64, 70, 85, 107, 108, 115, 116); immediately adjacent to an elementary school attended by 350+ young children, some of whom have disabilities for which they wear sound amplifying headgear, others of whom have deadly allergies to airborne pollutants, and all of whom eat, play, run, breathe heavily and roll around in the outdoor play yards of the school while being supervised by teachers and school staff (¶¶ 41-45);

c. By Koretz and/or other City officials and employees collaborating with the Developer for the Developer to pay $500,000 to the LAUSD as a so-called "donation" in exchange for the LAUSD removing its objections and exercising influence specifically to secure City a building permit for the 3568 Motor Project – payable _if and only if_ the City issued the permit (¶¶ 123-127); thus permitting ongoing construction activities which had already created unreasonable and disruptive noise and released poisonous airborne pathogens (¶¶ 59-64, 70, 85, 107, 108, 115, 116); immediately adjacent to an elementary school attended by 350+ young children, some of whom have disabilities for which they wear sound amplifying headgear, others of whom have deadly allergies to airborne pollutants, and all of whom eat, play, run, breathe heavily and roll around in the outdoor play yards of the school while being supervised by teachers and school staff (¶¶ 41-45);

- 33-

153. Defendants' negligent conduct as set forth hereinabove is injurious to health, offensive to the senses and/or is obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.

154. As a direct, legal and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer injury and damages as set forth herein, in an amount to be determined according to proof at trial.

155. Defendant City is liable to Plaintiffs for the acts of its employees, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2 (for public employees) and California Civil Code §2330, et seq. (for private employees). As a result of the foregoing, Plaintiffs suffered and continue to suffer injury, including, but not limited to, denial of their civil rights.

## V.   **KNOWING AND WILLFUL ACTION**

156. Plaintiffs specifically allege that Defendants' policies, customs and/or practices, as described herein above, were within the control of Defendants and within the feasibility of Defendants to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs.

157. Plaintiffs specifically allege that Defendants, and each of them, made a calculated, knowing and voluntary choice not to alter, adjust and/or correct their policies, customs and/or practices, as described herein above, so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiffs. The conduct by each individual defendant was with malice, fraud and/or oppression, and said Defendants are therefore liable for punitive damages.

## VI.   **PRAYER**

WHEREFORE, Plaintiffs request relief against each Defendant as follows:

- 34-

Complaint-Fifth Amended

1.     A declaration that the City has violated the statutes and claims pled herein;

2.     General, presumed and special damages according to proof;

3.     Temporary, preliminary, and permanent injunctive relief requiring the City to take into consideration the needs of the teachers and students at Palms Elementary impacted by development projects in its planning and permitting program(s);

4.     Temporary, preliminary and permanent injunctive relief prohibiting Defendants from continuing to engage in the unlawful action and practices complained of herein;

6.     As against the individual Defendants only, punitive damages according to proof;

7.     In addition to actual damages, statutory damages as may be allowed by law, damages flowing directly from the violation of Cal. Const. Art. 1, Sec. 2;

8.     Attorneys' fees and costs under 42 U.S.C. §1988, California Code of Civil Procedure §1021.5, and whatever other Statute or law may be applicable;

9.     The costs of this suit and such other relief as is just and proper.


Respectfully submitted,

DATE: February 17, 2021                    /s/ Olu K. Orange

_____

Olu K. Orange, Esquire
Attorney for the Plaintiffs

- 35-

1    <u>JURY DEMAND</u>

2         Plaintiffs hereby demand trial by jury in this action.

3    Respectfully submitted,

4     DATE: February 17, 2021

5                                        /s/ Olu K. Orange

6                              _____

7                              Olu K. Orange, Esquire
                               Attorney for the Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 36-                                   _____

Complaint-Fifth Amended