UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

Present: The Honorable   JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b) (DKT. 252);**

**DEFENDANTS CITY OF LOS ANGELES AND PAUL KORETZ'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED COMPLAINT (DKT. 263)**

I.    **Introduction**

On December 15, 2017, several students, S.G., A.D.G., R.L., N.B. and A.G. ("Children"), through their guardians ad litem, and Christal Lord ("Lord") and Dyanna Sanabria ("Sanabria"), who are instructors at Palms Elementary School ("School") (collectively, "Plaintiffs"), filed this putative class action. Dkt. 1. The claims in the original Complaint arose in connection with the demolition of an existing structure and construction of a new building next to the School (the "3568 Project"). Dkt. 1. Thereafter, the Plaintiffs filed two amended complaints. Dkts. 21, 46. The Second Amended Complaint ("SAC" (Dkt. 46)) named as defendants the City of Los Angeles ("City"), Vincent Bertoni ("Bertoni"), the City's Director of Planning, the developer of the Project, 3568 Motor LLC and 3568 Developer's sole officer, Hiro Kobayashi (together, "3568 Developer" or "Developer Defendants").

On March 23, 2018, Bertoni and the City filed a motion to dismiss the SAC ("City Motion" (Dkt. 49)), and the Developer Defendants filed a separate motion to dismiss the SAC ("Developer Motion" (Dkt. 50)). Also, on March 27, 2018, Plaintiffs filed a motion for preliminary injunction ("PI Motion" (Dkt. 52)). A hearing on these matters was held on June 18, 2018, and the matters were taken under submission. Dkt. 100.

At a telephonic settlement conference with Judge Walsh on October 19, 2018, Plaintiffs and the Developer Defendants reached a settlement. Dkt. 117. Plaintiffs and the Developer Defendants finalized their agreement on April 12, 2019 ("Settlement"). Dkt. 148. Plaintiffs' claims against the Developer Defendants were then dismissed. Dkt. 150. In light of the dismissal, the Developer Motion (Dkt. 50) and PI Motion (Dkt. 52) became moot. *Id.* The Settlement required Plaintiffs to dismiss their claims in a related state court action that contested the City's determination that the 3568 Project did not require an Environmental Impact Report ("EIR") under the California Environmental Quality Act

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

("CEQA"). *S.G., et al. v. City of Los Angeles et al.*, Nos. BS171903 (Cal. Sup. Ct. Dec. 18, 2017), BS174498 (Cal. Sup. Ct. July 19, 2018).

On April 29, 2019, the City and Bertoni withdrew the City Motion. Dkt. 158. Plaintiffs then filed the Third Amended Complaint ("TAC" (Dkt. 160)). The TAC advanced claims against the City, Bertoni and Los Angeles City Council member Paul Koretz ("Koretz") (collectively, "Defendants"), whose council district is where the School and the 3568 Project are located. On June 3, 2019, Defendants filed a motion to dismiss the TAC. Dkt. 163. On February 21, 2020, an order issued that granted the motion to dismiss without prejudice and with leave to amend ("February 2020 Order" (Dkt. 183)).

On March 6, 2020, Plaintiffs filed the Fourth Amended Complaint ("4AC" (Dkt. 184)). The 4AC again advanced claims against the City, Bertoni and Koretz. In addition to the claims arising from the 3568 Project, the 4AC included claims arising from another planned construction project adjoining the School ("3551–3563 Project"), about which the Plaintiffs allegedly learned in January 2020. Dkt. 184 ¶ 13. The 4AC advanced the following causes of action:

1. Violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.* (by Children and Sanabria against City);
2. Violation of Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 (by Children and Sanabria against City);
3. Violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 (by Children against City);
4. Violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 (by Sanabria and Lord against City);
5. Violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 (by all Plaintiffs against all Defendants);
6. *Monell* liability under 42 U.S.C. § 1983 (by all Plaintiffs against City);
7. Violation of the First Amendment, pursuant to 42 U.S.C. § 1983 (by Lord against City and Koretz);
8. Violation of the Unruh Act, Cal. Civ. Code §§ 51, 52 (by Children and Sanabria against City);
9. Violation of Cal. Gov't Code § 11135 (by Children and Sanabria against City);
10. Violation of Cal. Const. art. I, § 2 (by Lord against City and Koretz);
11. Violation of Cal. Const. art. I, § 7 (by Children against City; Sanabria and Lord against City; and all Plaintiffs against City);
12. Negligence, pursuant to Cal. Civ. Code §§ 1714 and 3333 and Cal. Gov't Code § 815.2 (by all Plaintiffs against City); and
13. Violation of mandatory duties (by all Plaintiffs against all Defendants).

Dkt. 184 ¶¶ 156-309.

On March 20, 2020, Defendants filed a motion to dismiss the 4AC. Dkt. 185. On February 4, 2021, an order was issued that granted the motion to dismiss in part and denied it in part. Dkt. 245 (the "February 2021 Order"). The February 2021 Order dismissed the following causes of action:

- Plaintiffs' First, Second, Eighth and Ninth Causes of Action (the "Statutory Disability Claims"), with prejudice and without leave to amend;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

- Plaintiffs' Third through Sixth and Eleventh Causes of Action (the "Due Process Claims") with prejudice and without leave to amend;
- Plaintiff's Seventh Cause of Action, to the extent it was advanced against the City, without prejudice;
- Plaintiff's Twelfth Cause of Action, without prejudice; and
- Plaintiff's Thirteenth Cause of Action, with prejudice.

Dkt. 245 at 2-3.

The February 2021 Order denied Defendants' motion as to the Seventh Cause of Action as advanced against Koretz, and as to the Tenth Cause of Action. *Id.* at 3.

On February 18, 2021, Plaintiffs filed a Fifth Amended Complaint, which advances claims against the City and Koretz. Dkt. 250 ("5AC"). The 5AC advances the following causes of action:

1. Violation of the First Amendment, pursuant to 42 U.S.C. § 1983 (by Lord against City and Koretz);
2. Violation of Cal. Const. art. I, § 2 (by Lord against City and Koretz); and
3. Negligence, pursuant to Cal. Civ. Code §§ 1714, 3333, and Cal. Gov. Code § 815.2 (by all Plaintiffs against City).

Dkt. 250 ¶¶ 129-55.

On March 5, 2021, Plaintiffs filed a Motion for Entry of Judgment Pursuant to Federal Rule of Civil Procedure 54(b). Dkt. 252 (the "MEJ"). Defendants filed an opposition on March 26, 2021, and Plaintiffs filed a reply in support on April 9, 2021. Dkt. 257 ("MEJ Opposition"); Dkt. 264 ("MEJ Reply").

On April 8, 2021, Defendants filed a motion to dismiss the 5AC. Dkt. 263 (the "MTD"). Plaintiffs filed an opposition on April 29, 2021, and Defendants filed a reply in support on May 13, 2021. Dkt. 269 ("MTD Opposition"); Dkt. 277 ("MTD Reply").

A hearing on the Motions was held on July 26, 2021, and the matter was taken under submission. Dkt. 282. For the reasons stated in this Order, the MTD is **GRANTED-IN-PART** and **DENIED-IN-PART**. The MEJ is **DENIED**.

## II.   Evidentiary Issues

A.    Request for Judicial Notice (Dkt. 263-1)

In connection with the MTD, Defendants request that judicial notice be taken of the following documents:

- A petition for writ of mandamus challenging the 3568 Motor Project, filed by Plaintiffs in the Los Angeles Superior Court on December 18, 2017, and a corresponding request for dismissal of the petition, filed on April 12, 2019 (Exhibits A and B);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | | Date | May 30, 2024 |
|---|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | | |

- A petition for writ of mandamus challenging the 3568 Motor Project, filed by Plaintiffs in the Los Angeles Superior Court on July 9, 2018, and a corresponding request for dismissal of the petition, filed on April 12, 2019 (Exhibits C and D); and
- The order entered in this action dismissing Kobayashi and 3568 Motor LLC. Dkt. 150 (Exhibit E).

Courts may take "notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)); *see also McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014) ("[P]leadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201."). Accordingly, judicial notice is taken of Exhibits A, B, C and D. Because Exhibit E is on the docket in this action, Dkt. 150, it can be considered without taking judicial notice of it.

      B.      Incorporation-By-Reference Doctrine

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A district court may consider such documents without converting a motion to dismiss into a motion for summary judgment. *Id.* at 998. The doctrine is applicable when "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

A copy of Bertoni's Director's Determination Letter was attached to a Request for Judicial Notice that Defendants submitted in connection with their opposition to Plaintiffs' motion for a preliminary injunction. Dkt. 82. The 5AC repeatedly references the Director's Determination Letter, in which Bertoni approved the 3568 Project, and determined that it was not subject to environmental review. 5AC ¶¶ 78, 105, 111. The 5AC also contains direct quotations from the Director's Determination Letter. *Id.* ¶ 79. Given these extensive references, the Director's Determination Letter is incorporated by reference in the 5AC, and it is appropriate to consider it in evaluating the MTD.

**III.**    **Factual Background**

      A.      Allegations in the 5AC

          1.      The Parties

It is alleged that S.G., A.D.G., N.B., R.L. and A.G. have been students at the School. It is alleged that each has a different level of sensitivity to the exposure to noise, dust and chemicals allegedly caused by the 3568 Project and that will be caused by the 3551–3563 Project (collectively "Projects"). 5AC ¶¶ 19, 31-35, 42-43. S.G., A.D.G., N.B. and R.L. are qualified individuals with disabilities under the ADA and Section 504. *Id.* ¶ 19. The learning needs of the Children are allegedly affected by the noise caused by the Projects. *Id.* ¶¶ 31-35, 42-43. S.G. wears a sound-amplifying device and participates in the Deaf and Hard of Hearing program ("DHH program") at the School. *Id.* ¶ 31. A.D.G. wears a sound-amplifying device and has been mainstreamed from the DHH program to general education classes at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

the School. *Id.* ¶ 32. N.B. has been diagnosed with mastocytosis, which gives N.B. a high probability of allergic reactions caused by exposure to dust, fumes and chemicals. *Id.* ¶ 33. R.L. has disability-related learning needs, and loud noises impair his ability to learn. *Id.* ¶ 34.

As noted, it is alleged that Lord is a teacher at the School, and Sanabria is a teacher's assistant there. *Id.* ¶¶ 20-21. Both spend extensive time inside the School and on the outdoor portion of the campus. *Id.* ¶¶ 36-37. Sanabria is a qualified individual with a disability under the ADA and Section 504. *Id.* ¶ 21. She is also a cancer survivor who must limit her exposure to carcinogens. *Id.* ¶ 37.

It is alleged that, at the time of the relevant events, Koretz was a member of the Los Angeles City Council. He represented the district in which the Projects are located. *Id.* ¶ 24. He allegedly had substantial control over construction projects within the district. *Id.*

        2.    <u>Relevant Non-Parties</u>

As noted above, the Developer Defendants and Bertoni are no longer parties to this action. However, the 5AC continues to refer to their role in the events that are described as the basis for the claims. It is alleged that Bertoni is the Director of City Planning for the City. He allegedly has the authority to stop construction projects. *Id.* ¶ 23.

Similarly, although they are not named as parties, Michael Cohanzad, Isaac Wise Cohanzad, Motor Tabor, LP, and Willowstream Exchange Company, LLC are alleged to be the developers of the 3551–3563 Project (together, the "3551–3563 Motor Developers"). *Id.* ¶ 27.

        3.    <u>The School</u>

The School serves approximately 350 students from preschool to fifth grade. Most of them are ethnic minorities. *Id.* ¶ 38. It is alleged that the School is a Title I facility. *Id.*[1] The California Department of Education allegedly classified 82.2% of these students as socioeconomically disadvantaged and 36% as English learners. *Id.*

It is also alleged that the School is one of four sites dedicated by the Los Angeles Unified School District ("LAUSD") for DHH programs. *Id.* Children allegedly travel from locations in Los Angeles that are not near the School to attend the DHH program. *Id.* ¶ 39. It is designed for students who have hearing limitations, cochlear implants or other hearing-amplification devices and require a school environment without distractions and with a controlled-sound environment *Id.* ¶¶ 39-41. It is alleged that classrooms for the DHH program are specially designed to minimize such ambient noise. *Id.* ¶ 40.

It is alleged that on every school day, students eat lunch in outdoor areas with teachers and teaching assistants. *Id.* ¶ 44. It is also alleged that students run, play, breathe deeply and roll on the ground in the outdoor play areas. *Id.*

        4.    <u>The 3568 Project</u>

---

[1] Title I schools have a high percentage of low-income families and receive financial assistance to help students meet state academic standards. See Dkt. 52 at 11 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|----------|--------------------------|------|--------------|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

It is alleged that the 3568 Project is a five-story residential development. *Id.* ¶ 46.   It is on a parcel formerly occupied by a dry-cleaning business. *Id.* The 3568 Project is immediately adjacent to the School; the playground for the kindergarten is on the fence line. *Id.* ¶ 45.

Although the 3568 Project is a private one, Plaintiffs allege that the Defendants played a substantial role in promoting it through City programs. *Id.* ¶ 25. Plaintiffs allege that the 3568 Developer participates in certain construction planning and permitting processes by the City that require the 3568 Developer to help meet the City's mandatory affordable housing goals. *Id.* It is also alleged that the 3568 Project is part of the City's expedited Sustainable Development Program ("SD Program") and the Transit Oriented Communities Programs ("TOC Program") (together, "TOC-SD Programs"). *Id.* ¶¶ 11, 58.

Plaintiffs allege that the 3568 Developer applied to the City in 2016 for a permit to build the 3568 Project pursuant to the SD Program. *Id.* ¶ 65. During the approval process, the City and Bertoni were allegedly required to perform a CEQA analysis to calculate, and then reduce and/or eliminate any expected negative environmental impact that the 3568 Project would cause to the surrounding community. *Id.* ¶ 66. Pursuant to the SD Program, the Planning Department of the City allegedly decided to exempt the 3568 Project from any required EIR after it determined that the effects of the 3568 Project would not exceed a predetermined threshold. *Id.* ¶ 61, 67-68. This exemption allegedly allowed the 3568 Developer to proceed with demolition, excavation and construction. *Id.* ¶ 67.

Plaintiffs allege that the 3568 Developer made misrepresentations and failed to disclose to the City that a dry-cleaning business was formerly on the property. *Id.* ¶ 72. It is also alleged that City employees and officials had become aware of these misrepresentations and omissions when they expedited the approval of the 3568 Project. *Id.* ¶ 73. Plaintiffs further allege that, before the City allowed the exemption, it knew about the location of the School and its population of students with disabilities who would be harmed by excessive noise from a construction project. *Id.* ¶ 60. Thus, Plaintiffs allege that the finding by the City that the 3568 Project would have no significant impact on the surrounding environment was without merit. *Id.* ¶ 68.

Plaintiffs allege that the City, Koretz and Bertoni improperly oversaw the approval process for the 3568 Project after arranging a $500,000 donation from the 3568 Developer to the LAUSD. *Id.* ¶¶ 123-25 The LAUSD allegedly accepted the donation. *Id.* ¶ 125. It is alleged that the donation led to the withdrawal of any objections by the LAUSD as to the 3568 Project, and that these objections had previously impeded its approval. *Id.* ¶ 123. Plaintiffs allege that a May 11, 2018 letter from LAUSD Asset Development Director Al Grazioli to Koretz stated: "The Donation would only be made if a building permit(s) for the Building is issued by the City of Los Angeles." *Id.* ¶ 124.

On September 1, 2017, the City and Bertoni allegedly issued a "Director's Determination" letter ("Bertoni Letter") approving and expediting the 3568 Project. *Id.* ¶ 78. It is alleged that the Bertoni Letter improperly exempted the 3568 Project from environmental review. *Id.* The Bertoni Letter allegedly stated that the 3568 Project would cause the emission of toxic dust, vapors, PM2.5 and PM10 particulate matter, volatile organic compounds, reactive organic gases, NOx gas and other contaminants. *Id.* ¶ 79. Exposure to these and other toxic substances and the construction noise from the 3568 Project was allegedly expected to last at least two years. *Id.* ¶ 80. The Bertoni Letter allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

stated that the deadline to appeal the City's approval was September 18, 2017. *Id.* ¶ 81. It is alleged that only owners or tenants of the property adjacent to the 3568 Project site could appeal. *Id.*

It is alleged that Plaintiffs and their guardians did not receive notice of the 3568 Project because they were neither owners nor tenants of property adjacent to the 3568 Project site. *Id.* ¶ 82. It is alleged that Plaintiffs and their guardians first became aware of the 3568 Project in late November 2017. *Id.* Plaintiffs allege that the City and the 3568 Developer chose not to send notice of the 3568 Project to the teachers or the parents of students at the School and thereby collaborated to "sidestep legal and/or administrative requirements and protocol that would have resulted in a notice to, and participation by, Plaintiffs and other similarly situated persons in the approval process of the [3568 Project]." *Id.* ¶¶ 75-77.

Upon becoming aware of the Bertoni Letter in November 2017, parents of students at the School as well as its teachers allegedly began calling the offices of Bertoni and Koretz, and asked for an opportunity to present their objections to the 3568 Project. *Id.* ¶ 82-83. They were allegedly told that such objections would be untimely. *Id.* ¶ 83. Plaintiffs allege that the City, Bertoni, Koretz and the 3568 Developer "made a concerted effort to deny Plaintiffs and parents the right and opportunity to know anything about the project, be heard about it, have any disability accommodated, or have the benefit of an environmental study about it." *Id.* ¶ 84.

On or before November 30, 2017, Koretz allegedly held several community meetings to discuss the 3568 Project. *Id.* ¶ 132. Koretz allegedly invited the 3568 Developer and purported neighborhood stakeholders to attend, but refused to allow parents of students at the School to do so. *Id.* Koretz's staff allegedly told the people scheduled to attend the final such meeting that parents of students at the School were not allowed to attend because the parents had previously opposed the 3568 Project. *Id.* Those at Koretz's office allegedly banned Lord from attending at least one meeting because she had made statements opposing the 3568 Project at a community gathering at the School. *Id.* ¶ 133. It is further alleged that a member of Koretz's staff told a parent of a student at the School that anyone who opposed the 3568 Project was not allowed to attend community meetings at Koretz's office about the 3568 Project. *Id.* ¶ 134.

On or about December 5, 2017, Plaintiffs allegedly received an analysis by Dr. Paul Rosenfeld, an environmental scientist, of the Bertoni Letter and the 3568 Project. *Id.* ¶ 85. This analysis allegedly concluded that a health assessment of the effect of the 3568 Project was necessary because it would present significant cancer risks to both adults and children exposed to chemicals that would be released. *Id.* He also opined that these exposures would be at levels that far exceeded acceptable thresholds. *Id.*

On December 4, 2017, Plaintiffs' counsel allegedly sent a letter to the City's Department of Disability. *Id.* ¶ 86. It requested that the City reconsider whether to approve the permit issued to the 3568 Developer, act to protect children with disabilities at the School and implement policies that would protect all residents with disabilities in the planning and permitting process. *Id.* The letter allegedly requested, as a reasonable accommodation, that the City consider disabilities of residents in the planning and permitting process. *Id.* The City allegedly did not respond to this letter or take any responsive action. *Id.* ¶¶ 87-88.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

The 3568 Developer allegedly began demolition and construction on December 15, 2017, while the School was in session. *Id.* ¶ 46. This allegedly included using jackhammers on concrete, digging holes for fence posts and other actions that were noisy and disruptive to demolish the existing storefront of the former dry cleaning business. *Id.* ¶ 63. The noise allegedly startled those who were on the campus of the School, especially students like A.D.G. and N.B. who need a quiet environment to participate effectively in the educational curriculum. *Id.* The demolition allegedly continued throughout the next week and resulted in the release of toxic and carcinogenic dust and particulate matter from the contaminated soil and storefront. *Id.* ¶ 64. It is also alleged that these substances were transmitted to, and remained on the playgrounds and other outdoor areas of the School. *Id.*

5.      The 3551–3563 Project

It is alleged that the 3551–3563 Project is a planned seven-story,104-unit development for which City approval has been sought. *Id.* ¶ 13. The 3551–3563 Project is to be located approximately 200 feet away from the School at a site that is across the street. *Id.* ¶ 92. The School's kindergarten playground is close to the construction site. *Id.* ¶ 45. The status of the construction is not clear. *Id.* ¶ 95. Demolition of 12 pre-existing rent-controlled units has been completed. *Id.* Construction was allegedly scheduled to begin as early as March 2020 and expected to last approximately two years. *Id.* ¶ 14, 94. However, it is also alleged that the 3551–3563 Project is "undergoing review" at the time of filing. *Id.* ¶ 47.

Plaintiffs learned about the planned 3551–3563 Project in January 2020. *Id.* ¶ 92. It is alleged that the City's construction planning and permitting programs in which the 3551–3563 Project developer ("3551–3563 Developer") participated, require developers to meet the City's mandated affordable housing goals. *Id.* ¶ 25.

Plaintiffs allege that the City has not given notice about the planned 3551–3563 Project to teachers or parents of students at the School. *Id.* ¶ 13. Plaintiffs allege that the City has not conducted or required an EIR or a Health Risk Analysis ("HRA") for the 3551–3563 Project or required that the 3551–3563 Developer undertake sound mitigation or pollution mitigation measures. *Id.* ¶ 48. It is alleged that, on several occasions, the Palms Neighborhood Council has requested such protective measures from the City and the 3551–3563 Developers. *Id.* Plaintiffs further allege that the City has not imposed any conditions on the 3551–3563 Project designed to protect children and teachers with disabilities at the School, notwithstanding that the City reviewed and modified the 3551–3563 Project during the year that it was in the planning stages. *Id.* ¶¶ 96-97. Plaintiffs allege that children at the School, regardless of whether they have disabilities, would be harmed by noise, pollution and emissions from the 3551–3563 Project if appropriate mitigating measures are not required and implemented. *Id.* ¶ 97.

6.      The City's Construction Planning and Permitting Programs

As noted, it is alleged that, through various programs that the City operates, it reviews and imposes conditions on residential and commercial development projects prior to issuing permits required for construction and demolition ("Planning and Permitting Programs"). *Id.* ¶ 50. It is alleged that the City controls all construction activities, and that its accelerated development programs provide financial benefits to developers. *Id.* ¶ 25.

Plaintiffs allege that when the City imposes conditions on, or requires modifications of development

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | | Date | May 30, 2024 |
|---|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | | |

projects, it only considers the health and safety of non-disabled community members, and not the unique needs of people with disabilities. *Id.* ¶¶ 9, 50-51, 69. Plaintiffs allege that this occurs even when the City knows, or should know, that a project is likely to have a specific impact on people with disabilities, or where disabled people have requested special accommodations. *Id.* ¶¶ 51, 99-100. Plaintiffs allege, for example, that the City departments that issue "haul route" permits refuse to consider the needs of the disabled beyond limited concessions, such as providing safe walkways around construction sites. *Id.* ¶ 52. Additionally, Plaintiffs allege that the City refuses to consider the needs of the disabled in its "site plan review" program, whose purpose is to ensure that development projects are properly related to their sites. *Id.* ¶ 53.

Plaintiffs allege that the City has expanded its use of the expedited TOC-SD Programs and that the City does not consider their impact on people with disabilities when it approves projects in that process. *Id.* ¶ 11. The Planning Department of the City allows development projects that are part of the TOC-SD Programs to proceed without an EIR so long as they do not exceed predetermined thresholds as to environmental impact. *Id.* ¶¶ 67-68. Plaintiffs allege that these thresholds do not account for the unique needs of people with disabilities. *Id.* ¶ 69. Therefore, they allege that the Planning Department's use of the TOC-SD Programs to exempt and approve projects is discriminatory. *Id.* ¶¶ 69-70. As noted, the 3568 Project was approved through the TOC-SD Programs and exempted from an EIR after the City determined the effect of the 3568 Project would not exceed predetermined thresholds. *Id.* ¶¶ 58, 67-68.

In sum, Plaintiffs allege that by "considering the needs of members of the general public, but not of people with disabilities, and nearby children," the City has acted unreasonably and negligently. *Id.* ¶¶ 104, 152. Three specific acts of Defendants are alleged to have been negligent ones:

- "[P]ermitting demolition and construction activities which would and did create unreasonable and disruptive noise and release poisonous airborne pathogens; immediately adjacent to an elementary school attended by 350+ young children, some of whom have disabilities for which they wear sound amplifying headgear, others of whom have deadly allergies to airborne pollutants, and all of whom eat, play, run, breathe heavily and roll around in the outdoor play yards of the school while being supervised by teachers and school staff" (the "Permitting Decision");

- "[B]anning [Lord] from attending and participating in community meetings Koretz held at his West Los Angeles office and preventing her from expressing and sharing her concerns about noise, health impacts, pollution and disruption of student education and activities at Palms Elementary with community stakeholders at the meeting, including the developer – who was preparing to begin demolition the very next month," while engaging in the Permitting Decision; and

- "Koretz and/or other City officials and employees collaborating with the Developer for the Developer to pay $500,000 to the LAUSD as a so-called 'donation' in exchange for the LAUSD removing its objections and exercising influence specifically to secure City a building permit for the 3568 Motor Project – payable if and only if the City issued the permit," thus leading to the Permitting Decision.

*Id.* ¶ 152(a)-(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

B.     The Director's Determination Letter

As noted above, the Director's Determination Letter is incorporated by reference in the Complaint. This section describes that document and its context for the matters addressed in this Order.

The Director's Determination Letter states that Bertoni's decision was made pursuant to Los Angeles Municipal Code Chapter 1, art. 2 § 12.22 A.25. Dkt. 82-2 at 2. That section contains "procedures for implementing State Density Bonus requirements, as set forth in California Government Code Sections 65915-65918." L.A.M.C § 12.22 A.25(a). *See Kalnel Gardens, LLC v. City of Los Angeles*, 3 Cal. App. 5th 927, 939 (2016) ("Local governments are required to enact ordinances that implement the density bonus law… which [Los Angeles] did through Los Angeles Municipal Code section 12.22.A.25."). The state density bonus requirements have been summarized by California courts as follows:

> In 1979, the Legislature added several provisions to the State Planning and Zoning Law to address the shortage of affordable housing in California. One of these statutes, Section 65915, offers incentives to developers to include low income housing in new construction projects. Although application of the statute can be complicated, its aim is fairly simple: When a developer agrees to construct a certain percentage of the units in a housing development for low or very low income households, or to construct a senior citizen housing development, the city or county must grant the developer one or more itemized concessions and a "density bonus," which allows the developer to increase the density of the development by a certain percentage above the maximum allowable limit under local zoning law. In other words, the Density Bonus Law reward[s] a developer who agrees to build a certain percentage of low-income housing with the opportunity to build more residences than would otherwise be permitted by the applicable local regulations.

*Friends of Lagoon Valley v. City of Vacaville*, 154 Cal. App. 4th 807, 823-24 (2007) (internal quotation marks and citation marks omitted).

Los Angeles Municipal Code Chapter 1, art. 2 § 12.22 A.25(g)(2) provides:

> The Director shall approve a Density Bonus and requested Incentive(s) unless the Director finds that:
> > (i) The Incentive is not required in order to provide for affordable housing costs as defined in California Health and Safety Code Section 50052.5, or Section 50053 for rents for the affordable units; or
> >  (ii) The Incentive will have a Specific Adverse Impact upon public health and safety or the physical environment or on any real property that is listed in the California Register of Historical Resources and for which there is no feasible method to satisfactorily mitigate or avoid the Specific Adverse Impact without rendering the development unaffordable to Very Low, Low and Moderate Income households. Inconsistency with the zoning ordinance or general plan land use designation shall not constitute a specific, adverse impact upon the public health or safety.

The Determination Letter reflects that Bertoni applied this standard and determined that there was no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | | Date | May 30, 2024 |
|---|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | | |

Specific Adverse Impact. Dkt. 82-2 at 11. It further provides:

> The proposed Project and potential impacts were analyzed in accordance with the California Environmental Quality Act (CEQA) Guidelines and the City's L.A. CEQA Thresholds Guide. These two documents establish guidelines and thresholds of significant impact, and provide the data for determining whether or not the impacts of a proposed Project reach or exceed those thresholds. Analysis of the proposed Project determined that it is Categorically Exempt from environmental review pursuant to State CEQA Guidelines Article 19, Sections 15304 (Class 4) and 15332 (Class 32), and City CEQA Guidelines Article III, Section 1, Class 4 Category 1.

Sections 15304 and 15332 list certain categories of developments that are exempt from CEQA. Cal. Pub. Res. Code §§ 15304, 15332. As to the City CEQA Guidelines, Cal. Pub. Res. Code § 21082 "directs local agencies to develop their own guidelines, including guidelines for categorical exemptions. Under the statute, these local guidelines are valid so long as they are consistent with state regulations and the CEQA statute." *Apartment Ass'n of Greater Los Angeles v. City of Los Angeles*, 90 Cal. App. 4th 1162, 1167 n.8 (2001).

**IV.    Motion to Dismiss**

    A.    Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must state facts sufficient to show that a claim for relief is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While "this policy is to be applied with extreme liberality," courts have routinely found that amendment is inappropriate in circumstances where litigants have failed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

cure previously identified deficiencies, or where amendment would be futile. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990).

      B.    Application

          1.    <u>Standing, Ripeness, Failure to Join</u>

Defendants renew their arguments as to Plaintiffs' failure to join the 3568 Developer and the 3551-63 Developer as Defendants. Dkt. 263. *See* Dkt. 185 (raising similar arguments).

Defendants' arguments center on the following: (1) the dismissal by Plaintiffs of two earlier CEQA actions that they brought in the Los Angeles Superior Court; (2) the conclusory assertion by Plaintiffs that Defendants failed to object to the Projects through the CEQA processes; (3) Plaintiffs' settlement with the 3568 Developer, which included a release of claims against it; and (4) Plaintiffs' failure to join the 3551-63 Developer as a party to this action. *Id.* Defendants contend that Plaintiffs cannot obtain injunctive relief, because the City cannot be ordered by a court to rescind construction approvals that it has already issued. *Id.* at 16. They also contend that the Developers cannot be enjoined from proceeding with construction of the 3568 Project or the 3551-63 Project, unless they are parties. *Id.* at 14. Defendants also contend that the Plaintiffs' settlement with the 3568 Developer mooted Plaintiffs' claims. *Id.* at 16. Finally, Defendants contend that, to the extent the claims are based on the 3551-63 Project, they are either unripe or moot. *Id.* They note that the 5AC contains conclusory and somewhat contradictory allegations as to the state of this project and that these allegations have not changed since the 4AC was filed in early 2020. *Id.* at 12.

At the hearing on the Motions, Plaintiffs' counsel confirmed that they are not seeking injunctive relief pursuant to the negligence cause of action and that the allegations concerning the 3551-63 Project are not relevant to that cause of action.

In light of these concessions, Defendants' arguments regarding failure to join necessary parties, mootness and ripeness are not persuasive. As noted in the February 2021 Order, Plaintiffs could be awarded damages notwithstanding that the Developers are not parties. Dkt. 245 at 26. Further, the issues of mootness and ripeness raise factual questions that cannot be resolved on a motion to dismiss. *Id.* at 27.

The analysis is different as to Defendants' argument regarding CEQA. Although Defendants advanced a similar argument in connection with the 4AC, it was not clear at that time how it applied to the cause of action for negligence, which was pleaded in a very conclusory manner. Given the greater specificity in the 5AC, this argument can now be evaluated.

Defendants argue that Plaintiffs' claims still "stem from their objections to the September 1, 2017, Bertoni Letter." Dkt. 263 at 17. Defendants argue that because that letter was issued pursuant to CEQA regulations, this cause of action improperly seeks to circumvent CEQA's review provisions. *Id.* at 17-18.

Defendants' position is persuasive, at least as to certain aspects of the allegations in the 5AC. There is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

no dispute that the City's issuance of a building permit is the basis of the negligence cause of action. The 5AC identifies three allegedly negligent acts. 5AC ¶¶ 152(a)-(c). The first is the Permitting Decision itself. *Id.* ¶ 152(a). The other two acts -- Koretz's alleged exclusion of Lord and the alleged payment of $500,000 -- are alleged to be negligent because they led to the Permitting Decision. Id. ¶ 152(a)-(b). As Plaintiffs explain, "City's action of issuing the building permit under these circumstances is entirely unreasonable," and thus negligent. Dkt. 269 at 6.

The 5AC identifies two objectionable aspects of the Permitting Decision. *First*, Plaintiffs argue that the 3568 Project was not eligible to be approved under the City's thresholds, because a dry cleaning business previously occupied the site. *See* 5AC ¶¶ 66-68, 72-73.

As to the first aspect, the thresholds that Bertoni applied to approve the 3568 Project are CEQA Guidelines. *Id.* ¶ 66. Through the application of these guidelines, he determined that the 3568 Project would not have a significant environmental impact. *Id.* ¶ 68. Plaintiffs' cause of action for negligence is premised on allegations that this determination was in error. *Id.* Thus, although styled as a cause of action for negligence, Plaintiffs seek to review Bertoni's compliance with CEQA. This is procedurally improper, because "[a]dministrative mandamus is the exclusive means by which to attack compliance with CEQA." *Mission Oaks Ranch, Ltd. v. Cnty. of Santa Barbara*, 65 Cal. App. 4th 713, 722 (1998) (citing *Western States Petroleum Ass'n. v. Superior Court*, 9 Cal.4th 559, 566–568 (1995)), *disapproved of on other grounds* by *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 15 (1999)); *see* Cal. Pub. Res. Code § 21168 (as to decisions which require a hearing, petition for writ of mandate exclusive method to challenge CEQA compliance); *id.* § 21168.5 (as to all other decisions, traditional mandamus exclusive method to challenge CEQA compliance). Applying these statutes, *Mission Oaks* held that a county could not be sued for damages in failing to prepare an environmental impact statement pursuant to CEQA. 65 Cal. App. 4th at 722. Rather, the applicable review provision provided the exclusive remedy. *Id.*

Plaintiffs do not expressly address the merits of these arguments. Instead, they state that they were already rejected in the February 2021 Order. Dkt. 269 at 3 n. 2. However, as explained above, the relevance of these arguments to Plaintiffs' cause of action for negligence was not clear until greater specificity as to the claims was provided.

*Second*, Plaintiffs argue that the thresholds themselves are objectionable. 5AC ¶ 69. These allegations are distinct from those discussed above. They do not challenge how Bertoni applied CEQA Guidelines, *i.e.*, whether he complied with CEQA, but challenge the guidelines themselves. Thus, Defendants' argument lacks force as to these allegations. It is more appropriate to discuss them in light of Defendants' arguments regarding immunity.

For these reasons, to the extent the 5AC alleges that the Permitting Decision was negligent because the 3568 Project did not meet the applicable thresholds, this cause of action is barred by CEQA's review provisions.

    2.    <u>Whether the Negligence Cause of Action Is Barred By Immunity</u>

        a)    Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|----------|--------------------------|------|--------------|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

In California, "in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable." *Towery v. State.*, 14 Cal. App. 5th 226, 232 (2017). Cal. Gov't Code § 815.2 imposes liability on such entities based on the acts and omissions of their employees:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Governmental tort liability is also limited by statutory immunities. *Wood v. Cnty. of San Joaquin*, 111 Cal. App. 4th 960, 972 (2003). In relevant part, Cal. Gov't Code § 818.2 eliminates a public entity's liability for injuries caused by "adopting or failing to adopt an enactment," such that "the essential governmental function of making laws" is not subject to tort litigation. *Id.* There is a corresponding immunity for public employees. Cal. Gov't Code § 821.

Further, Cal. Gov't. Code § 818.4 provides:

> A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

Again, there is a corresponding immunity for public employees. Cal. Gov't Code 821.2.

Cal. Gov't Code § 818.4 "applies only to discretionary activities." *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 810 (9th Cir. 2007) (quoting *Richards v. Dep't of Alcoholic Beverages Control*, 139 Cal. App. 4th 304, 318 (2006)). Thus, to enjoy immunity, the public entity must "1) issue[] a permit, license or similar authorization and (2) exercise[] discretion in determining whether to issue the permit, license or similar authorization." *Corona v. State.*, 178 Cal. App. 4th 723, 732-33 (2009) (collecting cases).

        b)      Application

As discussed above, certain aspects of the negligence cause of action improperly seek to circumvent the procedures for CEQA review. Therefore, this discussion is limited to the remaining allegations, *i.e.*, those concerning the allegedly insufficient Thresholds.

Defendants first argue that this cause of action is insufficiently pleaded, given the heightened standard necessary to plead public entity liability in California. Dkt. 263 at 21. *See Peter W. v. S.F. Unified Sch. Dist.*, 60 Cal. App. 3d 814, 819 (1976) ("[T]o state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity."). This position is not persuasive, because "federal courts may not impose a heightened pleading requirement in derogation of federal notice pleading rules." *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)); *accord Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (no heightened pleading requirement for municipal liability under § 1983); *see also Mathias v. Bacon*, No. CV 19-07985-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

CJC(SSx), 2019 WL 9050860, at *3 (C.D. Cal. Oct. 24, 2019) (heightened pleading standards under
California statute did not apply in federal court, pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64
(1938)). Although the 5AC is not a model of clarity, it specifically identifies Cal. Gov't. Code § 815.2 as
the basis for liability.[2]

Defendants next argue that Cal. Gov't Code § 818.4 bars this cause of action. Dkt. 263 at 23.
Defendants also rely on several decisions emphasizing that, pursuant to Cal. Gov't Code 818.2, public
entities may not be held liable for adopting or failing to adopt a given law. *See, e.g.*, *Wood*, 111 Cal.
App. 4th at 972; *Sutton v. Golden Gate Bridge, Hwy., & Transp. Dist.*, 68 Cal. App. 4th 1149, 1165
(1998).

Defendants' position as to Section 818.2 is persuasive. The 5AC alleges that the "predetermined
thresholds" the City uses are themselves insufficient. 5AC ¶ 69. Thus, Plaintiffs contend that the
approval of a project pursuant to a faulty standard constitutes negligence. At bottom, Plaintiffs'
objection is that the City did not adopt a different standard. That is barred by Section 818.2.[3]

Plaintiffs' allegations are similar to those made, and found insufficient in *San Diego City Firefighters,
Local 145 v. Bd. of Admin. of San Diego City Emps.' Ret. Sys.*, 206 Cal. App. 4th 594 (2012). There,
the plaintiffs argued that they could state a cause of action for negligence by alleging that the City of
San Diego "failed to use due care in adopting [pension provisions] that failed to comply with section
401(a) of the Internal Revenue Code, and that [San Diego] had a duty to adopt *different* provisions that
would have complied with that section." *Id.* at 612 (emphasis in original). The court held that this theory
was barred by Section 818.2, because it was premised on the position that San Diego was negligent for
not adopting different regulations. *Id.* The same outcome is warranted as to Plaintiffs' theory in this
action, *i.e.*, that it is negligent to use of municipal building standards that do not consider individuals
with disabilities.

For these reasons, and those stated in Section IV.B.1., the Motion is **GRANTED** as to Plaintiffs' cause
of action for negligence. Because Plaintiffs have been given numerous opportunities to amend this
cause of action, *see* Dkt. 183 at 17 (dismissing negligence claim pleaded in TAC); Dkt. 263 at 24 (same

---

[2] The 5AC also identifies Cal. Gov't Code § 815.6, for breach of a mandatory duty, as a basis for liability. *See*
5AC ¶ 22. A cause of action for violation of this statute was dismissed with prejudice in the February 2021 Order,
Dkt. 245 at 26, and Plaintiffs clarified that their cause of action for negligence is based on Section 815.2. MTD
Opposition at 8.

[3] Plaintiffs argue that Los Angeles Municipal Code, Chapter I, art. 6.1 § 16.05(D)(1) governs the Permitting
Decision, and makes clear that this decision was ministerial. It is not clear whether this section, which does not
refer to the TOC-SD program, is applicable. Further, it was not clearly referenced in the 5AC, and was not
identified in the Director's Determination Letter. This ordinance only provides that an approval is ministerial for the
purposes of CEQA. The test for whether an act is discretionary or ministerial under CEQA is not the same as that
for imposing tort liability. *Friends of Westwood, Inc. v. City of Los Angeles*, 191 Cal. App. 3d 259, 267 (1987).
Under CEQA, a decision is not discretionary "simply because the agency may exercise some discretion in
approving the project or undertaking. Instead[,] to trigger CEQA compliance, the discretion *must be of a certain
kind*; it must provide the agency with the ability and authority to 'mitigate ... environmental damage' to some
degree." *Sierra Club v. Cnty. of Sonoma*, 11 Cal. App. 5th 11, 23 (2017) (emphasis added) (quoting *San Diego
Navy Broadway Complex Coal. v. City of San Diego*, 185 Cal. App. 4th 924, 934 (2010)). Because a permit may
be ministerial under CEQA and discretionary under the Tort Claims Act, this ordinance, to the extent it applies,
does not provide support Plaintiffs' claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

in 4AC), further leave to amend is not warranted. Accordingly, this cause of action is **DISMISSED WITH PREJUDICE**.

> 3.  Punitive Damages

Finally, Defendants challenge the prayer for punitive damages. *Id.* at 25. The parties agree that the 5AC only seeks punitive damages from Koretz in his individual capacity. Defendant argues that such damages are unavailable as a matter of law, because Koretz was acting within his official capacity when he met with members of the public and allegedly excluded Lord. *Id.* at 25-26. Thus, Defendants contend that Koretz's conduct is imputed to the City, and that municipalities are not subject to punitive damages. *Id.* at 26.

Whether Koretz was acting within his official capacity is not dispositive of whether he is being sued in his individual capacity. Under 42 U.S.C § 1983, individual defendants may be sued "for damages in their individual capacity, even though they are officers of the state and even if they were acting in their official capacity when they performed the acts complained of." *Hale v. Arizona*, 967 F.2d 1356, 1369 (9th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)); *see also Suever v. Connell*, 579 F.3d 1047, 1060-61 (9th Cir. 2009) (individual liability does not "turn on whether the state official acted within his authority or outside of it; the only issue is whether the conduct was undertaken under color of state law"). The Complaint alleges that Koretz is being sued in his official and individual capacity. 5AC ¶ 24. Accordingly, Defendants' argument that such damages are unavailable as a matter of law, is not persuasive. The issue is reserved.

For these reasons, the Motion is **DENIED** as to the punitive damages prayer.

**V.   Motion for Entry of Judgment**

> A.   Legal Standard

"When an action presents more than one claim for relief. . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims. . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

In evaluating whether to enter a Rule 54(b) partial judgment, the "district court must first determine that it has rendered a 'final judgment,' that is, a judgment that is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)). A "claim" under Rule 54(b) "at minimum refers to 'a set of facts giving rise to legal rights in the claimant.' " *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 575 (9th Cir. 2018). However, the Ninth Circuit takes a "pragmatic approach," and a district court "can enter final judgment on a claim even if it is not "separate from and independent of the remaining claims." *Id.* at 575 (quoting *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) and *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991)).

Next, the court must determine whether there is any just reason for delay. *Wood*, 422 F.3d at 878. This inquiry requires consideration of "judicial administrative interests as well as the equities involved."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-09003 JAK (MRWx) | Date | May 30, 2024 |
|---|---|---|---|
| Title | S.G., et al v. City of Los Angeles, et al. | | |

*Pakootas*, 905 F.3d at 576 (quoting *Curtiss-Wright*, 446 U.S at 8). Certification is generally improper when "the legal right to relief stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts." *Jewel v. Nat. Sec. Agency*, 810 F.3d 622, 630 (9th Cir. 2015) (quoting *Wood*, 422 F.3d at 880). This is not itself determinative if the issues sought to be appealed are "complicated and not routine." *Int'l Longshore and Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1186 (9th Cir. 2017). However, "sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Curtiss-Wright*, 446 U.S at 10.

    B.    Application

The parties' briefing as to the MEJ focuses on whether the negligence cause of action is sufficiently distinct from the Dismissed Claims. Because the negligence cause of action has been dismissed, these arguments are not relevant.

The First Amendment Claims, which are the only ones that remain to be adjudicated, present somewhat different issues. Whether Koretz violated Lord's First Amendment rights, and whether Koretz is entitled to qualified immunity for this alleged conduct, are legal issues distinct from whether the City's approval process complies with disability laws and the Fourteenth Amendment. Further, a judgment in Koretz's favor would not moot an appeal of the Dismissed Claims, which are premised on city-wide practices. *Cf. Pakootas*, 905 F.3d at 575 (appeal of dismissal of punitive damages claim improper, because that claim "necessarily would have become moot if the lesser-included count for compensatory damages later failed as well") (citing *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991)).

There is some factual overlap between these claims. In addition to alleging that the exclusion of Lord violated the First Amendment, Plaintiffs have alleged that this conduct violated Plaintiffs' due process rights and constitutes negligence. *See* 4AC ¶ 222; 5AC ¶¶ 113, 152(b). Based on a consideration of these allegations, the equities involved and the interest in sound judicial administration, it is not appropriate to enter a partial final judgment at this time.

For the foregoing reasons, the MEJ is **DENIED**.

**VI.    Conclusion**

For the reasons stated in this Order, the MTD is **GRANTED-IN-PART** and **DENIED-IN-PART**. The cause of action for negligence is **DISMISSED WITH PREJUDICE**, *i.e.*, without leave to amend. The MEJ is **DENIED**. Defendants shall file an Answer to the 5AC on or before June 20, 2024.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | TJ | |